# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO

_____

MELODY JOY CANTU AND DR. RODRIGO CANTU,

                   Plaintiffs,

              v.

DR. SANDRA GUERRA and DIGITAL FORENSICS CORPORATION, LLC,

                   Defendants.

_____

**5:20-CV-0746-JKP**

**FIRST AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs Dr. Rodrigo Cantu and Melody Joy Cantu ("Melody Cantu"), altogether the ("Cantus"), through their attorneys, complain as follows:

## Introduction

1.    This is an action for violations of the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030 _et. seq._ ("CFAA"), the Federal Wiretap Act, 18 U.S.C. §§ 2510 _et. seq.,_ the Texas Harmful Access by Computer Act ("HACA"), Texas Penal Code § 33.02(b-1) (1), and the Texas torts of malicious prosecution and intentional infliction of emotional distress.

2.    Defendants Dr. Sandra Guerra ("Dr. Guerra") and Digital Forensics Corporation, LLC ("DFC") hacked, surveilled, and damaged Plaintiffs' protected computers and computer networks without authorization or effective consent, and intentionally damaged those computers and networks causing losses greater than $5,000. Defendants' goal was the malicious prosecution of Plaintiff Melody Cantu and the Intentional Infliction of Emotional Distress upon Plaintiffs, and

1

they succeeded. Defendants got Melody Cantu arrested right before a scheduled holiday trip with her husband and children, on charges eventually dismissed on speedy trial grounds. This was followed by Dr. Guerra's filing of a false Child Protective Services complaint against Plaintiffs as part of her outrageous, jealous, and obsessive stalking campaign to intentionally inflict emotional distress upon Plaintiffs and their family.

3.      Defendant Dr. Guerra's obsessive jealousy motivated her revenge on her ex-husband and his new wife, even though it was Dr. Guerra who divorced Dr. Cantu in 2009 after she began having an affair with another man.

4.      Roughly two years later, Dr. Cantu met Melody Cantu, marrying her and triggering Defendant Dr. Guerra's stalking and harassment of Plaintiffs, including the weaponization of Dr. Guerra's and Dr. Cantu's children against Dr. Cantu through parental alienation.

5.      Defendant Digital Forensics Corporation, LLC's ("DFC") motivation was money. Having sold Dr. Guerra a Phase I report after Dr. Guerra turned to them to hack Plaintiffs, DFC, like it always tries to do with its customers, upsold Dr. Guerra by urging her to file a police report in order to get DFC's "Phase II" report. Police officer body camera footage of Dr. Guerra making her false police report, records her telling the officer that Digital Forensics Corporation, LLC requires her to file a police report to proceed with their services.

6.      The Defendants campaign of hacking, surveillance, damage, and malicious prosecution is part of a stalking campaign against Plaintiffs to intentionally inflict emotional distress upon the Cantus, resulting in emotional and monetary harm including costs and expenses from computer and network downtime, bandwidth disruption, and computer intrusion investigation and amelioration. Thus, they seek compensatory, consequential, and punitive damages.

## The Parties

7.      Plaintiffs Melody and Dr. Rodrigo Cantu are married U.S. citizens who reside in Boerne, Texas.

8.      Defendant Dr. Sandra Guerra is a natural person who, upon information and belief, resides in San Antonio, Texas.

9.      Defendant Digital Forensics Corporation, LLC ("DFC") is, upon information and belief, a national Ohio based Limited Liability Company, with an office at 1100 NW Loop 410, #700, San Antonio, Texas 78213.[1] Its website advertises it as an expert in "Digital Forensic Services," and "Cyber Security Services," among other things.[2] The Better Business Bureau website contains an alert for DFC, noting a pattern of complaints against the company "concerning misrepresentation by the company regarding Phase 1 and Phase 2 reporting. These complaints allege that the consumer was led to believe that additional evidence, email, photos, or other information would be able to be produced if the consumer paid the additional money for Phase 2 reporting."[3]

## Jurisdiction and Venue

10.     This Court has subject matter jurisdiction over the Computer Fraud and Abuse Act ("CFAA") claims under 28 U.S.C. §§ 1331 and 1332, as the claims are federal questions under the CFAA, 18 U.S.C. §§ 1030(a)(2)(C) (prohibiting unauthorized access to a computer), 1030(a)(5)(A)-(C) (prohibiting unauthorized damage to a computer), 1030(g) (creating civil cause

---

[1] *Digital Forensics Corp. San Antonio, TX*, DIGITAL FORENSICS CORPORATION, https://www.digitalforensics.com/locations/tx/san-antonio (last accessed July 15, 2020).
[2] Id.
[3] *Better Business Bureau, "Digital Forensics Corp.,"* https://www.bbb.org/us/oh/beachwood/profile/forensic-computers/digital-forensics-corp-0312-92018715 (last accessed July 15, 2020).

of action), 1030(c)(4)(A)(i)(I) (creating civil jurisdiction predicate for CFAA losses aggregating $5,000 or more), and 1030(e) (defining "loss," "damage," and other key terms). As alleged below, the actions complained of resulted in CFAA loss of more than $5,000, all within the last two years from the date of the original Complaint.

