**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO**

| | |
|---|---|
| MELODY JOY CANTU AND DR. RODRIGO CANTU, | 5:20-CV-0746 JKP – HJB |
| Plaintiffs, | |
| v. | |
| DR. SANDRA GUERRA and DIGITAL FORENSICS CORPORATION, LLC, | |
| Defendants. | |

**Plaintiffs' Opposition to Defendant Digital Forensic Corporation, LLC's Motion to Dismiss the First Amended Complaint**

# Table of Contents

Introduction ............................................................................................................................. 1

Facts ....................................................................................................................................... 2

Legal Standard ....................................................................................................................... 4

Argument ............................................................................................................................... 5

I.    The Complaint Plausibly Alleges CFAA Loss ............................................................. 6

II.   All the Counts Are Within the Statute of Limitations .................................................. 8

    A.    The CFAA Counts Are Within the Statute of Limitations ..................................... 8

    B.    The Texas Computer Law Counts Are Within the Statute of Limitations ............. 9

    C.    The Federal Wire Tap Claims are Within the Statute of Limitations ................... 10

    D.    The Malicious Prosecution Claim is Within the Statute of Limitations ............... 10

    E.    The IIED Claim is Within the Statute of Limitations ........................................... 11

III.  The Complaint Plausibly Names Digital Forensics Corp. as a Defendant ........... 11

Conclusion ........................................................................................................................... 12

Certificate of Service ........................................................................................................... 14

## Table of Authorities

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 663 (2009) .................................................................................. 4

*Barnstormers, Inc. v. Wing Walkers, LLC*, No. EP-10-CV-261-KC, 2011 U.S. Dist. LEXIS 47143 (W.D. Tex. May 3, 2011) ................................................................................ 7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................... 4

*Genesco Sports Enter. v. White*, No. 3:11-CV-1345-N (BF), 2011 U.S. Dist. LEXIS 147599 (N.D. Tex. Oct. 27, 2011) ................................................................................ 7

*Hays v. Hall*, 488 S.W.2d 412 (Tex.1972) .............................................................................. 11

*Jones v. Alcoa,* 339 F.3d 359 (5th Cir. 2003) ......................................................................... 8

*Krys v. Pigott*, 749 F.3d 117 (2d Cir. 2014) ..................................................................... 4, 12

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383 (5th Cir. 2010) .................... 5

*McGucken v. Displate Corp.*, No. A-19-CV-00042-LY, 2019 U.S. Dist. LEXIS 140721 (W.D. Tex. Aug. 20, 2019) ................................................................................................ 5

*Meats by Linz, Inc. v. Dear*, No. 3:10-CV-1511-D, 2011 U.S. Dist. LEXIS 42800 (N.D. Tex. Apr. 20, 2011) .............................................................................................................. 7

*Motio, Inc. v. BSP Software LLC*, Civil Action No. 3:16-cv-00331-O, 2016 U.S. Dist. LEXIS 193379 (N.D. Tex. May 27, 2016) ............................................................................... 7

*Palin v. N.Y. Times Co.*, 940 F.3d 804 (2d Cir. 2019) ............................................................. 5

*Rajaee v. Design Tech Homes, Ltd.*, No. H-13-2517, 2014 U.S. Dist. LEXIS 159180 (S.D. Tex. Nov. 11, 2014) .............................................................................................................. 7

*SKF USA, Inc. v. Bjerkness*, 636 F. Supp. 2d 696 (N.D. Ill. 2009) ............................................ 6

*Sw. Airlines Co. v. Farechase, Inc.*, 318 F. Supp. 2d 435 (N.D. Tex. 2004) ............................... 7

*Talon Transaction Techs., Inc. v. Stoneeagle Servs., Inc.*, No. 3:13-cv-00902-P, 2013 U.S. Dist. LEXIS 201725 (N.D. Tex. Aug. 15, 2013) ............................................................. 7

*Weaver v. Witt*, 561 S.W.2d 792 (Tex. 1977) ........................................................................ 11

**Statutes**

18 U.S.C. § 1030(c)(4)(A)(i) ................................................................................................... 6

18 U.S.C. § 1030(e)(11) ........................................................................................................... 6

18 U.S.C. § 1030(g) ................................................................................................................. 8

18 U.S.C. 2520(e) ................................................................................................................... 10

