IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **MELODY JOY CANTU and** | § | |
| **DR. RODRIGO CANTU,** | § | |
| *Plaintiffs* | § | |
| | § | |
| | § | **CASE NO.: 5:20-CV-00746-JKP (HJB)** |
| | § | |
| V. | § | |
| | § | |
| **DR. SANDRA GUERRA and** | § | |
| **DIGITAL FORENSICS** | § | |
| **CORPORATION, LLC** | § | |
| *Defendants* | § | |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION TO DISMISS
DEFENDANT DR. SANDRA GUERRA'S COUNTERCLAIMS**

NOW COMES, Defendant, DR. SANDRA GUERRA (herein "Defendant," "Counter-Plaintiff" and "Dr. Guerra"), and files this her Response to Plaintiffs' Motion to Dismiss Defendant Dr. Sandra Guerra's Counterclaims (Doc. No. 21) (the "Motion to Dismiss"), and in support thereof, respectfully shows unto the Court as follows:

**I.
SUMMARY OF ARGUMENT**

1.      Plaintiffs/Counter-Defendants, Melody Joy Cantu ("Melody") and Dr. Rodrigo Cantu ("Dr. Cantu") (collectively, the "Plaintiffs" and "Counter-Defendants"), filed suit against Dr. Guerra asserting fourteen causes of action related to an underlying family dispute and state civil court custody case.  Plaintiffs' allegations against Dr. Guerra include, without limitation, claims for violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C) ("CFAA");

violation of the Texas Harmful Access by Computer Act ("HACA"), malicious prosecution, and intentional infliction of emotional distress.[1]

2.      In response to the complaint filed by Plaintiffs, Dr. Guerra filed her Original Answer and Counterclaim (Doc. No. 14) (the "Original Counterclaim") asserting claims against Counter-Defendants for (i) violation of the CFAA, (ii) violation of the HACA, (iii) intentional infliction of emotional distress, (iv) stalking and harassing behavior, (v) defamation, and (vi) abuse of process (i, ii, and iii being the same claims asserted by Counter-Defendants against Dr. Guerra).[2]

3.      Counter-Defendants filed their Motion to Dismiss seeking to dismiss all of Dr. Guerra's counterclaims against them under Rule 12(b)(6) for allegedly failing to state a claim upon which relief can be granted.  However, under any reading of the applicable standard for providing fair notice of the claims and sufficient factual allegations to show that the right to relief is plausible, Dr. Guerra has satisfied (an even exceeded) her pleading obligations in her Original Counterclaim and/or in her Amended Answer, Affirmative Defenses, and First Amended Counterclaim (Doc. No. ____) (the "Amended Counterclaim"), a copy of which is filed with Dr. Guerra's Motion for Leave to file Amended Answer, Affirmative Defenses, and First Amended Counterclaim (Doc. No. ___) filed on November 27, 2020 concurrently with this Response.

4.      Accordingly, Dr. Guerra's counterclaims should survive and Counter-Defendants Motion to Dismiss must be denied in its entirety.

## II.
## MOTION TO DISMISS STANDARD

5.      A motion under Rule 12(b)(6) merely tests the legal sufficiency of a complaint, requiring a court to construe the complaint liberally, assume all facts as true, and draw all

---

[1] *See* Plaintiffs' First Amended Complaint (Doc. No. 6) (the "Complaint"), ¶¶ 54-124.
[2] *See* Doc. No. 14, Counterclaim, ¶¶ 28-47

reasonable inferences in favor of the (counter)plaintiff.[3]  If the complaint provides fair notice of

the claim and the factual allegations are sufficient to show that the right to relief is plausible, a

court should deny the (counter)defendant's motion.[4]  A complaint should never be dismissed

because the court is doubtful that the (counter)plaintiff will be able to prove all of the factual

allegations contained therein.[5]

6.      However, Counter-Defendants appear to conflate the Rule 12(b)(6) "plausibility"

pleading standard with the heightened standard of review required to survive a motion for

summary or to prevail at trial.  Defendant/Counter-Plaintiff is not required at this stage of litigation

to actually prove all elements of her counterclaims or establish that there are no genuine disputes

of material fact.  Rather,  Defendant/Counter-Plaintiff is simply required to set forth factual

allegations of each element of her counterclaims, which at this stage must be accepted as true, in

order to survive a motion to dismiss.

