**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **MELODY JOY CANTU and** | § | |
| **DR. RODRIGO CANTU,** | § | |
| *Plaintiffs* | § | |
| | § | |
| | § | **CIVIL ACTION NO 5:20-CV-00746-JKP** |
| | § | |
| V. | § | |
| | § | |
| **DR. SANDRA GUERRA and** | § | |
| **DIGITAL FORENSICS** | § | |
| **CORPORATION, LLC** | § | |
| *Defendants* | § | |

**FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND FIRST AMENDED**
**COUNTERCLAIM OF DEFENDANT DR. SANDRA GUERRA**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

NOW COMES Defendant, DR. SANDRA GUERRA (hereinafter "Defendant" or "Dr. Guerra"), and reserving the right to file other and further pleadings, exceptions and denials, files this her First Amended Answer, Affirmative Defenses, and Amended Counterclaim and in support thereof would respectfully show unto the Court as follows:

**DEFENDANT, DR. SANDRA GUERRA'S, FIRST AMENDED ANSWER**

**I.      INTRODUCTION**

1.      Dr. Guerra denies she violated the federal Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030 *et. seq.* ("CFAA"), the Federal Wiretap Act, 18 U.S.C. §§ 2510 *et. seq.*, the Texas Harmful Access by Computer Act ("HACA"), Texas Penal Code § 33.02(b-1) (1) and denies committing the Texas torts of malicious prosecution and intentional infliction of emotional distress.

2.      Dr. Guerra denies that she hacked, surveilled, and damaged Plaintiffs' protected computers and computer networks without authorization or effective consent, and intentionally damaged those computers or networks causing losses greater than $5,000.00.  Dr. Guerra denies having any intention to maliciously prosecute Plaintiff Melody Joy Cantu ("Melody") and/or cause the intentional infliction of emotional distress upon Plaintiffs.  Dr. Guerra asserts that, based upon information and belief, Melody was arrested as a result of a legitimate police report filed by Dr. Guerra after a systematic campaign by Melody to harass Dr. Guerra.  Dr. Guerra has no knowledge of the disposition for which Melody was arrested.  Dr. Guerra further denies filing a false Child Protective Services ("CPS") complaint against Plaintiffs and asserts, instead, that she did file a legitimate CPS report after becoming aware of (1) verbal abuse to her daughters by Melody and (2) Dr. Rodrigo Cantu's ("Dr. Cantu") failure to protect Dr. Guerra and Dr. Cantu's daughters from Melody's verbal attacks.

3.      Dr. Guerra denies seeking any type of revenge on Dr. Cantu or Melody.  Dr. Guerra further denies her divorce with Dr. Cantu was the result of any alleged affair on Dr. Guerra's part, but rather, was the result of Dr. Cantu's anger issues and financial issues.

4.      Dr. Guerra denies ever stalking or harassing Plaintiffs or weaponizing Dr. Guerra and Dr. Cantu's children against Dr. Cantu through parental alienation.

5.      Dr. Guerra does not have the requisite knowledge to admit or deny the allegations contained in Paragraph 5 of Plaintiff's Amended Complaint as they relate to Digital Forensics Corporation, LLC ("DFC").  Dr. Guerra admits she did file a police report as recommended by DFC.

6.      Dr. Guerra denies engaging in a campaign of hacking, surveillance, damage, and malicious prosecution for any reason and denies responsibility for any of the resulting harm

claimed by Plaintiffs for any alleged campaign against them.

## II.    PARTIES

7.      Dr. Guerra admits to the allegations contained in Paragraph 7 of the First Amended Complaint.

8.      Dr. Guerra admits to the allegations contained in Paragraph 8 of the First Amended Complaint.

9.      Dr. Guerra does not have the requisite knowledge to admit or deny the allegations contained in Paragraph 9 of the First Amended Complaint.

## III.    JURISDICTION AND VENUE

10.     Dr. Guerra does not stipulate the Court has jurisdiction in this case but asserts that she did not violate any statute as stated in Paragraph 1 of the First Amended Complaint.

11.     Dr. Guerra does not stipulate the Court has jurisdiction in this case but asserts that she did not violate any statute as stated in Paragraph 10 of the First Amended Complaint.

12.     Dr. Guerra does not stipulate the Court has jurisdiction in this case but asserts that she did not engage in any acts or omissions giving rise to any state law causes of action as stated in Paragraph 12 of the First Amended Complaint.

13.     Dr. Guerra admits to the allegations contained in Paragraph 13 of the Amended Complaint as they relate to jurisdiction over her person.

14.     Dr. Guerra admits to the allegations contained in Paragraph 14 of the Amended Complaint as they relate to venue over her person.

## IV.    FACTS

15.     Dr. Guerra admits to the allegations contained in Paragraph 15 of the First Amended Complaint.

16.     Dr. Guerra partially admits the allegations contained in Paragraph 16 in that she and Dr. Cantu were divorced after 10 years of marriage but denies that the divorce was due to her alleged affair with another man.

17.     Dr. Guerra partially admits the allegations contained in Paragraph 17 in that she and Dr. Cantu do have two daughters together, although their current ages are 17 and 19, rather than 17 and 18.

18.     Dr. Guerra partially admits to the allegations contained in Paragraph 18, but denies that Melody's children live in fear based on her surveilling them or "coming for" their mother.

19.     Dr. Guerra denies the allegations contained in Paragraph 19.

20.     Dr. Guerra admits to the allegations contained in Paragraph 20.

21.     Dr. Guerra cannot admit or deny the allegations contained in Paragraph 21. Discovery will be conducted.  Subject thereto, deny.

22.     Dr. Guerra admits to the allegation contained in Paragraph 22.

23.     Dr. Guerra admits to the allegations contained in Paragraph 23.

24.     Dr. Guerra cannot admit or deny the allegation contained in Paragraph 24. Discovery will be conducted.  Subject thereto, deny.

