# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO

---

**5:20-CV-0746 JKP – HJB**

MELODY JOY CANTU AND DR. RODRIGO
CANTU,

Plaintiffs,

v.

DR. SANDRA GUERRA and DIGITAL
FORENSICS CORPORATION, LLC,

Defendants.

---

**Motion to Dismiss Defendant Dr. Sandra Guerra's Amended Counterclaims**

TABLE OF CONTENTS

Introduction .................................................................................................................... 1

Legal Standard ............................................................................................................... 2

Argument ....................................................................................................................... 3

I.   Count One Fails to Allege a CFAA Violation ........................................................ 3

  A.   Count One Still Insufficiently Pleads CFAA Loss .............................................. 3

  B.   Dr. Cantu Accessed His Daughter's iPad with Authorization ............................. 5

  C.   Dr. Guerra Does Not Have Standing to Sue for Alleged CFAA Violations to Others ....... 6

II.   Count Two Fails to Allege a HACA Violation ........................................................ 7

  A.   Count Two Does Not Sufficiently Plead an Injury Under HACA ....................... 7

  B.   Dr Cantu Had Parental Rights to Access His Minor Daughter's iPad in His Home ........... 8

III.   Count Three Fails to Allege Conduct Constituting Stalking or Harassment ......... 8

  A.   Count Three Fails to Allege Threatened Physical Injury or Offense .................. 8

  B.   The Statute of Limitations for Count Three Has Run ......................................... 10

IV.   Count Four Fails to Allege Extreme and Outrageous Conduct ........................... 11

  A.   IIED Requires Extreme and Outrageous Conduct .............................................. 11

  B.   The Statute of Limitations on Count Four Has Run ........................................... 13

V.   Count Five Fails to Allege Any Particular Defamatory Statements ..................... 14

  A.   Dr. Guerra has not Alleged She Requested a Correction, Clarification or Retraction of any Defamatory Statements as Required by Texas Law ............... 14

  B.   Texas Law Requires that Defamation be Pleaded with Particularity ................. 15

  C.   The Statute of Limitations on Count Five Has Run ........................................... 16

VI.   Count Six Fails to Sufficiently Plead Abuse of Process .................................... 17

Conclusion ................................................................................................................... 19

TABLE OF AUTHORITIES

**Cases**

*Alliantgroup, L.P. v. Feingold*, 803 F. Supp. 2d 610, (S.D. Tex. 2011)..........................................7

*Ashcroft v. Iqbal*, 556 U.S. 662, (2009)................................................................................2

*Atchison, Topeka & Santa Fe Ry. v. Buell*, 480 U.S. 557..............................................................12

*Barton v. Barnett*, 226 F. Supp. 375 (N.D. Miss. 1964)..............................................................16

*Bell Alt. Corp. v. Twombly*, 550 U.S. 554 (2007)..................................................................2, 3

*Bell v. Simms*, 2009 U.S. Dist. LEXIS 152117 (W.D. Ark. Mar. 9, 2009)........................................6

*Berry v. Covarrubias*, No. 14-03-01137-CV, 2004 Tex. App. LEXIS 6492, (Tex. App. July 22, 2004) ......................................................................................................................9

*Bhalli v. Methodist Hosp.*, 896 S.W.2d 207..................................................................................13

*BHL Boresight, Inc. v. Geo-Steering Sols., Inc.*, No. 4:15-CV-00627, 2016 U.S. Dist. LEXIS 44729 (S.D. Tex. Mar. 29, 2016) .........................................................................................4

*Blackstock v. Tatum*, 396 S.W.2d 463 .............................................................................................2

*Bossin v. Towber*, 894 S.W.2d 25, 33, 1994 Tex. App. LEXIS 3109 ..........................................18

*Brackens v. State*, 312 S.W.3d 831 (Tex. App. 2009) .......................................................................8

*Cf. Sw. Airlines Co. v. BoardFirst, L.L.C.*, No. 3: 06-CV-0891-B, 2007 U.S. Dist. LEXIS 96230 (N.D. Tex. Sep. 12, 2007)....................................................................................................7

*Cheatam v. JCPenney Co*, No. 1:16-CV-00072-MAC, 2016 U.S. Dist. LEXIS 121531 (E.D. Tex. July 13, 2016)....................................................................................................................15

*Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734 (S.D. Tex. 1998) ................................2

*In re Indusoft, Inc.*, No. 03-16-00677-CV, 2017 Tex. App. LEXIS 110 (Tex. App. Jan. 10, 2017)..................................................................................................14

*Knepp v. State*, No. 05-08-00002-CR, 2009 Tex. App. LEXIS 1765 (Tex. App. Mar. 13, 2009) . 8

*Kosa v. Dep't of Homeland Sec.*, Civil Action No. 3:09-CV-196-N (BH), 2009 U.S. Dist. LEXIS 78347 (N.D. Tex. June 23, 2009)..........................................................................................7

*Meyers v. Siddons-Martin Emergency Grp. LLC*, No. 16-1197, 2016 U.S. Dist. LEXIS 130348 (E.D. La. Sep. 23, 2016) ...................................................................................................4

*Natividad v. Alexsis, Inc.*, 875 S.W.2d 695 (Tex. 1994) ..............................................................11

*Pittsburg SNF LLC v. PharMerica East, Inc.*, 2012 U.S. Dist. LEXIS 141005..........................18

*Porterfield v. Galen Hosp. Corp.*, 948 S.W.2d 916........................................................................11

*Rajaee v. Design Tech Homes, Ltd.*, No. H-13-2517, 2014 U.S. Dist. LEXIS 159180 (S.D. Tex. Nov. 11, 2014) ....................................................................................................................4

*Romero v. Brown*, 937 F.3d 514 (5th Cir. 2019) ...........................................................................5

