IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MELODY JOY CANTU and | § | |
| DR. RODRIGO CANTU, | § | |
| *Plaintiffs* | § | |
| | § | |
| | § | CASE NO.: 5:20-CV-00746-JKP (HJB) |
| | § | |
| V. | § | |
| | § | |
| DR. SANDRA GUERRA and | § | |
| DIGITAL FORENSICS CORPORATION, LLC | § | |
| *Defendants* | § | |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION TO DISMISS
DEFENDANT DR. SANDRA GUERRA'S AMENDED COUNTERCLAIMS**

NOW COMES, Defendant, DR. SANDRA GUERRA ("Defendant," "Counter-Plaintiff" and "Dr. Guerra"), and files this her Response to Plaintiffs' Motion to Dismiss Defendant Dr. Sandra Guerra's Amended Counterclaims (Doc. No. 38) (the "Motion to Dismiss"), and in support thereof, would respectfully show unto the Court as follows:

**I.
SUMMARY OF ARGUMENT**

1.      Counter-Defendants attempt to misuse Rule 12(b)(6) to impose a pleading requirement that is akin to the heightened standard of review required to survive a motion for summary judgment or to prevail on the merits rather than accept the proper notice pleading standard under Rule 8(a)(2).[1]  However, Dr. Guerra's First Amended Counterclaim (Doc. No. 37) (the "Amended Counterclaim") is not defective.  Dr. Guerra's factual allegations are more than sufficient to place Counter-Defendants on fair notice of the claims against them and show that Dr.

---

[1] Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain…a short and plain statement of the claim showing that the pleader is entitled to relief…").

Guerra's right to relief is plausible, thereby allowing Counter-Defendants the opportunity to utilize the flexible rules of discovery to flesh out further details and delineate issues in advance of trial.

2.      As further detailed herein, Counter-Defendants' motion itself demonstrates that Dr. Guerra complied with the pleading mandates set forth under the Rules.  The bulk of Counter-Defendants' Motion to Dismiss is focused on disputing the specific facts *actually alleged* in the Amended Counterclaim and challenging the likelihood of Dr. Guerra's ultimate success on the merits.  However, in doing so, Counter-Defendants concede that the allegations in the Amended Counterclaim are in fact sufficiently clear and detailed enough to put Counter-Defendants on fair notice of the claims against them and show that they rise above mere speculation.  Thus, when Dr. Guerra's factual allegations are viewed as true and all inferences are resolved in her favor, it is evident that there are no grounds for dismissal under Rule 12(b)(6).

## II.
## LEGAL STANDARD FOR DISMISSAL UNDER RULE 12(b)(6)

3.      Under Rule 8(a)(2), the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[2]  A motion to dismiss for failure to state a claim upon which relief can be granted merely tests the formal sufficiency of the plaintiff's statement of its claim for relief in its complaint.[3]  **The motion cannot be used to resolve factual issues or the merits of the case**.[4]

4.      Generally, motions to dismiss for failure to state a claim are viewed with disfavor in light of the liberal pleading policies under the Rules.[5]  A motion to dismiss under Rule 12(b)(6) is appropriate only if the plaintiff has not provided fair notice of its claim and factual allegations

---

[2] Fed. R. Civ. P. 8(a)(2).
[3] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007); *see also Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).
[4] *See id.*
[5] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000).

that – when accepted as true and all inferences resolved in the plaintiff's favor – are plausible and rise above mere speculation.[6]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The *plausibility standard* is not akin to a '*probability requirement*,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[7]

5.     A complaint should never be dismissed because the court is doubtful that the plaintiff will be able to prove all of the factual allegations contained therein.[8]  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote or unlikely.'"[9]  "A complaint need not 'make a case' against a defendant or '*forecast evidence* sufficient to *prove* an element' of the claim.  It need only '*allege facts* sufficient to *state* elements' of the claim.  Thus, the sufficiency of a complaint does not depend on whether it provides enough information to enable the defendant 'to prepare a defense,' but merely 'whether the document's allegations are detailed and informative enough to enable the defendant to respond."[10]

6.     Here, Counter-Defendants claim that Dr. Guerra has only made "general allegations" and failed to "plead plausible facts" in her Amended Counterclaim yet, notably, never claim that they cannot *respond* to the factual allegations set forth in the Amended Counterclaim.

[6] *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 555-57; *Woods v. City of Greensboro*, 855 F.3d 639, 652-53 & n.9 (4th Cir. 2017); *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir.2009).
[7] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556-57)(emphasis added).
[8] *Twombly*, 550 U.S. at 556-57; *see also Renfro v. Unisys Corp.*, 671 F.3d 314, 320 (3d Cir. 2011) (The issue is not whether the plaintiff will ultimately prevail but whether the complaint contains enough factual material to raise a right to relief above the mere speculation level.).
[9] *Id*. at 556.
[10] *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 349 (4th Cir.2005)(citing *Iodice v. United States*, 289 F.3d 270, 273 (4th Cir.2002)); *see also McManus v. Fleetwood Enters.*, 320 F.3d 545, 551 (5th Cir.2003) ("The notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precisions.")(citing *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 434 (5th Cir.2000)).

