UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

MELODY JOY CANTU and
DR. RODRIGO CANTU,

     *Plaintiffs*,

v.                             **Case No. SA-20-CV-0746-JKP-HJB**

DR. SANDRA GUERRA and
DIGITAL FORENSICS
CORPORATION,

     *Defendants*.

## MEMORANDUM OPINION AND ORDER

Before the Court is a *Motion to Dismiss Defendant Dr. Sandra Guerra's Amended Counterclaims* (ECF No. 38) filed by Plaintiffs/Counter-defendants Melody Joy Cantu ("MC") and Dr. Rodrigo Cantu (collectively "the Cantus"). Dr. Guerra has filed a response (ECF No. 39) and the Cantus have filed a reply brief (ECF No. 40). After considering the motion, related briefing, amended counterclaims (ECF No. 37), and applicable law, the Court grants the motion in part.

## I. BACKGROUND[1]

This action relates to relationship disputes involving the Cantus and Dr. Guerra. The Cantus commenced this case on June 24, 2020, by filing a civil complaint alleging various claims against Dr. Guerra and a forensics company she allegedly hired. *See ECF No. 1*. After filing her original answer and counterclaim (ECF No. 14) against the Cantus, she filed an amended answer and counterclaims (ECF No. 37) with court approval. That filing provides the operative pleading for purposes of the instant motion to dismiss.

---

[1] The background is taken from Dr. Guerra's allegations, which the Court views in a light most favorable to her consistent with the standards for motions to dismiss.

After ten years of marriage and the birth of two daughters ("the children" or "daughters"), Dr. Guerra and Dr. Cantu divorced in 2009. *ECF No. 37* ¶¶ 12, 14.[2] The Cantus' marriage commenced in 2014 and ended in 2016 after MC verbally abused the children on multiple occasions. *Id*. ¶¶ 13-15. The events directly leading to the instant litigation commenced on April 1, 2018, when MC confronted Dr. Cantu, Dr. Guerra, their children, and Dr. Guerra's future (and now current) husband in a dark restaurant parking lot after the family and Dr. Cantu had finished dinner. *Id*. ¶ 16. At that point, MC revealed that she and Dr. Cantu were seeing each other in secret. *Id*. Later that night, MC relentlessly harassed Dr. Guerra via social media. *Id*. ¶ 17.

In May 2018, Verizon Wireless notified Dr. Guerra "that someone was attempting to access her account online." *Id*. ¶ 21. The unauthorized attempts to "access her Verizon account continued for several weeks until [she] was forced to shut down all online access for that account." *Id*. During this same time-period, "someone also attempted to hack into [her] Verizon voicemail." *Id*. She alleges that one or both Cantus were behind these unauthorized attempts to access her Verizon account. *Id*.

MC engaged in other forms of harassment against Dr. Guerra, including fabricating a story that Dr. Guerra stole money and was suspected of having sexually transmitted diseases, contacting Dr. Guerra's professional colleagues to disparage her, filing false anonymous complaints with Dr. Guerra's employer, and creating fake accounts for Dr. Guerra on dating websites. *Id*. ¶¶ 22-24, 27. Around this time frame, a custody dispute between the doctors intensified and Dr. Cantu admitted to accessing Dr. Guerra's personal email via an iPad owned by Dr. Guerra and used by one of the daughters. *Id*. ¶ 28. At some point, legal counsel for Dr. Guerra sent the Cantus a cease-and-desist

---

[2] Dr. Guerra's counterclaims commence on page thirteen and restarts paragraph numbering at one. References to paragraph numbers are to her counterclaims.

letter. *Id*. ¶ 29. And the above-described events caused Dr. Guerra to hire Digital Forensics Corporation, LLC ("DFC")" to investigate on her behalf. *Id*. ¶ 30.

Relying on a reference in the Cantus' amended complaint, Dr. Guerra alleges that she received a Phase I report from DFC, which confirmed that MC's IP address matched the IP address from which fake social media accounts were created and from which hacking attempts were made regarding her Verizon account. *Id*. ¶ 31. In their amended complaint, the Cantus allege that Dr. Guerra hired DFC in May 2018 and filed a report against them with Child Protective Services later that month. *ECF No. 6* ¶¶ 27, 29. They further allege that, in August 2018, MC received a text with a link that also appears in DFC's Phase I report. *Id*. ¶¶ 33-34.

As summarized by Dr. Guerra, "[t]his is an action for violations of the Computer Fraud and Abuse Act [("CFAA")], 18 U.S.C. § 1030(a)(2)(c); the Harmful Access by Computer Act [("HACA")], Tex. Pen. Code § 33.02(a); and the Texas torts of stalking, defamation, intentional infliction of emotional distress, and abuse of process." *ECF No. 37* ¶ 1. She alleges that the Cantus "intentionally and knowingly accessed [her] computer, computer network, or computer system without [her] effective consent by attempting to hack into her Verizon online account and Verizon voicemail." *Id*. ¶ 2. She further alleges that they hacked into her email from the iPad. *Id*.

Dr. Guerra asserts six independent claims: (1) unauthorized access to a protected computer, network, or computer system in violation of CFAA, 18 U.S.C. § 1030(a)(2)(c); (2) unauthorized access to a computer, computer network, or computer system in violation of HACA, Tex. Penal Code § 33.02(a) and Tex. Civ. Prac. & Rem. Code § 143.001; (3) stalking and harassing behavior in violation of Tex. Civ. Prac. & Rem. Code § 85.001, et seq.; (4) intentional infliction of emotional distress; (5) defamation; and (6) abuse of process. *Id*. at 21-27. The Cantus move to dismiss all claims asserted against them on grounds that Dr. Guerra has failed to state a claim upon which

relief can be granted. They also assert that Claims 3, 4, and 5 are barred by the applicable statute of limitations. Dr. Guerra opposes the motion in all respects.

## II. MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(6), the Cantus seek dismissal of Dr. Guerra's counterclaims based on insufficient factual allegations and, for some claims, as being barred by the applicable statute of limitations. Under Rule 12(b)(6), litigants may move to dismiss asserted claims for "failure to state a claim for which relief can be granted." As required by Fed. R. Civ. P. 8(a)(2), every pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Such requirement provides opposing parties "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In general, a court addressing a motion under Rule 12(b)(6) "must limit itself to the contents of the pleadings, including attachments thereto." *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (citation omitted). But when a pleading references documents that are central to a claim, the Court may consider such documents if attached to the motion to dismiss. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). "A document is central to a claim when it is 'necessary to establish an element' of the claim." *Pylant v. Cuba*, No. 3:14-CV-0745-P, 2015 WL 12753669, at *2 (N.D. Tex. Mar. 6, 2015) (quoting *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011)). However, "if the operative pleading references a document that 'is merely evidence of an element' of a claim, the courts do not incorporate it into the pleading." *Id.* (same). Additionally, the Court may take judicial notice of matters of public record. *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007).

Furthermore, when ruling on a motion to dismiss, courts construe the operative pleading "in the light most favorable to the [non-movant] and draw all reasonable inferences in the [non-movant's] favor." *Severance v. Patterson*, 566 F.3d 490, 501 (5th Cir. 2009). Despite the natural focus on the allegations of the operative pleading, the party moving for dismissal under Rule 12(b)(6) "carries the burden of proof for dismissal." *Newton v. Bank of Am., N.A.*, No. CV SA-19-CA-797-FB, 2019 WL 6048000, at *2 (W.D. Tex. Aug. 29, 2019). Courts, furthermore, may find conclusory statements insufficient to support dismissal under Rule 12(b)(6), especially when the movant disregards relevant portions of the operative pleading. *See #1 Fan Co., LLC v. Pepco Licensed Prod., Inc.*, No. SA-09-CA-1029-FB, 2011 WL 13269165, at *2 (W.D. Tex. Mar. 16, 2011).

"[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (citation omitted). Nevertheless, parties asserting a claim must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). Facts alleged must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. To survive a Rule 12(b)(6) motion, the operative pleading must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the [asserting party] pleads factual content that allows the court to draw the reasonable inference that the [opposing party] is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that [an opposing party] has acted unlawfully. Where a [pleading] pleads facts that are "merely consistent with" [an opposing party's] liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). As *Twombly* states, to avoid dismissal under Rule

12(b)(6), the non-movant must allege facts that "nudge" an asserted claim "across the line from conceivable to plausible." 550 U.S. at 570. The focus is not on whether the non-movant will ultimately prevail, but whether that party should be permitted to present evidence to support adequately asserted claims. *Id.* at 563 n.8.

