**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **MELODY JOY CANTU and** | § | |
| **DR. RODRIGO CANTU,** | § | |
| *Plaintiffs* | § | |
| | § | |
| | § | **CASE NO.: 5:20-CV-00746-JKP (HJB)** |
| | § | |
| V. | § | |
| | § | |
| **DR. SANDRA GUERRA and** | § | |
| **DIGITAL FORENSICS** | § | |
| **CORPORATION, LLC** | § | |
| *Defendants* | § | |

**DR. GUERRA'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

NOW COMES Defendant, DR. SANDRA GUERRA ("Dr. Guerra" and "Defendant"), and files this Dr. Guerra's Motion for Summary Judgment on Plaintiffs' Claims, and, in support thereof, would respectfully show unto the Court as follows:

**I.**
**SUMMARY OF ARGUMENT**

1.      At its core, this lawsuit is a domestic dispute initiated by Plaintiffs, Melody Joy Cantu ("Melody"), and Dr. Rodrigo Cantu ("Dr. Cantu"), against Dr. Cantu's ex-wife, Dr. Guerra, in an attempt to re-litigate matters which were the subject of a 2018 District Court lawsuit involving the custody of the then-minor children of Dr. Guerra and Dr. Cantu, which was dismissed with prejudice in 2019.   This case is in federal court because Plaintiffs allege that Dr. Guerra and co-defendant, Digital Forensics Corporation, LLC ("DFC") violated the Computer Fraud Abuse Act ("CFAA") and Federal Wire Tap Act.  Plaintiffs have also asserted claims against Dr. Guerra and DFC for Harmful Access by Computer, intentional infliction of emotional distress, and

malicious prosecution under Texas law.

2.     However, Plaintiffs' allegations are based solely on assumptions, speculation, supposition, and motive (Dr. Guerra's alleged "obsessive jealousy"[1] and Melody's belief that Dr. Guerra wanted to get "an edge up on the [underlying] family case then pending in District Court[2]). Accordingly, Dr. Guerra requests that the Court grant Dr. Guerra summary judgment on Plaintiffs' CFAA, Harmful Access by Computer, and Federal Wire Tap claims because Plaintiffs lack any actual *evidence* that (i) Dr. Guerra or DFC *intentionally* or *knowingly* hacked or surveilled Plaintiffs; or (ii) Plaintiffs suffered *any* damages, much less a minimum of $5,000 in any 1-year period, as a result of any alleged *intentional* or *knowing* unauthorized access of Plaintiffs' computers, computer networks, or computer systems by Dr. Guerra or DFC.

3.     In addition, Dr. Guerra requests that the Court grant summary judgment on *all* of Dr. Cantu's claims against Dr. Guerra because they are barred by the doctrine of collateral estoppel.

## II.
## SUMMARY JUDGMENT EVIDENCE

4.     In support of this Motion, Dr. Guerra relies upon the following:

- Exhibit 1 – Excerpts from the Deposition Transcript of Melody Joy Cantu dated July 16, 2022.

- Exhibit 2 – USAA Business Records Affidavit and Investigation Report dated November 15, 2018.

- Exhibit 3 – Excerpts from the Deposition Transcript of Dr. Rodrigo Cantu dated July 16, 2022.

- Exhibit 4 – Plaintiffs' Expert Designation.

---

[1] Plaintiffs' First Amended Complaint, ¶3.
[2] Exhibit 1, 149:1-19.

- <u>Exhibit 5</u> - Excerpts from the Deposition Transcript of Plaintiffs' Retained Testifying Expert, Jeffrey Michael Fischbach dated July 26, 2022.

- <u>Exhibit 6</u> – Plaintiff, Melody Joy Cantu's Responses to Defendant Dr. Guerra's First Set of Interrogatories.

- <u>Exhibit 7</u> – Plaintiff, Dr. Rodrigo Cantu's Responses to Defendant Dr. Guerra's First Set of Interrogatories.

- <u>Exhibit 8</u> – Email Correspondence Regarding Plaintiffs' Refusal to Respond to Dr. Guerra's First Set of Interrogatories Pertaining to Plaintiffs' Damages.

- <u>Exhibit 9</u> – Mediated Settlement Agreement in the District Court Custody Case between Dr. Guerra and Dr. Cantu.

- <u>Exhibit 10</u> – District Court Subpoena dated March 29, 2019 by Dr. Rodrigo Cantu to DFC for Production of Documents in the District Court Custody Case.

- <u>Exhibit 11</u> – Sandra Guerra's Answer to Rodrigo David Cantu's Motion for Enforcement of Possession or Access filed in District Court on June 11, 2018.

