# EXHIBIT 1

```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE WESTERN DISTRICT OF TEXAS
 2                     SAN ANTONIO DIVISION

 3  MELODY JOY CANTU and DR.      )
    RODRIGO CANTU,                )
 4                                )
              Plaintiffs,         )
 5                                ) CIVIL ACTION
    VS.                           )
 6                                ) NO.: 5:20-CV-00746-JKP
    DR. SANDRA GUERRA and         ) (HJB)
 7  DIGITAL FORENSICS             )
    CORPORATION, LLC,             )
 8                                )
              Defendants.         )
 9
10           ------------------------------------
11            ORAL AND VIDEOTAPED DEPOSITION OF
12                     MELODY JOY CANTU
13                       (VIA ZOOM)
14                      JULY 16, 2022
15           ------------------------------------
16      ORAL AND VIDEOTAPED DEPOSITION OF MELODY JOY CANTU,
17  produced as a witness at the instance of the DEFENDANT,
18  and duly sworn, was taken in the above-styled and
19  numbered cause on July 16, 2022 from 9:06 o'clock a.m.
20  to 2:17 o'clock p.m., Via Zoom, before
21  DEBBIE S. LONGORIA, CSR in and for the State of Texas,
22  reported by machine shorthand, pursuant to the Federal
23  Rules of Civil Procedure.
24
25
```



```
 1  Spectrum Charter representative discovered the cable
 2  splitter was removed."  There's no record of the
 3  splitter being removed by Spectrum Charter, correct?
 4       A.   Correct.
 5       Q.   Mrs. Cantu, is it your allegation that my
 6  client, Dr. Guerra, placed this splitter on the cable
 7  box?
 8                 MR. EKELAND:  Objection.  Go ahead and
 9  answer.
10                 THE WITNESS:  I think we're asking that
11  in discovery.
12       Q.   (By Ms. Peery) I'm asking what your allegation
13  is, I'm not asking you for the evidence.  Is it your
14  allegation that Dr. Guerra placed the splitter on the
15  cable box?
16       A.   Personally or --
17                 MR. EKELAND:  Objection.
18       Q.   (By Ms. Peery) I'm asking if it's part of your
19  lawsuit.  The allegations that you've made in this
20  lawsuit, are you alleging that Dr. Guerra personally
21  placed the splitter on the cable box?
22                 MR. EKELAND:  Objection.  Go ahead and
23  answer.
24                 THE WITNESS:  I don't think she
25  personally went out there into their yard and did it.
```



```
 1       Q.   (By Ms. Peery) Okay.  Is it your allegation
 2  that an employee or representative agent of Digital
 3  Forensics Corporation, LLC placed the splitter on the
 4  cable box?
12:14  5       A.   I don't know who did it.  Dr. Guerra hired a
 6  lot of people.
 7       Q.   Okay.  But, I'm asking you -- I'm not asking
 8  you who did it.  I'm asking you if you are alleging that
 9  DFC placed the splitter on your cable box.
12:15 10                 MR. EKELAND:  Objection.  You can answer.
11                 THE WITNESS:  I don't think I've --
12  sorry.  I don't think I've alleged anybody did it in
13  this paragraph.
14       Q.   (By Ms. Peery) Have you alleged that
12:15 15  Dr. Guerra or DFC placed a splitter on the cable box
16  anywhere in your complaint?
17                 MR. EKELAND:  Object.  You can answer.
18                 THE WITNESS:  We would have to read the
19  complaint together and I could answer because I don't
12:15 20  remember.
21       Q.   (By Ms. Peery) Are you -- are you alleging as
22  part of your lawsuit that Dr. Guerra or DFC placed the
23  splitter on the cable box?
24                 MR. EKELAND:  Objection.  You can answer.
12:15 25                 THE WITNESS:  I am alleging that we would
```

1 need to read the lawsuit.  I'm not alleging anything.
2 I'm stating the facts.
3          Q.   (By Ms. Peery) Are you stating as a fact that
4 Dr. Guerra or DFC placed the splitter on the cable box?
12:15 5                 MR. EKELAND:  Objection.  You can answer.