11.     Likewise, this Court has federal question jurisdiction over the Federal Wire Tap claims, 18 U.S.C. §§ 2510 *et. seq.,* under 18 U.S.C. § 2520(a) (providing a private right of action for victims of wiretapping).

12.     For the Texas State Law claims, this Court has supplemental jurisdiction under 28 U.S.C. § 1367. Tex. Civ. Prac. & Rem. Code § 143.001 provides for a civil cause of action for violations of the Texas Harmful Access by Computer Act ("HACA"), Texas Penal Code § 33.02(b-1) (1). Texas courts recognize the torts of malicious prosecution and intentional infliction of emotional distress.

13.     The Court has personal jurisdiction over the Defendants because Dr. Guerra resides in the jurisdiction and Digital Forensics Corporation, LLC conducts business in the jurisdiction through its San Antonio, TX division and office.

14.     Venue is proper in the Western Division of Texas under 28 U.S.C. §§ 1391(b) because the Defendants reside and/or conduct business in this judicial district and the events complained of substantially occurred in this District.

## Facts

15.     Plaintiffs, husband and wife Dr. David Rodrigo and Melody Cantu, live in Boerne, Texas. Dr. Cantu works at a local medical practice, and Melody Cantu works for USAA.

16.     In 2009, after 10 years of marriage, Dr. Guerra divorced Dr. Cantu after she began having an affair with another man.

17.     Dr. Cantu had 2 daughters with Dr. Guerra during their marriage, currently ages 18 and 17, with whom he shared custody.

18.     Roughly two years after his divorce with Defendant Dr. Guerra, on March 25, 2009, Dr. Cantu met Melody Cantu. On April 18, 2014, the Cantus got married. Melody Cantu has three children, one of whom is special needs, and all of whom now live in fear of Dr. Guerra surveilling them and coming for their mother.

19.      Upon learning of Dr. Cantu's meeting and marriage to Plaintiff Melody Cantu, Defendant Dr. Guerra began a campaign of harassment against Plaintiffs, intentionally alienating Dr. Cantu's parents and two children from him to the point where his daughters won't speak to him because of their instilled hatred of Melody Cantu.

20.     On June 17, 2016, in the hopes of being able to speak with his daughters, Dr. Cantu divorced Melody Cantu. They secretly kept their relationship going for the next two years.

21.     Throughout the next two years, Melody Cantu lived in fear of being accidentally seen with Dr. Cantu and triggering Dr. Guerra.

22.     Then, on Easter Sunday of 2018, the secret relationship came to light.

23.     On April 1, 2018, Melody Cantu drove by a local restaurant and, to her surprise, saw Dr. Cantu with his daughters and Dr. Guerra. Dr. Guerra had joined them at the restaurant, after claiming to run into them accidentally. As everyone was leaving the restaurant, Melody Cantu phoned Dr. Cantu, who invited her to speak with them. Melody Cantu pulled into the restaurant parking lot and told Dr. Guerra, and her daughters, that she and Dr. Cantu were still seeing each other. Dr. Guerra and her daughters left as Melody Cantu was relating this secret to them. Melody and David Cantu then left separately.

24.     Thinking her relationship with Dr. Cantu was over, Melody Cantu moved on with her life.

25.     On May 14, 2018, Dr. Cantu contacted Melody Cantu asking her to get back together again.

26.     On May 15, 2018, Dr. Cantu told his parents that he was back together with Melody Cantu. Upon information and belief, his parents told Dr. Guerra.

27.     On or about May 16, 2018, Dr. Guerra hired Defendant Digital Forensics Corporation, LLC to hack, surveil, and damage Plaintiffs' computers and computer networks.

28.     On May 29, 2018, Dr. Cantu's lawyer served an enforcement of visitation on Dr. Guerra in the civil custody proceedings involving their children.

29.     On May 29, 2018, Dr. Guerra filed a false Child Protective Services report against the Cantus.

30.     On June 6, 2018, the CPS investigation finished with the investigator writing in their report "[t]his case is clearly not a CPS issue and more of a custody issue."