Tex. Civ. Prac. & Rem. Code §16.002 .................................................................................... 10

Texas Civil Practice & Remedies Code § 143.001(b) ............................................................. 9

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................................ 4

Fed. R. Civ. P. 8(a)(1)-(3) ........................................................................................................ 4

## Introduction

This Court should deny Defendant Digital Forensics Corporation, LLC's ("DFC") bare bones Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) because it's conclusory and cites no case law. When all reasonable inferences are made and all the facts viewed in Plaintiffs' favor, Plaintiffs' First Amended Complaint pleads plausible facts that support as a matter of law that:

1. DFC caused at least $5,000 in Computer Fraud and Abuse Act loss, including the costs of hiring computer forensics companies Exhibit A Computer Forensics Investigations ("EACFI") and Kip & Associates to investigate and mitigate Defendants' unauthorized access of, and damage to, Plaintiffs' computers; computer hardware replacement costs for compromised computer hardware; and consequential damages from lost work time resulting from the computer intrusion.

2. The counts as pleaded are all within the relevant statute of limitations and therefore the affirmative defense of the Statute of Limitations is inappropriate for this Motion to Dismiss;

3. The Complaint properly pleads plausible facts that DFC committed the illegal acts complained of, and its factual defense that they were committed by another party is inappropriate for a Motion to Dismiss.

This Court should deny DFC's Motion to Dismiss.

**Facts**

As pleaded in Plaintiffs' First Amended Complaint, on or about May 16, 2018, Co-Defendant Dr. Sandra Guerra hired Defendant Digital Forensics Corporation, LLC to hack, surveil, and damage Plaintiffs' computers and computer networks. In June of 2018, the Cantus started experiencing problems with their internet connection at home, despite having purchased ample bandwidth from their cable and internet provider. They repeatedly experienced bandwidth issues with their iPads, Smart TVs, and other devices their family of two adults and three children use daily. Their NEST home security camera network crashed, and they had similar problems with their computer networked thermostat and other networked household devices.[1] At the time they were unaware that this was the result of Defendants' actions.

On August 22, 2018, DFC completed Phase I of its surveillance, phishing, and hacking of Plaintiffs and gave co-defendant Dr. Guerra a report bearing its company name.[2] The Phase I report documents DFC's illegal phishing of Plaintiffs. And, as stated in the facts of the First Amended Complaint "The Phase I report states: "[I]f the client is interested in proceeding to Phase II, the client needs to file a police report." A sample police report was included with the Phase I report."[3] The existence of this report directly implicates DFC in the hacking, surveillance, phishing, and eventual malicious prosecution of Plaintiff Melody Joy Cantu.

On September 4, 2018, Dr. Guerra filed the false police report against Plaintiff Melody Cantu at the urging of Defendant DFC. On the video recording of Dr. Guerra's police report, she

---

[1] (First Am. Compl. at ¶ 31 (Dkt. No. 6).
[2] (*Id.* at ¶ 36). On October 16, 2019, DFC's Phase I report was produced to undersigned counsel by Co- Defendant Dr. Sandra Guerra's counsel.
[3] (*Id.* at ¶ 36).

2

can be heard saying that Digital Forensics requires her to file a report in order to proceed further.[4] This false police report led to Melody Cantu's arrest and prosecution for harassment. On June 24, 2019, the prosecution against Plaintiff Melody Cantu was resolved in her favor, as the case was dismissed due to the violation of her constitutional right to a speedy trial. Plaintiff Melody Cantu was innocent and the proceeding lacked probable cause, as there was no evidence to substantiate Defendant's claim of harassment.[5]

As alleged in the First Amended Complaint, Defendants' unauthorized computer intrusions and damage to Plaintiffs computer systems necessitated the hiring of computer forensic firms to investigate and mitigate. Specifically, On January 3, 2019, the Cantus hired two computer forensics companies, Exhibit A Computer Forensics Investigations ("EACFI") and Kip & Associates.[6] The Cantus paid EACFI a $5,000 non-refundable retainer.[7] EACFI's investigation concluded that Digital Forensics Corporation was targeting Melody Cantu on behalf of co-defendant Dr. Guerra.[8] Kip & Associates reiterated EACFI's report, stating that the Cantus were victims of targeted electronic and digital attacks, beginning in 2018, including phishing emails, text messages, sham retail websites, credit card fraud attempts, and identity theft attempts.[9] As a result of this cyberthreat environment, the Cantus invested more money in investigative, corrective, and protective measures.[10] This included computer and network forensic analysis, device forensic analysis, network monitoring, consultation services, a dark web