7.      Plaintiffs/Counter-Defendants complain in their Motion to Dismiss that Dr. Guerra

only made "general allegations" and failed to "plead plausible facts" in her Original Counterclaim

yet they repeatedly cite to specific factual allegations contained in the Original Counterclaim,

which in and of itself is proof of Dr. Guerra's compliance with her obligation to provide fair notice

of the claim and sufficiently show that the right to relief is plausible.[6]  If Plaintiffs/Counter-

---

[3] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007); *see also Barker v. Riverside Cty. Off. of Educ.,* 584 F.3d 821, 824 (9th Cir. 2009) (When considering a defendant's motion to dismiss, a court must construe the factual allegations in the complaint in the light most favorable to [counter]plaintiff.)

[4] *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 555-56; *Woods v. City of Greensboro*, 855 F.3d 639, 652-53 & n.9 (4th Cir. 2017); *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

[5] *Twombly*, 550 U.S. at 556-57.

[6] *See e.g.* Motion to Dismiss, p. 2 and p.10 (Plaintiffs/Counter-Defendants argue that "Dr. Guerra fails to plead plausible facts that constitute extreme and outrageous conduct necessary to sustain a claim for Intentional Infliction of Emotional Distress," but then cites to the specific factual

Defendants believe the clarity of the Counterclaim was deficient, they could have moved for a more definite statement of the pleading under Rule 12(e).  They did not.  Instead, they seemingly take issue with specific facts *actually* alleged (i.e. the likelihood of Dr. Guerra actually prevailing on such claims) and, in doing so, implicitly (if not expressly) concede that the counterclaims are in fact sufficiently clear and detailed enough to put Counter-Defendants on fair notice of such claims and enable Counter-Defendants to defend themselves against such claims.

8.      Additionally, and/or alternatively, if leave to file is granted, the Amended Counterclaim contains such additional factual allegations necessary to coherently address and resolve the pleading deficiencies alleged in Counter-Defendants' Motion to Dismiss.

### III.
### ARGUMENT AND AUTHORITIES

#### A.      COUNT ONE – VIOLATION OF THE CFAA

##### i.      *Count One Sufficiently Pleads CFAA Loss in Excess of $5,000.00.*

9.      Counter-Defendants argue that Dr. Guerra's counterclaim should be dismissed based upon the allegation that there is "no connection between the alleged computer intrusion [by Counter-Defendants] and the CFAA loss that reasonably establishes a connection between the intrusion and the loss as a matter of law."[7]  Yet, Counter-Defendants in the very next sentence cite to Dr. Guerra's very specific factual allegation that she was required to hire Digital Forensics

---

allegations made by Dr. Guerra regarding Plaintiffs/Counter-Defendants creating false accounts for Dr. Guerra on STD dating websites, attempting to hack into her email and Verizon accounts, and verbally harassing Dr. Guerra and her daughters which caused her to suffer post-traumatic stress disorder; p. 4 (Plaintiffs/Counter-Defendants claim that Dr. Guerra only made "general allegations" establishing a connection between computer intrusion and loss but then cites to Dr. Guerra's specific allegation that she believed it necessary to hire Digital Forensics Corporation, LLC).
[7] Motion to Dismiss, p. 4.

Corporation, LLC to investigate[8] why, among other things, Dr. Guerra was receiving notices from

Verizon Wireless that someone was attempting to access her account online and why Dr. Guerra

was receiving inappropriate email messages from strangers as a result of fake accounts set up in

her name on dating websites for persons with HIV and other sexually transmitted diseases.

10.     Moreover, Dr. Guerra specifically pleads in ¶ 32 of the Original Counterclaim that,

"[a]s a result of the Cantus' conduct, Dr. Guerra suffered loss in expending time, money, and

resources aggregating at least $5,000 in value, to investigation [sic] the intrusion of the iPad and

other computers potentially intruded upon, assess the damage, and attempt to restore security to

her various intruded-upon systems."

11.     Furthermore, in an effort to further provide Counter-Defendants with fair notice of

Dr. Guerra's specific factual allegations, Dr. Guerra further elaborates in ¶ 37 of the Amended

Counterclaim that the losses she incurred as a direct result of Counter-Defendants' violation of the

CFAA included, without limitation, time she had to take off from work to address and resolve the

damage caused by Counter-Defendants.  In fact, Melody claims in her Complaint of similar

monetary losses for time she allegedly took off from work to "handle" service calls and "resolve

network service interruptions."[9]

12.     Dr. Guerra, like Counter-Defendants, has properly pleaded sufficient factual

allegations to give fair notice to Counter-Defendants of her claim for violation of the CFAA. The

claim, as pleaded, is sufficient to show that the right to relief is *plausible*.  Whether or not there

exists genuine disputes of material fact as to the amount of Dr. Guerra's damages or whether or

not Dr. Guerra can ultimately prove at trial that there is in fact a direct connection between the

---

[8] *Id*.
[9] Complaint, § 51.