25.     Dr. Guerra cannot admit or deny the allegation contained in Paragraph 25. Discovery will be conducted.  Subject thereto, deny.

26.     Dr. Guerra cannot admit or deny the allegation contained in Paragraph 26. Discovery will be conducted.  Subject thereto, deny.

27.     Dr. Guerra partially admits and partially denies the allegations contained in Paragraph 27.  Dr. Guerra admits she did hire DFC on or about May 16, 2018, but denies she did so with the intent to hack, surveil, and damage Plaintiffs' computers and computer networks.

28.     Dr. Guerra admits to the allegation contained in Paragraph 28.

29.     Dr. Guerra partially admits and partially denies the allegations contained in Paragraph 29.  Dr. Guerra admits she did file a CPS report against the Cantus on or about May 29, 2018 but denies that this report was false.

30.     Dr. Guerra admits to the allegation contained in Paragraph 30.

31.     Dr. Guerra cannot admit or deny the allegations in Paragraph 31.  Discovery will be conducted.  Subject thereto, deny.

32.     Dr. Guerra cannot admit or deny the allegations in Paragraph 32.  Discovery will be conducted.  Subject thereto, deny.

33.     Dr. Guerra admits to the allegations contained in Paragraph 33.

34.     Dr. Guerra admits to the allegations contained in Paragraph 34.

35.     Dr. Guerra cannot admit or deny the allegations in Paragraph 35.  Discovery will be conducted.  Subject thereto, deny.

36.     Dr. Guerra admits to the allegation contained in Paragraph 36.

37.     Dr. Guerra admits to the allegations contained in Paragraph 37.

38.     Dr. Guerra admits to the allegations contained in Paragraph 38.

39.     Dr. Guerra cannot admit or deny the allegations in Paragraph 39.  Discovery will be conducted.  Subject thereto, deny.

40.     Dr. Guerra partially admits and partially denies the allegations contained in Paragraph 40.  Dr. Guerra admits to all portions of Paragraph 40 but denies that the police report filed against Melody was false.

41.     Dr. Guerra cannot admit or deny the allegations in Paragraph 41.  Discovery will be conducted.  Subject thereto, deny.

42.     Dr. Guerra cannot admit or deny the allegations in Paragraph 42.  Discovery will be conducted.  Subject thereto, deny.

43.     Dr. Guerra cannot admit or deny the allegations in Paragraph 43.  Discovery will be conducted.  Subject thereto, deny.

44.     Dr. Guerra cannot admit or deny the allegations in Paragraph 44.  Discovery will be conducted.  Subject thereto, deny.

45.     Dr. Guerra cannot admit or deny the allegations in Paragraph 45.  Discovery will be conducted.  Subject thereto, deny.

46.     Dr. Guerra cannot admit or deny the allegations in Paragraph 46.  Discovery will be conducted.  Subject thereto, deny.

47.     Dr. Guerra cannot admit or deny the allegations in Paragraph 47.  Discovery will be conducted.  Subject thereto, deny.

48.     Dr. Guerra cannot admit or deny the allegations in Paragraph 48.  Discovery will be conducted.  Subject thereto, deny.

49.     Dr. Guerra cannot admit or deny the allegations in Paragraph 49.  Discovery will be conducted.  Subject thereto, deny.

50.     Dr. Guerra cannot admit or deny the allegations in Paragraph 50.  Discovery will be conducted.  Subject thereto, deny.

51.     Dr. Guerra cannot admit or deny the allegations in Paragraph 51.  Discovery will be conducted.  Subject thereto, deny.

52.     Dr. Guerra cannot admit or deny the allegations in Paragraph 52.  Discovery will be conducted.  Subject thereto, deny.

53.     Dr. Guerra cannot admit or deny the allegations in Paragraph 53.  Discovery will

be conducted.  Subject thereto, deny.

## V.   COMPUTER FRAUD AND ABUSE ACT – UNAUTHORIZED ACCESS TO A PROTECTED COMPUTER 18 U.S.C. 1030(a)(2)(c)

54.     Dr. Guerra is unable to admit or deny this allegation contained in paragraph 54 of the Amended Complaint as it is not an allegation.  To the extent any portion is an allegation, it is denied.

55.     Dr. Guerra denies the allegation contained in Paragraph 55.

56.     Dr. Guerra cannot admit or deny the allegations in Paragraph 56.  Discovery will be conducted.  Subject thereto, deny.

57.     Dr. Guerra denies the allegations contained in Paragraph 57.

58.     Dr. Guerra denies the allegations contained in Paragraph 58.

## VI.   COMPUTER FRAUD AND ABUSE ACT – UNAUTHORIZED DAMAGE TO A PROTECTED COMPUTER 18 U.S.C. 1030(a)(5)(A)

59.     Dr. Guerra is unable to admit or deny this allegation contained in Paragraph 59 of the Amended Complaint as it is not an allegation.  To the extent any portion is an allegation, it is denied.

60.     Dr. Guerra denies the allegation contained in Paragraph 60.

61.     Dr. Guerra denies the allegations contained in Paragraph 61.

62.     Dr. Guerra denies the allegations contained in Paragraph 62.

## VII.   COMPUTER FRAUD AND ABUSE ACT – UNAUTHORIZED ACCESS TO A PROTECTED COMPUTER RECKLESSLY CAUSING DAMAGE 18 U.S.C. 1030(a)(5)(B)

63.     Dr. Guerra is unable to admit or deny this allegation contained in Paragraph 63 of the Amended Complaint as it is not an allegation.  To the extent any portion is an allegation, it is denied.