*Scott v. Houma-Terrebonne Hous. Auth.*, CV No. 02-770 SECTION "N" (4), 2002 U.S. Dist. LEXIS 16719 (E.D. La. Sep. 5, 2002)..............................................................................15

*Sw. Airlines Co. v. BoardFirst, L.L.C.*, No. 3: 06-CV-0891-B, 2007 U.S. Dist. LEXIS 96230 (N.D. Tex. Sep. 12, 2007) ...................................................................................................4

*Tandy Corp. v. McGregor*, 527 S.W.2d 246 ...................................................................................18

*Twyman v. Twyman*, 855 S.W.2d 619 (Tex. 1993)..........................................................................11

*United States ex rel. Rigsby v. State Farm Fire & Cas. Co.*, No. 1:06CV433-HSO-RHW, 2015 U.S. Dist. LEXIS 197006 (S.D. Miss. Aug. 6, 2015) ........................................................4

*Vest Safety Med. Servs, LLC v. Arbor Envtl. LLC*, 2020 U.S. Dist. LEXIS 124453 (S.D. Tex. July 15, 2020) .......................................................................................................................7

*Wilson v. Monarch Paper Co.*, 939 F.2d 1138 .............................................................................12

*Wornick Co. v. Casas*, 856 S.W.2d 732 (Tex. 1993) ..................................................... 11

**Statutes**

18 U.S.C. § 1030(a)(2)(C) ................................................................................. 3
Tex. Civ. Prac. & Rem. Code § 16.002 ................................................................ 17
Tex. Civ. Prac. & Rem. Code § 16.003 ........................................................... 10, 13
Tex. Civ. Prac. & Rem. Code § 73.055 ........................................................... 14, 15
Tex. Civ. Prac. & Rem. Code § 85.003 .............................................................. 8, 9
Tex. Civ. Prac. & Rem. Code §143.001 ................................................................ 7
Tex. Penal Code §33.02(a).................................................................................. 7

**Other Authorities**

Restatement 2d of Torts, § 46 cmt. d (1965) .............................................. 11, 12, 13

Plaintiffs Dr. Rodrigo Cantu and Melody Joy Cantu, through their undersigned attorneys, move this Court under Fed. R. Civ. P. 12(b)(6) to dismiss Defendant Dr. Sandra Guerra's amended counterclaims.

**Introduction**

This Court should dismiss Dr. Guerra's amended counterclaims with prejudice under Federal Rule of Civil Procedure 12(b)(6) because they are insufficiently pleaded as a matter of law.

Dr. Guerra's Amended Complaint fails for the same reasons outlined in our Motion to Dismiss the Original Counterclaims. What little new that's been added to her Complaint changes nothing.

First, Dr. Guerra still insufficiently alleges a violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(a)(2)(C) for unauthorized access to a computer because: (1) she has not plausibly pleaded CFAA losses of $5000 or more reasonably related to the alleged computer intrusion; (2) Dr. Cantu, as a parent and a matter of law, is authorized to access the computers his minor daughter uses in his home; (3) the Verizon computers allegedly accessed are not Dr. Guerra's but Verizon's, and (4) 18 U.S.C. § 1039 is a federal criminal statute that does not permit civil actions.

Second, Dr. Guerra's allegation of a violation of the Texas Harmful Access by Computer Act ("HACA") in Count Two fails for the similar reasons the CFAA claims do. It fails to allege a cognizable HACA Injury. Moreover, Dr. Cantu does not need consent as a parent to access his minor daughter's iPad in his home.

Third, Dr. Guerra has failed to allege plausible facts that sufficiently establish she was stalked and harassed by Melody Cantu as required by Texas law, because, among other things,

there is no allegation Melody Cantu threatened to physically injure Dr. Guerra or commit an offense against her, that Melody Cantu had the means to do so, and that Dr. Guerra clearly told Mrs. Cantu to stop. And most of the alleged harassment was directed towards other people. Finally, Count Three is barred by the two-year statute of limitations.

Fourth, Dr. Guerra fails to plead plausible facts that constitute extreme and outrageous conduct necessary to sustain a claim for Intentional Infliction of Emotional Distress ("IIED"). And Count Four is barred by the two-year statute of limitations.

Fifth, Dr. Guerra fails to allege she asked the Cantus to correct their allegedly defamatory statements, as Texas Law requires, nor does she particularly identify any defamatory statements by Plaintiffs. And Count Five is barred by the one-year statute of limitations.

Sixth, Dr. Guerra insufficiently pleads Abuse of Process as a matter of law because it is a cause of action limited to the illegitimate use of legal process and filing a lawsuit against someone doesn't count.[1]

As set forth below, all of Co-Defendant's (Dr. Guerra) counterclaims should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

## Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a court should dismiss an action when the complaint fails to state a claim upon which relief can be granted. To survive a motion to dismiss under Rule 12(b)(6), the complaint must assert a plausible claim and must set forth sufficient factual allegations to support the claim.[2]

---

[1] *See, e.g., Blackstock v. Tatum*, 396 S.W.2d 463, 468 (Tex. Civ. App. 1965).
[2] *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (citing *Bell Alt. Corp. v. Twombly*, 550 U.S. 554 (2007)); *see also Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 737-38 (S.D. Tex. 1998) (explaining that dismissal can be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory).

To satisfy the standard under *Twombly* and *Iqbal*, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[3] A claim lacks facial plausibility when the plaintiff fails to plead sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable under the alleged claim.[4] "A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."[5] Therefore, if allegations are merely "conclusory," they are "not entitled to be assumed true."[6] Even if a court decides that the factual allegations are entitled to an assumption of truth, however, the facts must also "plausibly suggest an entitlement to relief."[7]

## Argument

As argued below, Dr. Guerra's amended counterclaims continue to fail to allege plausible facts that if true would entitle her to relief as a matter of law. Moreover, all but Counts One and Two are barred by the statute of limitations as determined from the face of the Complaint.