Instead, Counter-Defendants repeatedly cite to specific factual allegations contained in the Amended Counterclaim and assert rebuttal arguments and various defenses to the claims made against them by Dr. Guerra. In doing so, Counter-Defendants provide dispositive proof that they *can* respond to the Amended Counterclaim. As such and for the reasons further detailed below, the Motion to Dismiss should be denied in its entirety.

## III.
## BACKGROUND

7.      In 2009, after ten years of marriage, Dr. Guerra and Counter-Defendant, Dr. Rodrigo Cantu ("Dr. Cantu"), divorced but managed to maintain an amicable relationship for approximately ten additional years while co-parenting their two daughters.[11] In or about 2014, Counter-Defendant, Dr. Cantu, married Counter-Defendant, Melody Joy Cantu ("Melody").[12] However, in or about 2015, the effects of the tumultuous relationship between Dr. Cantu and Melody began to adversely impact Dr. Guerra and her daughters.[13] Melody verbally abused the children on multiple occasions and, as a result, Dr. Cantu committed to divorce Melody and keep her away from the children if Dr. Guerra agreed not to make a report to Child Protective Services ("CPS").[14]

8.      Dr. Cantu and Melody divorced but later reconciled,[15] and thereafter engaged in a campaign of harassment against Dr. Guerra with the intent to carry out a course of revenge and inflict harm against her, which included, without limitation, an intense child custody suit in state court,[16] unlawful hacking of Dr. Guerra's emails,[17] and Melody threatening to post intimate

---

[11] Amended Counterclaim, ¶ 12.
[12] *Id*. at ¶ 13.
[13] *Id*. at ¶ 14.
[14] *Id*.
[15] *Id*. at ¶¶ 15, 25.
[16] *Id*. at ¶ 25.
[17] *Id*. at ¶¶ 2, 21, 28.

pictures of Dr. Guerra on the internet, [18] contacting Dr. Guerra's employer to falsely accuse Dr. Guerra of participating in human trafficking,[19] and creating fake accounts in Dr. Guerra's name for dating websites for persons with HIV and other sexually transmitted diseases.[20]

9.     Melody and Dr. Cantu (collectively, the "Plaintiffs" and "Counter-Defendants"), have now filed this lawsuit against Dr. Guerra asserting fourteen causes of action, all of which ultimately arise from and/or relate to the foregoing underlying family dispute and state civil court custody case.  Counter-Defendants' allegations against Dr. Guerra include, without limitation, claims for violation of the CFAA; violation of the HACA, malicious prosecution, and intentional infliction of emotional distress. [21]   In doing so, Counter-Defendants detail factual allegations regarding their acrimonious relationship and history with Dr. Guerra dating back to at least 2014 as a basis for their claims that Dr. Guerra sought "revenge on her ex-husband and his new wife" which was allegedly motivated by "Dr. Guerra's obsessive jealousy"[22] and that Dr. Guerra engaged in a "campaign of hacking, surveillance, damages and malicious prosecution [as] part of a stalking campaign against Plaintiffs to inflict emotional distress upon [them]."[23]

10.     In response to Counter-Defendants' Complaint, Dr. Guerra filed her Amended Counterclaim asserting claims against Counter-Defendants for (i) violation of the CFAA, (ii) violation of the HACA, (iii) IIED,[24] (iv) stalking and harassing behavior, (v) defamation, and (vi)

---

[18] *Id*. at ¶ 25.
[19] *Id*. at  ¶ 24.
[20] *Id*. at  ¶ 2.
[21] *See* Plaintiffs' First Amended Complaint (Doc. No. 6) (the "Complaint"), ¶¶ 54-124.
[22] *Id*. at ¶ 3.
[23] *Id*. at ¶¶ 2-6, 15-53.
[24] Counter-Defendants also assert claims against Dr. Guerra for violation of the CFAA, violation of the HACA, and IIED.

abuse of process, all of which arise from the same acrimonious relationship and occurrences which form the basis of Counter-Defendants' claims against Dr. Guerra.[25]

## IV.
## ARGUMENT AND AUTHORITIES

### A. COUNT ONE – VIOLATION OF THE CFAA

#### i. *Count One Sufficiently Pleads CFAA Loss in Excess of $5,000.00.*

11.     Counter-Defendants argue that Dr. Guerra's claim for violation of the CFAA should be dismissed because there is allegedly "no connection between the alleged computer intrusion [by Counter-Defendants] and the CFAA loss that reasonably establishes a connection between the intrusion and the loss as a matter of law."[26] Yet, Counter-Defendants in the very next sentence cite to Dr. Guerra's very specific factual allegation that she was required to hire Digital Forensics Corporation, LLC ("DFC") to investigate[27] why, among other things, Dr. Guerra was receiving notices from Verizon Wireless that someone was attempting to access her account online and why Dr. Guerra was receiving inappropriate email messages from strangers as a result of fake accounts set up in her name on dating websites for persons with HIV and other sexually transmitted diseases.[28]