Further, while asserted defenses may support dismissal under Rule 12(b)(6), they only do so when the operative "pleading conclusively establishes the affirmative defense." *Reagan v. U.S. Bank, Nat. Ass'n*, No. CIV.A. H-13-00043, 2013 WL 510154, at *2 (S.D. Tex. Feb. 12, 2013) (addressing res judicata defense). And, although defendants may raise defenses through a motion to dismiss under Rule 12(b)(6), the courts view them through the standards applicable to such motions.

First, Dr. Guerra argues that the Cantus cite to and incorporate extrinsic evidence that is outside the operative pleading. *Resp*. ¶¶ 33-34. But the referenced matter is a matter of public record that the Court may take judicial notice. There is no need to treat the motion to dismiss as one for summary judgment due to the reliance on such evidence. The Court next addresses the parties' arguments on a claim-by-claim basis.

**A. CFAA Violation**

Based on an alleged violation of 18 U.S.C. § 1030(a)(2)(C), Dr. Guerra seeks damages under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. *ECF No. 37* ¶¶ 33-37. She specifically premises this claim on the unauthorized access to her iPad. *See id.* ¶¶ 34-37. But she also asserts that the Cantus attempted to hack her Verizon account without authorization. *See id.* ¶ 2.

A violation of § 1030(a)(2)(C) occurs when one "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . (C) information from any

protected computer." CFAA defines "computer," "protected computer," and "exceeds authorized access." *See* 18 U.S.C. § 1030(e)(1), (2), and (6).

As pertinent to this case, a protected computer is one "which is used in or affecting interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States." *Id*. § 1030(e)(2)(B). And for purposes of CFAA, "the term 'exceeds authorized access' means to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." *Id*. § 1030(e)(6). "The phrase 'is not entitled so to obtain' is best read to refer to information that a person is not entitled to obtain by using a computer that he is authorized to access." *Van Buren v. United States*, 114 S. Ct. 1648, 1655 (2021).

"Civil actions are authorized for some, but not all, violations of § 1030's substantive provisions." *Fiber Sys. Int'l, Inc. v. Roehrs*, 470 F.3d 1150, 1156 (5th Cir. 2006). Section 1030(g) provides:

> Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i). Damages for a violation involving only conduct described in subsection (c)(4)(A)(i)(I) are limited to economic damages. No action may be brought under this subsection unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage. No action may be brought under this subsection for the negligent design or manufacture of computer hardware, computer software, or firmware.

Given Dr. Guerra's allegations, only subclause (I) is at issue and it requires "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." Under CFAA,

> the term "loss" means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any

> revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.

18 U.S.C. § 1030(e)(11). Further, "the term 'damage' means any impairment to the integrity or availability of data, a program, a system, or information." *Id*. § 1030(e)(8).

The Cantus do not limit the CFAA claim to the alleged iPad intrusion. They challenge the claim through Rule 12(b)(6) on two grounds – that Dr. Guerra (1) does not sufficiently allege that access to her computers was unauthorized and (2) fails to adequately allege the loss she sustained. *Mot*. at 3. They assert that Dr. Cantu accessed the iPad with authorization as a parent of the child using the device. *Id*. at 5-6. With respect to claims regarding Verizon, they assert that Dr. Guerra lacks standing to assert a CFAA violation to others and the claim fails because there is no alleged loss related to accessing the Verizon accounts. *Id*. at 6.

### 1. Allegations Regarding Unauthorized Access

Dr. Guerra specifically alleges that she "maintained and secured her iPad by reasonable means and never authorized the Cantus to access it." *ECF No. 37* ¶ 35. She has sufficiently alleged that the Cantus accessed her iPad without authorization. That Dr. Cantu contends that he had authorization as a parent of a co-user of the iPad does not overcome Dr. Guerra's allegations on a motion to dismiss. And, even under Dr. Cantu's theory, there are sufficient allegations that he exceeded any authority he might have had. *See id*. ¶ 36 (alleging that the Cantus lacked authorization to access the iPad and "us[ed] it to access personal and private accounts, information, and documents owned by Dr. Guerra without permission").

In response to the motion to dismiss, Dr. Guerra contends that she has adequately alleged an ownership interest in both the iPad and her Verizon accounts. *Resp*. at 11. And she has alleged an ownership interest in both. *See ECF No. 37* ¶¶ 2, 21, 27-28, 35-36. To the extent Dr. Guerra

asserts a CFAA claim based on her Verizon account, she has alleged enough facts to survive the motion to dismiss on grounds of standing.

### 2. <u>Allegations Regarding Loss</u>

The remaining basis for dismissing the CFAA claim – insufficient allegations of loss – is not as quickly resolved. Dr. Guerra alleges that she has suffered loss of at least $5,000, including engaging DFC, investigating the intrusion of the iPad and other computers, assessing the damage, and attempting "to restore security to various intruded-upon systems." *Id*. ¶ 37. She makes no specific allegation as to when these losses occurred or whether they were incurred in a single, one-year period. But the Cantus do not urge dismissal on any basis related to the one-year period. The Court, furthermore, can reasonably infer that the alleged losses were incurred during the events leading to this litigation, which based on Dr. Guerra's counterclaims appear to have all occurred in 2018. *See id*. at 16-21 (describing events occurring only in 2018). While the Cantus' claims relate to matters occurring through June 2019, *see ECF No. 6* ¶¶ 47-53, nothing indicates that Dr. Guerra bases her counterclaims on events in 2019, and even if she does, the one-year period required by § 1030(c)(4)(A)(i)(I) is not limited to a calendar year. Any period comprising one year suffices for purposes of the statute.

The Cantus focus on whether Dr. Guerra's alleged losses are reasonably related to the alleged computer intrusion. Section 1030(e)(11) defines "loss" through two yardsticks: (1) "any reasonable cost to any victim," including three specifically identified costs and (2) "any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." This construction is supported by "the plain language of the statute," which "treats lost revenue as a different concept from incurred costs, and permits recovery of the former only where connected to an 'interruption in service.'" *Nexans Wires S.A. v. Sark-USA, Inc.*, 166 F. App'x 559, 562 (2d Cir.

2006). Although Dr. Guerra alleges that the attempted hacking of her Verizon accounts forced her to shut down all online access for that account, *ECF No. 37* ¶ 21, she does not allege any losses, costs, or damages because of any interruption of service. She is thus limited to the first measure of loss.

In some respects, Dr. Guerra's allegations merely parrot the definition of loss while also asserting that the aggregate loss is at least $5,000. But she does include allegations beyond the statutory language. She specifically attributes her losses to securing the services of DFC, investigating intrusions of her iPad and other computers, assessing damage, and attempting to restore security. While she could have provided greater detail, the Court cannot say that she has failed to allege facts to support a plausible CFAA claim. The Cantus themselves allege that they "hired two computer forensics companies" and paid one of them "a $5,000 non-refundable retainer." *ECF No. 6* ¶ 47. Given the nature and typical expense of computer forensic services, the Court finds that Dr. Guerra's loss allegations suffice at this stage of the litigation.[3]

In reply, the Cantus argue that the $5,000 requirement is jurisdictional. *See Reply* at 3-4. However, they do not premise their motion on Rule 12(b)(1), which pertains to jurisdiction. And, although some cases do characterize the requirement as jurisdictional, *see*, *e.g.*, *Raju v. Murphy*, No. 3:17-CV-357-CWR-FKB, 2019 WL 982863, at *8 (S.D. Miss. Feb. 28, 2019) (concluding "that generalized allegations of damage and loss in excess of $5,000 during a one-year period is insufficient to plead the requisite jurisdictional amount under the CFAA"); *Oil States Skagit Smatco, LLC v. Dupre*, No. CIV.A.09-4508, 2010 WL 2605748, at *2 (E.D. La. June 21, 2010) (treating loss amount as jurisdictional), others do not, *see*, *e.g.*, *Complete Logistical Servs., LLC v.*

---

[3] The Court recognizes that the loss allegations do not specifically relate to the attempted access to Dr. Guerra's Verizon accounts but the larger issue for that claim appears to be a lack of intentional access resulting in obtaining information from a protected computer. The Cantus, moreover, do not appear to pursue that basis for dismissal.