- <u>Exhibit 12</u> – Motion for Dismissal with Prejudice dated November 27, 2019 filed in the District Court Custody Case.

5.      Dr. Guerra also requests the Court to take judicial notice of the pleadings and motions of the parties referenced herein and all other orders and pleadings on file.

## III.
## <u>RESERVATION OF RIGHT TO AMEND AND/OR SUPPLEMENT PENDING OUTCOME OF NOVEMBER 4, 2022 HEARING</u>

6.      Dr. Guerra filed a Motion to Compel Plaintiffs' Responses to Written Discovery and Request for Sanctions [Doc. 102] on August 29, 2022 ("Dr. Guerra's Motion to Compel") requesting the Court to order Plaintiffs to produce (i) all communications between Plaintiffs and the individuals identified in Plaintiffs' Initial Disclosures as likely to have discoverable information, and (ii) the engagement letters between Plaintiffs and Plaintiffs' counsel and all fee

statement and invoices (redacted for privilege) evidencing the attorneys' fees and costs Plaintiffs seek to recover from Defendants.

7.     Plaintiffs allege that Defendants caused them to suffer severe emotional distress and identified various physicians in Plaintiffs' Initial Disclosures who allegedly treated them.  Dr. Guerra served notices of her intent to take depositions upon written questions to the treating physicians identified in Plaintiffs' Initial Disclosures and subpoena for the production of Plaintiffs' medical and billing records, but no medical or billing records have been produced as of this date. Instead, Melody filed her Notice of Motion for Opposed Protective Order [Doc. 101] ("Melody's Motion for Protective Order").

8.     The Court has ordered an in-person hearing on November 4, 2022 on Dr. Guerra's Motion to Compel and Melody's Motion for Protective Order.  Accordingly, Dr. Guerra reserves the right to amend and/or supplement this Motion pending the Court's ruling on such motions and the production of any documents that may be ordered by the Court.

### IV.
### LEGAL STANDARD FOR MOTION FOR SUMMARY JUDGMENT

9.     Summary judgment is appropriate when the pleadings, affidavits, and other summary judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.[3]  "A fact is 'material if it might affect the outcome of a case under the governing substantive law.[4]

10.     A defendant who seeks summary judgment on a plaintiff's claim must demonstrate the absence of a genuine dispute of material fact by either (i) submitting summary judgment evidence that negates the existence of a material element of the plaintiff's claim or (ii) showing

---

[3] FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322.
[4] *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

there is no evidence to support an essential element of the plaintiff's claim.[5]   While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the non-movant's case.[6]

11.   While the court must view the evidence in a light favorable to the party opposing summary judgment, this favorable presumption for the non-movant exists only when the non-movant presents an actual controversy of fact.[7]   When the moving party has met its Fed. R. Civ. P. 56(a) burden, the non-moving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings.   The non-movant must identify specific evidence in the record and articulate how that evidence supports that party's claim.[8]   "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.' "[9]   Courts cannot "in the absence of any proof, assume that the non-moving party could or would prove the necessary facts."[10]

## V.
## ARGUMENT AND AUTHORITIES

### A. AS A MATTER OF LAW, PLAINTIFFS CANNOT SUCCEED ON ANY CLAIM AGAINST DR. GUERRA FOR VIOLATION OF THE CFAA.

12.   Plaintiffs assert 8 causes of action against Dr. Guerra for violation of the following sections of the CFAA: 18 U.S.C. §§1030(a)(2)(C) [First COA]; 1030(a)(5)(A) [Second COA]; 1030(a)(5)(B) [Third COA]; 1030(a)(5)(C) [Fourth COA]; 1030(a)(2)(C) and 1030(b) [Fifth COA]; 1030(a)(5)(A) and 1030(b) [Sixth COA]; 1030(a)(5)(B) and 1030(b) [Seventh COA];

---

[5] *See Celotex Corp.*, 477 U.S. at 322-23.
[6] *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted).
[7] *Coburn Supply Co., Inc. v. Kohler Co.*, 194 F. Supp. 2d 580, 581 (E.D. Tex. 2002) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).
[8] *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007).
[9] *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075).
[10] *Id.*

1030(a)(5)(C) [Eighth COA].[11]

13.     Courts have held that the CFAA must be construed narrowly, even in civil actions, because the same sections that give rise to civil remedies also give rise to criminal penalties.[12]

>    ***i.   There is No Competent Summary Judgment Evidence that Dr. Guerra Intentionally or Knowingly Accessed Plaintiffs' Computers or Intentionally Caused any Damage.***