6                 THE WITNESS:  I am stating that I
7 found -- a splitter was found on my cable box.  I have
8 not alleged anybody.
9          Q.   (By Ms. Peery) You have not alleged that
12:16 10 Dr. Guerra, DFC or anybody else put it there?
11                 MR. EKELAND:  Objection.  You can answer.
12                 THE WITNESS:  I think we've answered this
13 one three or four times, Tor.
14                 MR. EKELAND:  You -- the objection's
12:16 15 noted for the record.  You can answer her question.
16                 THE WITNESS:  Okay.  I believe as a
17 result of the multiple -- multiple actions Dr. Guerra
18 has taken against me, it would not be outside of her
19 scope of ability to do this.
12:16 20         Q.   (By Ms. Peery) But, you don't have any
21 evidence that she did it, that she placed the cable --
22 that she placed the splitter on the cable box?
23                 MR. EKELAND:  Objection.
24                 THE WITNESS:  Personally --
12:16 25                 MR. EKELAND:  Objection.  You can answer.

888-893-3767
www.lexitaslegal.com



```
    1                    THE WITNESS:  I don't know.  My mother
    2  fell, Brandy.  I'm trying to deal with a lot here.  My
    3  mom's been in the ER all week.
    4        Q.   (By Ms. Peery) Is it your allegation that
12:25   5  Dr. Guerra surveilled you and your family inside your
    6  home?
    7                    MR. EKELAND:  Objection.  You can answer.
    8                    THE WITNESS:  I believe that through the
    9  link to my phone, Dr. Guerra listened to conversations.
12:26  10        Q.   (By Ms. Peery) Listened to whose
   11  conversations?
   12        A.   Mine and David's or mine with anybody else.
   13        Q.   Okay.  Is it your allegation that there was
   14  video surveillance by Dr. Guerra?
12:26  15                    MR. EKELAND:  Objection.  You can answer.
   16                    THE WITNESS:  The splitter on the line
   17  would have access to my cameras.
   18        Q.   (By Ms. Peery) Okay.  So is that a yes?
   19        A.   Yes.
12:26  20                    MR. EKELAND:  Objection.
   21        Q.   (By Ms. Peery) You are -- to be clear, you are
   22  alleging in this lawsuit that my client, Dr. Guerra,
   23  conducted video surveillance of you and your children
   24  and Dr. Cantu?
12:26  25                    MR. EKELAND:  Objection.  You can answer.
```

888-893-3767
www.lexitaslegal.com



```
 1              THE WITNESS:  I am alleging that a
 2  splitter was placed on my line and the cameras, the
 3  modem and everything associated with that splitter could
 4  access the video cameras and everything else in the
 5  home.
 6              MS. PEERY:  Objection, nonresponsive.
 7       Q.    (By Ms. Peery) It's a yes or no question.  Are
 8  you alleging that Dr. Guerra conducted video
 9  surveillance of you, your children and Dr. Cantu?
10       A.    Yes.
11              MR. EKELAND:  Objection.
12       Q.    (By Ms. Peery) Okay.  What evidence do you
13  have that Dr. Guerra conducted video surveillance of
14  you, your children and Dr. Cantu?
15              MR. EKELAND:  Objection.  You can answer.
16              THE WITNESS:  Well, she turned in
17  multiple reports about surveillance and people
18  contacting my neighbors, my friends, my relatives.  I
19  believe that the splitter is not an anomaly.  I know
20  what I heard on my phone and there's a phishing link
21  there.  And so, it is based on experience and reports
22  that Dr. Guerra has turned in already.
23       Q.    (By Ms. Peery) Okay.  What reports are you
24  referring to?
25       A.    The detective.com report specifically states
```

888-893-3767
www.lexitaslegal.com



```
         1  that she called my -- my work, my family members, my
         2  neighbors, my former employers.  There was a list of --
         3  of observations already -- already made that she turned
         4  in.  And she already sent a phishing link, which she
12:28    5  turned in and it -- it shows the results were not a
         6  match to my IP address.