31.     In June of 2018, the Cantus began experiencing problems with their internet connection at home, despite having purchased ample bandwidth from their cable and internet provider. They began repeatedly experiencing bandwidth issues with their iPads, Smart TVs, and other devices the family of two adults and three children use daily. Their NEST home security camera network crashed, and they experienced similar problems with their computer networked thermostat and other networked household devices.

32.     Over the coming months, their cable and internet provider, Spectrum/Charter, came by five times to investigate the problems the Cantus were having with their internet but was unable to determine their source.

33.     On August 21, 2018, Melody Cantu received a text on her smartphone with a hidden tracking link: "Melody, could you price this for me? Thx https://goo.gl/sCbwZZ." Melody Cantu clicked on the link, thinking it was a normal business appraisal request.

34.     This exact link "https://goo.gl/sCbwZZ", appears in Digital Forensics' Phase I report, along with instructions to Dr. Guerra on how to deploy it against the Cantus.

35.     The request and the link were fraudulent, and induced Plaintiff Melody Cantu to click on the said link without her authorization and consent. When Melody Cantu clicked on the link, a website opened and logged her IP address. Melody Cantu's IP address was logged by way of a tracking URL.[4] Upon information and belief, Defendant Digital Forensics Corporation, LLC created the link in the hopes that Melody Cantu would click on it so they could spy on her for Defendant Dr. Sandra Guerra. Links like this can also be used to install malware, keylogging software, bots, and other malicious codes.

36.     On August 22, 2018, Digital Forensics Corporation completed Phase I of its investigation. The Phase I report states:  "[I]f the client is interested in proceeding to Phase II, the client needs to file a police report." A sample police report was included with the Phase I report.

37.     The Phase I report also says that DFC created "tracking URLs" ("phishing links") and that Dr. Guerra needed: "to include the link in a message containing something the suspect might be interested enough to click on: DO NOT MENTION THE REAL PURPOSE BEHIND

---

[4] "As part of endeavors to know where traffic to a website is coming from, tracking URLs have become an effective way of revealing all the information needed. A tracking URL is a unique link that is created for the specific purpose of tracing where your visitors are coming from. A tracking URL will show you important metrics like the search engine from where a user clicked on your link; the keywords that were searched for, leading the user to visit your website; which of your call-to-actions initiated a response from a certain user; and so on." *What Is A Tracking URL and Why Is It Important?,* LeadSquared, available at https://www.leadsquared.com/what-is-a-tracking-url/ (last accessed 07/15/20).

THE LINK. The message could be something like 'I'd like to send you money,' or 'You will not believe this,' along with that URL created for that suspect. Be creative, but do not reveal what the link really is."

38.     On August 29, 2018, the attorney for Dr. Cantu's civil custody case against Dr. Guerra served discovery papers on her attorney, informing them of a forthcoming notice of deposition for Dr. Guerra's testimony.

39.     On August 30, 2018, Plaintiffs moved in together and Dr. Cantu closed the deed on the property.

40.     On September 4, 2018, (the Tuesday after Labor Day Weekend) Dr. Guerra filed a police report against Melody Cantu, falsely accusing her of harassment. The police bodycam footage of her, requesting a police report, shows Dr. Guerra telling the police officer that Defendant Digital Forensics required her to file the report if she wanted to proceed with Phase II of the investigation.

41.     On September 21, 2018, Spectrum/Charter sent a representative to investigate the persistent internet problems at the Cantus' home. The representative examined the Cantus' cable line leading into their house and discovered a cable signal splitter installed on their line that neither the cable company nor the Cantus put there.

42.     A cable splitter is a type of wiretap that sends the data flowing through a cable to more than one recipient.[5] It does so by providing two or more hardware points to connect to the

---

[5] "[I]t is absolutely possible to split a cable signal and still have enough signal strength to operate a cable modem and feed HDTV signals to a QAM tuner (assuming the signal strength coming into the house is sufficient). And the Cable Act of 1992 means that it is legal to do so. But every time you split a cable or antenna signal, you lose at least 3 to 4 dB of signal strength. So if you're splitting the signal 5 times, you could have as much as 15 to 20 db of loss in the signal by the time it reaches your modem or tuner." Chris Boylan, *Will a Cable Splitter Hurt My Modem or HDTV Signal Strength*?, BIG PICTURE BIG SOUND (Jan. 23, 2007), https://www.bigpicturebigsound.com/split-cable-feed-hdtv-modem-999.shtml.

physical cable. A cable splitter must be spliced in, or put on the end of, a cable. It can be used to monitor the internet traffic coming in and out of a home.