---

[4] (*Id.* at ¶ 113).
[5] (*Id.* at ¶¶¶ 2, 53, 115-117).
[6] (*Id.* at ¶ 47).
[7] (*Id.*).
[8] (*Id.* at ¶ 48.
[9] (*Id*. at ¶ 49).
[10] (*Id*. at ¶ 50).

3

scan, data and device storage for data and devices.[11] The Cantus replaced their router, at the cost of $660, since they feared there was malware on their old router.[12] Starting February 1, 2020, the Cantus paid CDR Business IT Solutions, LLC $108.24 a month for network monitoring of their new router.[13] The computer forensic investigation also required the Cantus to turn over many of their electronic devices, work and personal, for analysis, interrupting their use of them.[14] This necessitated the purchase of replacements.[15] Melody Cantu also took time off from work to handle the numerous service calls to Spectrum/Charter to try and resolve the network service interruptions.[16] All these costs aggregate to over $5,000 in loss sustained by the Cantus in 2019.[17]

## Legal Standard

Under Federal Rule of Civil Procedure 8, a pleading only requires short and plain statements of: "the court's jurisdiction; claims to which the pleader is entitled to relief; and a demand for relief sought."[18] Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."[19]

In deciding a motion to dismiss under 12(b)(6), Plaintiffs' allegations are accepted as true, and all reasonable inferences must be drawn in Plaintiffs' favor.[20] A court should deny a

---

[11] (*Id.*).
[12] (*Id.* at ¶ 51).
[13] (*Id.*).
[14] (*Id.*).
[15] (*Id.*).
[16] (*Id.*).
[17] (*Id.* at ¶ 52).
[18] Fed. R. Civ. P. 8(a)(1)-(3).
[19] Fed. R. Civ. P. 12(b)(6).
[20] *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014).

Motion to Dismiss if a complaint states "enough facts to state a claim to relief that is plausible on its face."[21] This means the complaint pleads facially plausible facts "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[22] The complaint's facial plausibility is the standard, and "not whether it is less plausible than an alternative explanation."[23] Accordingly, a "court's review is limited to the complaint, documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim referenced by the complaint."[24]

## Argument

Defendant cites no case law supporting its arguments that Plaintiffs have inadequately pleaded CFAA loss, that they are barred by the affirmative defense of statute of limitations, and to substantiate the claim that Plaintiffs have named the wrong Defendant. The Court should deny DFC's bare bones Motion to Dismiss that ignores the case law.

First, Courts routinely recognize the types of CFAA loss Plaintiffs pleaded as cognizable CFAA loss.

Second, because the Complaint facially pleads dates that place its counts within the relevant statute of limitations the affirmative defense of statute of limitations is inappropriate at the Motion to Dismiss stage. Because a statute of limitations defense is an affirmative defense, DFC bears the burden of proof on this point.

---

[21] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
[22] *Ashcroft v. Iqbal*, 556 U.S. 663, 678 (2009).
[23] *Palin v. N.Y. Times Co.*, 940 F.3d 804, 815 (2d Cir. 2019) (reversing dismissal of defamation complaint because District Court erred in holding the claims weren't plausible).
[24] *McGucken v. Displate Corp.*, No. A-19-CV-00042-LY, 2019 U.S. Dist. LEXIS 140721, at *4 (W.D. Tex. Aug. 20, 2019) (citing *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

Third, the Complaint adequately pleads plausible facts that support the counts against DFC, including their Phase I Report given to Co-Defendant Dr. Guerra with DFC's name on it. In essence, DFC is trying to argue facts on a Motion to Dismiss because it can cite no law to support its motion. This Court should deny DFC's Motion to Dismiss.