Counter-Defendants' computer intrusion and the loss she sustained is not the standard by which

Dr. Guerra's counterclaim should scrutinized at this point in the litigation.  Therefore, Dr. Guerra's

claim against Counter-Defendants for violation of the CFAA should not be dismissed on the

pleading deficiency grounds alleged by Counter-Defendants.

### ii. *Counter-Defendants Unlawfully Accessed Dr. Guerra's iPad for Illegitimate Reasons.*

13.     As alleged in ¶ 24 of Original Counterclaim, and further clarified in the Amended

Counterclaim,[10] the iPad that was unlawfully accessed by Counter-Defendants was purchased and

owned by Dr. Guerra, but she permitted her daughter to use it.

14.     Dr. Guerra does not dispute the general concept that a parent of a minor child has a

right to monitor his/her minor child's electronic communications.  However, Melody, has no

parental rights with respect to Dr. Guerra and Dr. Cantu's minor child and, therefore, had no right

or authority whatsoever to access the iPad for any reason.  Moreover, Dr. Guerra submits that

Counter-Defendants' accessed the subject iPad and Dr. Guerra's personal communications and

account information thereon by deception under false pretenses and for the nefarious purpose of

accessing Dr. Guerra's personal and private accounts, information, and documents without

permission for the purposes of harassment, which Counter-Defendants carried out.  The iPad and

the information thereon were not obtained by Dr. Cantu as a parent monitoring his minor child's

electronic communications, as Counter-Defendants suggest to this honorable Court, but rather it

was done in his capacity as an ex-spouse in connection with his and Melody's bitterly motivated

attacks upon Dr. Guerra.  Dr. Guerra had been made to believe that the iPad had been "lost" during

the time that Dr. Guerra and/or Melody were accessing the iPad, which eviscerates any plausible

---

[10] Amended Counterclaim, ¶ 28, 35.

argument by Counter-Defendants that they were merely monitoring Dr. Guerra and Dr. Cantu's daughter's activity online and instead establishes that Counter-Defendants were concealing the iPad from Dr. Guerra and her daughter while continuing to access the content on the device.

### iii. *The "Protected Computers" at Issue were Owned By Dr. Guerra.*

15.     Counter-Defendants argue that Dr. Guerra lacks standing to sue for violation of the CFAA because the "Verizon computers allegedly accessed are not Dr. Guerra's but Verizon's…"[11] However, the iPad that was unlawfully accessed by Counter-Defendants was purchased and owned by Dr. Guerra and she claimed an ownership interest in her accounts with Verizon.  Nowhere in the Original Counterclaim does Dr. Guerra assert or allege that any of the "protected computers" were *owned* by Verizon.  Accordingly, Counter-Defendants' argument that Dr. Guerra lacks standing does not appear to apply to Dr. Guerra's counterclaims.

### B.     COUNT TWO – VIOLATION OF THE HACA.

### i.   *Count Two Sufficiently Pleads an Injury Under HACA.*

16.     Contrary to Counter-Defendants' allegation, Dr. Guerra's Counterclaim does not require Counter-Defendants to "assume" anything with respect to her claims for violation of the HACA.  The factual allegations regarding Counter-Defendants' unlawful access to Dr. Guerra's iPad, computer network, and computer system are specifically set forth in ¶¶ 18, 20, 23, 24, 26, and 34.  Tellingly, Counter-Defendants have not denied any of these allegations but instead seek exoneration by claiming their alleged hacks were "unsuccessful."  To be clear, Dr. Guerra did not shut down her online account "out an abundance of caution" as alleged in Counter-Defendants'

---

[11] Motion to Dismiss, p. 5.

Motion to Dismiss.[12] She was forced to do so because of Counter-Defendants' repeated attempts over several weeks to unlawfully access her online accounts.[13]

17.     In an effort to provide further fair notice to Counter-Defendants, Dr. Guerra further pleads specific factual allegations in ¶¶ 21, 25, 27, 28, 30, and 31 of the Amended Counterclaim that show the right to relief is plausible regarding her claim against Counter-Defendants for violation of the HACA.