64.     Dr. Guerra denies the allegation contained in Paragraph 64.

65.     Dr. Guerra denies the allegations contained in Paragraph 65.

66.     Dr. Guerra denies the allegations contained in Paragraph 66.

67.     Dr. Guerra denies the allegations contained in Paragraph 67.

## VIII.   COMPUTER FRAUD AND ABUSE ACT – UNAUTHORIZED ACCESS TO PROTECTED COMPUTER CAUSING DAMAGE AND LOSS
### 18 U.S.C. 1030(a)(5)(C)

68.     Dr. Guerra is unable to admit or deny the allegation contained in Paragraph 68 of the Amended Complaint as it is not an allegation.  To the extent any portion is an allegation, it is denied.

69.     Dr. Guerra denies the allegation contained in Paragraph 69.

70.     Dr. Guerra denies the allegations contained in Paragraph 70.

71.     Dr. Guerra denies the allegations contained in Paragraph 71.

72.     Dr. Guerra denies the allegations contained in Paragraph 72.

## IX.     COMPUTER FRAUD AND ABUSE ACT – CONSPIRACY TO COMMIT UNAUTHORIZED ACCESS TO A PROTECTED COMPUTER
### 18 U.S.C. 1030(a)(2)(c) & 1030(b)

73.     Dr. Guerra is unable to admit or deny the allegation contained in Paragraph 73 of the Amended Complaint as it is not an allegation.  To the extent any portion is an allegation, it is denied.

74.     Dr. Guerra denies the allegation contained in Paragraph 74.

75.     Dr. Guerra denies the allegations contained in Paragraph 75.

76.     Dr. Guerra denies the allegations contained in Paragraph 76.

77.     Dr. Guerra denies the allegations contained in Paragraph 77.

**X.      COMPUTER FRAUD AND ABUSE ACT – CONSPIRACY TO COMMIT
UNAUTHORIZED DAMAGE TO A PROTECTED COMPUTER
18 U.S.C. 1030(a)(5)(A) & 1030(b)**

78.     Dr. Guerra cannot admit or deny the allegation contained in Paragraph 78 of the Amended Complaint as it is not an allegation.  To the extent any portion is an allegation, it is denied.

79.     Dr. Guerra denies the allegations contained in Paragraph 79.

80.     Dr. Guerra denies the allegation contained in Paragraph 80.

81.     Dr. Guerra denies the allegations contained in Paragraph 81.

82.     Dr. Guerra denies the allegations contained in Paragraph 82.

**XI.     COMPUTER FRAUD AND ABUSE ACT – CONSPIRACY TO COMMIT
RECKLESS DAMAGE TO A PROTECTED COMPUTER
18 U.S.C. 1030(a)(5)(B) & 1030(b)**

83.     Dr. Guerra cannot admit or deny the allegation contained in Paragraph 83 of the Amended Complaint as it is not an allegation.  To the extent any portion is an allegation, it is denied.

84.     Dr. Guerra denies the allegations contained in Paragraph 84.

85.     Dr. Guerra denies the allegations contained in Paragraph 85.

86.     Dr. Guerra denies the allegations contained in Paragraph 86.

87.     Dr. Guerra denies the allegations contained in Paragraph 87.

**XII.    COMPUTER FRAUD AND ABUSE ACT – CONSPIRACY TO COMMIT
UNAUTHORIZED ACCESS TO A PROTECTED COMPUTER CAUSING
DAMAGE AND LOSS
18 U.S.C. 1030(a)(5)(C) & 1030(b)**

88.     Dr. Guerra cannot admit or deny the allegation contained in Paragraph 88 of the Amended Complaint as it is not an allegation.  To the extent any portion is an allegation, it is denied.

89.     Dr. Guerra denies the allegations contained in Paragraph 89.

90.     Dr. Guerra denies the allegations contained in Paragraph 90.

91.     Dr. Guerra denies the allegations contained in Paragraph 91.

92.     Dr. Guerra denies the allegations contained in Paragraph 92.

### XIII.   KNOWINGLY ACCESSING WITHOUT EFFECTIVE CONSENT, A COMPUTER, COMPUTER NETWORK, OR COMPUTER SYSTEM
### Tex. Civ. Prac. & Rem. Code § 143.001 & Tex. Penal Code § 33.02(a)

93.     Dr. Guerra cannot admit or deny the allegation contained in Paragraph 93 of the Amended Complaint as it is not an allegation.  To the extent any portion is an allegation, it is denied.

94.     Dr. Guerra denies the allegations contained in Paragraph 94.

95.     Dr. Guerra denies the allegations contained in Paragraph 95.

96.     Dr. Guerra denies the allegations contained in Paragraph 96.

97.     Dr. Guerra denies the allegations contained in Paragraph 97.

### XIV.   KNOWINGLY ACCESSING A COMPUTER, COMPUTER NETWORK, OR COMPUTER SYSTEM WITH THE INTENT TO DEFRAUD, OR HARM ANOTHER OR ALTER, DAMAGE, OR DELETE PROPERTY WITHOUT EFFECTIVE CONSENT
### Tex. Civ. Prac. & Rem. Code § 143.001 & Tex. Penal Code § 33.02(b-1) (1)

98.     Dr. Guerra cannot admit or deny the allegation contained in Paragraph 98 of the Amended Complaint as it is not an allegation.

99.     Dr. Guerra denies the allegations contained in Paragraph 99.

100.    Dr. Guerra denies the allegations contained in Paragraph 100.

101.    Dr. Guerra denies the allegations contained in Paragraph 101.

102.    Dr. Guerra denies the allegations contained in Paragraph 102.

103.    Dr. Guerra denies the allegations contained in Paragraph 103.

## XV.   ELECTRONIC ACCESS INTERFERENCE
### Tex. Civ. Prac. & Rem. Code § 143.001 & Tex. Penal Code § 33.022

104.    Dr. Guerra cannot admit or deny the allegation contained in Paragraph 104 of the Amended Complaint because it is not an allegation.  To the extent any portion is an allegation, it is denied.