## I.    Count One Fails to Allege a CFAA Violation

Count One still insufficiently alleges CFAA loss and that the access to Dr. Guerra's computers was unauthorized.

### A.    Count One Still Insufficiently Pleads CFAA Loss

Dr. Guerra's amended CFAA counterclaim should be dismissed for failure to sufficiently plead the minimum $5,000 in loss for the CFAA claim.[8] 18 U.S.C. §1030(g) requires that CFAA

---

[3] *Id.* (citing *Twombly*, 550 U.S. at 570).
[4] *Id.* (citing *Twombly*, 550 U.S. at 556).
[5] *Id.* at 1950.
[6] *Id.*
[7] *Id.* at 1951.
[8] *See* 18 U.S.C. § 1030(a)(2)(C) (prohibiting unauthorized access to a protected computer).

loss be reasonably related to the alleged computer intrusion and total at least $5,000 over a one-year period. Courts routinely dismiss pleadings that only generally allege CFAA loss when it isn't clear on the face of the complaint if an alleged loss is reasonably related to the unauthorized access.[9] CFAA loss must be reasonably related to the alleged computer intrusion, and this must be clear from the complaint. That isn't the case here.

There is no connection between the alleged computer intrusion and the CFAA loss that reasonably establishes a connection between the intrusion and the loss as a matter of law.[10] Dr. Guerra uses general allegations such as that she believed it necessary to hire Co-Defendant Digital Forensics Corporation, LLC ("DFC") to investigate on her behalf.[11] But a felt necessity is not sufficient grounds for CFAA loss, and she still fails to cite specific costs. Dr. Guerra's timeline of events for hiring DFC doesn't fix this deficiency.

According to the Phase I of DFC's report, Dr. Guerra hired them on May 16, 2018, the day after she found out the Cantus reconciled.[12] The timeline of events muddies the waters and is irrelevant because Dr. Guerra fails to plead a plausible, specific loss. Dr. Guerra's timeline does not clarify at what point in May of 2018 she believed someone was trying to access her Verizon account nor why it required taking time off from work rather than taking simple remedial

---

9 *See Meyers v. Siddons-Martin Emergency Grp. LLC*, No. 16-1197, 2016 U.S. Dist. LEXIS 130348, at *7-9 (E.D. La. Sep. 23, 2016); *United States ex rel. Rigsby v. State Farm Fire & Cas. Co.*, No. 1:06CV433-HSO-RHW, 2015 U.S. Dist. LEXIS 197006, at *37-38 (S.D. Miss. Aug. 6, 2015); *BHL Boresight, Inc. v. Geo-Steering Sols., Inc.*, No. 4:15-CV-00627, 2016 U.S. Dist. LEXIS 44729, at *59-61 (S.D. Tex. Mar. 29, 2016) ("Without allegations that allow the Court to infer that Defendants are liable for cognizable losses under the CFAA, the Court must conclude that BHL's complaint runs afoul of Rule 12(b)(6) requirements."); *Rajaee v. Design Tech Homes, Ltd.*, No. H-13-2517, 2014 U.S. Dist. LEXIS 159180, at *9 (S.D. Tex. Nov. 11, 2014)(" Plaintiff has not offered evidence sufficient to raise a genuine issue of material fact that he sustained $5,000 in cognizable "loss" under the CFAA, and [his] CFAA claim is dismissed.").
10 *Sw. Airlines Co. v. BoardFirst, L.L.C.*, No. 3: 06-CV-0891-B, 2007 U.S. Dist. LEXIS 96230, at *46-48 (N.D. Tex. Sep. 12, 2007) ("There is thus no basis upon which the Court may determine whether Southwest's responsive efforts constitute "reasonable" costs incurred by the company due to BoardFirst's purported unauthorized access of the Southwest computer system.").
11 (Dr. Guerra's Am. Countrcl. ¶30).
12 (First Am. Compl. ¶¶ 26, 27)(Dkt. No. 6.)

measures like changing her password. And if there is any loss here, it is Verizon's to claim, and not Dr. Guerra's, because it wasn't her computer network that was allegedly accessed but rather Verizon's. As a matter of law, she's failed to sufficiently plead CFAA loss, even if she has standing to claim Verizon's CFAA loss as her own.

Dr. Guerra also tries to bolster her CFAA loss claims by stating she started receiving emails from dating websites near or around the end of May or beginning of June 2018.[13] But receiving unsolicited emails from dating websites has nothing to do with any intrusion into Dr. Guerra's computer networks and there is no plausible way that receiving SPAM emails can be construed as a computer network intrusion under the CFAA. Dr. Guerra's claims fail to sufficiently plead specific cognizable CFAA loss, and this Court should the Court should dismiss Count One for insufficiently and implausibly pleading loss as a matter of law.

### B.  Dr. Cantu Accessed His Daughter's iPad with Authorization

Dr. Guerra and Dr. Cantu share two daughters. But who paid is irrelevant because as a parent, Dr. Cantu had every right to access his minor daughter's computer. Regardless of who purchased the iPad, as a parent of a minor, Dr. Cantu was authorized to access his daughter's electronics. Regardless of who owns the iPad, it was in the possession of their minor daughter in Mr. Cantu's home, and he was within his parental rights to access his daughter's computer. Dr. Rodrigo Cantu, a co-parent, is entitled to check the electronics his daughter uses.[14]

Dr. Guerra also claims that she was made to believe that the iPad was "lost."[15] However, there is a lack of clarity in who informed Dr. Guerra the iPad was lost in the first place nor who

---

[13] (Dr. Guerra's Am. Countrcl. ¶ 27).
[14] *Romero v. Brown*, 937 F.3d 514, 519 (5th Cir. 2019) ("Indeed, a parents' right to "care, custody, and control of their children" is "perhaps the oldest of the fundamental liberty interests recognized by [the Supreme] Court." (citations omitted)).
[15] (Dr. Guerra's Resp. to Mot. to Dismiss ¶14)(Dkt. No. 32.)

actually lost the iPad. We are forced to make the mental leap from "Dr. Guerra had been made to believe the iPad had been "lost"…" to "Counter-Defendants were concealing the iPad from Dr. Guerra and her daughter…"[16] Regardless, it's irrelevant to any CFAA claim that the iPad was lost.