12.     Counter-Defendants further argue that Dr. Guerra's allegations are insufficient because "she still fails to cite specific costs."[29] However, Dr. Guerra specifically pleads that, "[a]s a result of the Cantus' conduct, Dr. Guerra suffered loss in expending time, money, and resources aggregating at least $5,000 in value, which includes costs incurred by Dr. Guerra to engage DFC,

---

[25] *See generally* Amended Counterclaim.
[26] Motion to Dismiss, p. 4.
[27] *Id*.
[28] Counter-Defendants specifically cites ¶ 30 of Dr. Guerra's Amended Counterclaim, which such ¶30 references the factual allegations set forth in ¶¶12-29.
[29] Motion to Dismiss, p. 4.

*investigate* the intrusion of the iPad and other computers potentially intruded upon, *assess* the damage, and attempt to *restore* security to her various intruded-upon systems, as well as time Dr. Guerra had to take off work to address and resolve these matters."[30]

13.     More significantly, Counter-Defendants argue that "Courts routinely dismiss pleadings that only generally allege CFAA loss when it isn't clear on the face of the complaint if an alleged loss is reasonably related to the unauthorized access."[31]  However, the legal authority cited by Counter-Defendants in support of such proposition actually contradict Counter-Defendants' argument that Dr. Guerra's pleading is insufficient to state a claim for a CFAA loss. In *Meyers v. Siddons-Martin Emergency Grp., LLC*, No. 16-119, 2016 WL 5337957, at *3 (E.D. La Sep. 23, 2016), the Court cites to the CFAA statute and other legal authority in explaining the requirements for a "loss" under the CFAA.[32]  " 'Loss' constitutes 'any reasonable cost to any victim, including the cost of *responding to an offense*, *conducting a damage assessment*, and restoring data to its condition prior to the offense, and any revenue lost, costs incurred, or other consequential damages incurred because of interruption of services.'"[33]  "[T]he statute's $5,000 loss requirement relates to costs incurred in connection with '*investigating* and remedying damage to a computer, or a cost incurred *investigating* and remedying damage to a computer, or a cost incurred because the computer service was interrupted."[34]  Thus, Dr. Guerra's factual allegations that she incurred at least $5,000 in costs to hire DFC and undertake other actions to investigate, assess and remedy the damage to her computer and computer services are sufficient to satisfy the Rule 8 pleading requirements.

---

[30] Amended Counterclaim, ¶ 37 (emphasis added).
[31] Motion to Dismiss, p. 4.
[32] *Meyers v. Siddons-Martin Emergency Grp., LLC*, No. 16-119, 2016 WL 5337957, at *3 (E.D. La Sep. 23, 2016).
[33] *Id.* (citing 18 U.S.C. § 1030(e)(11) (emphasis added).
[34] *Id.* (citing *Nexans Wires S.A. v. Sark-USA, Inc.*, 166 Fed. Appx. 559, 562-63 (2d Cir.2006).

14.     Counter-Defendants' other arguments – that Dr. Guerra "does not clarify at what point in May 2018 she believed someone was trying to access her account nor why it required taking time off from work rather than taking simple remedial measures like changing her password," and that Dr. Guerra only allegedly received "SPAM emails" as a result of the unlawful use of her identity to create fraudulent accounts – further demonstrate Counter-Defendants' efforts to impose an impermissible higher pleading standard requiring Dr. Guerra to *prove* an element of a claim rather than accept the proper notice pleading standard under Rule 8(a)(2) which only requires Dr. Guerra to allege facts sufficient to *state* an element of the claim that are detailed and informative enough to allow the defendant to respond.[35]   Here, Counter-Defendants have in fact *responded* by asserting various defenses and counterarguments to Dr. Guerra's factual allegations regarding her CFAA loss.[36]   Dr. Guerra is not required to include *every* detail in her Amended Counterclaim.[37]   She is only required to supply enough facts "to raise a reasonable expectation that discovery will reveal evidence" to support her claims.[38]

15.     Dr. Guerra's claim for violation of the CFAA, as pleaded, is sufficient to show that the right to relief is *plausible*.   Whether or not there exists genuine disputes of material fact as to the amount of Dr. Guerra's damages or whether or not Dr. Guerra can ultimately prove at trial that there is in fact a direct connection between the Counter-Defendants' computer intrusion and the

---

[35] *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 349 (4th Cir.2005)(citing *Iodice*, 289 F.3d at 273 (4th Cir.2002)); *see also McManus v. Fleetwood Enters.*, 320 F.3d 545, 551 (5th Cir.2003) ("The notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precisions.")(citing *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 434 (5th Cir.2000)).
[36] Counter-Defendants' argues that Dr. Guerra's claim should eb dismissed because she  does not "clarify" why she need to take time off work to address and resolve the issues created by the unauthorized access to her computer, yet Counter-Defendants' allege in their complaint that they incurred monetary losses for time Melody allegedly took off from work to "handle" service calls and "resolve network service interruptions. *See* Complaint, § 51.
[37] Fed. R. Civ. P. 8.
[38] *Twombly*, 550 U.S. at 556.

loss she sustained is not the standard by which Dr. Guerra's counterclaim should scrutinized at this point in the litigation.   Therefore, Dr. Guerra's claims against Counter-Defendants for violation of the CFAA should not be dismissed on the pleading deficiency grounds alleged by Counter-Defendants.