*Ruth*, 350 F. Supp. 3d 512, 522 (E.D. La. 2018) (granting leave to amend so that the plaintiff "could state a plausible claim for relief under the CFAA"); *Meyers v. Siddons-Martin Emergency Grp. LLC*, No. CV 16-1197, 2016 WL 5337957, at *3 (E.D. La. Sept. 23, 2016) (considering loss amount under Rule 12(b)(6)); *Simmonds Equip., LLC v. GGR Int'l, Inc.*, 126 F. Supp. 3d 855, 864 (S.D. Tex. 2015) (treating $5,000 loss as any other element challenged under Rule 12(b)(6)); *United States ex rel. Rigsby v. State Farm Fire & Cas. Co.*, No. 1:06-CV-433-HSO-RHW, 2015 WL 13649420, at *13 (S.D. Miss. Aug. 6, 2015) (finding the loss allegations "insufficient to make out a plausible claim for relief"); *Oce N. Am., Inc. v. MCS Servs., Inc.*, 748 F. Supp. 2d 481, 488 (D. Md. 2010) (considering loss allegations under Rule 12(b)(6)). No binding authority considers the loss amount as jurisdictional, and the Court finds the latter cases more persuasive. Further, even though the *Cantus* characterize loss amount as jurisdictional, they notably rely on some of the latter cases.

In addition, while *Raju* characterizes the loss amount as jurisdictional, its discussion is more in line with a Rule 12(b)(6) failure to state a claim and it relies on cases addressing the loss amount under Rule 12(b)(6) standards for stating a claim. *See* 2019 WL 982863, at *8 (citing *Oce* and *Quantlab Techs. Ltd. (BVI) v. Godlevsky*, 719 F. Supp. 2d 766, 776 (S.D. Tex. 2010)). Although the Court does not doubt the option to dismiss a truly meritless CFAA claim for lack of jurisdiction, *see Sw. Airlines Co. v. Harris*, No. 3:07-CV-583-D, 2007 WL 3285616, at *4 (N.D. Tex. Nov. 2, 2007) (adopting recommendation of Mag. J.), or the ability to conduct a deep dive into jurisdiction on a factual attack under Rule 12(b)(1), *see Chas. S. Winner, Inc. v. Polistina*, No. CIV.A. 06-4865 (NLH), 2007 WL 1652292, at *3 (D.N.J. June 4, 2007), the *Cantus* proceed under Rule 12(b)(6). And, to the extent, they make a facial challenge to jurisdiction over the CFAA claim, the pleading requirements of Rule 8(a) do not require more specificity. *See id*. at *3 n.5.

### 3. <u>Conclusion Regarding CFAA Claim</u>

For these reasons, the Court denies the motion as it relates to the CFAA claim. In doing so, it limited itself to the specific challenges asserted by the Cantus. As the movants, the Cantus have the burden to assert the basis for their Rule 12(b)(6) challenge.

## B. HACA Violation

Based on an alleged violation of Tex. Penal Code § 33.02(a), Dr. Guerra seeks damages under the Texas Harmful Access by Computer Act ("HACA" or "THACA"). *ECF No. 37* ¶¶ 38-41. Dr. Guerra specifically incorporates all preceding paragraphs of her pleading into this claim. *See id.* ¶ 38. She alleges that the Cantus intentionally or knowingly accessed her computer, computer network, or computer system without her effective consent. *Id.* ¶ 39. She alleges the same losses as incurred with respect to her CFAA claim. *See id.* ¶ 41.

Texas provides recourse to a civil suit for damages for knowing or intentional violations of Texas Penal Code Chapter 33. *See* Tex. Civ. Prac. & Rem. Code § 143.001. Subparagraph (a) of that statute provides that any "person who is injured or whose property has been injured as a result of a violation under Chapter 33, Penal Code, has a civil cause of action if the conduct constituting the violation was committed knowingly or intentionally." Subparagraph (b) establishes a statute of limitations for a "suit for damages under this section."

The Cantus seek to dismiss Dr. Guerra's HACA claim on the same grounds asserted against the CFAA claim, namely insufficiently pled injury, Dr. Cantu's parental rights, and lack of standing to assert HACA claims of others. *See Mot.* at 7. Both statutes provide a civil remedy for violation of specified criminal statutes involving unauthorized access to computers, computer networks, and computer systems. *See DHI Grp., Inc. v. Kent*, No. CV H-16-1670, 2017 WL 4837730, at *8 (S.D. Tex. Oct. 26, 2017). "Damages are an essential element" of both claims. *TrueBeginnings,*

*LLC v. Spark Network Servs.*, Inc, 631 F. Supp. 2d 849, 858 (N.D. Tex. 2009). But even with respect to damages, the two statutes are not identical. *See Sw. Airlines Co. v. BoardFirst, LLC*, No. 3:06-CV-0891-B, 2007 WL 4823761, at *16-17 (N.D. Tex. Sept. 12, 2007) (discussing that HACA requires an injury, whereas CFAA requires "damage" or "loss" both of which "carry specialized meanings under the CFAA," and thus declining to grant summary judgment for the plaintiff on either claim).

Despite the differing terminology related to damages, the Court is not prepared to state at this stage of the litigation that losses alleged under the CFAA cannot constitute an injury under HACA. Under Texas law, a party may be injured for purposes of § 143.001, when it must purchase "a new email system and server" following unauthorized access to a prior computer network or system. *See Spicer, Tr. for Est. of Brady v. Maxus Healthcare Partners, LLC*, 616 S.W.3d 59, 122 (Tex. App. – Fort Worth 2020, no pet. h.). For purposes of the instant Rule 12(b)(6) motion to dismiss, the Cantus' grounds for dismissing the HACA claim fail for essentially the same reasons that the CFAA claim survives dismissal.

## C. Stalking Claim

Through her third claim, Dr. Guerra asserts that MC has engaged in stalking and harassing behavior in violation of Tex. Civ. Prac. & Rem. Code § 85.001, et seq. *See ECF No.* 37 ¶¶ 42-45. In response to the motion, she submits that she has stated a plausible stalking claim. *Resp.* ¶¶ 28-33. She also argues that the Court should not consider extrinsic evidence, but if it does, it should conclude that the State's dismissal of the criminal charges against MC does not affect whether she has a plausible stalking claim. *See id.* ¶¶ 33-34. Finally, she asserts that this claim is timely based upon Tex. Civ. Prac. & Rem. Code § 16.069(a). *See id.* ¶¶ 35-38. She had also pled that savings statute in her operative pleading. *See* ECF No. 37 ¶ 11.

When considering a claim based on state law, courts naturally apply the state law to determine whether the claim survives a motion for dismissal. *See Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1142 (5th Cir. 1991) (applying state law in summary judgment context). Chapter 85 provides a basis to hold another liable for stalking. *See* Tex. Civ. Prac. & Rem. Code § 85.002 ("A defendant is liable, as provided by this chapter, to a claimant for damages arising from stalking of the claimant by the defendant."). A defendant is "any party from whom a claimant seeks recovery of damages under this chapter." *Id*. § 85.001(2). And a Chapter 85 claimant is any "party seeking to recover damages under this chapter." *Id*. § 85.001(1).

Section 85.003(a) identifies the three essential elements of a stalking claim under Texas law. The first two elements are straight forward: "(1) on more than one occasion the defendant engaged in harassing behavior" and "(2) as a result of the harassing behavior, the claimant reasonably feared for the claimant's safety or the safety of a member of the claimant's family." *Id*. § 85.003(a)(1) & (2). For purposes of Chapter 85, "'Harassing behavior' means conduct by the defendant directed specifically toward the claimant, including following the claimant, that is reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass the claimant." *Id*. § 85.001(4).

The third element is also straight forward if "the defendant violated a restraining order prohibiting harassing behavior" – one merely must show such a violation. *Id*. § 85.003(a)(3). But absent such a violation, the statute requires the claimant to show six specific things:

> (A) the defendant, while engaged in harassing behavior, by acts or words threatened to inflict bodily injury on the claimant or to commit an offense against the claimant, a member of the claimant's family, or the claimant's property;
>
> (B) the defendant had the apparent ability to carry out the threat;
>
> (C) the defendant's apparent ability to carry out the threat caused the claimant to reasonably fear for the claimant's safety or the safety of a family member;
>
> (D) the claimant at least once clearly demanded that the defendant stop the defendant's harassing behavior;

(E) after the demand to stop by the claimant, the defendant continued the harassing behavior; and

(F) the harassing behavior has been reported to the police as a stalking offense.