14.     Dr. Guerra first moves for summary judgment on all of Plaintiffs' CFAA claims because Plaintiffs cannot meet their summary judgment burden to prove that that Dr. Guerra acted with the requisite intent or knowledge required to give rise to liability under the CFAA.  The provisions of the CFAA relevant to Plaintiffs' claims against Dr. Guerra provide in pertinent part as follows:

>    (a) Whoever—
>
>    (2)(C) ***intentionally*** accesses a computer without authorization or exceeds authorized access, and thereby obtains information from any protected computer [Plaintiffs' First COA]; or
>
>    (5)(A) ***knowingly*** causes the transmission of a program, information, code, or command, and as a result of such conduct, ***intentionally*** causes damage without authorization, to a protected computer [Plaintiffs' Second COA]; or
>
>    (5)(B) ***intentionally*** accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage [Plaintiffs' Third COA]; or
>
>    (5)(C) ***intentionally*** accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss [Plaintiffs' Fourth COA]
>
>                             ***

---

[11] Plaintiffs' First Amended Complaint [Doc. 6].

[12] *Oracle Corp. v. SAP AG*, 734 F. Supp. 2d 956, 967 (N.D. Cal. 2010); *Lockheed Martin Corp. v. Speed*, 6:05-CV-1580-ORL-31, 2006 WL 2683058, at *7 (M.D. Fla. Aug. 1, 2006); *see also Leocal v. Ashcroft*, 543 U.S. 1, 12 n. 8, 125 S. Ct. 377, 160 L. Ed. 2d 271 (2004) (using the rule of lenity to interpret a criminal statute that was being enforced in a civil action).

shall be punished as provided in subsection (c) of this section.

(b) Whoever conspires to commit or attempts to commit an offense under subsection (a) [(2)(C) and 5(A)(C), above,] of this section shall be punished as provided in subsection (c) of this section [Plaintiffs' Fifth, Sixth, Seventh and Eighth COA].[13]

15.     Plaintiffs make the conclusory allegation that Dr. Guerra and DFC "hacked, surveilled, and damages Plaintiffs' protected computers and computer networks."  But, these allegations are based solely on assumptions, speculation, supposition, and motive (Dr. Guerra's alleged "obsessive jealousy"[14] and Melody's belief that Dr. Guerra wanted to get "an edge up on the [underlying] family case then pending in District Court[15]).  After exhaustive discovery, Plaintiffs lack any actual *evidence* that Dr. Guerra or DFC hacked or surveilled Plaintiffs.

16.     Plaintiffs allege that on or about September 21, 2018, a representative from Spectrum/Charter discovered "a cable splitter installed on their line that neither the cable company nor the Cantus put there."[16]  Melody testified:

> A:· I am alleging that a splitter was placed on my line and the cameras, the modem and everything associated with that splitter could access the video cameras and everything else in the home.[17]

17.     Melody further alleges that Dr. Guerra conducted video surveillance of Melody, Dr. Cantu, and Melody's minor children and testified that she "*believe[s]* that through the link to [Melody's] phone, Dr. Guerra listened to conversations" between Melody and Dr. Cantu and Melody and other people.[18]  However, Plaintiffs have no competent summary judgment evidence to support such allegations.  Melody simply testified that "it's a reasonable *assumption* based on

---

[13] 18 U.S.C. §§1030(a)(2)(C), (a)(5)(A)-(C), and 1030(b) (emphasis added).
[14] Plaintiffs' First Amended Complaint, ¶3.
[15] Exhibit 1, 149:1-19.
[16] Plaintiffs' First Amended Complaint, ¶41.
[17] Exhibit 1, 141:1-5.
[18] Exhibit 1, 140:4-149:14 (emphasis added).

everything [Melody claims Dr. Guerra has] put [her] through"[19] and she "*believe[s]* that as a result of the multiple – multiple actions Dr. Guerra has [allegedly] taken against her, it would not be outside of her scope to do this."[20]

18.     Moreover, the investigation performed by Melody's employer, USAA, in response to Melody's report to USAA that Dr. Guerra "may have hacked her computer and breached her VPN, firewall, and router" revealed that "IT's review of [Melody] Cantu's equipment and data did not reveal any breach or corruption."[21]   In fact, USAA's investigator reported that he spoke with the Spectrum cable representative on November 15, 2018 while on the Plaintiffs' property and was advised by the Spectrum Cable representative "that the cable splitter that was on [Plaintiffs'] personal line appear[ed] to have been attached by *Spectrum cable* but he was not sure why it was done."[22]

19.     Plaintiffs have asserted claims against DFC for violation of the CFAA and for allegedly conspiring with Dr. Guerra to hack and surveil Plaintiffs "whole phone"[23] but have no actual evidence establishing that DFC intentionally or knowingly accessed Plaintiffs' computers or computer networks or that they conspired with Dr. Guerra to do so.