         7          Q.   Okay.  So, you're saying that is the evidence
         8  to support your allegation that Dr. Guerra conducted
         9  video surveillance of you and your children and
12:29   10  Dr. Cantu?
        11               MR. EKELAND:  Objection.  Go ahead and
        12  answer.
        13               THE WITNESS:  I am saying the splitter is
        14  enough to make -- make one wonder.
12:29   15          Q.   (By Ms. Peery) Okay.  And you said in your
        16  experience.  Are you referring to your experience as --
        17  in technology -- internet technology or wire splitters?
        18  What do you -- what do you mean in your experience?
        19               MR. EKELAND:  Objection.  You can answer.
12:29   20               THE WITNESS:  I mean, I heard voices come
        21  through my phone that were talking about how to use a
        22  microphone and it was pretty obvious what was going on.
        23  That's the experience.  My SIM card was locked regularly
        24  on my phone.  My phone would start playing recordings
12:29   25  out of the blue.  It started acting very odd.
```



```
        1        Q.   (By Ms. Peery) And you're saying that's what
        2   made it obvious that Dr. Guerra was conducting video
        3   surveillance of you, Dr. Cantu and your children?
        4                 MR. EKELAND:  Objection.  Go ahead and
12:30   5   answer.
        6                 THE WITNESS:  Again, the splitter, along
        7   with the multiple companies, indicate that that was a
        8   possibility.
        9        Q.   (By Ms. Peery) A possibility?
12:30  10        A.   Yes.
       11        Q.   But, you don't have any evidence to say that
       12   it was, in fact, Dr. Guerra or DFC, correct?
       13                 MR. EKELAND:  Objection.  Objection.  You
       14   can answer.
12:30  15                 THE WITNESS:  I have Dr. Guerra's
       16   reports.  I have what she told police.  It's a
       17   reasonable -- it's a reasonable assumption based on
       18   everything she's put me through.
       19        Q.   (By Ms. Peery) Okay.  And what about for DFC,
12:30  20   what evidence do you have that DFC conducted video
       21   surveillance of you and your family and Dr. Cantu, you
       22   and your children and Dr. Cantu?
       23                 MR. EKELAND:  Objection.  You can answer.
       24                 THE WITNESS:  We have the Phase One
12:31  25   report and Digital Forensics is not participating in
```



```
 1  discovery and refusing to turnover items, so I'm at a
 2  standstill.
 3       Q.   (By Ms. Peery) I'm not asking about discovery.
 4  I'm asking -- the whole point of this deposition is for
 5  me to find out what information you have and what you're
 6  going to testify about at trial.  I'm asking what
 7  evidence do you have that DFC conducted video
 8  surveillance of you, your children and Dr. Cantu?
 9                 MR. EKELAND:  Objection.
10                 THE WITNESS:  I don't --
11                 MR. EKELAND:  You can answer.
12                 THE WITNESS:  I don't -- thank you.  I
13  don't think I understand your question.  Are you
14  focusing on the video surveillance because that seems to
15  be your point and I don't think I've mentioned video
16  anywhere in my complaint, so I need you to help me by
17  clarifying, Brandy.
18       Q.   (By Ms. Peery) You just did in your testimony.
19                 MR. EKELAND:  Objection.
20                 THE WITNESS:  I said I lost the use of my
21  cameras.
22       Q.   (By Ms. Peery) Then let me clarify.  Are you
23  alleging that DFC conducted video surveillance of you,
24  your children and Dr. Cantu?
25                 MR. EKELAND:  Objection.  You can answer.
```

1              THE WITNESS:  I'm saying it's a
2 possibility based on the sextortion case in Austin that
3 they have those capabilities, yes.
4      Q.   (By Ms. Peery) And so, my question to you is,
12:32  5 what evidence do you have that DFC actually conducted
6 video surveillance of you, Dr. Cantu and your children?