43.     In October of 2018, Melody Cantu's employer, USAA, replaced all of her work equipment following her request for an investigation by USAA, of her secure work internet network connection separate from the Cantus' home internet connection. USAA entrusts Melody Cantu with members' private information and possessions. Thus, she is subject to regular background and security checks. Melody Cantu was worried that her work internet connection was hacked as well. After reporting her concern to USAA, they investigated. USAA's investigation found that Mrs. Cantu's work internet connection was secure, but not before one of the investigators commented that he thought someone had hacked the Cantus' home internet connection.

44.     On November 15, 2018, a Spectrum/Charter representative discovered the cable splitter was removed. There was no record of the splitter being removed by Spectrum/Charter. When Melody Cantu logged in to her router, she discovered that the firewall settings had been set to allow access to anyone and could not be reset by herself or by Spectrum/Charter when she called their internet support line.

45.     On December 20, 2018, Melody Cantu received a postcard in the mail saying there was a warrant for her arrest and that she needed to turn herself in. There was no information as to the charges on the postcard.

46.     On December 21, 2018, the day of a planned family holiday vacation, Mrs. Cantu voluntarily turned herself in at Bexar County Sheriff's Satellite Office where she was booked and processed. She spent most of the day in shackles and did not know what she was being arrested for until the presiding judge told her it was for harassment. Shaken and confused, Melody Cantu pleaded not guilty. She then made it to the airport in time to join her family on their long-planned vacation.

47.     On January 3, 2019, the Cantus hired two computer forensics companies, Exhibit A Computer Forensics Investigations ("EACFI") and Kip & Associates. The Cantus paid EACFI a $5,000 non-refundable retainer.

48.     EACFI's investigation concluded that Digital Forensics Corporation was targeting Melody Cantu on behalf of Defendant Dr. Guerra.

49.     Kip & Associates reiterated EACFI's report, stating that the Cantus were victims of targeted electronic and digital attacks, beginning in 2018, including phishing emails, text messages, sham retail websites, credit card fraud attempts, and identity theft attempts.

50.     As a result of this cyberthreat environment, the Cantus invested more money in investigative, corrective, and protective measures. This included computer and network forensic analysis, device forensic analysis, network monitoring, consultation services, a dark web scan, data and device storage for data and devices.

51.     The Cantus replaced their router, at the cost of $660, since they feared DFC installed malware on their old router. Starting February 1, 2020, the Cantus paid CDR Business IT Solutions, LLC $108.24 a month for network monitoring of their new router. The computer forensic investigation also required the Cantus to turn over many of their electronic devices for analysis. This necessitated the purchase of replacements. And Melody Cantu took time off from work to handle the six service calls to Spectrum/Charter to try and resolve the network service interruptions.

52.     All these costs aggregate to over $5,000 in loss sustained by the Cantus in 2019.

53.     On June 24, 2019, all charges against Melody Cantu were dismissed on speedy trial grounds.

**FIRST CAUSE OF ACTION**
**COMPUTER FRAUD AND ABUSE ACT – UNAUTHORIZED ACCESS TO A**
**PROTECTED COMPUTER**
**18 U.S.C. 1030(a)(2)(c)**

**Against Defendants Dr. Sandra Guerra and Digital Forensics Corporation, LLC**

54.     Plaintiffs incorporate the above paragraphs by reference, as though fully set forth herein.

55.     Plaintiffs' computers are used in interstate commerce and comprise a "protected computer" as that term is used in 18 U.S.C.§ 1030(e)(2)(B).

56.     Plaintiffs maintained and secured their computers by reasonable means, and never authorized Defendants to access them.

57.     Defendants Dr. Guerra and Digital Forensics Corporation, LLC intentionally accessed the Cantus' protected computers without authorization and thereby obtained information. This unauthorized access includes phishing Plaintiffs with fraudulent tracking URLs, wiretapping the Cantus' cable internet connection to their home and monitoring network traffic, and the use of surveillance malware against the Plaintiffs.

58.     As a result of Defendants' conduct, the Cantus suffered loss in expending time, money, and resources aggregating at least $5,000 in value, to investigate the intrusion, assess the damage, and restore their systems to their prior state.

**SECOND CAUSE OF ACTION**
**COMPUTER FRAUD AND ABUSE ACT – UNAUTHORIZED DAMAGE TO A**
**PROTECTED COMPUTER**
**18 U.S.C. 1030(a)(5)(A)**

**Against Defendants Dr. Sandra Guerra and Digital Forensics Corporation, LLC**

59.     Plaintiffs incorporate the above paragraphs by reference, as though fully set forth herein.

60.     Plaintiffs' computers are used in interstate commerce and comprise a "protected computer" as that term is used in 18 U.S.C.§ 1030(e)(2)(B).