I.   **The Complaint Plausibly Alleges CFAA Loss**

The First Amended Complaint particularly alleges at least $5,000 in loss within a year. Counts 1-8 of the Complaint accuse Defendants of violating, or conspiring to violate, the Computer Fraud and Abuse Act, 18 U.S.C. §1030(a)(2)(C) and § 1030(a)(5)(A) by gaining unauthorized access, and committing unauthorized damage, to Plaintiffs' computers. In order to bring a civil CFAA claim, Plaintiff must allege at least $5,000 in loss within a year.[25] The CFAA defines "loss" (which defendants mistakenly call "damages," a term with a different meaning under the CFAA) as

> any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.[26]

This does not include economic harm unrelated to the intrusion or damage to the computer system.[27] The Plaintiffs have plausibly pleaded that the Defendants' unauthorized intrusion and damage to their computers cost them at least $5,000 in computer forensic

---

[25] 18 U.S.C. § 1030(c)(4)(A)(i)(I)(requiring at least $5,000 in loss to bring a civil CFAA claim).
[26] 18 U.S.C. § 1030(e)(11).
[27] *SKF USA, Inc. v. Bjerkness*, 636 F. Supp. 2d 696, 721 (N.D. Ill. 2009).

6

investigation, mitigation and related costs.[28] Courts routinely recognize the type of loss pleaded by Plaintiffs as cognizable CFAA loss - the costs incurred as a result of investigating and remedying a computer intrusion, and the consequential losses incurred because of the interruption in service.[29]

As detailed above in the fact section, among other things, the First Amended Complaint alleges that on January 3, 2019, the Plaintiffs hired two computer forensic companies to investigate defendants' computer intrusions, and that they paid one of them "Exhibit A Computer Forensics Investigations" a $5,000 non-refundable retainer to investigate.[30] The First Amended Complaint further alleges that the Cantus were forced to spend money on "network forensic analysis, device forensic analysis, network monitoring, consultation services, a dark web scan, and data and device storage" for potentially compromised computers.[31] Finally, the First Amended Complaint pleads that Melody Cantu was forced to take time off from work to deal with the intrusions and disruption to their computer service, costing them wages.[32] These are all plausibly pleaded facts that Courts recognize as CFAA loss. This Court should deny Defendant DFC's Motion to Dismiss the CFAA counts.

---

[28] (First Am. Compl. at ¶¶ 47-52)(Dkt. No. 6).
[29] *See Motio, Inc. v. BSP Software LLC*, Civil Action No. 3:16-cv-00331-O, 2016 U.S. Dist. LEXIS 193379, at *47-48 (N.D. Tex. May 27, 2016); *Rajaee v. Design Tech Homes, Ltd.*, No. H-13-2517, 2014 U.S. Dist. LEXIS 159180, at *9 (S.D. Tex. Nov. 11, 2014) (collecting cases on CFAA loss); *Talon Transaction Techs., Inc. v. Stoneeagle Servs., Inc.*, No. 3:13-cv-00902-P, 2013 U.S. Dist. LEXIS 201725, at *9 (N.D. Tex. Aug. 15, 2013); *Genesco Sports Enter. v. White*, No. 3:11-CV-1345-N (BF), 2011 U.S. Dist. LEXIS 147599, at *10 (N.D. Tex. Oct. 27, 2011); *Barnstormers, Inc. v. Wing Walkers, LLC*, No. EP-10-CV-261-KC, 2011 U.S. Dist. LEXIS 47143, at *29 (W.D. Tex. May 3, 2011); *Meats by Linz, Inc. v. Dear*, No. 3:10-CV-1511-D, 2011 U.S. Dist. LEXIS 42800, at *9 (N.D. Tex. Apr. 20, 2011); *Sw. Airlines Co. v. Farechase, Inc.*, 318 F. Supp. 2d 435, 439 (N.D. Tex. 2004).
[30] (First Am. Compl. at ¶ 47.)(Dkt. No. 6).
[31] *Id.* at ¶ 50.
[32] (First Am. Compl. at ¶ 51)(Dkt. No. 6).

## II.     All the Counts Are Within the Statute of Limitations

This Court should deny DFC's motion to dismiss based on statutes of limitations because the First Amended Complaint facially pleads facts that place the alleged conduct within the relevant statute of limitations. A statute of limitations defense is generally an affirmative defense unless the violation is clear from the face of the complaint.[33] Facially, all of Plaintiffs' counts are within the relevant statute of limitations.