### ii. Counter-Defendants' Unlawfully Accessed Dr. Guerra's iPad for Illegitimate Reasons.

18.     For the reasons set forth supra in ¶¶ 13-14, Dr. Cantu did not have effective consent to access the iPad owned by Dr. Guerra that she let her and Dr. Cantu's minor child use.  Melody has no parental rights with respect to Dr. Guerra and Dr. Cantu's minor child and, therefore, had no right or authority whatsoever to access the iPad for any reason.

### C.     COUNT THREE – STALKING AND HARASSING.

### i.     Dr. Guerra Specifically Alleges in her Amended Counterclaim that Melody Threatened Physical Injury or Offense.

19.     Dr. Guerra specifically details in her Original Counterclaim the systematic campaign by Melody to harass to Dr. Guerra which led Dr. Guerra to file a police report and fear for her and her daughters' safety.[14]  As alleged in her Original Counterclaim, Dr. Guerra's fear of Melody was such that she had to hire security.[15]

20.     Alternatively, and/or additionally, if leave to file is granted, the Amended Counterclaim contains such additional factual allegations necessary to fully address and resolve

---

[12] Motion to Dismiss, p. 6.
[13] Original Counterclaim, ¶18.
[14] *Id.* ¶¶ 15, 16, 17, 19-27.
[15] *Id.* ¶ 36.

the pleading deficiencies alleged in Counter-Defendants' Motion to Dismiss regarding Dr. Guerra's alleged failure to allege that she was threatened with physical injury or offense, some of which are included in paragraphs 21-23, below.[16]

21.     On or about April 1, 2018, Melody accosted Dr. Cantu, Dr. Guerra, her now-husband, David Bellinger, and her minor daughters at night in a dark restaurant parking lot after the family had finished eating dinner together.  Melody was disheveled and crying.  She kept her hands in her pockets standing strangely nervous and yelling which caused Dr. Guerra to fear that Melody intended to cause her and/or her daughter bodily harm.  Melody proceeded to yell insults at Dr. Guerra and shout angrily, describing a then-secret relationship between her and Dr. Cantu. Dr. Cantu did nothing to protect his daughters or calm Melody.  In an effort to escape from the dangerous and explosive situation caused by Melody, Dr. Guerra and her daughters ran to their vehicle for safety as they were chased by Melody who pursed them closely from behind while continuing to yell and behave hysterically, which further caused Dr. Guerra to fear that Melody intended to cause her and/or her daughters imminent bodily harm.  Melody's behavior and state of hysteria were so severe that Dr. Guerra and her daughters were unable to go to their home as they reasonably feared that Melody would follow them and attempt to physically harm them.  Melody's actions were so threatening and disturbing that even Dr. Cantu feared for his life.  Dr. Cantu called his parents to help protect him from Melody and they met him at a hotel that night where he kept a gun for self-defense.

22.     Later that night, Melody began relentlessly harassing Dr. Guerra via social media, sending her many threatening messages and photos via text and through Facebook's messenger feature around 2:00–3:00 a.m. following her ambush of Dr. Guerra and her daughters in the

---

[16] Amended Counterclaim, ¶ 16-20, 44.

restaurant parking lot.   Melody specifically threatened to post intimate pictures of Dr. Guerra and Dr. Cantu.  Melody also contacted Dr. Cantu's parents (Dr. Guerra's former in-laws) by sending them approximately sixty-four (64) text messages and placed approximately eighty (80) phone calls to Dr. Cantu.  Melody had the apparent ability to carry out such threats as evidenced by her ambush of Dr. Guerra in a public parking lot and Dr. Cantu's demonstrated heightened level fear that compelled him to call his parents for help and to keep a gun with him as protection against Melody.[17]  Dr. Guerra made repeated prior demands that Melody stop engaging in such harassing behavior but Melody nonetheless continued undeterred. Both Dr. Guerra *and* Dr. Cantu reported Melody's harassing and stalking behavior to the police.

23.      As a result of Melody's deliberate campaign of stalking and harassment, Dr. Guerra reasonably feared for her safety or the safety of a member of her family due to threats of bodily injury and had to hire security for her wedding and has felt compelled to sacrifice larger business opportunities in order to feel safe and insulated from the stalking and harassment.  Melody had the apparent ability to carry out such threats as evidenced by her ambush of Dr. Guerra in a public parking lot and Dr. Cantu's demonstrated heightened level fear that compelled him to call his parents for help and to keep a gun with him as protection against Melody.  Dr. Guerra made repeated prior demands that Melody stop engaging in such harassing behavior but Melody nonetheless continued undeterred. Both Dr. Guerra *and* Dr. Cantu reported Melody's harassing and stalking behavior to the police.