105.    Dr. Guerra denies the allegations contained in Paragraph 105.

106.    Dr. Guerra denies the allegations contained in Paragraph 106.

107.    Dr. Guerra denies the allegations contained in Paragraph 107.

108.    Dr. Guerra denies the allegations contained in Paragraph 108.

## XVI.   INTENTIONAL INTERCEPTION, OR ENDEAVOURING TO USE ANY ELECTRONIC WIRE, ORAL OR ELECTRONIC COMMUNICATIONS
### 18 U.S.C. §§ 2510 *et. seq.*

109.    Dr. Guerra cannot admit or deny the allegation contained in Paragraph 109 of the Amended Complaint because it is not an allegation.  To the extent any portion is an allegation, it is denied.

110.    Dr. Guerra admits the allegations contained in Paragraph 110.

111.    Dr. Guerra denies the allegations contained in Paragraph 111.

## XVII.  MALICIOUS PROSECUTION

112.    Dr. Guerra cannot admit or deny the allegation contained in Paragraph 112 of the Amended Complaint because it is not an allegation.  To the extent any portion is an allegation, it is denied.

113.    Dr. Guerra partially admits the allegation in Paragraph 113 that DFC did tell her that to continue to "Phase II" a police report was required and that Dr. Guerra did file a police report against Melody.  Dr. Guerra denies all other allegations contained in Paragraph 113, including that the police report which was filed against Melody was false.

114.    Dr. Guerra denies the allegation contained in Paragraph 114 that the police report she filed against Melody was false.  Dr. Guerra can neither admit nor deny the allegation in Paragraph 114 that the police report led to Melody's arrest.  Discovery will be conducted.  Subject thereto, deny.

115.    Dr. Guerra can neither admit nor deny the allegations contained in Paragraph 115. Discovery will be conducted.  Subject thereto, deny.

116.    Dr. Guerra denies the allegation contained in Paragraph 116.

117.    Dr. Guerra can neither admit nor deny the allegations contained in Paragraph 117. Discovery will be conducted.  Subject thereto, deny.

118.    Dr. Guerra denies the allegations contained in Paragraph 118.

119.    Dr. Guerra denies the allegations contained in Paragraph 119.

120.    Dr. Guerra denies the allegations contained in Paragraph 120.

121.    Dr. Guerra denies the allegations contained in Paragraph 121.

## XVIII. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

122.    Dr. Guerra denies the allegations contained in Paragraph 122.

123.    Dr. Guerra denies the allegations contained in Paragraph 123.

124.    Dr. Guerra denies the allegations contained in Paragraph 124.

## XIX.   AFFIRMATIVE DEFENSES

125.    Dr. Guerra is not liable to plaintiffs for any of their claims under the Computer Fraud & Abuse Act (causes of action 1-8) because the statute of limitations bars the plaintiffs' claims. The statute of limitations for this cause of action is two (2) years.

126.    Dr. Guerra is not liable to plaintiffs for any of their claims under the Computer Fraud & Abuse Act (causes of action 1-8) because the statute's damage threshold bars the

plaintiffs' claims. The damage threshold is $5,000.00 and the plaintiffs cannot prove that they suffered damages, as defined by the statute, of or in excess of $5,000.00.

127.    Dr. Guerra is not liable to plaintiffs for any of their claims under Texas Civil Practice & Remedies Code § 143.001 (causes of action 9-11) because the statute of limitations bars the plaintiffs' claims. The statute of limitations for this cause of action is two (2) years.

128.    DFC Dr. Guerra is not liable to plaintiffs for their claim under 18 U.S.C. §§ 2510 et. seq. (cause of action 12) because the statute of limitations bars the plaintiffs' claim. The statute of limitations for this cause of action is two (2) years.

129.    DFC Dr. Guerra is not liable to plaintiffs for their claim of malicious prosecution (cause of action 13) because the statute of limitations bars the plaintiffs' claim. The statute of limitations for this cause of action is one (1) year.

130.    Dr. Guerra is not liable to plaintiffs for their claim intentional infliction of emotional distress (cause of action 14) because the statute of limitations bars the plaintiffs' claim. The statute of limitations for this cause of action is two (2) years.

131.    Dr. Guerra pleads the affirmative defense of illegality.

132.    Dr. Guerra pleads the affirmative defense of laches.

133.    Dr. Guerra pleads the affirmative defense of unclean hands.

134.    Dr. Guerra pleads the affirmative defense that Plaintiffs' own acts and omissions caused and contributed to plaintiffs'' alleged damages, if any.

## DR. SANDRA GUERRA'S FIRST AMENDED COUNTERCLAIM

## I.      INTRODUCTION

1.      This is an action for violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(c); the Harmful Access by Computer Act, Tex. Pen. Code § 33.02(a); and the Texas

torts of stalking, defamation, intentional infliction of emotional distress, and abuse of process.

2.    Plaintiffs and Counter-Defendants Dr. Rodrigo Cantu and Melody Joy Cantu intentionally and knowingly accessed Dr. Guerra's computer, computer network, or computer system without Dr. Guerra's effective consent by attempting to hack into her Verizon online account and Verizon voicemail.  Furthermore, the Cantus hacked into Dr. Guerra's email from an iPad purchased by Dr. Guerra that she allowed her daughter to use but was made believe to be was later lost.  Melody also created fake accounts in Dr. Guerra's name for dating websites for person with HIV and other sexually transmitted diseases, the creation of which led to a plethora of unwanted emails being sent to Dr. Guerra from unknown suitors in this regard.   As a result of these unlawful acts, Dr. Guerra believed it necessary to hire Co-Defendant Digital Forensics Corporation, LLC ("DFC") to investigate on her behalf.

3.    Additionally, Melody Cantu verbally abused Dr. Guerra and her daughters to the point Dr. Guerra felt compelled to file a police report and a subsequent complaint with Child Protective Services.  Dr. Guerra and her daughters also began counseling as a result of the collective incidents.