### C.   Dr. Guerra Does Not Have Standing to Sue for Alleged CFAA Violations to Others

The Verizon computers allegedly accessed are not Dr. Guerra's but Verizon's, and she does not have standing to sue on behalf of alleged injuries to Verizon's computers.[17]

> However, liability to a third party under the CFAA requires both illicit access of a computer and damage or loss to the third party that owns the information on the computer.
> In this case, the computer in question belonged to Arvest, not to Bell. Only Arvest can define the limits of authorization to access Arvest's computers. According to Bell's complaint, Simms used an Arvest computer to access her personal information, but Bell does not allege that Simms lacked legitimate access to Arvest's computer, or exceeded her authorization from Arvest. In the absence of illicit access, Simms and Arvest cannot be liable under the CFAA for any loss or damage that Bell may have suffered.[18]

Verizon is the computer owner and thus, assuming the allegations are true, the cause of action accrues to Verizon, and not Defendant Dr. Guerra. In her amended counterclaims, Dr. Guerra does not address how she has standing to sue nor does she mention a loss due to the alleged access. Accordingly, the CFAA claim should be dismissed.

---

[16] *Id.*
[17] (Dr. Guerra's Am. Countrcl. ¶21).
[18] *Bell v. Simms*, 2009 U.S. Dist. LEXIS 152117, *8 (W.D. Ark. Mar. 9, 2009).

**II.      Count Two Fails to Allege a HACA Violation**

The Court should dismiss Count Two's Texas Harmful Access by Computer Act (HACA) for similar reasons argued in the CFAA claim above. In her amended counterclaims, Dr. Guerra still insufficiently pleads injury, and ignores the fact that Dr. Cantu had parental rights to access his minor daughter's iPad in his home. Moreover, she does not have standing to assert the HACA claims of others.

**A.      Count Two Does Not Sufficiently Plead an Injury Under HACA**

Tex. Civ. Prac. & Rem. Code §143.001 in conjunction with Tex. Penal Code §33.02(a) creates a civil cause of action against any person who "knowingly accesses a computer, computer network, or computer system without the effective consent of the owner."[19] Dr. Guerra has alleged no cognizable injury under HACA.[20] Dr. Guerra has yet again only alleged that Plaintiffs "intentionally or knowingly accessing Dr. Guerra's computer, computer network, or computer system, as stated above, without Dr. Guerra's effective consent."[21] It is unclear what "access" she is referring to and we are left to assume she means the alleged attempted hacking of Verizon.[22] As set forth above, Dr. Guerra does not have standing to sue on behalf of Verizon and has alleged no harm to herself by the alleged attempted hacks. There are no allegations that the hacks were successful and indeed by her own statements, it appears no breach ever occurred. Dr. Guerra chose to close the account, which she alleges was due to repetitive attempts to access her

---

[19] Tex. Civ. Prac. & Rem. Code §143.001; Tex. Penal Code §33.02(a); *Kosa v. Dep't of Homeland Sec.*, Civil Action No. 3:09-CV-196-N (BH), 2009 U.S. Dist. LEXIS 78347, at *7-9 (N.D. Tex. June 23, 2009).
[20] *Cf. Sw. Airlines Co. v. BoardFirst, L.L.C.*, No. 3: 06-CV-0891-B, 2007 U.S. Dist. LEXIS 96230, at *49-51 (N.D. Tex. Sep. 12, 2007) ("For instance, while certain investigative and responsive costs may be recoverable as a "loss" under the CFAA, Southwest provides no authority that the same types of costs constitute an "injury" within the meaning of § 143.001.). *See also*, *Vest Safety Med. Servs, LLC v. Arbor Envtl. LLC*, 2020 U.S. Dist. LEXIS 124453, *6 (S.D. Tex. July 15, 2020); *Alliantgroup, L.P. v. Feingold*, 803 F. Supp. 2d 610, 630 (S.D. Tex. 2011).
[21] (Dr. Guerra's Am. Countrcl. ¶39).
[22] (*Id.* ¶¶21, 27, 28).

accounts.[23] However, she has pleaded nothing that support the proposition that a breach

occurred. As the defendant failed to allege any loss or even a breach, even taking all her alleged

facts as truth, the HACA claim must still be dismissed.

**B.     Dr Cantu Had Parental Rights to Access His Minor Daughter's iPad in His Home**

Dr. Cantu had effective consent to access his minor daughters iPad in his home for the

same reasons stated in the CFAA argument section above.[24] Dr. Cantu had effective consent to

access it both as his minor daughter's father and from Dr. Guerra, who knowingly sent the iPad

with her daughter to Dr. Cantu's home.[25]

**III.   Count Three Fails to Allege Conduct Constituting Stalking or Harassment**

The Court should still dismiss Dr. Guerra's Texas stalking and harassment count for

failure to plead that the Plaintiffs threatened to commit bodily injury or an offense against her.