### ii. *Counter-Defendants Unlawfully Accessed Dr. Guerra's iPad for Illegitimate Reasons*.

16.     Dr. Guerra specifically alleges in her Amended Counterclaim that Counter-Defendants unlawfully accessed her iPad and her online account with Verizon.[39]  The iPad was purchased and owned by Dr. Guerra and she claimed an ownership interest in her accounts with Verizon.[40]  However, she admittedly allowed her daughter to use the  iPad.[41]

17.     Counter-Defendants' argument that Dr. Cantu "was within his parental rights" to access the iPad that was in his daughter's possession while in his home does not support the dismissal of Dr. Guerra's claims.

18.     First, Counter-Defendants assert this argument as a *defense* to Dr. Guerra's claims against them.  The fact that Counter-Defendants dispute that their access was unlawful does not pervade the threshold question of whether of they have fair notice of the claim and can respond. They can and they have.

19.     Secondly, Melody had no parental rights whatsoever with respect to Dr. Guerra's and Dr. Cantu's minor child and, therefore, had no right or authority whatsoever to access the iPad for any reason.  Counter-Defendants offer no arguments or legal authority otherwise.

20.      Dr. Guerra does not dispute the general concept that a parent of a minor child has a right to monitor his/her minor child's electronic communications under certain circumstances.

---

[39] Amended Counterclaim, ¶ 2, 21, 27, 28, 35, 36.
[40] *Id*.
[41] *Id*.

However, Counter-Defendants cite no legal authority to support the proposition that such right is absolute and unconditional. In fact, the case relied upon by Counter-Defendants does not involve any issues whatsoever that are directly related to a parent's right to access or monitor a minor's child's electronic communications.[42]

21.     Dr. Guerra alleges that Counter-Defendants accessed the subject iPad and Dr. Guerra's personal communications and account information thereon by deception under false pretenses and for the nefarious purpose of accessing Dr. Guerra's personal and private accounts, information, and documents for the purposes of harassment, which Counter-Defendants carried out.[43] The iPad and the information thereon were not obtained by Dr. Cantu as a parent monitoring his minor child's electronic communications, but rather it was done in his capacity as an ex-spouse in connection with his and Melody's bitterly motivated attacks upon Dr. Guerra.

22.     Dr. Guerra alleges she was made to believe that the iPad had been "lost" during the time that Counter-Defendants were accessing the iPad, which eviscerates any argument by Counter-Defendants that they were merely monitoring Dr. Guerra's and Dr. Cantu's daughter's activity online and instead establishes that Counter-Defendants were concealing the iPad from Dr. Guerra and her daughter while continuing to access the content on the device.

23.     Counter-Defendants' other *responses* – that "there is a lack of clarity in who informed Dr. Guerra the iPad was lost in the first place nor who actually lost the iPad" and that it is "irrelevant" if it was lost – are also insufficient to support a claim for dismissal. Again, Dr. Guerra is not required to include *every* detail in her Amended Counterclaim.[44] She is only required

---

[42] *Romero v. Brown*, 937 F.3d 514 (2019) (5th Cir.2019) (Parents brought § 1983 action against social worker, her supervisor, police officers and city alleging due process rights were violated when their seven children were removed from their home.).
[43] Amended Counterclaim, ¶ 2, 21, 27, 28, 35, 36.
[44] Fed. R. Civ. P. 8.

to supply enough facts "to raise a reasonable expectation that discovery will reveal evidence" to support her claims, which she has done.[45]

### iii. *Dr. Guerra Has Plausibly Alleged that the "Protected Computers" at Issue were Owned By Dr. Guerra.*

24.     Dr. Guerra specifically alleges in her Amended Counterclaim that Counter-Defendants unlawfully accessed her iPad and her online account with Verizon.[46]  The iPad was purchased and owned by Dr. Guerra and she claimed an ownership interest in her accounts with Verizon.[47]  Counter-Defendants argue that Dr. Guerra lacks standing to sue for violation of the CFAA because the "Verizon computers allegedly accessed are not Dr. Guerra's but Verizon's…"[48]  However, there is no indication in the Motion to Dismiss as to why Counter-Defendants would be unable to admit or deny or otherwise *respond* to Dr. Guerra's factual allegations regarding her ownership of the iPad and online accounts at issue.  Counter-Defendants' argument is misplaced as it raises disputed fact issues and conclusory legal theories and defenses in *response* to Dr. Guerra's factual allegations regarding ownership of the protected computers unlawfully accessed by Counter-Defendants.  Thus, Counter-Defendants' *response* in its Motion to Dismiss to Dr. Guerra's factual allegations is illustrative of Dr. Guerra's compliance with the requirement under Rule 8 to allege facts sufficient to *state* this particular element of her CFAA claim and show that – when accepted as true – are plausible and rise above mere speculation.  Accordingly, Counter-Defendants' argument that Dr. Guerra lacks standing does not support a dismissal of Dr. Guerra's CFAA claims.