*Id.*; *accord Doe v. Siddiqui*, No. 3:17-CV-1869-N, 2018 WL 3956292, at *3 (N.D. Tex. Aug. 17, 2018).

### 1. Sufficiency of Allegations

While § 85.003 sets out the proof needed to prove a stalking claim, surviving a motion to dismiss merely requires the claimant to make sufficient factual allegations for each element. At this stage, there is no need for proof. The Court finds sufficient factual allegations for the first two elements. Satisfaction of those elements are not reasonably contested on the factual allegations of this case. Dr. Guerra has alleged multiple occasions when MC engaged in harassing behavior directed specifically toward her and that such behavior caused her to reasonably fear for her or her family's safety.

As for the third element, Dr. Guerra specifically alleges that the deliberate campaign of stalking and harassing by MC caused her to reasonably fear for her safety and the safety of her family "due to threats of bodily injury." *See ECF No. 37* ¶ 44. From the facts alleged, the Court can reasonably infer that the threats occurred while MC engaged in harassing behavior. While it is not clear whether the alleged facts regarding April 1, 2018, satisfy that element alone, it is notable that MC's actions alone may satisfy the element – the statute does not require the threat to be verbalized. And the alleged events of April 1, 2018, show that MC had the apparent ability to carry out her threats, as she located Dr. Guerra in a restaurant parking lot and chased her and her children to their car. Such an apparent ability caused Dr. Guerra's reasonable fear for her and her family's safety. *See id.* ¶ 16. Dr. Guerra also alleges that she made repeated prior demands that MC stop her harassing behavior. *See id.* ¶ 44. She further alleges that both she and Dr. Cantu reported "the

harassing and stalking behavior to the police." *Id*. While the latter allegation may leave some question as to whether the behavior was "reported to the police as a stalking offense," it is sufficient to satisfy element 3(F) for purposes of a surviving a motion to dismiss.

Although the third element lacks some specifics, the Court finds that Dr. Guerra has alleged sufficient facts to satisfy all six requirements of that element. Viewing the facts in the light most favorable to Dr. Guerra and drawing all reasonable inferences in her favor, the Court finds that she has stated a stalking claim that is factually plausible under Texas law. At this point, the Court is not concerned with whether she may ultimately prevail on her claim. It only matters that she states enough facts to make the claim plausible.

Relying on public information from Bexar County court records, the Cantus argue that the dismissal of state charges against MC makes Dr. Guerra's stalking claim implausible. First, the Court disagrees that the dismissal of the charges has such an impact on Dr. Guerra's claim. Nothing within Chapter 85 makes a viable claim contingent on conviction or even a criminal trial. Second, the public information shows that the charges were likely dismissed on grounds of speedy trial, which is not a reflection of the merits of the criminal action. Third, the Court notes that the offense description is "Harassment" rather than "Stalking," but it does not view that description as determinative of the § 85.003(a)(3)(F) element. For these reasons, the public information does not alter the Court's view that Dr. Guerra has stated a stalking claim that is plausible on its face.

### 2. Statute of Limitations

The Cantus also assert that a two-year statute of limitations bars the stalking claim. *Mot*. at 10. But they base their calculation on an accrual date of April 1, 2018. *See id*. The face of Dr. Guerra's pleading does not reflect precisely when the claim may have accrued. While April 1, 2018, appears to be when the alleged harassment/stalking commenced that date is not necessarily

the date the claim accrued. Absent violation of a restraining order, which is not at issue here, the stalking statute contains six necessary components before one has a stalking claim. *See* Tex. Civ. Prac. & Rem. Code § 85.003(a)(3). Dr. Guerra's pleading does not clearly identify the date that the last element occurred. Without that date, her pleading does not facially show that the claim is untimely. Furthermore, the Cantus point to public information regarding the charges against MC, and that information indicates that a report was filed October 30, 2018. While that date may not be when she made the report to the police, it might be especially when viewing it in the light most favorable to her. Notably, Dr. Guerra first asserted her counterclaims on October 6, 2020, when she filed her original answer and counterclaims (ECF No. 14).

Although Dr. Guerra's response to the motion seems to concede that she must resort to Tex. Civ. Prac. & Rem. Code § 16.069(a) for the timeliness of her claim, that does not change the fact that the Cantus have the burden to show that the operative pleading conclusively establishes the affirmative defense. And, with respect to the stalking claim, the operative pleading leaves enough ambiguity to preclude dismissal as untimely without resort to § 16.069(a). Furthermore, although Dr. Guerra specifically pled the Texas savings statute, she does not admit that any claim is untimely without resort to the statute. *See* ECF No. 37 ¶ 11. Nor does she directly apply it to any particular claim. The Court may reasonably infer that Dr. Guerra pled the statute on an as-needed basis.

And if the Court were inclined to agree that the operative pleading establishes the limitations defense, the invocation of § 16.069(a) in Dr. Guerra's initial filing and in response to the motion, nevertheless provides an adequate reason to disagree. The statute provides:

> (a) If a counterclaim or cross claim arises out of the same transaction or occurrence that is the basis of an action, a party to the action may file the counterclaim or cross claim even though as a separate action it would be barred by limitation on the date the party's answer is required.

> (b) The counterclaim or cross claim must be filed not later than the 30th day after the date on which the party's answer is required.

This case presents no dispute as to the thirty-day requirement. The Cantus, however, dispute that Dr. Guerra's counterclaims arise out of the same transaction or occurrence as their claims.

"For a counterclaim to arise out of the 'same transaction or occurrence' as the original claim, there must be a 'logical relationship' between the claims." *Owen v. Castle Peak 2012-1 Loan Tr.*, No. A-13-CV-569 LY, 2013 WL 12089984, at \*4 (W.D. Tex. Sept. 20, 2013). This means that "[t]he essential facts on which the counterclaim is based must be significantly and logically relevant to both claims." *Id.* (citing *Smith v. Ferguson*, 160 S.W.3d 115, 120 (Tex. App. – Dallas 2005, pet. denied); *Frazier v. Havens*, 102 S.W.3d 406, 411 n.3 (Tex. App. – Houston [14th Dist.] 2003, no pet.)).

Although the Cantus recognize the potential of § 16.069, they assert that their claims against Dr. Guerra do not arise from and/or correlate to the family dispute or state civil court custody case," but instead "emulate from the repetitive hacking and harassment they have been met with due to both Co-Defendants' actions." *Mot.* at 10. Of course, Dr. Guerra views the facts underlying her claims as significantly relevant to the facts underlying the fourteen claims the Cantus assert against her, especially their claims of malicious prosecution and intentional infliction of emotional distress. *Resp.* ¶¶ 35-38. Viewing the facts in the light most favorable to her, the facts underlying Dr. Guerra's stalking claim are significantly and logically relevant to the claimed malicious prosecution. At the very least, the operative pleading does not conclusively show that she may not rely on the Texas statute. At this stage of the litigation, the limitations defense is insufficient to dismiss the stalking claim.

### 3. <u>Conclusion Regarding Stalking Claim</u>

For these reasons, the stalking claim survives the motion to dismiss.

**D. Intentional Infliction of Emotional Distress ("IIED")**

Dr. Guerra asserts numerous instances where the Cantus acted intentionally and recklessly to intentionally inflict emotional distress. *See ECF No.* 37 ¶¶ 47-49. The Cantus contend that their alleged acts are insufficient to support an IIED claim. *Mot*. at 11-13. They also argue that the claim is untimely because it accrued on April 1, 2018. *Id*. at 13. They assert no other basis to dismiss the IIED claim. *See id*. at 11-13.

Because the "claim for intentional infliction of emotional distress is a . . . state law claim," the Court is "bound to apply the law of Texas in determining" whether the claim survives a motion for dismissal. *Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1142 (5th Cir. 1991). Texas recognizes "the tort of intentional infliction of emotional distress" and has "adopt[ed] the elements set forth in Restatement (Second) of Torts § 46 (1965)." *Wornick Co. v. Casas*, 856 S.W.2d 732, 734 (Tex. 1993). Recovery under such tort requires proof of four elements: "1) the defendant acted intentionally or recklessly, 2) the conduct was 'extreme and outrageous,' 3) the actions of the defendant caused the . . . emotional distress, and 4) the resulting emotional distress was severe." *Id*. (quoting *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993)); *accord Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006). Of course, to survive a motion to dismiss, there must be sufficient factual allegations for each element.