> Q.· ·… Are you alleging that DFC conducted video surveillance of you, your children and Dr. Cantu?
>
> MR. EKELAND:· Objection.· You can answer.
>
> A:  I'm saying it's a *possibility* based on the sextortion case in Austin that they have those capabilities, yes.
>
> Q.· And so, my question to you is, what evidence do you have that DFC actually conducted video surveillance of you, Dr. Cantu and your children?

---

[19] Exhibit 1, 143:11-18 (emphasis added).
[20] Exhibit 1, 132:1-9 (emphasis added).
[21] Exhibit 2, 000005.
[22] *Id*. (emphasis added).
[23] Exhibit 1, 146:3-21.

········MR. EKELAND:· Objection.

A: It's -- yeah.

MR. EKELAND:· You can answer.

A:  It's getting repetitive. What evidence I have is that they have done this in the past to other individuals.· They were hired to track me, to monitor me, or however you want to word it, and it is an allegation.[24]

\*\*\*

Q:· The voices that you say you hear coming from the phone, are you alleging that those voices come from DFC?

········                    MR. EKELAND:· Objection.· Go ahead and answer.

A:  I believe they were associates of Digital Forensics Corporation.

Q:  Okay.· You *believe* they were. What evidence do you have to establish that they were associates of DFC?

MR. EKELAND:· Objection.· Go ahead and answer.

Q:  I *believe* that the phishing link was malicious.· I *believe* that Dr. Guerra sent it to get an edge up on the family case.· And I *believe* that that's why she sent it was to monitor our phones. And I *believe* that she hired Digital Forensics to do it.[25]

20.     Dr. Cantu also asserts claims against Dr. Guerra and DFC for violation of the CFAA and alleges that his "personal information" was stolen and posted on the dark web but concedes he does not have any confirmation that Dr. Guerra or DFC participated or were involved in any way:

Q:  Do you have any evidence that any of your personal information or passwords were obtained by Digital Forensics Corporation, LLC or Dr. Guerra?

·                    MR. EKELAND:· Objection.· You can answer.

---

[24] Exhibit 1, 144:22 (emphasis added).
[25] Exhibit 1, 144:22-149:19 (emphasis added).

A:  I don't have anything that specifically shows Digital Forensics or Sandra have taken my passwords.· I don't have a -- I don't have a smoking gun, I guess, if you want to call it that.

Q:  Do you have any evidence that your other personal information was taken by Dr. Guerra or Digital Forensics Corporation?

A:  My personal information was on the dark web.  That was found by the -- by Exhibit A.

Q:  Your personal information was found on the dark web by Exhibit A?

         MR. EKELAND:· Objection.

A:  Correct.

Q:· Yes?

A:· Yes.

Q:· Okay.· Did Exhibit A confirm how your personal information appeared on the dark web?

         MR. EKELAND:· Objection.· You can answer.

A:  They -- they thought it was stolen by somebody.

Q:  Do you have any evidence who stole your personal information and put it on the dark web?

         MR. EKELAND:· Objection.· You can answer.

A:  I don't -- like I said, I don't have a photo of them taking it.· I don't have that kind of evidence.· That's -- I guess that's what I'm using as your -- when you say "evidence," yeah.

Q:  Did Exhibit A confirm that Dr. Guerra or DFC obtained your personal information and posted it to the dark web?

         MR. EKELAND:· Objection.· You can answer.

A:  No.[26]

---

[26] Exhibit 3, 87:13-88:16.

21.     In addition, Plaintiffs designated Jeff Fischbach, Forensic Technologist, as Plaintiffs' retained testifying expert on various issues, including, "Defendants' [alleged] hacking of Plaintiffs and the technical means used."[27]  Plaintiffs' deadline to serve Mr. Fischbach's written expert report was September 15, 2021.[28]  However, Mr. Fischbach testified on July 26, 2022 that he did not prepare an expert report and, although he claimed he has formed opinions in this case, he testified he never wrote any of them down and only communicated them "telephonically" to Plaintiffs' counsel.[29]

22.     Nevertheless, Mr. Fischbach testified he never inspected any of Plaintiffs' devices or performed any sort of forensic analysis or investigation of any of Plaintiffs' systems.[30]  Mr. Fischbach further testified as follows:

> Q:· Okay.· Do you -- is it -- is it your expert opinion as we sit here today that Dr. Guerra or DFC hacked Melody Joy Cantu's servers, devices, systems?
>
> MR. EKELAND:· Objection.  You can answer.
>
> **A:· At -- at this time, I don't have a specific opinion one way or the other regarding that.**
>
> Q:·Okay.· Do you -- is it your expert opinion that Dr. Cantu -- I mean, Dr. Guerra or DFC hacked any of Dr. Rodrigo Cantu's devices or computers, home Internet services, any kind of servers?
>
> MR. EKELAND:· Objection.  You can answer.
>
> **A:·Again, reiterating the last answer, I don't -- at this time, I don't have a -- a specific answer to that.**
>
> ***
>
> Q:· But -- but you don't have an opinion today as we sit here that DFC or Dr. Guerra

---

[27] Exhibit 4.
[28] Doc. 59.
[29] Exhibit 5, 84:7-85:18.  Dr. Guerra intends to file a Motion to Exclude Mr. Fischbach as a Testifying Expert Witness within the deadline prescribed by the Court.
[30] Exhibit 5, 116:16-21.

caused or -- I mean, surveilled or caused to be surveilled Melody Joy Cantu?

    MR. EKELAND:· Objection.  You can answer.

A:· Yeah, at -- at this moment, I don't believe I've seen anything that specifically says that an individual did such a thing, only that they -- that -- that the means to do so appear to have been achieved.

Q:· ·Is it your expert opinion that DFC or Dr. Guerra surveilled Dr. Cantu?

    MR. EKELAND:· Objection. You can answer.

**A:· Again, restating the last answer, I don't – I don't have specific evidence to that effect, only that the means, the tools necessary to do so appear to have been achieved by DFC.**

Q:· And you -- you have been designated as Plaintiffs' expert, so I -- I am asking you for your -- if you have an expert opinion, not just if you've seen specific evidence.· Do you intend as we sit here today to offer an opinion at trial that DFC or Dr. Guerra surveilled Melody Joy Cantu or Dr. Cantu?

    MR. EKELAND:· Objection. You can answer.

A:: At this time, I don't have a specific opinion as to whether those individuals did such a thing.· And again only that -- that the means appear to have been gathered to do that. I would add to that.· At this point, while I understand I've been designated for -- for trial purposes, I don't know at this point that actual testimony will be provided.· It's still dependent on any additional discovery and -- and then possible rebuttal for trial.[31]

23.    Lastly, Mr. Fischbach testified as follows:

Q:· Do you intend to provide any testimony at trial regarding social engineering?

    MR. EKELAND:· Objection.  You can answer.

A:·At this time, I don't -- I don't intend to provide any specific testimony at trial.

Q:·Regarding social engineering or –
    MR. EKELAND:· Objection.

Q:·-- or anything?

    MR. EKELAND:· Objection. You can answer.

---

[31] Exhibit 5, 117:18-118:8;121:16-122:25.

A:·**Regarding anything.· At this point, I'm -- I'm still a consultant**.

Q:·And -- and I just want to be clear.· You're -- you're providing consulting services to Plaintiffs?

　　　　MR. EKELAND:· Objection.  You can answer.

A:· Specifically to Mr. Ekeland, yes, with the understanding that I may be asked to testify.[32]

24.　　Accordingly, as the first ground for Dr. Guerra's motion, Dr. Guerra moves for summary judgment on all of Plaintiffs' 8 causes of action against Dr. Guerra for violation of the CFAA because Plaintiffs have no competent, admissible evidence that Dr. Guerra knowingly or intentionally accessed Plaintiffs' protected computers and networks without authorization.

### ii.　*There is No Competent Summary Judgment Evidence that Plaintiffs Incurred the Requisite Amount of Damages to Support a Civil Claim under the CFAA.*

25.　　The language of the statute shows that a critical element of a civil claim under the CFAA is damages of more than $5,000 during any 1-year period.  A plaintiff brining a claim under the CFAA must show damages.[33]  The Court in *Thurmond v. Compaq Computer Corp.,* 171 F.Supp.2d 667, 678 (E.D.Tex. 2001) stated: "Regardless of whether Plaintiffs plead 'loss,' 'damage,' or both, they are required to prove 'damage' as an integral element of the violation alleged under 11 U.S.C. 1030(a)."[34]

---

[32] Exhibit 5, 116:24 – 117:17

[33] *See Thurmond v. Compaq Computer Corp.,* 171 F.Supp.2d 667, 678 (E.D.Tex. 2001) (granting defendant's motion for summary judgment because plaintiffs could not plead damages over $5,000).

[34] *Id.; see also Hayes v. Packard Bell, NEC, Inc.,* 193 F.Supp.2d 910, 912 (E.D.Tex. 2001) (granting defendant's motion to dismiss on the grounds that plaintiff could not prove the $5,000 in damages).