7              MR. EKELAND:  Objection.
8              THE WITNESS:  It's -- yeah.
9              MR. EKELAND:  You can answer.
12:32 10              THE WITNESS:  It's getting repetitive.
11 What evidence I have is that they have done this in the
12 past to other individuals.  They were hired to track me,
13 to monitor me, or however you want to word it, and it is
14 an allegation.
12:33 15      Q.   (By Ms. Peery) Do you have evidence that DFC
16 conducted video surveillance of other people?
17              MR. EKELAND:  Objection.  Go ahead and
18 answer.
19              THE WITNESS:  You would need to reference
12:33 20 the case in Austin.
21      Q.   (By Ms. Peery) I'm asking you if you have
22 evidence.
23      A.   I don't personally have --
24              MR. EKELAND:  Objection.  Go ahead and
12:33 25 answer.

```
 1                    THE WITNESS:  I do not personally have
 2   that evidence.
 3         Q.   (By Ms. Peery) Are you alleging that --
 4   because you asked me to clarify.  We just talked about
 5   video surveillance.  Are you alleging that DFC or
 6   Dr. Guerra conducted any audio or other form of
 7   surveillance of you, Dr. Cantu and your children?
 8                    MR. EKELAND:  Objection.  You can answer.
 9                    THE WITNESS:  Yes.
10         Q.   (By Ms. Peery) Okay.  What?
11         A.   Surveilling my -- sorry.
12                    MR. EKELAND:  Objection.  You can answer.
13                    THE WITNESS:  Surveilling my phone.
14         Q.   (By Ms. Peery) You mean surveilling your
15   conversations?
16         A.   My whole phone, not just conversations,
17   photos.
18         Q.   Okay.
19         A.   Text messages.  I believe my phone was
20   absolutely monitored when that phishing link was sent to
21   me.
22         Q.   Okay.  And it's your allegation that it was
23   Dr. Guerra who was monitoring and surveilling your --
24   your phone and all the content on your phone?
25                    MR. EKELAND:  Objection.  You can answer.
```

```
 1                THE WITNESS:  It is my understanding,
 2 based on my criminal and seeing the evidence in the
 3 criminal file, her Phase One report, that she directed
 4 DFC to send me a phishing link.
12:34  5       Q.   (By Ms. Peery) What evidence in the criminal
 6 file are you referring to?
 7       A.   The --
 8                THE WITNESS:  Tor, may I answer?
 9                MR. EKELAND:  Yeah.  Objection.  Go ahead
12:35 10 and answer.
11                THE WITNESS:  The Digital Forensic report
12 that Dr. Guerra produced in this case.
13       Q.   (By Ms. Peery) Okay.  But, you just referenced
14 in the criminal matter.  What evidence in the criminal
12:35 15 matter are you referring to?
16                THE WITNESS:  Tor?
17                MR. EKELAND:  Go ahead and answer.
18                THE WITNESS:  Do you want me to -- okay.
19 She produced the same report.
12:35 20      Q.   (By Ms. Peery) Okay.  And are you alleging
21 that DFC is surveilling your phone and all the content
22 on your phone?
23                MR. EKELAND:  Objection.  You can answer.
24                THE WITNESS:  Please clarify.
12:35 25      Q.   (By Ms. Peery) Well, we just went through it
```

```
 1  with Dr. Guerra, the same questions.  You're saying --
 2  are you alleging that DFC is surveilling your
 3  conversations, your e-mails, your text messages,
 4  everything that you do on your cell phone, are you
 5  alleging that DFC is surveilling that?
 6       A.   Not currently, no.
 7                 MR. EKELAND:  Objection.
 8       Q.   (By Ms. Peery) Are you alleging that they have
 9  in the past?
10                 MR. EKELAND:  Objection.  Go ahead and
11  answer.
12                 THE WITNESS:  Yes, I am.
13       Q.   (By Ms. Peery) Okay.  What evidence do you
14  have to support that allegation?
15                 MR. EKELAND:  Objection.  Go ahead and
16  answer.
17                 THE WITNESS:  The voices that come
18  through the phone, being locked out of my SIM card, the
19  phone's behavior and the report from Dr. Guerra.