61.     Defendants Dr. Guerra and DFC knowingly caused the transmission of a program, information, code, or command, and intentionally caused damage without authorization. This damage includes impairment to the integrity and availability of the Cantus' data, programs, systems, and information on the Cantus' computers and networks resulting from computer crashes, diminished bandwidth, diminished processing time, and the deletion and alteration of data, all caused by Defendants' phishing, wiretapping, malware, and use of malicious codes against Plaintiffs.

62.     As a result of Defendants' conduct, the Cantus suffered losses in expending time, money, and resources aggregating at least $5,000 in value, to investigate the intrusion, assess the damage, and restore their systems to their prior state.

### THIRD CAUSE OF ACTION
### COMPUTER FRAUD AND ABUSE ACT – UNAUTHORIZED ACCESS TO A PROTECTED COMPUTER RECKLESSLY CAUSING DAMAGE
### 18 U.S.C. 1030(a)(5)(B)

**Against Defendants Dr. Sandra Guerra and Digital Forensics Corporation, LLC**

63.     Plaintiffs incorporate the above paragraphs by reference, as though fully set forth herein.

64.     Plaintiffs' computers are used in interstate commerce and comprise a "protected computer" as that term is used in 18 U.S.C.§ 1030(e)(2)(B).

65.     Defendants Dr. Guerra and Digital Forensics Corporation, LLC intentionally accessed the Cantus' protected computers without authorization and thereby recklessly impaired the integrity and availability of the Cantus' data, programs, systems, and information. This unauthorized access includes phishing Plaintiffs with fraudulent tracking URLs, wiretapping the

Cantus' cable internet connection to their home and monitoring network traffic, and the use of surveillance malware and malicious codes against the Plaintiffs.

66.     Defendants' unauthorized access recklessly impaired the integrity and availability of the data, programs, systems, and information on the Cantus' computers and networks by, among other things, causing computer crashes, diminished bandwidth, diminished processing time, and the deletion and alteration of data. This reckless damage resulted from Defendants' phishing, wiretapping, malware, surveillance, and use of malicious codes against the Plaintiffs.

67.     As a result of Defendants' conduct, the Cantus suffered losses in expending time, money, and resources aggregating at least $5,000 in value, to investigate the intrusion, assess the damage, and restore their systems to their prior state.

## FOURTH CAUSE OF ACTION
## COMPUTER FRAUD AND ABUSE ACT – UNAUTHORIZED ACCESS TO A PROTECTED COMPUTER CAUSING DAMAGE AND LOSS
## 18 U.S.C. 1030(a)(5)(C)

**Against Defendants Dr. Sandra Guerra and Digital Forensics Corporation, LLC**

68.     Plaintiffs incorporate the above paragraphs by reference, as though fully set forth herein.

69.     Plaintiffs' computers are used in interstate commerce and comprise a "protected computer" as that term is used in 18 U.S.C.§ 1030(e)(2)(B).

70.     Defendants Dr. Guerra and Digital Forensics Corporation, LLC intentionally accessed the Cantus' protected computers without authorization and thereby impaired the integrity and availability of the Cantus' data, programs, systems, and information. This unauthorized access includes phishing Plaintiffs with fraudulent tracking URLs, wiretapping the Cantu's home cable internet connection, and monitoring network traffic, and the use of surveillance malware and malicious codes against the Plaintiffs.

71.     Defendants' unauthorized access impaired the integrity and availability of the Cantus' data, programs, systems, and information on the Cantus' computers and networks by causing computer crashes, diminished bandwidth, diminished processing time, and the deletion and alteration of data. Defendants caused this damage and loss through their use of phishing, wiretapping, malware, surveillance, and the use of malicious codes against the Plaintiffs.

72.     As a result of Defendants' conduct, the Cantus suffered losses in expending time, money, and resources aggregating at least $5,000 in value, to investigate the intrusion, assess the damage, and restore their systems to their prior state.

## FIFTH CAUSE OF ACTION
## COMPUTER FRAUD AND ABUSE ACT – CONSPIRACY TO COMMIT
## UNAUTHORIZED ACCESS TO A PROTECTED COMPUTER
## 18 U.S.C. 1030(a)(2)(c) & 1030(b)

### Against Defendants Dr. Sandra Guerra and Digital Forensics Corporation, LLC

73.     Plaintiffs incorporate the above paragraphs by reference, as though fully set forth herein.

74.     Plaintiffs' computers are used in interstate commerce and comprise a "protected computer" as that term is used in 18 U.S.C.§ 1030(e)(2)(B).