### A.     The CFAA Counts Are Within the Statute of Limitations

On June 24, 2020 Plaintiff filed their Complaint in this action naming DFC.[34] The First Amended Complaint pleads plausible facts documenting Defendants' computer intrusions and damages beginning in May 2018 and continuing through August 22, 2018, the date of DFC's Phase 1 Report, and terminating at a presently unknown date. The Statute of Limitations for civil CFAA claims is two years from discovery of the computer intrusion or damage.[35] When Plaintiffs first started noticing problems with their computers in June 2018, they didn't know the cause. Defendants computer intrusion and damage continued past June 2018, placing them within the CFAA's two-year statute of limitation for civil claims. And it wasn't until October 16, 2019, when Co-Defendant Dr. Guerra's counsel produced Digital Forensics Phase I Report to undersigned counsel, that Plaintiffs learned definitively of DFC's action against them; including

---

[33] *Jones v. Alcoa,* 339 F.3d 359, 366 (5th Cir. 2003); Fed. R. Civ. P. 8(c)(1) (listing statute of limitations as an affirmative defense).
[34] (Compl.)(Dkt. No. 1)
[35] 18 U.S.C. § 1030(g) ("[N]o action may be brought under this subsection unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage.").

8

direct evidence of its phishing of Plaintiffs with fraudulent links in violation of Texas law.[36] Furthermore, it wasn't until January 2019 that Plaintiffs hired computer forensic companies that confirmed their suspicions they'd been hacked, but without definitive proof of by whom. On June 24, 2020 Plaintiff filed their Complaint in this action naming DFC.[37] This is within two years of the actions complained of, and well within two years of its discovery.

      **B.      The Texas Computer Law Counts Are Within the Statute of Limitations**

DFC fails in its statute of limitation argument with the Texas Computer Law Counts (Counts 9-11) for the same reasons its statute of limitations arguments fail on the CFAA front.[38] Plaintiffs are within the two year statute of limitations under the Texas Civil Practice & Remedies Code § 143.001, as well as being within the statute's "discovery" provision:

> A person must bring suit for damages under this section before the earlier of the fifth anniversary of the date of the last act in the course of the conduct constituting a violation under Chapter 33, Penal Code, or the second anniversary of the date the claimant first discovered or had reasonable opportunity to discover the violation.[39]

The Cantus only had a reasonable opportunity to find out about DFC's hacking and surveillance after months of investigation starting during the summer of 2018.[40] The Court should deny DFC's Motion to Dismiss the Texas Computer law claim based on the statute of limitations.

---

[36] (First Am. Compl. ¶ 37)(Dkt. No. 6). On October 16, 2019, DFC's Phase I report was produced to undersigned counsel by Co- Defendant Dr. Sandra Guerra's counsel.
[37] (Compl.)(Dkt. No.1).
[38] (First Am. Compl. at ¶¶ 93- 108)(Dkt. No. 6).
[39] Texas Civil Practice & Remedies Code § 143.001(b)
[40] *See* above, "Facts" section.

### C. The Federal Wire Tap Claims are Within the Statute of Limitations

DFC's ongoing actions against Plaintiffs in the second half of 2018 are well within the Wire Tap Acts two year statute of limitations, as well as within its "discovery" provisions.[41] DFC alleges they are not liable DFC claims they're not liable under 18 USC 2520 *et seq.* for intentionally using, and endeavoring to use, any electronic, mechanical, or other device, including the installation of a cable line splitter and tracking URLs, to intercept Plaintiffs' wire, oral, or electronic communications. As alleged in the First Amended Complaint, Plaintiffs did not discover DFC's cable splitter wiretap on their cable line until September 21, 2018.[42] This alone places DFC's actions well within the two-year statute of limitations under the Wire Tap Act. The Court should deny DFC's Motion to Dismiss the Wire Tap claims based on the statute of limitations.