24.      Furthermore, the criminal charges against Melody were dropped on "speedy trial" grounds,[18]  but the dismissal on such procedural grounds does not mean that Melody was not guilty

---

[17] Amended Counterclaim ¶ 44.
[18] Complaint, §115.

or that she did not commit the offense she was accused of.  Thus, contrary to Counter-Defendants' allegation in their Motion to Dismiss, the dismissal of the criminal charges does not, as a matter of law, render Dr. Guerra's allegations of harassment and stalking "implausible on their face."

### ii. *Dr. Guerra is Not Alleging a Civil Cause of Action Based Upon a Violation of Texas Penal Code § 42.07(a).*

25.     Dr. Guerra's Amended Counterclaim submitted with her Motion for Leave does not contain a civil claim against Counter-Defendants based upon their violation of Texas Penal Code § 42.07(a).

### iii. *Counter-Defendants' Claims Against Dr. Guerra Revive Her Harassment and Stalking Claims.*

26.     If a counterclaim or cross claim arises out of the same transaction or occurrence that is the basis of an action, a party to the action may file the counterclaim or cross claim even though as a separate action it would be barred by limitation on the date the party's answer is required.  Here, Counter-Defendants assert claims against Dr. Guerra which arise from and/or relate to the same underlying family dispute and state civil court custody case.  Dr. Guerra's claims against Counter-Defendants for stalking and harassment, intentional infliction of emotional distress, and defamation, in particular, all arise from the same transactions and occurrences that are the basis of Melody's claims against Dr. Guerra for malicious prosecution and intentional infliction of emotional distress.

27.     Dr. Guerra's counterclaims were filed not later than the 30th day after the date on which the Dr. Guerra's answer was required.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.069.

28.     Accordingly, Dr. Guerra's counterclaim for harassment and stalking is not barred by the statute of limitations.

**D.     COUNT FOUR – INTENTIONAL INFLICTION OF EMOTION DISTRESS.**

### i.     *It is Plausible that a Fact Finder Would Find Counter-Defendants' Conduct Extreme and Outrageous.*

29.     Dr. Cantu and Melody acted intentionally or recklessly by impersonating Dr. Guerra for the purposes of creating false online profiles for dating websites for persons with HIV and other sexually transmitted disease websites, concealing her iPad and using it to attempt to hack into her email and Verizon accounts, publicly and falsely accusing Dr. Guerra of participating in human trafficking and grooming minors for human trafficking, spreading falsehoods about Dr. Guerra to Dr. Guerra's former employer, professional colleagues and in-laws, filing a false police report against Dr. Guerra, verbally harassing Dr. Guerra and her daughters and engaging in conduct causing severe psychological harm which manifested in physical pain and suffering.   Melody, by her repeated and unrelenting actions against Dr. Guerra, intended to inflict emotional distress, or knew or should have known that emotional distress was a likely result of her actions.

30.     " 'Extreme and outrageous conduct' is an amorphous phrase that escapes precise definition."[19] Although counsel for Counter-Defendants believes this type of egregious conduct by Counter-Defendants is simply "akin to telling an overweight girl that she looks like a hippo," it is entirely plausible that a jury in Texas might indeed find this conduct to be extreme and outrageous and not something they would want their wives, sisters, or daughters ever subjected to. Again, the standard is not whether or not Dr. Guerra will ultimately prevail on her claim of IIED at trial, but it is instead whether Counter-Defendants have fair notice of the claim and the factual allegations are sufficient to show that the right to relief is plausible.   Accordingly, Counter-Defendants' request that the Court dismiss Dr. Guerra's IIED claim should be denied.

---

[19] *Wilson v. Monarch Paper Co.,* 939 F.2d 1138, 1142 (5th Cir. 1991).

### ii.     *Counter-Defendants' Claims Against Dr. Guerra Revive Her IIED Claims.*

31.     Dr. Guerra's counterclaim for IIED is not barred by the statute of limitations for the reasons discussed supra in paragraphs 26-27.