4.    Defendants' collective acts against Dr. Guerra have not only been harassing and wholly unwarranted but have also had a detrimental effect on her reputation.  These acts have resulted in emotional, reputational, and monetary harm, including, but not limited to, costs and expenses of counseling, lost wages, hiring security, retaining DFC, and obtaining legal counsel. Thus, she seeks compensatory, consequential, and punitive damages.

## II.    THE PARTIES

5.    Defendant/Counter-Plaintiff, Dr. Sandra Guerra ("Dr. Guerra") is an individual residing in San Antonio, Bexar County, Texas.

6.     Plaintiff/Counter-Defendants Melody Joy Cantu ("Melody") and Dr. Rodrigo Cantu ("Dr. Cantu") (collectively "Plaintiffs" or "Counter-Defendants") are individuals residing in Boerne, Texas and are already parties to this lawsuit.

## III.     JURISDICTION & VENUE

7.     This Court has subject matter jurisdiction over the Computer Fraud and Abuse Act ("CFAA") claims under 28 U.S.C. §§ 1331 and 1332, as the claims present issues of federal question under the CFAA, 18 U.S.C. §§ 1030(a)(2)(C) (prohibiting unauthorized access to a computer), 1030(a)(5)(A)-(C) (prohibiting unauthorized damage to a computer), 1030(g) (creating civil cause of action), 1030(c)(4)(A)(i)(I) (creating civil jurisdiction predicate for CFAA losses aggregating $5,000 or more), and 1030(e) (defining "loss," "damage," and other key terms). As alleged below, the actions complained of resulted in CFAA loss of more than $5,000, all within the last two years from the date of the original Complaint.

8.     For the Texas State Law claims, this Court has supplemental jurisdiction under 28 U.S.C. § 1367.  Tex. Civ. Prac. & Rem. Code § 143.001 provides for a civil cause of action for violations of the Texas Harmful Access by Computer Act ("HACA"), Texas Penal Code § 33.02(b-1)(1).  Texas courts recognize the torts of harassment, defamation, and abuse of process.

9.     The Court has personal jurisdiction over the Defendants because Dr. Cantu and Melody Joy Cantu reside in the jurisdiction.

10.     Venue is proper in the Western Division of Texas under 28 U.S.C. §§ 1391(b) because the Defendants reside in this judicial district and the events complained of substantially occurred in this District.

## IV.     <u>TEXAS SAVINGS STATUTE: TCPRC § 16.069</u>

11.     If a counterclaim or cross claim arises out of the same transaction or occurrence

that is the basis of an action, a party to the action may file the counterclaim or cross claim even though as a separate action it would be barred by limitation on the date the party's answer is required.  This counterclaim was filed not later than the 30th day after the date on which the Dr. Guerra's answer is required.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.069.

## V.     FACTS

12.     In 2009, after ten years of marriage, Dr. Guerra and Dr. Cantu divorced and managed to maintain an amicable relationship for approximately an additional ten years while co-parenting their two daughters.

13.     In 2014, Dr. Cantu married his second wife, Melody Joy Cantu ("Melody").

14.     In 2015, when Dr. Guerra and Dr. Cantu's daughters were approximately twelve (12) and fourteen (14) years old, Melody verbally abused the children on multiple occasions. Unfortunately, Dr. Cantu did not take any action to protect or defend the children from Melody's outbursts.  Dr. Cantu later apologized to his daughters and committed to divorce Melody and keep her away from his children if Dr. Guerra agreed not to make a report to Child Protective Services ("CPS").

15.     Upon information and belief, the Dr. Cantu and Melody's divorce was finalized in 2016.

16.     On or about April 1, 2018, Melody accosted Dr. Cantu, Dr. Guerra, her now-husband, David Bellinger, and her minor daughters at night in a dark restaurant parking lot after the family had finished eating dinner together.  Melody was disheveled and crying.  She kept her hands in her pockets standing strangely nervous and yelling which caused Dr. Guerra to fear that Melody intended to cause her and/or her daughter bodily harm.  Melody proceeded to yell insults at Dr. Guerra and shout angrily, describing a then-secret relationship between her and Dr. Cantu.

Dr. Cantu did nothing to protect his daughters or calm Melody.  In an effort to escape from the dangerous and explosive situation caused by Melody, Dr. Guerra and her daughters ran to their vehicle for safety as they were chased by Melody who pursed them closely from behind while continuing to yell and behave hysterically, which further caused Dr. Guerra to fear that Melody intended to cause her and/or her daughters imminent bodily harm.  Melody's behavior and state of hysteria were so severe that Dr. Guerra and her daughters were unable to go to their home as they reasonably feared that Melody would follow them and attempt to physically harm them.  Melody's actions were so threatening and disturbing that even Dr. Cantu feared for his life.  Dr. Cantu called his parents to help protect him from Melody and they met him at a hotel that night where he kept a gun for self-defense.

17.     Later that night, Melody began relentlessly harassing Dr. Guerra via social media, sending her many threatening messages and photos via text and through Facebook's messenger feature around 2:00–3:00 a.m. following her ambush of Dr. Guerra and her daughters in the restaurant parking lot.  Melody specifically threatened to post intimate pictures of Dr. Guerra and Dr. Cantu.  Melody also contacted Dr. Cantu's parents (Dr. Guerra's former in-laws) by sending them approximately sixty-four (64) text messages and placed approximately eighty (80) phone calls to Dr. Cantu.  Although not romantically involved, at this time, Dr. Guerra and Dr. Cantu were on good terms and were making a concerted effort to co-parent their children.

18.     On April 2, 2018, Dr. Guerra and Dr. Cantu met at the Bexar County Courthouse Annex to file a restraining order against Melody.  Dr. Guerra was informed that she was unable to obtain a restraining order against Melody because she had not had a sexual relationship with Melody.  Dr. Cantu proceeded to request a restraining order against Melody which was timely issued.