**A.     Count Three Fails to Allege Threatened Physical Injury or Offense**

To bring a civil stalking and harassment claim Texas law requires that "on more than one

occasion the defendant engaged in harassing behavior…as a result of the harassing behavior, the

claimant reasonably feared for the claimant's safety or the safety of a member of the claimant's

family; and…(A) the defendant, while engaged in harassing behavior, by acts or words

threatened to inflict bodily injury on the claimant or to commit an offense against the claimant, a

member of the claimant's family, or the claimant's property.[26] Dr. Guerra's amended

---

[23] (Dr. Guerra's Resp. to Mot. to Dismiss ¶16)(Dkt. No. 32.)
[24] *See* Part [I.B.], above; *Brackens v. State*, 312 S.W.3d 831, 839 (Tex. App. 2009) ("Appellant asserts that Legg was not authorized to view any files on his laptop. However, as noted above, appellant did not place any limitations on his request to back up his computer files").
[25] *Knepp v. State*, No. 05-08-00002-CR, 2009 Tex. App. LEXIS 1765, at *9 (Tex. App. Mar. 13, 2009) ("By leaving his computer open and unsecured, appellant knew he was leaving it for his coworkers to access.").
[26] Tex. Civ. Prac. & Rem. Code § 85.003.

counterclaims contain no such allegations. Moreover, the counterclaims never allege that Melody Cantu "had the apparent ability to carry out the threat" and that this ability reasonably instilled fear in Dr. Guerra of harm to herself or a family member, nor does it allege that Dr. Guerra once clearly demanded that Melody Cantu stop, all of which are statutorily required in Texas.[27] Dr. Guerra repeatedly circles around one nonviolent incident, which she proceeds to use as the one and only event of so-called harassing behavior, claiming it is the reason she fears for her and her children's safety.[28] In fact, that is the sole event upon which Dr. Guerra bases most of her claims. Dr. Guerra makes a vague statement in her Response to our Motion to Dismiss her Original Counterclaims, saying she made demands to Melody Cantu, requesting she stop this alleged harassment, but does not specify further.[29] This contrasts with the Cantu's Complaint which specifically describes Dr. Guerra's repetitive harassment and harming of Plaintiffs.[30]

Additionally, as alleged in Plaintiffs' First Amended Complaint, the Bexar County Court dismissed with prejudice the criminal malicious prosecution initiated by Dr. Guerra and co-defendant Digital Forensics Corporation against Plaintiff Melody Cantu and that is the basis of her malicious prosecution claim.[31] Because it was dismissed with prejudice, Dr. Guerra is on specious ground when she argues the fact that the criminal matter was dismissed on "speedy trial" grounds as a basis to say that there is still the possibility of Plaintiff Melody Cantu being "guilty."[32] A dismissal with prejudice forecloses future prosecution under the same charges and counts. Nor did the prosecution lack an opportunity to prosecute the case. According to the

---

[27] *See* Tex. Civ. Prac. & Rem. Code § 85.003; *Berry v. Covarrubias*, No. 14-03-01137-CV, 2004 Tex. App. LEXIS 6492, at *18-20 (Tex. App. July 22, 2004) ("Berry did not allege the existence or violation of a restraining order and provided no summary judgment proof the appellees' allegedly harassing behavior had been reported to the police as a stalking offense").
[28] (Dr. Guerra's Am. Countrcl. ¶¶16-20, 44.)
[29] (Dr. Guerra's Resp. to Mot. to Dismiss ¶23)(Dkt. No. 32.)
[30] (First Am. Compl.)(Dkt. No. 6.)
[31] (*Id.* at ¶ 53).
[32] (Dr. Guerra's Resp. to Mot. to Dismiss ¶24)(Dkt. No. 32.)

court's order dismissing the case, the Court gave the prosecution a "lengthy reset in order to order to investigate the merits of this case" a reset that the court is quoted to say was "considerably longer than usual."[33] The prosecution had over 8 months to investigate and prosecute the case and came up empty handed. Dr. Guerra's alleged facts are implausible on their face because the prosecution had ample time for its case and the court dismissed the prosecution with prejudice. Finally, the fact that most of the allegations related to stalking and harassment are in regard to other people further bolsters that the Court should dismiss Count Three with prejudice.

### B.    The Statute of Limitations for Count Three Has Run

In the state of Texas, civil actions for personal injury have a two-year statute of limitations.[34] The two-year statute of limitations commences at the time the cause of action accrues. According to Dr. Guerra's facts, the date of the alleged harassment by Melody Cantu against Dr. Guerra occurred April 1, 2018.[35] This action was commenced on June 24, 2020, over two years from the date of the alleged harassment.[36] Dr. Guerra also cites to the Texas Civil Code §16.069 in an attempt to revive the statute of limitations for her stalking and harassment claims.[37] However, the Cantus' claims against Co-Defendant Dr. Guerra do not arise from and/or correlate to the a family dispute or state civil court custody case. The Cantus' claims all emulate from the repetitive hacking and harassment they have been met with due to both Co-Defendant's' actions. None of the counts in Plaintiffs' complaint reference family disputes or a

---

[33] *State of Texas vs. Melody Joy Cantu,* Matter No. 601478, 2019, "County Clerk & District Clerk Court Records Search", https://search.bexar.org/Case/CaseDetail?r=461f9aa1-f5db-488a-ab35-2d7110b166ee&st=l&l=Cantu&fn=Melody&m=&&p=1_601478++++++++CC6+1876113100000 (June 24, 2019).
[34] Tex. Civ. Prac. & Rem. Code § 16.003.
[35] (Dr. Guerra's Am. Countrcl. ¶16).
[36] (First Am. Compl.)(Dkt. No. 6.)
[37] (Dr. Guerra's Resp. to Mot. to Dismiss ¶26)(Dkt. No. 32.)

civil court custody case.[38] Thus the Court should dismiss Count Three because the Statute of Limitations has run.

## IV.   Count Four Fails to Allege Extreme and Outrageous Conduct

Dr. Guerra still fails to plead plausibly outrageous facts that give rise to a cause of action for Intentional Infliction of Emotional Distress.