### B.  COUNT TWO – VIOLATION OF THE HACA.

---

[45] *Twombly*, 550 U.S. at 556.
[46] Amended Counterclaim, ¶ 2, 21, 27, 28, 35, 36.
[47] *Id*.
[48] Motion to Dismiss, p. 6.

25.     Dr. Guerra directs the Court to the arguments and legal authority set forth supra, including, without limitation, paragraphs 11 – 24, and incorporates the same in opposing Counter-Defendants' request for dismissal of Dr. Guerra's claims against them for violation of the HACA and, in further support, shows as follows:

*i.*    ***Count Two Sufficiently Pleads an Injury Under HACA.***

26.     Contrary to Counter-Defendants' allegation, Dr. Guerra's Amended Counterclaim does not require Counter-Defendants to "assume" anything with respect to her claims for violation of the HACA.[49]  The factual allegations regarding Counter-Defendants' unlawful access to Dr. Guerra's iPad, computer network, and computer system are specifically set forth in the Amended Counterclaim.[50]  Tellingly, Counter-Defendants do not claim they cannot *respond* to Dr. Guerra's claims.  Instead, they set forth counterarguments and defenses to dispute the factual allegations and claims and seek exoneration with the conclusory allegation that the hacks were "unsuccessful" and that it "appears" no breach ever occurred.[51]  Such *responses* by Counter-Defendants are proof that Dr. Guerra's pleadings were sufficient to provide fair notice to Counter-Defendants of the claims against them and show that such claims are plausible.

*ii.*   ***Counter-Defendants Unlawfully Accessed Dr. Guerra's iPad for Illegitimate Reasons.***

27.     As detailed supra in paragraphs 16-23, Dr. Cantu did not access Dr. Guerra's iPad for a legitimate purpose in his capacity a parent monitoring his minor child's electronic communications and Melody has no right (parental or otherwise) to access the iPad for any reason whatsoever.  Furthermore, Counter-Defendants' *response* that Dr. Cantu allegedly had "effective consent" to access Dr. Guerra's iPad because she "knowingly sent the iPad with her daughter to

---

[49] Motion to Dismiss, p. 7.
[50] Amended Counterclaim, ¶¶ 2, 21, 27, 28, 30-32, 38-41.
[51] Motion to Dismiss, p. 7.

12

Dr. Cantu's home" is merely a potential *affirmative defense* to Dr. Guerra's claims.   Counter-Defendants' motion is not brought as summary judgment and Counter-Defendants have not satisfied their burden of proving such an affirmative defense.[52]  Accordingly, Counter-Defendants' argument for dismissal on such grounds is insufficient to support a dismissal of Dr. Guerra's under Rule 12(b)(6).

C. UNDERLINE COUNT THREE – STALKING AND HARASSING.

i.  *Dr. Guerra Specifically Alleges in her Amended Counterclaim that Melody Threatened Physical Injury or Offense*.

28.    Dr. Guerra specifically details in her Amended Counterclaim the systematic campaign by Melody to harass to Dr. Guerra, and includes, without limitation, the following factual allegations.[53]

29.    On or about April 1, 2018, Melody accosted Dr. Cantu, Dr. Guerra, her now-husband, Nathan Bellinger, and her minor daughters at night in a dark restaurant parking lot after the family had finished eating dinner together.  Melody was disheveled and crying.  She kept her hands in her pockets standing strangely nervous and yelling which caused Dr. Guerra to fear that Melody intended to cause her and/or her daughter bodily harm.  Melody proceeded to yell insults at Dr. Guerra and shout angrily, describing a then-secret relationship between her and Dr. Cantu.  Dr. Cantu did nothing to protect his daughters or calm Melody.  In an effort to escape the dangerous and explosive situation caused by Melody, Dr. Guerra and her daughters ran to their vehicle for safety as they were chased by Melody who pursed them closely from behind while continuing to

---

[52] Counter-Defendants rely upon *Knepp v. State*, No. 05-08-00002-CR, 2009 WL 638249 at *9 (Tex. App. Mar 13, 2009) in support of their defense that Dr. Cantu had "effective consent" to access Dr. Guerra's iPad. However, *Knepp* is distinguishable from the facts in this case as it does not involve any minor child/parent/ex-spouse issues, but instead involves an adult employee who voluntarily left his personal laptop unattended and unsecured at work which led to the discovery by his co-workers of child porn on his personal computer.
[53] *Id*. ¶¶ 2-4, 16-32, 42-45.