The Cantus challenge this claim with respect to the second element. *Mot*. at 11-13. They argue that merely rude behavior does not suffice. *Id*. at 12. And they compare the alleged conduct "to telling an overweight girl that she looks like a hippo, or a caller telling a telephone operator that he would break her neck if he were there." *Id*. at 13.

"'Extreme and outrageous conduct' is an amorphous phrase that escapes precise definition." *Wilson*, 939 F.2d at 1142. Nevertheless, it is often stated that the conduct must have

been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. . . . Generally, the case is one in which a recitation of the facts to an average member of the community would lead him to exclaim, "Outrageous."

*Id*. (quoting *Dean v. Ford Motor Credit Co.*, 885 F.2d 300, 306 (5th Cir. 1989)); *accord Wornick Co.*, 856 S.W.2d at 734. "It is well recognized" in Texas "that a course of harassing conduct may support liability for intentional infliction of emotional distress." *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 615 (Tex. 1999). When "repeated or ongoing harassment is alleged," courts evaluate the alleged offensive conduct "as a whole." *Id*. In other words, they "consider the totality of the conduct in determining whether it is extreme and outrageous." *Id*. Liability may arise when "the cumulative quality and quantity of the harassment is extreme and outrageous." *Id*.

Here, Dr. Guerra alleges that the Cantus engaged in a series of intentional or reckless actions, including impersonating her "for the purposes of creating false online profiles for dating websites for persons with HIV and other sexually transmitted disease websites" and "publicly and falsely accusing Dr. Guerra of participating in human trafficking and grooming minors for human trafficking." *ECF No. 37* ¶ 47. The Court is not prepared to say that the alleged course of conduct as a whole does not suffice for a claim of intentional infliction of emotional distress. The two identified actions of themselves appear extreme and outrageous. The Court finds that Dr. Guerra has stated enough factual allegations to state an IIED claim that is plausible on its face.

As with the stalking claim, the Cantus assert that a two-year statute of limitations bars the IIED claim. *Mot*. at 13-14. They again base their calculation on an accrual date of April 1, 2018. *See id*. at 13. But the face of Dr. Guerra's pleading does not reflect precisely when the claim accrued. While April 1, 2018, may be the start of the series events leading up to the IIED claim, Dr. Guerra does not base this claim solely on the events of that day. And Dr. Guerra does not reveal the precise dates of all alleged events within the series of alleged events. Nor does she

precisely allege when the events culminated in her serious emotional distress. Because an IIED claim can result from alleged cumulative events, focusing solely on one event may not be warranted to determine whether such a claim is timely.

As pointed out in the prior section, Dr. Guerra's resort to Tex. Civ. Prac. & Rem. Code § 16.069(a) does not change the fact that the operative pleading must conclusively establish the affirmative defense. Similarly, with respect to the IIED claim, the operative pleading is not conclusive as to the limitations defense even without resort to § 16.069(a). Furthermore, for mostly the same reasons stated in the preceding section, the facts underlying Dr. Guerra's IIED claim are significantly and logically relevant to the claimed malicious prosecution when viewed in the light most favorable to her. The operative pleading does not conclusively show that Dr. Guerra may not rely on the Texas statute if needed to revive her IIED claim.

For these reasons and these reasons alone, the IIED claim survives dismissal at this stage of the case. Because the Cantus have the burden to assert the basis for their Rule 12(b)(6) challenge, the Court has limited itself to their specifically asserted challenges.

## E. Defamation

The Cantus next seek to dismiss Dr. Guerra's defamation claim on three grounds: (1) failure to request correction, retraction, or clarification as required by Tex. Civ. Prac. & Rem. Code § 73.055; (2) failure to plead the claim with particularity as required by Texas law; and (3) untimeliness. *Mot*. at 14-17. Dr. Guerra challenges each asserted ground. *See Resp*. ¶¶ 42-47.

### 1. <u>Compliance with the Defamation Mitigation Act</u>

The Cantus first seek dismissal of Dr. Guerra's defamation claim under the Defamation Mitigation Act ("DMA"). *See Mot*. at 14 (relying on Tex. Civ. Prac. & Rem. Code § 73.055). Dr. Guerra argues that dismissal is not a consequence of a failure to comply with § 73.005, and that a

cease-and-desist letter sent to the Cantus satisfies the statute in any event. *Resp.* ¶¶ 42-43.

The DMA, Tex. Civ. Prac. & Rem. Code §§ 73.051 to 73.062, is "to provide a method for a person who has been defamed by a publication or broadcast to mitigate any perceived damage or injury." *Warner Bros. Entm't, Inc. v. Jones*, 611 S.W.3d 1, 10 (Tex. 2020) (quoting Tex. Civ. Prac. & Rem. Code § 73.052). "Rather than replace the common-law elements of a defamation claim, the statute prescribes a mechanism for plaintiffs to bring attention to defamatory publications to enable defendants, if they so choose, to take corrective action and thereby mitigate injury stemming from that publication." *Hogan v. Zoanni*, ___ S.W.3d ___, ___, No. 18-0944, 2021 WL 2273721, at *2 (Tex. June 4, 2021) [hereinafter *Hogan II*] (plurality op.) (citing *Warner Bros.*, 611 S.W.3d at 10).[4]

In *Hogan II*, a plurality of the Texas Supreme Court along with the concurring opinion agreed that the underlying court of appeals had erred in holding that § 73.055(a) required dismissal of certain claims. *See id.* at 21 (Boyd, J., concurring). Unfortunately, the Texas Supreme Court did "not reach a consensus on the main issue presented—whether the DMA requires dismissal of certain claims in a timely filed lawsuit for which the defendant has not received a sufficient request before limitations has expired." *Id.* at *9 (plurality op.).

Had *Hogan II* resolved that main issue consistent with the plurality, this Court could easily resolve the instant issue regarding the DMA in this case by finding that "[t]he plain language of the statute does not support a right to dismissal for failing to provide a sufficient request before the statute of limitations expires." *Id.* at *11. But even without a definitive answer from the Texas Supreme Court, the overwhelming consensus of the cases to address the issue have essentially

---

[4] The Court recognizes that, as of the date of this Memorandum Opinion and Order, the *Hogan* opinion has not yet been released for publication in any permanent law report and, until released, the opinion is subject to revision or withdrawal. However, as the most recent pronouncement by the Texas Supreme Court on pertinent issues, this Court considers the opinion in its current form.

ruled the same as the *Hogan II* plurality.

In a case of first impression for the Texas intermediate courts of appeal, the Dallas appellate court construed the DMA as not making a defamation claim "subject to dismissal solely based on the [asserting party's] failure to timely and sufficiently request a correction, clarification, or retraction." *Hardy v. Commc'n Workers of Am. Loc. 6215 AFL-CIO*, 536 S.W.3d 38, 48 (Tex. App. – Dallas 2017, pet. denied). In making that holding, it specifically found the only other case relevant to the issue, *Tubbs v. Nicol*, 675 F. App'x 437 (5th Cir. 2017) (per curiam), both non-precedential and unpersuasive. *See id*. at 44 n.4.

Following *Hardy*, the Northern District of Texas, found that "failure to follow § 73.055(a)(1) does not require dismissal for failure to state a claim," and it would effectively "read an additional remedy into the statute" were it to permit "dismissal under the DMA." *Inge v. Walker*, No. 3:16-CV-0042-B, 2017 WL 4838981, at *3 (N.D. Tex. Oct. 26, 2017). Later that year, the Austin appellate court agreed with *Hardy* "that when the statute is read in its entirety, giving effect to all its provisions and considering the purpose of the statute, the consequence for failing to timely make a request is not dismissal, but rather preclusion of recovery of exemplary damage." *Warner Bros. Entm't v. Jones*, 538 S.W.3d 781, 812 (Tex. App. – Austin 2017), *aff'd on other grounds*, 611 S.W.3d 1 (Tex. 2020).