26.     Plaintiffs allege that Defendants "knowingly caused the transmission of a program, information, code, or command and intentionally caused damage without authorization," including purported "impairment to the integrity and availability of [Plaintiffs'] data, programs, systems, and information on the Plaintiffs' computers and networks resulting from computer crashes, diminished bandwidth, diminished processing time, and the deletion and alteration of data, all caused by Defendants' [alleged] phishing, wiretapping, malware, and use of malicious codes against Plaintiffs.[35]  Plaintiffs make the bald assertion that, as a result of such alleged conduct by Defendants, Plaintiffs "suffered losses in expending time, money, and resources aggregating at $5,000 in value" as result of Defendants alleged unauthorized access to Plaintiffs' protected computers and systems.[36]  However, there is no competent, admissible evidence of the requisite damages element of Plaintiffs' CFAA claims.

27.     Dr. Guerra propounded interrogatories to Plaintiffs specifically requesting that each Plaintiff  "[i]dentify with specificity" all the compensatory and consequential damages (including, without limitation, all medical bills and costs) [each Plaintiff] seek[s] to recover from Dr. Guerra in connection with Plaintiffs' CFAA claims against Dr. Guerra, and include with their written answers the amount of each item of compensatory and consequential damages and the date such damage/cost was incurred.[37]

28.     Although the law is clear that damages is an essential element of Plaintiffs' CFAA claims against Dr. Guerra, Plaintiffs objected to Dr. Guerra's requests for specific information regarding the amount of Plaintiffs' damages and the date they were incurred on the ground that

---

[35] Plaintiffs' First Amended Complaint.
[36] Plaintiffs' First Amended Complaint, ¶57-58, 61-62, 65-67, 71-72, 76-77, 81-82, 86-87, 91-92.
[37] Exhibit 6 and Exhibit 7.

such requests "seek[] *irrelevant* information."[38]  Plaintiffs have failed and/or refused to provide

any written response to such interrogatories pertaining to Plaintiffs' purported damages.[39]  Such

refusal to provide *any* written response whatsoever makes clear that Plaintiffs have no evidence

that they suffered *any* damages, much less a minimum of $5,000 in any 1-year period, as a result

of any alleged intentional or knowing unauthorized access by Dr. Guerra or DFC.

29.    Moreover, Plaintiffs' retained testifying expert, Mr. Fischbach, testified that he did

not have any opinion as to whether the conduct of Dr. Guerra or DFC did in fact cause any of the

internet or bandwidth issues referenced in Plaintiffs' First Amended Complaint:

> Q:· Is your expert opinion that DFC or Dr. Guerra caused or contributed to any of
> Melody Joy Cantu or Dr. Cantu's passwords or other personal information being
> posted on the dark web?
>
> MR. EKELAND:· Objection. You can answer.
>
> A:·Similar -- similar to before.· Only that the means to do so appear to have been
> achieved, but I have no specific evidence to that effect.
>
> Q:· You have no -- is it -- am I correct that you have no specific evidence or opinion
> that Dr. Guerra or DFC specifically caused or contributed to any of Plaintiffs'
> personal information or passwords being posted on the dark web?
>
> ·A:·At this time, other --
>
> .
>
> MR. EKELAND:· Objection.
>
> A: Yes.  At this time, other than the means to do so, no, I have no – no specific
> opinion.
>
> .
>
> Q:· Is it your expert opinion that Dr. Guerra or DFC caused Plaintiffs to experience
> Internet or bandwidth issues at the home they resided in in 2018 or 2019?
>
> MR. EKELAND:· Objection.  You can answer.
>
> A:·Specifically no -- no opinion to that effect at this time.· Again, only -- only if in
> fact there was manipulation of the -- of the cable splitter.· That's --that -- the --

---

[38] Exhibit 6 and Exhibit 7 (emphasis added).
[39] Exhibit 6, Exhibit 7, and Exhibit 8.

the means would have been there for that effect.· But again, I have no evidence to prove that such a thing had in fact occurred at this time.[40]

30.    Accordingly, Dr. Guerra is entitled to summary judgment on all of Plaintiffs' CFAA claims against her because Plaintiffs have no competent, admissible evidence that Plaintiffs suffered damages in excess of $5,000 as a result any alleged intentional or knowing unauthorized access by Dr. Guerra.