20       Q.   (By Ms. Peery) Okay.  Other than the report
21  from Dr. Guerra, what are those prior things -- how does
22  that establish that it was DFC?
23                 MR. EKELAND:  Objection.
24       Q.   (By Ms. Peery) Does it say it came from DFC?
25                 MR. EKELAND:  Objection.  I'm sorry, I
```

Timestamps: 12:35 (line 5), 12:36 (lines 10, 15, 20, 25)

888-893-3767
www.lexitaslegal.com



```
         1  thought you were finished with your question.
         2              MS. PEERY:  That's okay.
         3      Q.   (By Ms. Peery) The voices that you say you
         4  hear coming from the phone, are you alleging that those
12:36    5  voices come from DFC?
         6              MR. EKELAND:  Objection.  Go ahead and
         7  answer.
         8              THE WITNESS:  I believe they were
         9  associates of Digital Forensics Corporation.
12:36   10      Q.   (By Ms. Peery) Okay.  You believe they were.
        11  What evidence do you have to establish that they were
        12  associates of DFC?
        13              MR. EKELAND:  Objection.  Go ahead and
        14  answer.
12:37   15              THE WITNESS:  I believe that the phishing
        16  link was malicious.  I believe that Dr. Guerra sent it
        17  to get an edge up on the family case.  And I believe
        18  that that's why she sent it was to monitor our phones.
        19  And I believe that she hired Digital Forensics to do it.
12:37   20      Q.   (By Ms. Peery) All right.  Well, you've
        21  referred to the criminal case, so let's -- let's talk
        22  about that.
        23              MS. PEERY:  Kyle, can you pull up
        24  Exhibit 3, paragraph 45?  There we go.
12:37   25      Q.   (By Ms. Peery) "On December 20th, 2018, Melody
```

```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE WESTERN DISTRICT OF TEXAS
 2                    SAN ANTONIO DIVISION

 3  MELODY JOY CANTU and DR.      )
    RODRIGO CANTU,                )
 4                                )
                Plaintiffs,       )
 5                                ) CIVIL ACTION
    VS.                           )
 6                                ) NO.: 5:20-CV-00746-JKP
                                  ) (HJB)
 7  DR. SANDRA GUERRA and         )
    DIGITAL FORENSICS             )
 8  CORPORATION, LLC,             )
                                  )
 9              Defendants.       )

10

11               REPORTER'S CERTIFICATION

12           DEPOSITION OF MELODY JOY CANTU

13                   JULY 16, 2022

14

15      I, Debbie S. Longoria, Certified Shorthand Reporter

16  in and for the State of Texas, hereby certify to the

17  following:

18      That the witness, MELODY JOY CANTU, was duly sworn

19  by the officer and that the transcript of the oral

20  deposition is a true record of the testimony given by

21  the witness;

22      I further certify that pursuant to FRCP Rule 30(f)

23  (1) that the signature of the deponent:

24      ____was requested by the deponent or a party before

25  the completion of the deposition and returned within 30
```

```
 1  days from date of receipt of the transcript.  If
 2  returned, the attached Changes and Signature Page
 3  contains any changes and the reasons therefor;
 4      __X__was not requested by the deponent or a party
 5  before the completion of the deposition.
 6       I further certify that I am neither attorney nor
 7  counsel for, related to, nor employed by any of the
 8  parties to the action in which this testimony was taken.
 9       Further, I am not a relative or employee of any
10  attorney of record in this cause, nor do I have a
11  financial interest in the action.
12       Subscribed and sworn to on this the 28th day
13  of July, 2022.
14
15
16       _____
17       Debbie S. Longoria, Texas CSR #5232
         Expiration Date:  10/31/23
18       Lexitas - Firm Registration No. 539
         100 N.E. Loop 410, Suite 955
19       San Antonio, Texas 78216
         (210) 481-7575
20
21
22
23
24
25
```

888-893-3767
www.lexitaslegal.com