75.     Plaintiffs maintained and secured their computers by reasonable means.

76.     Defendant Dr. Guerra paid, and Digital Forensics Corporation LLC agreed, to hack and surveil the Cantus' computers and networks without their knowledge and authorization in violation of 18 U.S.C. 1030(a)(2)(C).

77.     As a result of Defendants' conduct, the Cantus suffered loss in expending time, money, and resources aggregating at least $5,000 in value, to investigate the intrusion, assess the damage, and restore their systems to their prior state.

**SIXTH CAUSE OF ACTION**
**COMPUTER FRAUD AND ABUSE ACT – CONSPIRACY TO COMMIT**
**UNAUTHORIZED DAMAGE TO A PROTECTED COMPUTER**
**18 U.S.C. 1030(a)(5)(A) & 1030(b)**

**Against Defendants Dr. Sandra Guerra and Digital Forensics Corporation, LLC**

78.     Plaintiffs incorporate the above paragraphs by reference, as though fully set forth herein.

79.     Under 18 U.S.C.§ 1030(e)(2)(B) Plaintiffs' computers, routers, switches, and network hardware and software are used in interstate commerce "protected computers."

80.     Plaintiffs maintained and secured their computers by reasonable means.

81.     Defendant Dr. Guerra paid, and Digital Forensics Corporation LLC agreed, to hack, surveil, and damage the Cantus' computers and networks without their knowledge and authorization in violation of 18 U.S.C. 1030(a)(5)(A).

82.     As a result of Defendants' conduct, the Cantus suffered loss in expending time, money, and resources aggregating at least $5,000 in value, to investigate the intrusion, assess the damage, and restore their systems to their prior state.

**SEVENTH CAUSE OF ACTION**
**COMPUTER FRAUD AND ABUSE ACT – CONSPIRACY TO COMMIT RECKLESS**
**DAMAGE TO A PROTECTED COMPUTER**
**18 U.S.C. 1030(a)(5)(B) & 1030(b)**

**Against Defendants Dr. Sandra Guerra and Digital Forensics Corporation, LLC**

83.     Plaintiffs incorporate the above paragraphs by reference, as though fully set forth herein.

84.     Under 18 U.S.C.§ 1030(e)(2)(B) Plaintiffs' computers, routers, switches, and network hardware and software are used in interstate commerce "protected computers."

85.    Plaintiffs maintained and secured their computers by reasonable means.

86.    Defendant Dr. Guerra paid, and Digital Forensics Corporation LLC agreed, to hack, surveil, and recklessly damage the Cantus' computers and networks without their knowledge and authorization in violation of 18 U.S.C. 1030(a)(5)(A).

87.    As a result of Defendants' conduct, the Cantus suffered loss in expending time, money, and resources aggregating at least $5,000 in value, to investigate the intrusion, assess the damage, and restore their systems to their prior state.

### EIGHTH CAUSE OF ACTION
### COMPUTER FRAUD AND ABUSE ACT – CONSPIRACY TO COMMIT UNAUTHORIZED ACCESS TO A PROTECTED COMPUTER CAUSING DAMAGE AND LOSS
### 18 U.S.C. 1030(a)(5)(C) & 1030(b)

**Against Defendants Dr. Sandra Guerra and Digital Forensics Corporation, LLC**

88.    Plaintiffs incorporate the above paragraphs by reference, as though fully set forth herein.

89.    Under 18 U.S.C.§ 1030(e)(2)(B) Plaintiffs' computers, routers, switches, and network hardware and software are used in interstate commerce "protected computers."

90.    Plaintiffs maintained and secured their computers by reasonable means.

91.    Defendant Dr. Guerra paid, and Digital Forensics Corporation LLC agreed, to hack, surveil, and damage the Cantus' computers and networks without their knowledge and authorization, causing loss, in violation of 18 U.S.C. 1030(a)(5)(A).

92.    As a result of Defendants' conduct, the Cantus suffered loss in expending time, money, and resources aggregating at least $5,000 in value, to investigate the intrusion, assess the damage, and restore their systems to their prior state.

## NINTH CAUSE OF ACTION
## KNOWINGLY ACCESSING WITHOUT EFFECTIVE CONSENT A COMPUTER, COMPUTER NETWORK, OR COMPUTER SYSTEM
### Tex. Civ. Prac. & Rem. Code § 143.001 & Texas Penal Code § 33.02(a)

**Against Defendants Dr. Sandra Guerra and Digital Forensics Corporation, LLC**

93.     Plaintiffs incorporate the above paragraphs by reference, as though fully set forth herein.

94.     Dr. Guerra and DFC violated § 33.02(a) of the Texas Penal Code by knowingly accessing the Cantus' computer, computer network, or computer system without the Plaintiffs' consent.