### D. The Malicious Prosecution Claim is Within the Statute of Limitations

As stated in the First Amended Complaint Defendant DFC acted with malice against Plaintiff Mrs. Cantu in order to acquire additional money from Co- Defendant Dr. Sandra Guerra.[43] DFC's Phase I report encouraged Dr. Guerra to file a police report in order to gain access to DFC's Phase II report.[44] DFC argues that Plaintiffs' Malicious Prosecution count is not within the one year statute of limitations.[45] But the statute of limitations begins to run on

---

[41] *See* 18 USC 2520(e) (stating an action under it may commenced within two years after the date upon which claimant first has a reasonable opportunity to discover the violation).
[42] (First Am. Compl. at ¶¶ 41- 42))(Dkt. No. 6).
[43] *Id.* at ¶¶ 5, 9.
[44] *Id.* at ¶¶¶ 5, 36, 40.
[45] Tex. Civ. Prac. & Rem. Code §16.002.

termination of the underlying prosecution.[46] On June 24, 2019, all charges against Melody Cantu were dismissed on speedy trial grounds.[47] As Melody Cantu's case was dismissed on June 24, 2019, and we filed our Complaint on June 24, 2020, it is within one year of the favorable termination of Defendants' malicious prosecution.[48] The Court should deny DFC's Motion to Dismiss the Malicious Prosecution claim based on the statute of limitations.

### E. The IIED Claim is Within the Statute of Limitations

Plaintiffs' claim of intentional infliction of emotional distress is within the two-year statute of limitations as pleaded. Moreover, the statute of limitations is tolled until the time that the plaintiff discovers, or through the exercise of reasonable care and diligence should discover, the nature of his injury.[49] The Cantus experienced a state of emotional distress due to prolonged and sustained fear for their safety and privacy of their family and themselves, because of Defendants hacking, surveillance, phishing, and malicious prosecution. And as pleaded in the First Amended Complaint, this occurred within two years of the filing of the Complaint. The Court should deny DFC's Motion to Dismiss the IIED claim based on the statute of limitations.

### III. The Complaint Plausibly Names Digital Forensics Corp. as a Defendant

DFC factually argues they did not have a contract with Co-Defendant Dr. Sandra Guerra and prepared the Phase I report given to her with DFC's name on it for an entity Plaintiffs have

---

[46] *Id.*
[47] (First Am. Compl. ¶¶ 2, 53)(Dkt. No. 6).
[48] (Compl.)(Dkt. No. 1).
[49] *Weaver v. Witt*, 561 S.W.2d 792, 794 (Tex. 1977) citing *Hays v. Hall*, 488 S.W.2d 412 (Tex.1972).

never heard of called 1ST All File.[50] This is a factual argument inappropriate for a Motion to Dismiss.[51] Moreover, 1ST All File is not once mentioned in the Phase I report conducted by DFC which lists co-defendant Dr. Guerra as a client.[52] Additionally, Dr. Guerra states in her Counterclaims that she retained Digital Forensics Corporation, LLC.[53]

## Conclusion

The Court should deny Defendant's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) because the First Amended Complaint plausibly and sufficiently pleads its causes of action as a matter of law. Defendants nowhere plead that anything about Plaintiffs' Amended Complaint is implausible, rather they argue the claims are legally insufficient while failing to cite any case law. This Court should deny Defendants Motion to Dismiss. In the alternative, it should dismiss without prejudice with leave to replead.

---

[50] (DFC Mot. to Dismiss at ¶ 6)(Dkt. No. 16).
[51] *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014).
[52] On October 16, 2019, DFC's Phase I report was produced to undersigned counsel by co- defendant Dr. Sandra Guerra's counsel.
[53] (Dr. Sandra Guerra's Countercl. at ¶ 4).)(Dkt. No. 14).

Dated: October 21, 2020

Respectfully submitted,

/s/ Tor Ekeland

Tor Ekeland (NY Bar No. 4493631)
*Pro Hac Vice*
Tor Ekeland Law, PLLC
30 Wall Street, 8th Floor
New York, NY
t:  (718) 737 - 7264
f:  (718) 504 - 5417
tor@torekeland.com

and

/s/ Rain Levy Minns

Rain Minns
State Bar No. 24034581
William N. Woodson, III
State Bar No. 24110551
Minns Law Firm, P.C.
d/b/a Rain Minns Law Firm
4412 Spicewood Springs Rd., Suite 500
Austin, Texas 78759-8583
Tel.: 512-372-3222
Fax: 512-861-2403
rain@rainminnslaw.com
bill@rainminnslaw.com

*Counsel for Plaintiffs Melody Joy Cantu and Dr. Rodrigo Cantu*

**Certificate of Service**

I certify that on this 21st of October, 2020, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the parties on record.

/s/ Tor Ekeland