### E.     COUNT FIVE – DEFAMATION.

32.     Firstly, the heightened standard of pleading with "reasonably particularity" does not apply to motions asserted under Rule 12, rather it applies to motions asserted under Rule 9(b) for cases alleging fraud or mistake.[20]

33.     For purposes of Rule 12(b)(6), Dr. Guerra specifically details in her Original Counterclaim the defamatory statements made by Counter-Defendants. Alternatively, and/or additionally, if leave to file is granted, the Amended Counterclaim contains such additional factual allegations necessary to fully address and resolve the pleading deficiencies alleged in Counter-Defendants' Motion to Dismiss regarding Dr. Guerra's claim for defamation, some of which are included in paragraphs 34-35, below.[21]

34.     The statements and representations made and published by Melody Joy Cantu to Dr. Guerra's former employer, colleagues, friends, and family were false and were recklessly and maliciously made, including, without limitation, that Dr. Guerra contracted a sexually transmitted disease and engaged in human trafficking and groomed minors for human trafficking. Melody Cantu had no right, privilege or justification to make the statements.

35.     The statements were defaming to Dr. Guerra in the conduct of her personal life and business and were concerning to her. Despite written demand from Dr. Guerra's attorney to cease and desist from making false statements and to correct such statement, Melody refused and/or

---

[20] *See* Fed. R. Civ. P. 9(b); *compare* Fed. R. Civ. P. 12(b).
[21] Amended Counterclaim, ¶ 22-24, 53-54.

failed to do so.  Melody Cantu acted with actual malice and/or with negligence regarding the truth of her statements.

36.     Furthermore, Dr. Guerra's counterclaim for defamation is not barred by the statute of limitations for the reasons discussed supra in paragraphs 26-27

37.     Accordingly, Counter-Defendants' motion to dismiss Dr. Guerra's counterclaim for defamation should be denied.

### F.     COUNT SIX – ABUSE OF PROCESS

38.     The Amended Counterclaim that is the subject of Dr. Guerra's Motion for Leave contains such additional factual allegations necessary to fully address and resolve the pleading deficiencies alleged in Counter-Defendants' Motion to Dismiss regarding Dr. Guerra's claim for abuse of process.[22]

39.     Specifically, Dr. Guerra alleges that Dr. Cantu and Melody Joy Cantu filed this present lawsuit with the ulterior motive of inflicting damage to Dr. Guerra, her reputation, and her career and is just another form of aggression utilized by Counter-Defendants as part of their sustained campaign of harassment against Dr. Guerra.  As with Counter-Defendants' prior unlawful actions, this lawsuit is predicated on Counter-Defendants' attempt to create a power imbalance for the purposes of personal retaliation and revenge against Dr. Guerra and is otherwise a domestic/family dispute that Counter-Defendants are attempting to play out in a public forum under the auspice of a "proper" use of process for the illegitimate purpose of causing embarrassment and harm to Dr. Guerra and her family.

---

[22] Amended Counterclaim, ¶ 58.

40.     Based upon such Amended Counterclaim, Dr. Guerra has satisfied her burden of providing fair notice of her abuse of process claim against Counter-Defendants that are sufficiently plausible under the standard of review for a motion to dismiss under Rule 12(b)(6).

**IV.**
**CONCLUSION**

42.     Because Dr. Guerra has, pursuant to Rule 12(b)(6), sufficiently stated counterclaims for violation of the CFAA, violation of the HACA, stalking and harassing behavior, intentional infliction of emotional distress, defamation and abuse of process, the Court should deny Counter-Defendants' Motion to Dismiss in its entirety.

**V.**
**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Counter-Plaintiff, DR. SANDRA GUERRA, prays that the Court deny Counter-Defendants' Motion to Dismiss and Court grant Counter-Plaintiff, Dr. Sandra Guerra, all such other and further relief, both general and special, at law or in equity, to which she may justly be entitled.

Dated:  November 27, 2020.    Respectfully submitted,

           **DAVIS, CEDILLO & MENDOZA, INC.**

           McCombs Plaza, Suite 500
           755 E. Mulberry Avenue
           San Antonio, Texas 78212
           Telephone No.: (210) 822-6666
           Telecopier No.: (210) 822-1151

           By: */s/Ricardo G. Cedillo*
            RICARDO G. CEDILLO
            Texas State Bar No. 04043600
            rcedillo@lawdcm.com
            LESLIE J. STRIEBER, III.
            Texas State Bar No. 19398000
            lstrieber@lawdcm.com
            BRANDY C. PEERY
            Texas State Bar No. 24057666
            bpeery@lawdcm.com
            COURTNEY R. GAINES
            State Bar No. 24098273
            cgaines@lawdcm.com

        ATTORNEYS FOR DEFENDANT, DR. SANDRA GUERRA

## CERTIFICATE OF SERVICE

   I certify that on this 27th day of November 2020, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the parties on record.


        */s/Ricardo G. Cedillo*
        RICARDO G. CEDILLO

16