19.     Dr. Guerra and Dr. Cantu also went to the San Antonio police station where Dr. Cantu filed a police report against Melody for harassment.  Dr. Cantu reported to SAPD Officer Ducatt, among other things, Melody had been sending messages to Dr. Cantu threatening to send intimate photos of Dr. Guerra and Dr. Cantu from when they were married.  Officer Ducatt included in his report that Dr. Guerra reported to him that Melody sent her messages via text and Facebook threatening to post pictures of Dr. Guerra and Dr. Cantu.  Dr. Cantu told the Officer Ducatt that Melody had repeatedly sent electronic communications to him in a manner to harass and embarrass him.

20.     Following the incident at the restaurant, Dr. Cantu stayed with his father for the next six (6) weeks to help him feel safe from Melody.  Dr. Guerra and her daughters began counseling as a result of the incident, which Dr. Cantu supported, at the time.

21.     In May of 2018, Dr. Guerra began to receive notices from Verizon Wireless that someone was attempting to access her account online.  These attempts to gain unauthorized access to her Verizon account continued for several weeks until Dr. Guerra was forced to shut down all online access for that account.  During this time, someone also attempted to hack into Dr. Guerra's Verizon voicemail.  Upon information and belief, these attempts to hack and gain unauthorized access were committed by Melody and/or Dr. Cantu.

22.     Melody also intentionally engaged in other forms of cruelty and aggression against Dr. Guerra with the intent to carry out a course of revenge and inflict harm against Dr. Guerra. Melody contacted Dr. Guerra's then-boyfriend's ex-wife and told her Dr. Guerra stole money and was suspected to have sexually transmitted diseases.  These were complete fabrications by Melody and were intended to cause Dr. Guerra embarrassment and harm to her reputation.

23.     Melody contacted Dr. Guerra's professional colleagues via social media and

telephone calls in an effort to disparage her.  In May of 2018, Dr. Guerra received a phone call from Humana's human resources department stating that an anonymous complaint had been filed against her claiming she was posting proprietary information on social media.  This complaint was entirely falsified.  Upon information and belief, Melody also called Humana's human resources department pretending to be an employee of Dr. Guerra's and falsely claiming that Dr. Guerra was retaliating against her for dating Dr. Cantu.  As a result of this false report, an investigation was opened by Humana's human resources which included interviews of Dr. Guerra's staff until Humana was able to learn that Melody never worked for Dr. Guerra.

24.     There was also a subsequent complaint to Humana that Dr. Guerra was participating in human trafficking.  This complaint was wholly false, and the Cantus previously publicly and falsely accused Dr. Guerra of grooming Melody's daughter for human trafficking.

25.     Several weeks after the incident at the restaurant, Dr. Guerra learned through Dr. Cantu's mother that Dr. Cantu and Melody reconciled.  At this time, Dr. Guerra began to suspect that the attempted hacks into her accounts and the false complaint to Humana were perpetrated by Melody.

26.     Upon their reconciliation, Melody and Dr. Cantu initiated legal action against Dr. Guerra in state court, contacted Dr. Guerra's workplace in a harassing manner, and continued to harass Dr. Guerra online.  Dr. Guerra began receiving angry and harassing messages from Dr. Cantu insisting that Dr. Guerra accept his relationship with Melody.

27.     Shortly after these events, near or around the end of May or beginning of June 2018, Dr. Guerra received "terms and conditions" emails from dating websites designed for persons who have HIV and other sexually transmitted diseases that she had been signed up for without her consent.  Dr. Guerra began to receive inappropriate messages from strangers to her email as a

result of these fake accounts set up in her name and with her email.  Dr. Guerra attempted to have the profiles shut down but did not have the passwords to the accounts.  Dr. Guerra was able to speak with the owners of the various website who shared the IP address that was used to create the profiles.  Dr. Guerra cross-checked this information with Verizon who told her this same IP address was used to attempt to access her accounts and that the IP address was located somewhere in San Antonio, Texas.  Dr. Guerra later learned the IP address was Melody's.

28.     Additionally, at this time, the family law case between Dr. Guerra and Dr. Cantu regarding their children began to intensify.  Dr. Cantu responded to written discovery in the family law case wherein he admitted to accessing Dr. Guerra's personal email via an iPad bought by Dr. Guerra that she allowed her daughter to use with Dr. Guerra's Apple ID.  The iPad in question was knowingly and falsely reported to Dr. Guerra as being "lost."

29.     Dr. Guerra's attorney, on behalf of Dr. Guerra, sent a cease and desist letter to Counter-Defendants demanding that they stop making false statements and engaging in unlawful conduct against Dr. Guerra and that they remove/correct false statements and allegations made and posted about Dr. Guerra.  Nevertheless, Counter-Defendants failed and/or refused to do so.

30.     The above described events precipitated the hiring of Digital Forensics Corporation ("DFC") by Dr. Guerra.

31.     As described in DFC's "Phase I" report reference in Plaintiffs' Amended Complaint, DFC sent a link from an unknown phone number to Melody which she chose to click. This link allowed DFC to access Melody's IP address and confirm that her IP address matched the IP address from which the fake social media accounts were created and from which the attempted hacking into Dr. Guerra's Verizon account occurred.  Dr. Guerra did not authorize and is not aware of any other surveillance on Dr. Cantu or Melody.

32.     DFC also found Melody waged a harassment effort against Dr. Guerra via social media, where Dr. Guerra received numerous unsolicited messages disparaging her character.  As a result of DFC's findings, Dr. Guerra filed a police report and charges were brought against Melody.  Dr. Guerra later learned when she was contacted by SAPD that Melody had filed a false police report against Dr. Guerra claiming that the CPS report Dr. Guerra filed on or about May 29, 2018 was a "false" report and federal crime.  As a result of the false police report filed by Melody, Dr. Guerra was forced to hire criminal counsel and was interviewed by SAPD.  She was advised by the detective that they didn't see any reason to proceed with criminal charges but was later advised by the same detective that the District Attorney was requesting the case be forwarded to his office because Melody was calling them multiple times a day.  Despite Melody's sustained efforts to force prosecution of her false claims, no criminal charges were ever filed against Dr. Guerra and the case was closed.