### A.   IIED Requires Extreme and Outrageous Conduct

To recover under this tort, the plaintiff must prove that 1) the defendant acted intentionally or recklessly, 2) the conduct was "extreme and outrageous," 3) the actions of the defendant caused the plaintiff emotional distress, and 4) the resulting emotional distress was severe."[39] Defendant Dr. Guerra must, and has not, allege conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."[40] "Generally, insensitive or even rude behavior does not constitute extreme and outrageous conduct."[41] "Similarly, mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities do not rise to the level of extreme and outrageous conduct."[42] In determining whether conduct is extreme and outrageous context and the relationship of the parties is important as the nature of the

---

[38] (First Am. Compl.)(Dkt. No. 6).
[39] *Wornick Co. v. Casas*, 856 S.W.2d 732, 734 (Tex. 1993).
[40] *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994) (quoting *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993)); Restatement 2d of Torts, § 46 cmt. d (1965).
[41] *Natividad*, 875 S.W.2d at 699.
[42] *See Porterfield v. Galen Hosp. Corp.*, 948 S.W.2d 916, 920 (Tex. App.--San Antonio 1997, writ denied); Restatement 2d of Torts, § 46 cmt. d (1965)."

relationship can change the effect the standards to which society holds the parties.[43] Behavior is not outrageous merely because it is rude or event tortious.[44]

In this case Defendant Dr. Guerra has a rather notoriously fraught type of relationship with the Plaintiffs. They are her ex-husband and her ex-husband's new wife respectively. While this type of relationship does not grant the parties the right to behave maliciously towards each other, it does assume some level of friction. In paragraph 29 of her amended counterclaims, Dr. Guerra alleges that the Cantus created false accounts for STD websites, attempted to hack her email and Verizon accounts, and verbally harassed her and her daughters which caused her to suffer post-traumatic stress disorder. If the conduct alleged is true it is understandably upsetting however, it cannot "reasonably be regarded as so extreme as to "go beyond all possible bounds of decency."[45] However, it is not so extreme or outrageous as to give rise to an IIED claim. If it were the Courts would be flooded with IIED litigation by people upset over the trash talk that regularly occurs on the internet. Courts sensibly avoid this problem by limiting the scope of IIED claims to extreme and outrageous conduct.

Examples of cases where a claimant recovered under IIED are extreme indeed. The conduct alleged, even if true, does not rise to the level of causing a woman to miscarry by shooting her pet dog in front of her,[46] causing a heart patient to suffer a heart attack by violated doctor's orders and causing a scene in the hospital room to settle an insurance claim,[47]

---

[43] *See Atchison, Topeka & Santa Fe Ry. v. Buell*, 480 U.S. 557, 569, 94 L. Ed. 2d 563, 107 S. Ct. 1410 (1987) ("Some States consider the context and the relationship between the parties significant, placing special emphasis on the workplace."); *Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1143 (5th Cir. 1991) ("The facts of a given claim of outrageous conduct must be analyzed in context . . . ."). "The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests." Restatement 2d of Torts, § 46 cmt. e (1965).
[44] *See* Restatement 2d of Torts, § 46, cmt. d.
[45] See *Id.*
[46] *Id.* at § 46
[47] *Id.*

attempting to commit suicide in a someone else's kitchen with the intention to distress them,[48] giving a female swim party guest a swimsuit which dissolves in water for her use in a co-ed swimming pool,[49] or a police officer telling a suspect that their child is dying in the hospital and they cannot go see them unless they give a confession.[50] Instead this case is far more akin to telling an overweight girl that she looks like a hippo,[51] or a caller telling a telephone operator that he would break her neck if he were there.[52] These lasts two examples are upsetting and alarming, to be sure, but do not give rise to and IIED claim.

### B. The Statute of Limitations on Count Four Has Run

Under Texas law, "the applicable limitations period for a claim of intentional infliction of emotional distress is two years from the accrual of the cause of action."[53] Therefore, Dr. Guerra's IIED claim is time barred as her allegations of the Cantus' behavior that have caused Dr. Guerra emotional distress and PTSD stem from the alleged incident on April 1, 2018.[54] As this cause of action commenced on June 24, 2020, that is over two-years from the alleged incident.[55] Dr. Guerra also cites to the Texas Civil Code §16.069 in an attempt to revive the statute of limitations for her intentional infliction of emotional distress claims.[56] However, the Cantus' claims against Co-Defendant Dr. Guerra do not arise from and/or correlate to the family dispute or state civil court custody case. The Cantus' claims all emanate from the repetitive

---

[48] *Id*.
[49] *Id*.
[50] *Id*.
[51] Restatement 2d of Torts, § 46.
[52] *Id*.
[53] *See Bhalli v. Methodist Hosp.*, 896 S.W.2d 207, 211 (Tex. App. -- Houston 1995); *see also* Tex. Civ. Prac. & Rem. Code 16.003(a).
[54] (Dr. Guerra's Am. Countrcl. ¶¶12, 16, 20).
[55] (First Am. Compl.)(Dkt. No. 6.)
[56] (Dr. Guerra's Resp. to Mot. to Dismiss ¶26, 31)(Dkt. No. 32.)

hacking and harassment they have been met with due to both Co-Defendants' actions. None of the counts in Plaintiffs' Complaint reference family disputes or a civil court custody case.[57]

## V.      Count Five Fails to Allege Any Particular Defamatory Statements

As to the fifth count, it should be dismissed as the Co-Defendant Dr. Guerra failed to request a clarification or retraction, or to plead the alleged defamatory statements with particularity.