yell and behave hysterically, which further caused Dr. Guerra to fear that Melody intended to cause her and/or her daughters imminent bodily harm.  Melody's behavior and state of hysteria were so severe that Dr. Guerra and her daughters were unable to go to their home as they reasonably feared that Melody would follow them and attempt to physically harm them.  Melody's actions were so threatening and disturbing that even Dr. Cantu feared for his life.  Dr. Cantu called his parents to help protect him from Melody and they met him at a hotel that night where he kept a gun for self-defense. [54]

30.     Later that night, Melody began relentlessly harassing Dr. Guerra via social media, sending her many threatening messages and photos via text and through Facebook's messenger feature around 2:00–3:00 a.m. following her ambush of Dr. Guerra and her daughters in the restaurant parking lot.  Melody specifically threatened to post intimate pictures of Dr. Guerra and Dr. Cantu.  Melody also contacted Dr. Cantu's parents (Dr. Guerra's former in-laws) by sending them approximately sixty-four (64) text messages and placed approximately eighty (80) phone calls to Dr. Cantu.  Melody had the apparent ability to carry out such threats as evidenced by her ambush of Dr. Guerra in a public parking lot and Dr. Cantu's demonstrated heightened level fear that compelled him to call his parents for help and to keep a gun with him as protection against Melody.[55]

31.     As a result of Melody's deliberate campaign of stalking and harassment, Dr. Guerra reasonably feared for her safety or the safety of a member of her family due to threats of bodily injury and had to hire security for her wedding and has felt compelled to sacrifice larger business opportunities in order to feel safe and insulated from the stalking and harassment.  Melody had the

---

[54] *Id*.
[55] Amended Counterclaim ¶ 44.

apparent ability to carry out such threats as evidenced by her ambush of Dr. Guerra in a public parking lot and Dr. Cantu's demonstrated heightened level fear that compelled him to call his parents for help and to keep a gun with him as protection against Melody.  Both Dr. Guerra *and* Dr. Cantu reported Melody's harassing and stalking behavior to the police.

32.     Nevertheless, nearly two pages of Counter-Defendants' Motion to Dismiss is devoted to Counter-Defendants' *response* to Dr. Guerra's factual allegations whereby Counter-Defendants assert various defenses and dispute Dr. Guerra's allegations.  All of which is the antithesis of Counter-Defendants' argument that Dr. Guerra's claims against them should be dismissed under Rule 12(b)(6) for failure to properly *state* a claim for relief.

33.     As an initial matter, generally a motion to dismiss under Rule 12(b)(6) must be decided solely on the allegations in Dr. Guerra's Amended Complaint [56]   Under most circumstances, if the Court considers extrinsic evidence, the Rule 12(b)(6) motion should be converted into a motion for summary judgment. [57]   Here, Counter-Defendants cite to and incorporate extrinsic evidence regarding the underlying details of Melody's criminal case against her by the State to support their argument for dismissal of Dr. Guerra's claim against Melody for stalking and harassment. [58]   Such extrinsic evidence is outside Dr. Guerra's Amended Counterclaims and, as such, the Court should disregard such evidence and arguments when considering the Motion to Dismiss.

34.     If, however, the Court is inclined to convert Counter-Defendants' 12(b)(6) motion to a motion for summary judgment or consider evidence outside the Amended Counterclaim, it should conclude that the State's dismissal of the criminal charges against Melody on "speedy trial"

---

[56] *Speaker v. U.S. Dept. of H&HS Ctrs. for Disease Control and Prevention*, 623 F.3d 1371, 1379 (11th Cir.2010); see Fed. R. Civ. P. R. 12(d).
[57] *Id*.
[58] Motion to Dismiss, p. 9, fn. 33.

grounds does <u>not</u>, as a matter of law, bar Dr. Guerra's *civil* claims against Melody for stalking and harassing behavior.  Although there may be evidence that the criminal charges against Melody were dropped on "speedy trial" grounds, a dismissal on such *procedural grounds* does not, in and of itself, mean that Melody was innocent or that she did not commit the particular *criminal* offense she was charged with.  Thus, contrary to Counter-Defendants' allegation in their Motion to Dismiss, the dismissal of the criminal charges does not render Dr. Guerra's allegations of *civil* harassment and stalking implausible on their face.

> ### ii. *Counter-Defendants' Claims Against Dr. Guerra Revive Her Harassment and Stalking Claims*.