The Amarillo appellate court followed the Austin court of appeals and held that "[t]he only consequence for failing to make a request for retraction within ninety days is preclusion of recovery of exemplary damages, not dismissal." *Cummins v. Lollar*, No. 07-16-00337-CV, 2018 WL 2074636, at *8 (Tex. App. – Amarillo May 3, 2018, pet. denied). Later in 2018, the Southern District of Texas, agreed with the reasoning of the Dallas and Austin courts of appeal, and found "that the Texas legislature meant for section 73.055 to limit damages if a plaintiff fails to request

a correction, clarification, or retraction within ninety days; it does not require dismissal." *Tu Nguyen v. Duy Tu Hoang*, 318 F. Supp. 3d 983, 1019 (S.D. Tex. 2018). Less than a month later, the Houston appellate court, disagreed with the Austin and Dallas courts of appeals and agreed with *Tubbs*. *Zoanni v. Hogan*, 555 S.W.3d 321, 327 (Tex. App. – Houston [1st Dist.] 2018) [hereinafter *Hogan I*], *rev'd and remanded on other grounds*, No. 18-0944, 2021 WL 2273721 (Tex. June 4, 2021).

Noting the split caused by *Hogan I*, the Eastern District of Texas discussed the various federal and state precedents and was unconvinced that a failure to follow § 73.055(a)(1) requires dismissal for failure to state a claim. *Butowsky v. Folkenflik*, No. 4:18-CV-442, 2019 WL 2518833, at *46-48 & n.32 (E.D. Tex. Apr. 17, 2019) (recommendation of Mag. J.) (setting out split of authority and identifying only the now reversed opinion on one side of the split) *adopted by* 2019 WL 3712026 (E.D. Tex. Aug. 7, 2019). Later in 2019, the Western District of Texas denied dismissal on an argued failure "to exhaust statutory prerequisites." *Green Beret Found. v. Paquette*, No. SA-18-CV-1044-XR, 2019 WL 6048021, at *2 (W.D. Tex. Aug. 20, 2019). It did so for two reasons: (1) a failure "to exhaust statutory prerequisites is a matter outside the pleadings, and courts may look only to the pleadings in determining whether a [party] has adequately stated a claim without converting the motion to a motion for summary judgment" and (2) the "split of authority in the Texas intermediate appellate courts as to whether failure to make a timely and sufficient retraction request pre-suit is a bar to litigation or just a preclusion of recovery of exemplary damages." *Id*. (quoting *Butowsky* for second quote). And "Houston's Fourteenth District" joined the Texas appellate courts in Dallas, Austin, and Amarillo, as interpreting "the provisions of the DMA as meaning that the consequence for failing to timely make a request is not dismissal, but rather preclusion of recovery of exemplary damages." *MediaOne, L.L.C. v. Henderson*, 592 S.W.3d 933,

945 (Tex. App. – Tyler 2019, pet. denied) (citing *inter alia Cunningham v. Waymire*, 612 S.W.3d 47, 70 (Tex. App. – Houston [14th Dist.] 2019, pet. denied)).

Because of the then split of authority on the issue in Texas courts, the Western District of Texas again declined to dismiss "defamation claims solely" on grounds that the plaintiff had not complied with § 73.055. *Reasoner v. Kelley*, No. 1:18-CV-1121-RP, 2020 WL 1902536, at *7 (W.D. Tex. Feb. 17, 2020). But as already discussed, the Texas Supreme Court has now reversed the only intermediate Texas appellate court decision creating the split of authority. *See Hogan II*, 2021 WL 2273721, at *11. Although the Texas Supreme Court did not reach a consensus on the court-splitting issue, it nevertheless technically nullified the split by reversing the appellate judgment and remanding the case for further consideration. *See id*.

Therefore, at this point, multiple Texas appellate courts and, as of June 4, 2021, four Texas Supreme Court justices embrace the principle that non-compliance with § 73.055(a) does not require dismissal. And, since *Butowsky*, no intermediate Texas appellate court or federal Texas court has sided with the dissent in *Hogan II*. In fact, it appears as though the reversed *Hogan I* decision is the lone intermediate appellate decision to reject that principle. While *Hogan II* clouds the issue, it does not dictate an outcome in this case.

The Court could perhaps follow the Texas intermediate courts of appeal which agree that noncompliance with § 73.055(a) does mandate dismissal. But, despite the near unanimity of the opinions on this issue, this Court has no reason to definitively weigh in on the matter at this juncture. First, compliance with the statutory prerequisites typically requires consideration of matters outside the pleadings, which is not permitted on a Rule 12(b)(6) motion to dismiss unless the Court converts the motion to one for summary judgment. *See Green Beret Found.*, 2019 WL 6048021, at *2. This case does not warrant going outside the pleadings.

Second, although the split of authority within the Texas intermediate appellate courts may have been technically eliminated through the recent opinion of the Texas Supreme Court, *see Hogan II*, 2021 WL 2273721, at *11, the Texas Supreme Court did not reach a consensus on the issue causing the split, *see id.* at *9. The Texas Supreme Court has thus left some ambiguity regarding the matter. When faced with a state court split of authority, courts "more properly" consider such issues "at summary judgment." *Green Beret Found.*, 2019 WL 6048021, at *2 (citing *Butowsky*, 2019 WL 2518833, at *48). The same sentiment applies when faced with the ambiguity resulting from a plurality opinion that reverses an appellate decision without reaching a consensus on the main issue presented. Further, given the uncertain state of the law in Texas, courts may decline to dismiss "defamation claims solely" because of noncompliance with § 73.055. *See Reasoner*, 2020 WL 1902536, at *7 (declining dismissal on that basis on summary judgment but dismissing for another reason).

Similarly, the circumstances here do not warrant dismissing defamation claims only because plaintiff has not complied with § 73.055. On a Rule 12(b)(6) motion to dismiss, a defense may result in dismissal only if the operative pleading "conclusively establishes" the defense. *See Reagan v. U.S. Bank, Nat. Ass'n*, No. CIV.A. H-13-00043, 2013 WL 510154, at *2 (S.D. Tex. Feb. 12, 2013). Defendant has not shown that Dr. Guerra's pleading conclusively establishes noncompliance with § 73.055.

To the contrary, Dr. Guerra has alleged that her attorney made a written demand for MC "to cease and desist from making false statements and to correct such statement." *ECF No. 37* ¶ 54. Section 73.055(a) provides two ways to comply, only one of which is at issue here – making "a timely and sufficient request for a correction, clarification, or retraction from the defendant." And one can comply with this provision through his or her attorney. *See Warner Bros. Entm't v.*

*Jones*, 611 S.W.3d 1, 12 (Tex. 2020) ("Compliance with the statute is satisfied here because Jones, through his attorney, timely made a sufficient request."). Because, at the motion to dismiss stage, the Court merely looks to the pleadings, Dr. Guerra's allegations are enough for her defamation claims to survive dismissal under the DMA.

### 2. <u>Sufficiency of Pleading</u>

The Cantus next argue that Dr. Guerra has failed to plead her defamation claim with particularity as required by Texas law. *Mot*. at 15-16. Dr. Guerra responds that the heightened pleading requirement of Fed. R. Civ. P. 9(b) does not apply to defamation claims. *Resp*. ¶¶ 44-46. In reply, the Cantus clarify that they do not proceed under Rule 9(b), but instead premise their argument on Tex. Civ. Prac. & Rem. Code § 73.055(d)(3)-(5) of the DMA. *Reply* at 7 & n.10.

Nothing in *Hogan II* or *Warner Bros.* supports finding that the DMA altered the normal pleading requirements for defamation or created any particularity requirement. The plurality *Hogan II* opinion specifically rejects the notion that the DMA replaces the elements of a common-law defamation claim. *See Hogan v. Zoanni*, ___ S.W.3d ___, ___, No. 18-0944, 2021 WL 2273721, at *2 (Tex. June 4, 2021) (citing *Warner Bros.*, 611 S.W.3d at 10). Furthermore, § 73.055(d) addresses the sufficiency of a request for correction, clarification, or retraction. It does not address the pleading sufficiency of a defamation claim.

"Defamation's elements include (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the [party asserting the claim], (3) with the requisite degree of fault, and (4) damages, in some cases." *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015) (citing *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998)). These are the elements when a private person sues a non-media party "in connection with a matter that is not of public concern." *Anderson v. Octapharma Plasma, Inc.*, No. 19-CV-2311-D, 2020 WL 1083608, at *6

(N.D. Tex. Mar. 6, 2020). In such circumstances, furthermore, "truth is an affirmative defense." *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995). "The status of the person allegedly defamed determines the requisite degree of fault. A private individual need only prove negligence, whereas a public figure or official must prove actual malice." *In re Lipsky*, 460 S.W.3d at 593.