## B. AS A MATTER OF LAW, PLAINTIFFS CANNOT SUCCEED ON ANY OF THEIR HARMFUL ACCESS BY COMPUTER CLAIMS.

31.    For similar reasons set forth in Section V.A *supra*, Dr. Guerra is entitled to summary judgment on Plaintiffs' Chapter 143 claims for Harmful Access by Computer [Plaintiffs' Ninth, Tenth, and Eleventh COA][41] and incorporates herein by reference the foregoing paragraphs as if fully set forth verbatim.  Specifically, Tex. Civ. Prac. & Rem. Code § 143.001(a) provides a civil cause of action for a person who is injured or whose property has been injured as a result of a *knowing* and *intentional* violation of Chapter 33 of the Texas Penal Code.[42]

32.    Chapter 33.02(a) of the Texas Penal Code [Plaintiffs' Ninth COA] makes it an offense if a person "*knowingly* accesses a computer, computer network, or computer system without the effective consent of the owner."[43]  Chapter 33.02(b-1)(1) of the Texas Penal Code [Plaintiffs' Tenth COA] makes it an offense "if, with the *intent* to defraud or harm another or alter, damage, or delete property, the person *knowingly* accesses a computer, computer network, or computer system without the effective consent of the owner."[44]  Chapter 33.022 makes it an

---

[40] Exhibit 5, 123:15 – 124:20.
[41] Plaintiffs' First Amended Complaint, ¶¶93-103.
[42] TEX. CIV. PRAC. & REM. CODE ANN. § 143.001(a) (emphasis added).
[43] TEX. PEN. CODE ANN. § 33.02(a) (emphasis added).
[44] TEX. PEN. CODE ANN. § 33.02(b-1)(1) (emphasis added).

offense if a person "***intentionally*** interrupts or suspends access to a computer system or computer network without the effective consent of the owner."[45]

33.     As detailed above, Plaintiffs' theories of liability against Dr. Guerra pertaining to their Harmful Access by Computer claims are based purely on conjecture.  Plaintiffs have no actual competent, admissible evidence that Dr. Guerra *knowingly* accessed Plaintiffs' computer, computer network, or computer system; had any *intent* to defraud or harm Plaintiffs or alter, damage, or delete Plaintiffs' property; or *intentionally* interrupted or suspended Plaintiffs' access to their computer system or network.

**C.  AS A MATTER OF LAW, PLAINTIFFS CANNOT SUCCEED ON THEIR CLAIMS AGAINST DR. GUERRA FOR VIOLATION OF THE FEDERAL WIRE TAP ACT.**

34.     For similar reasons set forth in Section V.A and V.B *supra*, Dr. Guerra is entitled to summary judgment on Plaintiffs' claim against Dr. Guerra for violation of the Federal Wiretap Act [Plaintiffs' Twelfth COA][46] and incorporates herein by reference the foregoing paragraphs as if fully set forth verbatim.

35.     Plaintiffs allege that "Dr. Guerra and DFC violated 18 U.S.C. §§ 2510  *et seq.* by *intentionally* using, and endeavoring to use, any electronic, mechanical, or other device, including the *installation* of a cable line splitter and tracking URLSs, to intercept Plaintiffs' wire, oral or electronic communications."[47] However, Melody testified as follows:

> Q:  …The allegations that you've made in this lawsuit, are you alleging that Dr. Guerra personally placed the splitter on the cable box?
>
> MR. EKELAND:· Objection.· Go ahead and answer.
>
> A:  I don't think she personally went out there into their yard and did it.

---

[45] TEX. PEN. CODE ANN. § 33.022 (emphasis added).
[46] Plaintiffs' First Amended Complaint, ¶¶ 109-111.
[47] Plaintiffs' First Amended Complaint, ¶ 111 (emphasis added).

Q:  Is it your allegation that an employee or representative agent of Digital Forensics Corporation, LLC placed the splitter on the cable box?

A.· I don't know who did it.· Dr. Guerra hired a lot of people.

***

Q:· Are you stating as a fact that Dr. Guerra or DFC placed the splitter on the cable box?

MR. EKELAND:· Objection.· You can answer.

A:·I am stating that I found -- a splitter was found on my cable box.· I have not alleged anybody.[48]

36.     The documents produced by Melody's employer, USAA, also show that USAA's investigator was informed by a Spectrum representative that the cable splitter appeared to have been attached by *Spectrum*.[49]

37.     Accordingly, Plaintiffs have no actual competent, admissible evidence that Dr. Guerra installed the cable splitter or any tracking URLs or that she otherwise intentionally intercepted Plaintiffs' communications.

**D.   AS A MATTER OF LAW, PLAINTIFF, DR. RODRIGO CANTU  CANNOT SUCCEED ON ANY OF HIS CLAIMS AGAINST DR. GUERRA BECAUSE THEY ARE BARRED BY THE DOCTRINE OF COLLATERAL ESTOPPEL.**

38.     In addition to the forgoing CFAA, Harmful Access by Computer, and Federal Wire Tap Act, Dr. Cantu has asserted a claim against Dr. Guerra for intentional infliction of emotional distress.  Dr. Cantu testified:

Q:· Okay.· What conduct of Dr. Guerra caused you to suffer severe emotional distress?