95.     Defendants Dr. Guerra and Digital Forensics Corporation, LLC knowingly accessed the Cantus' protected computers, computer networks, and computer systems without effective consent. This knowing access without effective consent includes Defendants phishing Plaintiffs with fraudulent tracking URLs, wiretapping Plaintiffs' home cable internet connection, monitoring their network traffic, and the use of surveillance malware and malicious codes against the Plaintiffs.

96.     As a result of Defendants' conduct, the Cantus suffered loss in expending time, money, and resources aggregating at least $5,000 in value, to investigate the intrusion, assess the damage, and restore their systems to their prior state.

97.     Under § 143.001 of the Texas Civil Practice and Remedies Code, Defendants' are civilly liable for their knowing and intentional violation of §§ 33.02(a) of the Texas Penal Code.

## TENTH CAUSE OF ACTION
### KNOWINGLY ACCESSING A COMPUTER, COMPUTER NETWORK, OR COMPUTER SYSTEM WITH THE INTENT TO DEFRAUD, OR HARM ANOTHER OR ALTER, DAMAGE, OR DELETE PROPERTY WITHOUT EFFECTIVE CONSENT
### Tex. Civ. Prac. & Rem. Code § 143.001 & Texas Penal Code § 33.02(b-1) (1)

### Against Defendants Dr. Sandra Guerra and Digital Forensics Corporation, LLC

98.     Plaintiffs incorporate the above paragraphs by reference, as though fully set forth herein.

99.     Defendants Dr. Guerra and Digital Forensics Corporation violated § 33.02(b-1) (1) of the Texas Penal Code by knowingly accessing the Cantus' computers, computer networks, or computer systems with the intent to defraud or harm the Cantus, or to alter, damage, or delete their property.

100.     Defendants Dr. Guerra and Digital Forensics Corporation, LLC knowingly accessed the Cantus' protected computers, computer networks, and computer systems without effective consent. This knowing access without effective consent includes Defendants phishing Plaintiffs with fraudulent tracking URLs, wiretapping Plaintiffs' home cable internet connection, monitoring their network traffic, and the use of surveillance malware and malicious codes against the Plaintiffs.

101.     Defendants knowingly accessed the Cantus' computers, computer network, and computer systems without effective consent with the intent to alter, damage, or delete the Cantus' property. Defendants' access without effective consent impaired the integrity and availability of the Cantu's data, programs, systems, and information on the Cantu's computers and networks by causing computer crashes, diminished bandwidth, diminished processing time, and the deletion and alteration of data. Defendants caused this damage and loss through their use of phishing, wiretapping, malware, surveillance, and the use of malicious codes against Plaintiffs.

18

102.    As a result of Defendants' conduct, the Cantus suffered loss in expending time, money, and resources aggregating at least $5,000 in value, to investigate the intrusion, assess the damage, and restore their systems to their prior state.

103.    Under § 143.001 of the Texas Civil Practice and Remedies Code, Defendants are civilly liable for their knowing and intentional violation of Texas Penal Code § 33.02(b-1) (1).

### ELEVENTH CAUSE OF ACTION
### ELECTRONIC ACCESS INTERFERENCE
### Tex. Civ. Prac. & Rem. Code § 143.001 & Texas Penal Code § 33.022

**Against Defendants Dr. Sandra Guerra and Digital Forensics Corporation, LLC**

104.    Plaintiffs incorporate the above paragraphs by reference, as though fully set forth herein.

105.    Defendants intentionally interrupted or suspended access to Plaintiffs' computer systems or computer networks without Plaintiffs effective consent in violation of Texas Penal Code § 33.022.

106.    Defendants' electronic access interference interrupted and suspended the availability of the Cantu's data, programs, systems, and information on their computers and networks by causing computer crashes, diminished bandwidth, diminished processing time, and the deletion and alteration of data. Defendants caused this damage and loss through their use of phishing, wiretapping, malware, surveillance, and the use of malicious codes against Plaintiffs.

107.    As a result of Defendants' conduct, the Cantus suffered loss in expending time, money, and resources aggregating at least $5,000 in value, to investigate the intrusion, assess the damage, and restore their systems to their prior state.

108.    Under § 143.001 of the Texas Civil Practice and Remedies Code, Defendants are civilly liable for their knowing and intentional violation of Texas Penal Code § 33.022.