## VI.     COUNT ONE –UNAUTHORIZED ACCESS TO A PROTECTED COMPUTER, NETWORK, OR COMPUTER SYSTEM IN VIOLATION OF CFAA, 18 U.S.C. § 1030(a)(2)(c)

33.     Counter-Plaintiff Dr. Guerra incorporates the above paragraphs by reference as though fully set forth herein.

34.     Dr. Guerra's iPad computer is used in interstate commerce and comprises a "protected computer" as that term is used in 18 U.S.C. § 1030(e)(2)(B).

35.     Dr. Guerra maintained and secured her iPad by reasonable means, and never authorized the Cantus to access it.  The iPad was purchased and owned by Dr. Guerra, but she permitted her daughter to use it.  Counter-Defendants' accessed the subject iPad and Dr. Guerra's personal communications and account information thereon by deception under false pretenses and

for the nefarious purpose of accessing Dr. Guerra's personal and private accounts, information, and documents without permission for the purposes of harassment, which Counter-Defendants carried out. Dr. Guerra submits that the iPad and the information thereon were not obtained by Dr. Cantu as a parent monitoring his minor child's electronic communications, as Counter-Defendants suggest to this honorable Court, but rather it was done in his capacity as an ex-spouse in connection with his and Melody's bitterly motivated attacks upon Dr. Guerra.  Dr. Guerra had been made to believe that the iPad had been "lost" during the time that Dr. Guerra and/or Melody were accessing the iPad, which eviscerates any plausible argument by Counter-Defendants that they were merely monitoring Dr. Guerra and Dr. Cantu's daughter's activity online and instead establishes that Counter-Defendants were concealing the iPad from Dr. Guerra and her daughter while continuing to access the content on the device.

36.     The Cantus intentionally, and for illegitimate and unlawful purposes, accessed Dr. Guerra's protected computer without authorization and thereby obtained information.  This unauthorized access includes knowingly accessing the iPad purchased and owned by Dr. Guerra, operating under Dr. Guerra's Apple ID and using it to access personal and private accounts, information, and documents owned by Dr. Guerra without permission.  This includes, but is not necessarily limited to, her email accounts, accounts with her cellular phone provider, and photographs.  This was all done under the guise that the iPad was allegedly lost.

37.     As a result of the Cantus' unlawful conduct, Dr. Guerra suffered loss in expending time, money, and resources reasonably related to the computer intrusion in the aggregate of at least $5,000.00 in value, which includes costs incurred by Dr. Guerra to engage DFC, investigate the intrusion of the iPad and other computers potentially intruded upon, assess the damage, and attempt to restore security to her various intruded-upon systems, as well as time Dr. Guerra had to

take off from work to address and resolve these matters.

## VII.    COUNT TWO – HACA UNAUTHORIZED ACCESS TO A COMPUTER,

### COMPUTER NETWORK, OR COMPUTER SYSTEM,

### Tex. Penal Code § 33.02(a) & Tex. Civ. Prac. & Rem. Code § 143.001

38.    Counter-Plaintiff incorporates the above paragraphs by reference as though fully set forth herein.

39.    Counter-Defendants violated Section 33.02(a) of the Texas Penal Code—the Harmful Access by Computer Act ("HACA")—by intentionally or knowingly accessing Dr. Guerra's computer, computer network, or computer system, as stated above, without Dr. Guerra's effective consent.

40.     This intentional or knowing violation gives rise to a civil cause of action under Texas Civil Practice & Remedies Code Section 143.001.

41.    As a result of the Cantus' unlawful conduct, Dr. Guerra suffered loss in expending time, money, and resources reasonably related to the computer intrusion in the aggregate of at least $5,000.00 in value, which includes costs incurred by Dr. Guerra to engage DFC, investigate the intrusion of the iPad and other computers potentially intruded upon, assess the damage, and attempt to restore security to her various intruded-upon systems, as well as time Dr. Guerra had to take off from work to address and resolve these matters.

## VIII.   COUNT THREE – STALKING AND HARRASSING BEHAVIOR,

### Tex. Civ. Prac. & Rem. Code § 85.001 et. seq.

42.    Counter-Plaintiff incorporates the above paragraphs by reference as though fully set forth herein.

43.    In violation of Tex. Civ. Prac. & Rem. Code § 85.001 et. seq., Melody Joy Cantu

repeatedly sent electronic communications in a manner reasonably likely to—and, in fact, with the intent to—harass, annoy, alarm, abuse, torment, embarrass, or offend Dr. Guerra. In addition to harassing communications to Dr. Guerra directly, Melody repeatedly engaged in harassing behavior and called and messaged Dr. Guerra's former in-laws and professional colleagues in an intrusive and disparaging manner.

44.     As a result of Melody's deliberate campaign of stalking and harassment, Dr. Guerra reasonably feared for her safety or the safety of a member of her family due to threats of bodily injury and had to hire security for her wedding and has felt compelled to sacrifice larger business opportunities in order to feel safe and insulated from the stalking and harassment. Melody had the apparent ability to carry out such threats as evidenced by her ambush of Dr. Guerra in a public parking lot and Dr. Cantu's demonstrated heightened level fear that compelled him to call his parents for help and to keep a gun with him as protection against Melody. Dr. Guerra made repeated prior demands that Melody stop engaging in such harassing behavior but Melody nonetheless continued undeterred. Both Dr. Guerra *and* Dr. Cantu reported Melody's harassing and stalking behavior to the police.

45.     Counter-Defendant Melody Cantu's stalking and harassing behavior is the proximate cause of actual and exemplary damages.