### A.      Dr. Guerra has not Alleged She Requested a Correction, Clarification or Retraction of any Defamatory Statements as Required by Texas Law

Under Texas law an action for defamation can only be maintained if the alleged defamed party has made a "timely and sufficient request for a correction, clarification, or retraction from the defendant"[58] served on the alleged defamer,[59] in writing,[60] and identifying the alleged defamatory statements with particularity[61] or "the defendant has made a correction, clarification, or retraction."[62] Defendant Dr. Guerra has failed to allege that she has asked for a correction, clarification, or retraction. Additionally, as more than 90 days have passed since Dr. Guerra received knowledge of the publication, which she alleges occurred prior to or during February 2020, more than six months ago, she cannot recover exemplary damages.[63] As Defendant Dr. Guerra has failed to request the correction, clarification, or retraction timely and in writing as required by Texas law[64] Count Five should be dismissed.

---

[57] (First Am. Compl.)(Dkt. No. 6).
[58] Tex. Civ. Prac. & Rem. Code § 73.055(a)(1); *See In re Indusoft, Inc.*, No. 03-16-00677-CV, 2017 Tex. App. LEXIS 110, at *3-4 (Tex. App. Jan. 10, 2017)("A person may maintain an action for defamation only if:  the person has made a timely and sufficient request for a correction, clarification, or retraction from the defendant).
[59] *Id.* at § 73.055(d)(1).
[60] Tex. Civ. Prac. & Rem. Code § 73.055(d)(2).
[61] *Id.* at § 73.055(d)(3)-(5).
[62] *Id.* at § 73.055(a)(2).
[63] *Id.* at § 73.055(c).
[64] *Id.* at § 73.055.

## B.    Texas Law Requires that Defamation be Pleaded with Particularity

Defendant Dr. Guerra has failed to plead defamation with particularity. To allege defamation with particularity a claimant must identify 1) the statement(s) which are allegedly defamatory, 2) the maker of the statement(s), 3) the date the statement(s) were made or published, 4) the third parties to whom the statement(s) were made, 5) the circumstances under which the statement(s) were made, and 6) evidence that the person who made the statement(s) knew they were false, acted with actual malice, or were negligent.[65]

Defendant Dr. Guerra has alleged that Plaintiff Melody Joy Cantu defamed her but does not in any way identify the allegedly defamatory statements. In fact, it is not even clear what statements Defendant Dr. Guerra is referring to in Count Five as she only refers to them as "the statements" without providing any direct quotes or sources for the alleged statements. Even in her Facts section she fails to lay out any quotes or publications made by the Plaintiffs and simply summarizes allegedly offensive or disparaging conduct without identifying any actual statements. This is insufficient to meet the requirement that defamation be pleaded with particularity.[66]

Furthermore, no dates are given as to when the statements were made, the actual party(s) to whom the statements were allegedly made is unclear and can only be, perhaps, narrowed down to "Dr. Guerra's then-boyfriend's ex-wife"[67] and Humana.[68] It is equally unclear the

---

[65] *Cheatam v. JCPenney Co*, No. 1:16-CV-00072-MAC, 2016 U.S. Dist. LEXIS 121531, at *16-17 (E.D. Tex. July 13, 2016).
[66] *See e.g., Cheatam v. JCPenney Co*, No. 1:16-CV-00072-MAC, 2016 U.S. Dist. LEXIS 121531, at *16-17 (E.D. Tex. July 13, 2016) ("Cheatam's defamation claims do not contain sufficient detail to allow JCPenney or the individual defendants to respond and should be dismissed pursuant to Rule 12(b)(6)."); *Scott v. Houma-Terrebonne Hous. Auth.*, CV No. 02-770 SECTION "N" (4), 2002 U.S. Dist. LEXIS 16719, at *12-13 (E.D. La. Sep. 5, 2002) ("The Court agrees with the defendants that the plaintiff's allegations of defamation are conclusory.") (applying Louisiana law).
[67] (Dr. Guerra's Am. Countrcl. ¶22).
[68] (*Id.* at ¶ 23).

circumstances under which the statements were made. Dr. Guerra has alleged that the statements were false and malicious but has not plausibly pleaded facts in support of this. Dr. Guerra only generally alleges that in May of 2019, she received information from Humana's human resources (where she worked at the time), generally stating, without particularity, that an anonymous complaint had been filed falsely claiming Dr. Guerra was posting proprietary information on social media and participating in human trafficking.[69] There are no quotes from the anonymous complaint.

Finally, the Defendant claims that these unspecified statements are so obviously defamatory as to be defamation *per se* but for the reasons already set forth it is impossible to even address that claim as we are not told what the allegedly defamatory statements are. Dr. Guerra has failed to allege defamation with sufficient particularity, let alone defamation *per se*. As such she "has not alleged or 'specifically stated' any special damages for which he can recover. Thus, on [her] pleadings [s]he does not make a case for compensatory damages. Since [s]he makes no case for compensatory damages, [s]he can make no case for punitive damages. Therefore…on the face of the language used, as a legal certainty...the requisite jurisdictional amount is not now involved in this suit."[70]

### C.      The Statute of Limitations on Count Five Has Run

Texas has a one-year statute of limitations for defamation which runs from the time the defamatory statement was made.[71] As discussed above, Dr. Guerra has failed to identify any particular defamatory statement and Count Five should be dismissed on this ground alone. But assuming Dr. Guerra's allegations to be true, the last possible instance of defamation appears to

---

[69] (Dr. Guerra's Am. Countrcl. ¶23-25).
[70] *Barton v. Barnett*, 226 F. Supp. 375, 379-80 (N.D. Miss. 1964).
[71] Tex. Civ. Prac. & Rem. Code § 16.002.