35.    If a counterclaim or cross claim arises out of the same transaction or occurrence that is the basis of an action, a party to the action may file the counterclaim or cross claim even though as a separate action it would be barred by limitation on the date the party's answer is required.[59]

36.    Here, Counter-Defendants filed suit against Dr. Guerra asserting fourteen causes of action, all of which ultimately arise from and/or relate to the foregoing underlying family dispute and state civil court custody case between Dr. Guerra and Counter-Defendants.  In support of their claims against Dr. Guerra, Counter-Defendants detail specific factual allegations and occurrences regarding their acrimonious relationship and history with Dr. Guerra dating back to at least 2014 as a basis for their claims that Dr. Guerra sought "revenge on her ex-husband and his new wife" which was allegedly motivated by "Dr. Guerra's obsessive jealousy"[60] and that Dr. Guerra engaged in a "campaign of hacking, surveillance, damages and malicious prosecution [as] part of a stalking campaign against Plaintiffs to inflict emotional distress upon [them]."[61]

---

[59] Tex. Civ. Prac. & Rem. Code Ann. § 16.069.
[60] *Id*. at ¶ 3.
[61] *Id*. at ¶¶ 2-6, 15-53.

37.     In doing so, Counter-Defendants have opened the door and revived Dr. Guerra's counterclaims against them for stalking and harassment, intentional infliction of emotional distress, and defamation, all of which arise from the same transactions and occurrences that are the basis of Counter-Defendants' claims against Dr. Guerra, particularly with respect to Melody's claims against Dr. Guerra for malicious prosecution and intentional infliction of emotional distress.

38.     Dr. Guerra's counterclaims were filed not later than the 30th day after the date on which the Dr. Guerra's answer was required.[62]   Accordingly, Dr. Guerra's counterclaim for harassment and stalking is not barred by the statute of limitations.

## D.     COUNT FOUR – INTENTIONAL INFLICTION OF EMOTION DISTRESS.

39.     Counter-Defendants acted intentionally or recklessly by impersonating Dr. Guerra for the purposes of creating false online profiles for dating websites for persons with HIV and other sexually transmitted disease websites, concealing her iPad and using it to attempt to hack into her email and Verizon accounts, publicly and falsely accusing Dr. Guerra of participating in human trafficking and grooming minors for human trafficking, spreading falsehoods about Dr. Guerra to Dr. Guerra's former employer, professional colleagues and in-laws, filing a false police report against Dr. Guerra, verbally harassing Dr. Guerra and her daughters and engaging in conduct causing severe psychological harm which manifested in physical pain and suffering.   Melody, by her repeated and unrelenting actions against Dr. Guerra, intended to inflict emotional distress, or knew or should have known that emotional distress was a likely result of her actions.

40.     " 'Extreme and outrageous conduct' is an amorphous phrase that escapes precise definition."[63] Although counsel for Counter-Defendants believes this type of egregious conduct

---

[62] Tex. Civ. Prac. & Rem. Code Ann. § 16.069.
[63] *Wilson v. Monarch Paper Co.,* 939 F.2d 1138, 1142 (5th Cir. 1991).

by Counter-Defendants is simply "akin to telling an overweight girl that she looks like a hippo," it is entirely plausible that a jury in Texas might indeed find this conduct to be extreme and outrageous and not something they would want their wives, sisters, or daughters ever subjected to. Again, the standard is not whether or not Dr. Guerra will ultimately prevail on her claim of IIED at trial, but it is instead whether Counter-Defendants have fair notice of the claim and the factual allegations are sufficient to show that the right to relief is plausible.   Accordingly, Counter-Defendants' request that the Court dismiss Dr. Guerra's IIED claim should be denied.

41.     Furthermore, Dr. Guerra's counterclaim for IIED is not barred by the statute of limitations for the reasons discussed supra in paragraphs 35-38.

**E.  COUNT FIVE – DEFAMATION.**

**i.  *Dismissal is Not a Consequence for a Plaintiff's Failure to Send a Request for Correction, Retraction or Clarification.***

42.     Counter-Defendants falsely claim that Dr. Guerra "fails to allege that she asked for correction, clarification or retraction" as required under TEX. PRAC. REM. CODE § 73.51 et seq (the "Defamation Mitigation Act" and "DMA").[64]   However, Dr. Guerra specifically alleges in her Amended Counterclaim that her attorney, on her behalf, sent a cease and desist letter to Counter-Defendants demanding that they stop making false statements and engaging in unlawful conduct against Dr. Guerra and that they remove/correct false statements and allegations made and posted about Dr. Guerra,[65] which is sufficient under Texas law for complying with the request requirement under the DMA.[66]

---

[64] Motion to Dismiss, p. 14.
[65] Amended Counterclaim, ¶ 29.
[66] *See Warner Bros. Entm't Inc. v. Jones*, No. 18-0068, 2020 WL 2315280 (Tex. May 8, 2020) (holding that compliance with the statute is satisfied when plaintiff, through his attorney, timely No. 16-119, 2016 WL 5337957, at *3 (E.D. La Sep. 23, 2016), made a sufficient request).