Long ago, the Fifth Circuit recognized that Fed. R. Civ. P. 9(b) only requires that malice and other conditions of the mind "be averred generally." *Belli v. Orlando Daily Newspapers, Inc.*, 389 F.2d 579, 589 (5th Cir. 1967). In general, furthermore, negligence does not invoke the pleading requirements of Rule 9(b). *See In re Life Partners Holdings, Inc.*, 926 F.3d 103, 123 (5th Cir. 2019) (addressing negligent misrepresentation claim that did not rely on same facts as fraud claims). And "[w]hile a claim for defamation is not subject to the heightened pleading requirements of Rule 9(b), the pleadings for a defamation claim must be sufficiently detailed to the extent necessary to enable the defendant to respond." *Encompass Off. Sols., Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938, 958 (E.D. Tex. 2011).

Pleading a defamation claim must comply with the notice pleading of Fed. R. Civ. P. 8(a) as interpreted by *Twombly* and *Iqbal*. This is the standard by which courts now judge whether a party has stated a claim upon which relief can be granted. Naturally, some claims may need more detail to comply with Rule 8(a). And some detail may be rendered unnecessary when other factual details provide enough facts to state a plausible claim.

Some courts state that defamation claims require time and place allegations. *See*, *e.g.*, *Mandawala v. Baptist Sch. of Health Pros.*, No. SA-19-CV-1415-JKP-ESC, 2020 WL 5250642, at *8 (W.D. Tex. Sept. 3, 2020), *appeal dismissed sub nom. Mandawala v. Ne. Baptist Hosp.*, No. 20-50785, 2020 WL 8816470 (5th Cir. Nov. 13, 2020); *Cheatam v. JCPenney Co, Inc.*, No. 1:16-CV-

00072-MAC, 2016 WL 4718959, at *5 (E.D. Tex. July 13, 2016) (recommendation of Mag. J.) *adopted by* 2016 WL 4703844 (E.D. Tex. Sept. 8, 2016); *Jackai v. Affirmative Servs., Inc.*, No. 3:13-CV-3594-L, 2015 WL 264713, at *4 (N.D. Tex. Jan. 21, 2015); *Strickland v. Aaron Rents, Inc.*, No. EP-05-CA-13-DB, 2005 WL 2035528, at *2 (W.D. Tex. Aug. 22, 2005); *Garrett v. Celanese Corp.,* No. 3:02-CV-1485-K, 2003 WL 22234917, at *4 (N.D. Tex. 2003), *aff'd*, 102 Fed. App'x 387 (5th Cir. 2004); *Jackson v. Dallas Indep. Sch. Dist.*, No. CIV. A. 3:98-CV-1079-D, 1998 WL 386158, at *5 (N.D. Tex. 1998), *aff'd*, 232 F.3d 210 (5th Cir. 2000). But many of these cases predate *Twombly* and *Iqbal* and thus may have less persuasiveness now. And to the extent the newer cases rely on those older cases, they likewise may be less persuasive.

Moreover, it is important to recognize that while some cases appear to state an absolute requirement for time and place allegations, such requirement is better viewed through the lens of *Twombly* and *Iqbal*. For instance, the undersigned recognized the requirement in *Mandawala* through reliance on two older cases affirmed by the Fifth Circuit. But the defamation claim failed for lack of any allegation "that any statement was published to a third party." 2020 WL 5250642, at *8. The Court thus applied the *Iqbal* and *Twombly* standard without regard to time and place allegations. Similarly, the Eastern District of Texas found that the plaintiff had "pled its defamation claim with sufficient particularity" to put the defendant "on notice of the claim," even though "the allegations relating to the defamation claim do not specify when these alleged statements were made or, with regards to the letters to patients, to whom they were specifically made." *Encompass*, 775 F. Supp. 2d at 958.

One of the earliest cases – the *Jackson* case out of the Northern District of Texas – cited a respected commentator for the higher pleading requirement and noted that several courts had "adopted this higher requirement." 1998 WL 386158, at *5. Notably, the commentator was

addressing Fed. R. Civ. P. 9(f), which states: "An allegation of time or place is material when testing the sufficiency of a pleading." As recognized by the commentator:

> It should be understood that Federal Rule of Civil Procedure 9(f) does not require the pleader to set out specific allegations of time and place; it merely states the significance of these allegations when a pleader actually interposes them in a complaint or answer. Whether statements of time and place are required in a pleading is determined by the substantive nature of the suit, the principles governing the motion for a more definite statement, and the general rules of pleading. Such allegations usually are necessary if without them the statement of a claim is so vague and ambiguous that the other party cannot adequately frame an answer.

5A Charles Alan Wright et al., Federal Practice and Procedure § 1309 (4th ed. Apr. 2021 update) (footnotes omitted). The commentator further recognized that it "may be necessary in pleading certain types of tort claims" to allege the place and time of the tort and then specifically noted that courts require such allegations in libel and slander suits." *Id.* The apparent "purpose of this pleading requirement [is] to enable the defending party to frame an adequate answer raising applicable defenses based on the statute of limitations and other principles of law, although it may also reflect the disfavored character of defamation actions." *Id.* (footnote omitted). Notably, when "specific allegations of time and place are required or desirable but none are pleaded," the norm is to "grant a motion for a more definite statement and give a party a reasonable length of time to cure the defect rather than dismiss the complaint." *Id.*

Because it has been long established that plaintiffs are "not required to anticipate or overcome affirmative defenses, such as expiration of the statute of limitations, in the complaint," *Nobre v. La. Dep't of Pub. Safety*, 935 F.3d 437, 442 (5th Cir. 2019) (citing, *inter alia*, *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)), a limitations defense for a defamation claim provides no basis for a heightened pleading standard. Importantly, a defamation claim under Texas law is not a type of claim that "has been created by a statute that extinguishes the right of action as well as the remedy if the suit is not brought within a certain period." 5A Charles Alan Wright et al., Federal Practice

and Procedure § 1309 & n.6 (4th ed. Apr. 2021 update) (footnote provides examples of such statutes). And even assuming that defamation actions may be disfavored, that provides no reason to require a heightened pleading standard.

The Supreme Court has long prohibited application of heightened pleading standards. *See Leatherman v. Tarrant Cty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 168 (1993) (addressing "heightened pleading standard" applied in municipal liability contexts). It later re-emphasized that use of heightened pleading standard for Title VII cases was contrary to the liberal pleading requirements of Fed. R. Civ. P. 8(a). *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511-13 (2002). And in *Twombly*, it emphasized that the standard enunciated therein did not run counter to *Swierkiewicz* because it does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 570. More recently, the Supreme Court emphatically reaffirmed *Leatherman* and *Swierkiewicz* by holding that "no heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke [42 U.S.C.] § 1983 expressly in order to state a claim." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam). In doing so, it distinguished *Twombly* and *Iqbal* on ground that "they concern the *factual* allegations a complaint must contain to survive a motion to dismiss." *Id*. at 12.

The Supreme Court provides binding principles regarding the pleading requirements of Fed. R. Civ. P. 8(a) and 9(b). *See Swierkiewicz*, 534 U.S. at 513. First, "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," such as Rule 9(b). *Id*. Second, the Supreme Court "has declined to extend such exceptions to other contexts." *Id*. When Rule 9(b) makes no mention of a particular claim, the pleading in such a case, "as in most others, must satisfy only the simple requirements of Rule 8(a)." *Id*. Furthermore, when "a pleading fails to

specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding" and "claims lacking merit may be dealt with through summary judgment under Rule 56." *Id.* at 514. Although *Swierkiewicz* did not mention other methods to obtain dismissal of meritless claims, the omission does not eliminate such avenues when the circumstances warrant.