MR. EKELAND:· Objection.· You can answer.

A: The first thing was withholding visitation of my children starting in 2018. Then alleging that I physically abused my children in a report to CPS shortly after

---

[48] Exhibit 1, 130:12-132:8.
[49] Exhibit 2.

> that.· And then hiring Digital Forensics Corporation to monitor us and access our internet and video surveillance system in our home.
>
> Q: And in your -- in this underlying custody case, you requested documents from Digital Forensic Corporation, correct?
>
> MR. EKELAND:· Objection.· You can answer.
>
> A:· I believe we did, yes.[50]

39.       Dr. Cantu and Dr. Guerra were engaged in an enforcement/modification/custody suit initiated by Dr. Cantu in or about May 22, 2018 in  Bexar County District Court.  In connection therewith, Dr. Cantu subpoenaed all reports and/or summaries produced by DFC on behalf of Dr. Guerra, including any Phase 1 and Phase 2 reports.[51]   However, Dr. Cantu and Dr. Guerra ultimately entered into a Mediated Settlement Agreement[52] and a Motion for Dismissal With Prejudice was filed by Dr. Cantu dismissing *with prejudice* the enforcement/modification/custody suit and *all claims asserted by Dr. Cantu.*[53] An Order to Dismiss with Prejudice was entered on December 4, 2019.

40.       However, approximately 6 months later on June 24, 2020, Dr. Cantu filed this Federal Court lawsuit alleging a cause of action for intentional infliction of emotional distress based upon Dr. Guerra's alleged prior withholding of visitation with their children and other claims related to Dr. Guerra's hiring of DFC.  Dr. Cantu testified:

> A:· The custody case was about being able to have visitation with my children, which Sandra was withholding.
>
> Q:· But, you're claiming now that you are suffering -- you are suffering severe emotional distress related to the withholding of -- Dr. Guerra's withholding of visitation from your children and her allegation that you physically abused your children, correct?

---

[50] Exhibit 3, 91:6-19; *see also* Exhibit 10.
[51] Exhibit 10.
[52] Exhibit 9.
[53] Exhibit 10 (emphasis added).

MR. EKELAND:· Objection.· You can answer.

A:  That has been part of it, yes.

Q.· And those were issues and claims that were part of the custody case, correct?

MR. EKELAND:· Objection.· You can answer.

A:  Correct.

41.     The purpose of collateral estoppel is twofold: "to protect litigants from the burden of relitigating an identical issue with the same party or his privy, and of promoting judicial economy by preventing needless litigation."[54] With this doctrine, courts intend to ensure that parties get one "full and fair opportunity to litigate."[55]

42.     All the claims asserted by Dr. Cantu against Dr. Guerra in this lawsuit arise from and/or relate to the claims asserted by Dr. Cantu in the 2018 enforcement/modification/custody suit against Dr. Guerra, all of which were voluntarily and summarily dismissed with prejudice to refiling after nearly 18 months of litigation in the District Court.  As such, Dr Guerra is entitled to summary judgment on *all* of Dr. Cantu's claims asserted against her in this suit under the doctrine of collateral estoppel.

## VI.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant, DR. SANDRA GUERRA, respectfully prays that this Court grant Defendant, Dr. Guerra's Motion for Summary Judgment in all respects and grant Dr. Guerra all such other and further relief, both general and special, at law

---

[54] *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326.
[55] *Montana v. U. S.*, 440 U.S. 147, 153-54 (1979) ("To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.")

or in equity, to which she may be justly entitled.

Dated: October 14, 2022.                    Respectfully submitted,

                                            **DAVIS, CEDILLO & MENDOZA, INC.**

                                            McCombs Plaza, Suite 250
                                            755 E. Mulberry Avenue
                                            San Antonio, Texas 78212
                                            Telephone No.: (210) 822-6666
                                            Telecopier No.: (210) 660-3795

                                            By:    */s/Ricardo G. Cedillo*
                                                 RICARDO G. CEDILLO
                                                 Texas State Bar No. 04043600
                                                 rcedillo@lawdcm.com
                                                 BRANDY C. PEERY
                                                 Texas State Bar No. 24057666
                                                 bpeery@lawdcm.com

                                            ATTORNEYS FOR DEFENDANT, DR.
                                            SANDRA GUERRA

## CERTIFICATE OF SERVICE

I certify that on this 14th day of October 2022, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the parties on record.

                        */s/Ricardo G. Cedillo*
                        RICARDO G. CEDILLO