## TWELFTH CAUSE OF ACTION
## INTENTIONAL INTERCEPTION, OR ENDEAVOURING TO USE ANY ELECTRONIC WIRE, ORAL OR ELECTRONIC COMMUNICATIONS
## 18 U.S.C. §§ 2510 *et. seq.*

### Against Defendants Dr. Sandra Guerra and Digital Forensics Corporation, LLC

109.    Plaintiffs incorporate the above paragraphs by reference, as though fully set forth herein.

110.    The Federal Wiretap Act, under 18 U.S.C. § 2511, as amended by the Electronic Communications Privacy Act of 1986, prohibits the intentional interception of the contents of any wire, oral, or electronic communication through the use of a device.

111.    Dr. Guerra and DFC violated 18 U.S.C. §§ 2510 *et seq.* by intentionally using, and endeavoring to use, any electronic, mechanical, or other device, including the installation of a cable line splitter and tracking URLs, to intercept Plaintiffs' wire, oral, or electronic communications.

## THIRTEENTH CAUSE OF ACTION
## MALICIOUS PROSECUTION

### Against Defendants Dr. Sandra Guerra and Digital Forensics Corporation, LLC

112.    Plaintiffs incorporate the above paragraphs by reference, as though fully set forth herein.

113.    Defendant Dr. Guerra filed a false police report against Plaintiff Melody Cantu at the urging of Defendant Digital Forensics Corporation. DFC expressly told Dr. Guerra that in order to obtain a "Phase II" report on Plaintiffs, a police report was required. On the video recording of Dr. Guerra's police report, she can be heard saying that Digital Forensics requires her to file a report in order to proceed further.

114.    This false police report, without probable cause, led to Melody Cantu's arrest and prosecution for harassment.

20

115.    The prosecution against Plaintiff Melody Cantu was resolved in her favor, as the case was dismissed due to the violation of her constitutional right to a speedy trial.

116.    Plaintiff Melody Cantu was innocent.

117.    The proceeding lacked probable cause, as there was no evidence to substantiate Defendant's claim of harassment by Plaintiff Melody Cantu and the prosecutor ignored evidence of Dr. Guerra's prior fraudulent Child Protective Services complaint against the Cantus, which CPS found baseless.

118.    The Defendants acted with malice, Dr. Guerra with jealousy-fueled hatred and Digital Forensics Corporation, LLC for money.

119.    As a result of the malicious prosecution, Plaintiff Melody Cantu suffered loss in paying attorney's fees for representation in the criminal matter.

120.    As a result of the malicious prosecution, Plaintiffs also suffered damage to their reputations and occupations. Despite the dismissal, the arrest turns up on the security background screenings that Melody Cantu's work with USAA requires.

121.    As a result of the malicious prosecution, Plaintiff Melody Cantu suffered emotional harm stemming from her arrest.

## FIFTEENTH CAUSE OF ACTION
## Intentional Infliction of Emotional Distress

### Against Defendants Dr. Sandra Guerra and Digital Forensics Corporation, LLC

122.    Defendants Dr. Guerra and Digital Forensics Corporation acted intentionally or recklessly by engaging in a malicious prosecution of Cantu and the cyberstalking of the Cantus.

123.    The Defendants' relentless cyberstalking and malicious prosecution of Plaintiffs was extreme and outrageous.

124.   The actions of Defendants caused Plaintiffs emotional distress by putting the Cantus in a state of prolonged and sustained fear for their safety and privacy of their family, and themselves, because of the repeated false charges, false investigations, and cyberstalking.

## Prayer for Relief

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and award the following relief against Defendants:

a. An award against Defendants Dr. Guerra and Digital Forensics Corporation, LLC for compensatory damages plus interest and costs;

b. An award against Defendants for consequential damages,

c. That the Court award punitive damages in an amount to be determined at trial;

d. That the Court award Plaintiffs their attorney's fees and expenses;

e. That the Court enter a permanent injunction against Defendants enjoining them from engaging further in the actions complained of; and

f. That the Court award Plaintiffs such other and further relief as is just and proper under the circumstances.

Dated: July 15, 2020                                    Respectfully submitted,

/s/ Tor Ekeland
Tor Ekeland (NY Bar No. 4493631)
*Pro Hac Vice*
Tor Ekeland Law, PLLC
195 Montague Street, 14th Floor
Brooklyn, NY 11201
t:  (718) 737 - 7264
f:  (718) 504 - 5417
tor@torekeland.com

*Attorneys for Plaintiffs Dr. Rodrigo Cantu*
*and Melody Joy Cantu*

22