## IX.     COUNT FOUR – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

46.     Counter-Plaintiff incorporates the above paragraphs by reference as though fully set forth herein.

47.     Dr. Cantu and Melody Cantu acted intentionally or recklessly by impersonating Dr. Guerra for the purposes of creating false online profiles for dating websites for persons with HIV and other sexually transmitted disease websites, concealing her iPad and using it to attempt to hack

into her email and Verizon accounts, publicly and falsely accusing Dr. Guerra of participating in human trafficking and grooming minors for human trafficking, spreading falsehoods about Dr. Guerra to Dr. Guerra's former employer, professional colleagues and in-laws, filing a false police report against Dr. Guerra, verbally harassing Dr. Guerra and her daughters and engaging in conduct causing severe psychological harm which manifested in physical pain and suffering.

48.     Melody, by her repeated and unrelenting actions against Dr. Guerra, intended to inflict emotional distress, or knew or should have known that emotional distress was a likely result of her actions, and such conduct was extreme and outrageous.

49.     The Cantus' conduct proximately caused severe emotional distress and anxiety to Dr. Guerra by the resulting damage to her reputation, custody arrangement of her daughters, and the once-amicable relationship with her ex-husband.  As a result of the above-mentioned incidents and circumstances, Dr. Guerra developed and was diagnosed with Post Traumatic Stress Disorder (PTSD).  Dr. Guerra now experiences heightened suspicion and fear, particularly in regard to being watched or targeted.  Dr. Guerra has experienced heartbreak, tears, sleepless nights, increased illness and vomiting as a result of the related and traumatic events, inability to perform professionally, and damaged reputation.

50.     Dr. Guerra's severe emotional distress cannot be remedied by any other cause of action.

51.     Counter-Defendant Melody Cantu's tortious behavior is the proximate cause of actual and exemplary damages.

## COUNT FIVE – DEFAMATION

52.     Counter-Plaintiff Dr. Guerra incorporates the above paragraphs by reference as though fully set forth herein.

53.     The statements and representations made and published by Melody Joy Cantu to Dr. Guerra's former employer, colleagues, friends, and family were false and were recklessly and maliciously made, including, without limitation, that Dr. Guerra contracted a sexually transmitted disease and engaged in human trafficking and groomed minors for human trafficking.  Melody Cantu had no right, privilege or justification to make the statements.

54.     The statements were defaming to Dr. Guerra in the conduct of her personal life and business and were concerning to her.  Despite written demand from Dr. Guerra's attorney to cease and desist from making false statements and to correct such statement, Melody refused and/or failed to do so.  Melody Cantu acted with actual malice and/or with negligence regarding the truth of her statements.  Furthermore, the statements and representations were so egregious and obviously hurtful as to constitute libel and slander *per se.*

55.     Dr. Guerra has been materially damaged as a direct and proximate result of the defaming statements and representations made by Melody Cantu.  Specifically, after the two complaints were made to Humana by the Cantus, Dr. Guerra was fired in February of 2020.

56.     Counter-Defendant Melody Cantu's tortious behavior is the proximate cause of actual and exemplary damages.

## X.      COUNT SIX – ABUSE OF PROCESS

57.     Counter-Plaintiff Dr. Guerra incorporates the above paragraphs by reference as though fully set forth herein.

58.     Dr. Cantu and Melody Joy Cantu filed this lawsuit against Dr. Guerra without any probable cause for the suit.  The lawsuit was filed with the ulterior motive of inflicting damage to Dr. Guerra, her reputation, and her career and is just another form of aggression utilized by Counter-Defendants as part of their sustained campaign of harassment against Dr. Guerra.  As with

Counter-Defendants' prior unlawful actions, this lawsuit is predicated on Counter-Defendants' attempt to create a power imbalance for the purposes of personal retaliation and revenge against Dr. Guerra and is otherwise a domestic/family dispute that Counter-Defendants are attempting to play out in a public forum under the auspice of a "proper" use of process for the illegitimate purpose of causing embarrassment and harm to Dr. Guerra and her family.

59.     Dr. Guerra has been materially damaged as a direct and proximate result of Counter-Defendants' improper use of process.

## XI.     ATTORNEYS' FEES

60.     As a result of this lawsuit initiated by Counter-Defendants, Dr. Guerra has been required to  retain the law firm of Davis, Cedillo & Mendoza, Inc. to defend and prosecute her counterclaims in this action and has agreed to pay the law firm reasonable and necessary attorney's fees.  Accordingly, an award of reasonable and necessary attorney's fees, costs and expenses to Dr. Guerra would be equitable and just, and Dr. Guerra is entitled to recover such reasonable and necessary attorney's fees, costs and expenses under applicable law.

## XII.     PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant, DR. SANDRA GUERRA, prays that Plaintiffs take nothing by this suit against Dr. Sandra Guerra, and the Court grant Defendant, Dr. Sandra Guerra, all such other and further relief, including actual, economic, and consequential damages, including reasonable and necessary attorneys' fees, both general and special, at law or in equity, to which she may justly be entitled.

Dated:  November 27, 2020.

Respectfully submitted,

**DAVIS, CEDILLO & MENDOZA, INC.**

McCombs Plaza, Suite 500
755 E. Mulberry Avenue
San Antonio, Texas 78212
Telephone No.: (210) 822-6666
Telecopier No.: (210) 822-1151

By:      */s/Ricardo G. Cedillo*
    RICARDO G. CEDILLO
    Texas State Bar No. 04043600
    rcedillo@lawdcm.com
    LESLIE J. STRIEBER, III.
    Texas State Bar No. 19398000
    lstrieber@lawdcm.com
    BRANDY C. PEERY
    Texas State Bar No. 24057666
    bpeery@lawdcm.com
    COURTNEY R. GAINES
    State Bar No. 24098273
    cgaines@lawdcm.com

ATTORNEYS FOR DEFENDANT, DR. SANDRA GUERRA

## CERTIFICATE OF SERVICE

I certify that on this 27th day of November 2020, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the parties on record.

*/s/Ricardo G. Cedillo*
RICARDO G. CEDILLO