be June of 2019, over a year prior to Co-Defendant Dr. Guerra's filed counterclaims.[72] Dr. Guerra also cites to the Texas Civil Code §16.069 in an attempt to revive the statute of limitations for her defamation claims.[73] However, the Cantus' claims against Co-Defendant Dr. Guerra do not arise from and/or correlate to the a family dispute or state civil court custody case. The Cantus' claims all emulate from the repetitive hacking and harassment they have been met with due to both Co-Defendant's' actions. None of the counts in Plaintiffs' complaint reference family disputes or a civil court custody case.[74]

## VI.      Count Six Fails to Sufficiently Plead Abuse of Process

Defendant Guerra conflates Abuse of Process with Malicious Prosecution:

> It is critical to a cause of action for abuse of process that the process be improperly used after it has been issued. See generally Debra T. Landis, Annotation, Civil Liability of Attorney for Abuse of Process, 97 A.L.R.3d 688 (1980). If wrongful intent or malice caused the process to be issued initially, the claim is instead one for malicious prosecution. Martin, 578 S.W.2d at 769. "When the process is used for the purpose for which it is intended, even though accompanied by an ulterior motive, no abuse of process occurs." Baubles & Beads v. Louis Vuitton, S.A., 766 S.W.2d 377, 378-379 (Tex. App.--Texarkana 1989, no writ). To constitute abuse of process, the process must have been used to accomplish an end which is beyond the purview of the process and compels a party to do a collateral thing which he could not be compelled to do. Id. at 379.[75]

The elements of an abuse of process claim are "(1) that the defendant made an illegal, improper, perverted use of the process, a use neither warranted nor authorized by the process,

---

[72] (Dr. Guerra's Am. Countrcl. ¶23).
[73] (Dr. Guerra's Resp. to Mot. to Dismiss ¶¶26, 31, 36)(Dkt. No. 32.)
[74] (First Am. Compl.)(Dkt. No. 6.)
[75] *Bossin v. Towber*, 894 S.W.2d 25, 33, 1994 Tex. App. LEXIS 3109, *22-23.

and (2) that the defendant had an ulterior motive or purpose in exercising such illegal, perverted, or improper use of process, and (3) that damage resulted to the plaintiff from the irregularity."[76]

Indeed, the purpose of the tort of abuse of process is to address harms suffered as a result of a legitimate process used for an illegitimate purpose. Whereas, malicious prosecution is designed to address harms suffered as a result of *illegitimate process*. "[T]he scope of the tort is limited to the improper use of legal process, such as the issuance of a citation or a writ, and does not extend to the prosecution of a civil action itself. *See Detenbeck v. Koester*, 886 S.W.2d 477, 481 (Tex. Civ. App.—Hous. [1st Dist.] 1994) ("[A]buse of process consists not in the filing and maintenance of a civil action, but rather in the perversion of some process issued in the suit after its issuance.")."[77]

Even were Defendant Dr. Guerra to allege that the summons itself was used for an illegitimate purpose she has failed to demonstrate that it was in any way designed to accomplish a purpose beyond what it is intended to be used for: to require Defendant Dr. Guerra to appear as a defendant in this action.[78]

Defendant Dr. Guerra alleges in Count Six that Plaintiffs' suit was filed without probable cause and for the sole purpose of causing harm to Defendant Dr. Guerra's reputation and career, she is not entitled to relief as a matter of law. Defendant Dr. Guerra has failed to set forth any evidence to support her allegations as to the motives behind the filing of this suit, and regular use of a summons or prosecution of a civil suit is not grounds for dismissal under Abuse of Process.

---

[76] *Tandy Corp. v. McGregor*, 527 S.W.2d 246, 249, 1975 Tex. App. LEXIS 3008, *7-8 (citing 1 Am. Jur. 2d, Abuse of Process, Sec. 4.).

[77] *Pittsburg SNF LLC v. PharMerica East, Inc*., 2012 U.S. Dist. LEXIS 141005, *9, 2012 WL 4509753.

[78] *Id.* ("PharMerica fails to plead a single instance where legal process, as opposed to maintenance of the civil action, was used improperly. Even if the undersigned interprets the counterclaim as referring to the summons originally issued to initiate the lawsuit, PharMerica's claim would still fail because PharMerica has not alleged that the summons itself was used for any purpose other than to require PharMerica to appear as a defendant.")

The Plaintiffs issued the summons in accordance with all norms and procedures for doing so and the Defendant has failed to allege otherwise. The summons was issued for the express purpose of bringing the Defendant into this action as a party for the prosecution of the civil suit as set out in the Complaint. The Defendant has failed to state any case for Abuse of Process other than that she does not desire to defend against a civil suit, which is not grounds for relief under an Abuse of Process claim. To hold that the filing of a suit for adjudication on the merits of a plausibly pleaded complaint is an abuse of process would be to hold, absurdly, that every case is the potential subject for an abuse of process claim.

## Conclusion

This Court should dismiss all of Dr. Guerra's amended counterclaims with prejudice, for the reasons stated above.

Dated: December 23, 2020

Respectfully submitted,

/s/ Tor Ekeland

Tor Ekeland (NY Bar No. 4493631)
*Pro Hac Vice*
Tor Ekeland Law, PLLC
30 Wall Street, 8th Floor
New York, NY
t:  (718) 737 - 7264
f:  (718) 504 - 5417
tor@torekeland.com

and

/s/ Rain Levy Minns

Rain Minns
State Bar No. 24034581
Minns Law Firm, P.C.
d/b/a Rain Minns Law Firm
4412 Spicewood Springs Rd., Suite 500
Austin, Texas 78759-8583
Tel.: 512-372-3222
Fax: 512-861-2403
rain@rainminnslaw.com

*Counsel for Plaintiffs Melody Joy Cantu and*
*Dr. Rodrigo Cantu*

## Certificate of Service

I certify that on this 23rd of December, 2020, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the parties on record.

/s/ Tor Ekeland