43.     However, assuming arguendo that Dr. Guerra did not timely make the request for correction, retraction or clarification (which Dr. Guerra disputes), "the dismissal of [Dr. Guerra's] claim is not the consequence authorized by the DMA for a plaintiff's failure to make the required request."[67]

## ii.  _The Heightened Standard of Pleading with "Reasonably Particularity" Does Not Apply to Motions asserted under Rule 12(b)(6)._

44.     Counter-Defendants argue that Dr. Guerra failed to "plead defamation with particularity."[68]  However, the heightened standard of pleading with "reasonably particularity" does not apply to motions asserted under Rule 12, rather it applies to motions asserted under Rule 9(b) for cases alleging fraud or mistake.[69]

45.     Moreover, Counter-Defendants mistakenly claim that Dr. Guerra "does not in any way identify the alleged defamatory statements."[70]  This is not the case.  Dr. Guerra specifically details in her Amended Counterclaim the false and defamatory statements and representations made and published by Melody to Dr. Guerra's former employer, colleagues, friends, which, include, without limitation, that Dr. Guerra stole money, contracted a sexually transmitted disease, engaged in human trafficking and groomed minors for human trafficking.[71]  Dr. Guerra also alleges that Melody made false and defamatory statements about her to police when she filed a false police report claiming that Dr. Guerra filed a "false" CPS report and committed a federal crime.[72]

---

[67] _Hardy v. Communication Workers of Am. Local 6215_, 536 S.W.3d 38, 40 (Tex.App.—Dallas 2017, pet. denied); _See_ Tex. Civ. Prac. & Rem. Code § 73.055(c)("If not later than the 90th day after receiving knowledge of the publication, the person does not request a correction, clarification, or retraction, the person may not recover exemplary damages.").
[68] Motion to Dismiss, p. 15.
[69] _See_ Fed. R. Civ. P. 9(b); _compare_ Fed. R. Civ. P. 12(b).
[70] Motion to Dismiss, p. 15.
[71] Amended Counterclaim, ¶ 22-25, 27.
[72] _Id_. at 32.

46.     As noted throughout this response, Dr. Guerra is not required to include *every* detail in her Amended Counterclaim.[73]  She is only required to supply enough facts "to raise a reasonable expectation that discovery will reveal evidence" to support her claims.[74]  Accordingly, Dr. Guerra's factual allegations in her Amended Counterclaim are sufficiently clear and detailed enough to put Counter-Defendants on fair notice of the claims against them and show that they rise above mere speculation.

*ii.*   ***Counter-Defendants' Claims Against Dr. Guerra Revive Her IIED Claims***.

47.     Dr. Guerra's counterclaim for defamation is not barred by the statute of limitations for the reasons discussed supra in paragraphs 35-38.

**F.   COUNT SIX – ABUSE OF PROCESS**

48.     The Amended Counterclaim contains such factual allegations necessary to comply with the pleading requirements under Rule 8.  Specifically, Dr. Guerra alleges that Dr. Cantu and Melody filed this present lawsuit with the ulterior motive of inflicting damage to Dr. Guerra, her reputation, and her career and is just another form of aggression utilized by Counter-Defendants as part of their sustained campaign of harassment against Dr. Guerra.  As with Counter-Defendants' prior unlawful actions, this lawsuit is predicated on Counter-Defendants' attempt to create a power imbalance for the purposes of personal retaliation and revenge against Dr. Guerra and is otherwise a domestic/family dispute that Counter-Defendants are attempting to play out in a public forum under the auspice of a "proper" use of process for the illegitimate purpose of causing embarrassment and harm to Dr. Guerra and her family.[75]  Accordingly, Dr. Guerra has satisfied her burden of providing fair notice of her abuse of process claim against Counter-

---

[73] Fed. R. Civ. P. 8.
[74] *Twombly*, 550 U.S. at 556.
[75] Amended Counterclaim, §57-58.

Defendants that are sufficiently plausible under the standard of review for a motion to dismiss under Rule 12(b)(6).

## VI.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Counter-Plaintiff, DR. SANDRA GUERRA, prays that the Court deny Counter-Defendants' Motion to Dismiss in its entirety and grant Dr. Guerra all such other and further relief to which she may justly be entitled.

Dated January 6, 2021.                              Respectfully submitted,

**DAVIS, CEDILLO & MENDOZA, INC.**

McCombs Plaza, Suite 500
755 E. Mulberry Avenue
San Antonio, Texas 78212
Telephone No.: (210) 822-6666
Telecopier No.: (210) 822-1151

By:    */s/Ricardo G. Cedillo*
RICARDO G. CEDILLO
Texas State Bar No. 04043600
rcedillo@lawdcm.com
LESLIE J. STRIEBER, III.
Texas State Bar No. 19398000
lstrieber@lawdcm.com
BRANDY C. PEERY
Texas State Bar No. 24057666
bpeery@lawdcm.com

ATTORNEYS FOR DEFENDANT, DR. SANDRA GUERRA

## CERTIFICATE OF SERVICE

I certify that on this 6th day of January 2021, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the parties on record.

*/s/Ricardo G. Cedillo*
RICARDO G. CEDILLO

21