One court has specifically disagreed with the concept that defamation claims must state the time and place of publication. *See Humphrey v. Texas Gas Serv.*, No. 1:14-CV-485, 2014 WL 12687831, at *10 n.9 (E.D. Tex. Dec. 11, 2014). In doing so, it identified a Fifth Circuit case that was wrongly cited as support because the case does not support the underlying proposition. *See id.* (citing *Ameen v. Merck & Co., Inc.*, 226 F. App'x 363 (5th Cir. 2007) (per curiam)). It noted a case that had also erroneously cited *Ameen* in support of the position and two cases (*Garrett* and *Jackson*) that it viewed as distinguishable because they addressed federal pleading standard rather than Texas standards. *See id.*

This Court agrees that *Ameen* does not support requiring time and place allegations for defamation. And, as an unpublished per curiam opinion, the case is not binding even if it supported the principle. As for the other cases, this Court does not view the federal pleading standard as a reason for distinguishing them from this case. Indeed, the federal pleading standard specifically applies to this case and the Court finds that requiring a heightened pleading standard for defamation claims violates binding Supreme Court precedent. Because Rule 9(b) does not apply to defamation claims, Rule 8(a) as interpreted by *Iqbal* and *Twombly* provides the pleading standard. Of course, that does not mean that no defamation claim will require time and place allegations. What it means is that the allegations must provide fair notice of the claim to the opposing party. In some cases, fair notice might require time and place allegations to sufficiently plead a defamation claim.

In other circumstances, alleged facts may suffice even without such specificity.

Dr. Guerra has alleged that MC recklessly and maliciously published false statements of fact to third parties that were defaming to her. *ECF No. 37* ¶¶ 53-54. She identifies the third parties as her "former employer, colleagues, friends, and family." *Id*. ¶ 53. She identifies the statements and representations as including that she "contracted a sexually transmitted disease and engaged in human trafficking and groomed minors for human trafficking." *Id*. She alleges that MC acted negligently or with actual malice regarding the truth of her statements. *See id*. ¶ 54. She alleges that she was damaged by the defamatory statements and was ultimately fired. *Id*. ¶ 55.

Earlier in her pleading, she identifies family members as her daughters and current husband. *See id*. ¶ 16. She further alleges that MC sent sixty-four text messages to her former in-laws, the subject matter of which is unclear. *See id*. ¶ 17. She alleges that MC "contacted Dr. Guerra's then-boyfriend's ex-wife and told her Dr. Guerra stole money and was suspected to have sexually transmitted diseases." *Id*. ¶ 22. MC allegedly "contacted Dr. Guerra's professional colleagues via social media and telephone calls in an effort to disparage her." *Id*. ¶ 23. MC allegedly contacted Dr. Guerra's employer, Humana, with a false claim of retaliation" and a false complaint "that Dr. Guerra was participating in human trafficking." *Id*. ¶¶ 23-24. And, allegedly, "the Cantus previously publicly and falsely accused Dr. Guerra of grooming [MC's] daughter for human trafficking." *Id*. ¶ 24.

Dr. Guerra has made allegations to state a defamation claim this is factually plausible. The Cantus want additional detail. But such detail in unnecessary at the motion to dismiss stage.

### 3. <u>Limitations Defense</u>

Finally, the Cantus argue that the defamation claim is untimely. *Mot*. at 16-17. They contend that "the last possible instance of defamation appears to be June of 2019, over one year prior"

to her filed counterclaims. *See id*. But to succeed on a Rule 12(b)(6) motion based on a limitations defense, the movant cannot rely on mere appearances. The operative pleading must conclusively establish the defense, and in this instance, Dr. Guerra's pleading does not do so.

Defamation claims under Texas law are subject to a one-year statute of limitations. *See* Tex. Civ. Prac. & Rem. Code § 16.002(a). "Generally, the cause of action accrues when the defamatory statement is published or circulated; but the statute of limitations does not begin to run until the injured party learns of, or, in the exercise of reasonable diligence, should have learned of the injury or wrong giving rise to the action." *Crisp v. Sears Roebuck & Co.*, No. SA-13-CA-962-PM, 2015 WL 12977378, at *17 (W.D. Tex. Mar. 4, 2015) (citations and internal quotation marks omitted), *aff'd*, 628 F. App'x 220 (5th Cir. 2015). In a plurality opinion discussed earlier, the Texas Supreme Court stated that it had "never held that the discovery rule applies to defamation claims except in the narrow circumstance involving a person's discovery of allegedly libelous information filed with a credit agency" and further "suggested that the discovery rule would rarely extend to other contexts." *Hogan v. Zoanni*, ___ S.W.3d ___, ___, No. 18-0944, 2021 WL 2273721, at *7 (Tex. June 4, 2021) (citing *Kelley v. Rinkle*, 532 S.W.2d 947, 949 (Tex. 1976)).

Even though the plurality opinion may suggest a more limited discovery rule in the defamation context, it still recognizes its application. Furthermore, the DMA itself provides for statutory tolling of limitations during certain periods. *See* Tex. Civ. Prac. & Rem. Code § 73.055(e). Given these periods of potential delayed accrual or tolling and the absence of certainty as to dates of all alleged defamation, Dr. Guerra's operative complaint is not conclusive as to the applicability of the defense. Her resort to Tex. Civ. Prac. & Rem. Code § 16.069(a) does not alter the legal principle that her pleading must conclusively establish the affirmative defense. Similarly, facts underlying Dr. Guerra's defamation claim are significantly and logically relevant to the claimed

malicious prosecution when viewed in the light most favorable to her. The operative pleading does not conclusively show that Dr. Guerra may not rely on the Texas statute if needed to revive her defamation claim.

## F. Abuse of Process

Finally, the Cantus seek to dismiss Dr. Guerra's abuse-of-process claim. *Mot.* at 17-19. They contend that she conflates such claim with one for malicious prosecution. *Id.* at 17. In response, Dr. Guerra argues that she properly alleged an abuse-of-process claim based on the Cantus' filing of this federal action against her. *See Resp.* ¶ 48.

To state a claim for abuse of process under Texas law, a party must allege (1) "an illegal, improper or perverted use of the process, a use neither warranted nor authorized by the process;" (2) "an ulterior motive or purpose in exercising such illegal, perverted or improper use of the process;" and (3) damages resulting from "such illegal act." *Cooper v. Trent*, 551 S.W.3d 325, 333–34 (Tex. App. – Houston [14th Dist.] 2018, pet. denied). Critically, "abuse of process consists not in the filing and maintenance of a civil action, but rather in the perversion of some process issued in the suit after its issuance." *Detenbeck v. Koester*, 886 S.W.2d 477, 481 (Tex. App. – Houston [1st Dist.] 1994, writ dismissed) (citation omitted). Even if an action is commenced "without probable cause" and with a malicious intent, the commencement of such action does not of itself state a claim for abuse of process. *See id.* "The mere maintenance of a civil action, even if done with malicious intent, will not support a cause of action for abuse of process." *Id.*; *accord Liverman v. Payne-Hall*, 486 S.W.3d 1, 5 (Tex. App. – El Paso 2015, no pet.).

In this case Dr. Guerra merely alleges that the Cantus abused process by commencing this case against her. *See ECF No. 37* ¶ 58. The only process used in this case was for its intended purpose of compelling Dr. Guerra to file an answer to the lawsuit. Under the facts of this case, Dr.

Guerra has not stated a claim for abuse of process that is plausible on its face. Accordingly, the Court dismisses such claim under Fed. R. Civ. P. 12(b)(6).

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** the *Motion to Dismiss Defendant Dr. Sandra Guerra's Amended Counterclaims* (ECF No. 38). As stated herein, the Court grants the motion as to the asserted abuse-of-process counterclaim and that claim is hereby **DISMISSED** with prejudice. It otherwise denies the motion. For every other asserted counterclaim, Dr. Guerra has stated a plausible claim that survives the motion to dismiss.

The Court further **ORDERS** the parties to engage in mediation before their agreed upon mediator **on or before September 28, 2021**. In their *Joint Alternative Dispute Resolution Status Report* (ECF No. 44) filed on March 15, 2021, the parties state their belief that "mediation is appropriate any time after the [passing of sixty days]." By setting a deadline for mediation, the Court does not alter any aspect of the *Fourth Amended Scheduling Order* (ECF No. 50) or the referral of this case to the Honorable Magistrate Judge Henry J. Bemporad for pretrial management. Subject to further order of the Court, all deadlines set out in the governing scheduling order remain in effect, including the August 30, 2021 deadline for responses to settlement offers and the September 29, 2021 deadline for filing a joint report setting forth the status of settlement. This case remains referred to for pretrial management

**IT is so ORDERED.**

**SIGNED this 28th day of June 2021.**

**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**