# EXHIBIT 2

**5:20-CV-00746-JKP-HJB**

**MELODY JOY CANTU AND
DR. RODRIGO CANTU**

**V.**

**DR. SANDRA GUERRA AND
DIGITAL FORENSICS CORPORATION, LLC**

DELIVER TO : **Ricardo G. Cedillo**
DAVIS, CEDILLO & MENDOZA, INC.
755 E. Mulberry Ave., Ste. 250
San Antonio, TX 78212-3135

RECORDS FROM : **United Services Automobile Association
See Attached Exhibit 'A'**

PERTAINS TO : **See Attached Exhibit 'A'**

# WITH AFFIDAVIT

REPORTED BY : **Blend Document Technologies, LLC**
1015 Central Parkway North, Ste. 100
San Antonio, TX 78232
TEL : (210) 227-9500
FAX : (877) 255-8158
EMAIL : records@blendlit.com

6596.001

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

MELODY JOY CANTU AND
DR. RODRIGO CANTU

v.

DR. SANDRA GUERRA AND
DIGITAL FORENSICS CORPORATION, LLC

§
§
§
§
§
§
§
§

CIVIL ACTION NO. 5:20-CV-00746-JKP-HJB

### AFFIDAVIT

Custodian of records for:  **United Services Automobile Association**
Records pertain to:        **See Attached Exhibit 'A'**
Records requested:         **See Attached Exhibit 'A'**

        Before me, the undersigned authority, personally appeared _Frank Meredith_ , who,
being by me duly sworn, deposed as follows:
                                                                    (Custodian of Records)

        "My name is _Frank Meredith_ . I am over eighteen (18) years of age, of sound
mind, capable of making this affidavit, and personally acquainted with the facts herein stated. I am the Custodian of the
above-described records for **United Services Automobile Association.**

        "In response to the above-described request, attached hereto are _16 in._ page(s) of records from this facility. These records
are kept in the regular course of business, and it was the regular course of business for an employee or representative of this facility,
with knowledge of the act, event, condition, opinion, or diagnosis, recorded to make the record or to transmit information thereof to be
included in such record; and the record was made at or near the time or reasonably soon thereafter. The records attached hereto are the
original or exact duplicates of the original."

                                        AFFIANT (Custodian of Records)

        Before me, the undersigned authority, on this day personally appeared _Frank Meredith_
known to me to be the person whose name is subscribed to the foregoing instrument in the capacity therein stated, who being first duly
sworn, stated upon his/her oath that the answers to the foregoing questions are true and correct. I further certify that the records
attached hereto are exact duplicates of the original records.

SWORN TO AND SUBSCRIBED before me this _13th_ day of _September_ , 20 _22_ .

                NOTARY PUBLIC

My Commission Expires: _October 21, 2023_



GUADALUPE SALDANA
My Notary ID # 6778187
Expires October 21, 2023

6596.001

_4 of 10_

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| **MELODY JOY CANTU AND** | § |
| **DR. RODRIGO CANTU** | § |
| | § |
| **V.** | § |
| | § CIVIL ACTION NO. **5:20-CV-00746-JKP-HJB** |
| | § |
| **DR. SANDRA GUERRA AND** | § |
| **DIGITAL FORENSICS CORPORATION, LLC** | § |

**NOTICE OF DELIVERY**

**RE**:     **See Attached Exhibit 'A' requested from United Services Automobile Association**

I, Rex Rexilus, Notary Public in and for the State of Texas, hereby certify pursuant to the Rule 30 of the Federal Rules of Civil Procedure:

1.  That this Deposition by Written Questions of Frank Meredith, the Custodian of Records for the above-named, is a true and exact duplicate of the records pertaining to **See Attached Exhibit 'A'**, given by the witness named herein, after said witness was duly sworn;

2.  That the transcript is a true record of the testimony given by the witness:

3.  That **$146.25** is the taxable cost for the preparation of the completed Deposition by Written Questions and any copies of exibits, charged to attorney for **Defendant(s)**, Ricardo G. Cedillo, SBA #04043600;

4.  That the deposition transcript was submitted on **September 13th, 2022**, to the witness for examination, signature and return to the officer by a specified date;

5.  That changes, if any made by the witness, in the transcript and otherwise, are attached thereto or incorporated therein;

6.  That the witness returned the transcript;

7.  That the original Deposition by Written Questions and a copy thereof, together with copies of all exhibits, was delivered to the attorney or party who noticed the first questions for safekeeping and use at trial;

8.  That pursuant to information made a part of the records at the time said testimony was taken, the following includes all parties of record:

    **J. David Apple**
    **APPLE & FINK, LLP**

    **Rain Levy Minns**
    **MINNS LAW FIRM, P.C.**

    **Ricardo G. Cedillo**
    **DAVIS, CEDILLO & MENDOZA, INC.**

    **Tor Ekeland**
    **TOR EKELAND LAW, PLLC**

and

9.  A copy of this Notice of Delivery was served on all parties shown herein.

10. Given under my hand and seal of office on   October 6, 2022  .

6596.001

**Blend Document Technologies, LLC**
**1015 Central Parkway North, Ste. 100**
**San Antonio, TX 78232**
**Tel: (210) 227-9500   |   Fax: (877) 255-8158**



NOTARY PUBLIC IN AND FOR THE STATE OF TEXAS

REX REXILIUS
Notary Public, State of Texas
Comm. Expires 05-18-2023
Notary ID 130230481

6596.001

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **MELODY JOY CANTU AND** | § | |
| **DR. RODRIGO CANTU** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 5:20-CV-00746-JKP-HJB** |
| | § | |
| **DR. SANDRA GUERRA AND** | § | |
| **DIGITAL FORENSICS CORPORATION, LLC** | § | |

**NOTICE OF INTENTION TO TAKE DEPOSITION BY WRITTEN QUESTIONS**

To **Plaintiff(s)**, by and through their attorneys of record: **Rain Levy Minns (MINNS LAW FIRM, P.C.)** and **Tor Ekeland (TOR EKELAND LAW, PLLC)**;
To all other parties, by and through their attorneys of record: **J. David Apple (APPLE & FINK, LLP)**

You will please take notice that on 08/30/2022 at 10:00 a.m., at the offices of the Custodian(s) of records, a deposition by written questions will be taken of the Custodian(s) of records for:

**United Services Automobile Association (See Attached Exhibit 'A') located at 9800 Fredericksburg Rd., San Antonio, TX 78288-0002**

before a Notary Public for    **Blend Document Technologies, LLC**
                              **1015 Central Parkway North, Ste. 100**
                              **San Antonio, TX 78232**
                              **Tel: (210) 227-9500 | Fax: (877) 255-8158**

or its designated agent, which deposition with attached questions may be used in evidence upon the trial of the above-styled and numbered cause pending in the above named court. Notice is further given that request is hereby made as authorized under Rule 45, Federal Rules of Civil Procedure, to the officer taking this deposition to issue a subpoena duces tecum and cause it to be served on the witness to produce all records, as described on the attached questions and/or exhibit(s), and any other such record in the possession, custody or control of the said witness, and every such record to which the witness may have access, pertaining to **See Attached Exhibit 'A'**, and to turn all such records over to the officer authorized to take this deposition so that photographic reproductions of the same may be made and attached to said deposition.

*/s/ Ricardo G. Cedillo*

**Ricardo G. Cedillo**
Bar #04043600
DAVIS, CEDILLO & MENDOZA, INC.
755 E. Mulberry Ave., Ste. 250
San Antonio, TX 78212-3135
Tel.: (210) 822-6666   |   Fax: (210) 660-3795
**Attorney for Defendant(s), Dr. Sandra Guerra**

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all parties listed by hand delivery, e-mail, facsimile, and/or certified mail on this day.

Dated: __August 15, 2022__              By: __/s/ Ricardo G. Cedillo__

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| MELODY JOY CANTU AND<br>DR. RODRIGO CANTU | )<br>) |
| V. | )<br>)   Civil Action No.   5:20-CV-00746-JKP-HJB |
| DR. SANDRA GUERRA AND<br>DIGITAL FORENSICS CORPORATION, LLC | )<br>)<br>) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:
United Services Automobile Association
9800 Fredericksburg Rd.
San Antonio, TX 78288-0002
*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

See Attached Direct Questions to be Propounded to the Witness and/or Exhibit 'A'

| Place: Office of the custodian of records: United Services Automobile Association, 9800 Fredericksburg Rd., San Antonio, TX 78288-0002 | Date and Time:<br><br>08/30/2022 10:00 AM |
|---|---|
| The deposition will be recorded by this method:   Written Questions | |

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: See Attached Exhibit 'A'

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   08/15/2022

| *CLERK OF COURT* | |
|---|---|
| | OR |
| | /s/ Ricardo G. Cedillo |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Defendant(s)
Dr. Sandra Guerra                                                                                      , who issues or requests this subpoena, are:
Ricardo G. Cedillo, DAVIS, CEDILLO & MENDOZA, INC., 755 E. Mulberry Ave., Ste. 250, San Antonio, TX 78212-3135  (210) 822-6666

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 5:20-CV-00746-JKP-HJB

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0     .

I declare under penalty of perjury that this information is true.

Date: _____                    _____

                                                          *Server's signature*

                                               _____

                                                          *Printed name and title*

                                               _____

                                                          *Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
  **(A) *Appearance Not Required.*** A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B) *Objections.*** A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***

  **(A) *When Required.*** On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B) *When Permitted.*** To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C) *Specifying Conditions as an Alternative.*** In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  **(A) *Documents.*** A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B) *Form for Producing Electronically Stored Information Not Specified.*** If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C) *Electronically Stored Information Produced in Only One Form.*** The person responding need not produce the same electronically stored information in more than one form.
  **(D) *Inaccessible Electronically Stored Information.*** The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
  **(A) *Information Withheld.*** A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B) *Information Produced.*** If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

MELODY JOY CANTU AND
DR. RODRIGO CANTU

§
§
§
§

V.

§
§

CIVIL ACTION NO. **5:20-CV-00746-JKP-HJB**

DR. SANDRA GUERRA AND
DIGITAL FORENSICS CORPORATION, LLC

§
§
§

### DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS

Custodian of records for:   **United Services Automobile Association**
Records pertain to:          **See Attached Exhibit 'A'**
Records requested:           **See Attached Exhibit 'A'**

1. Please state your full name.

   Answer: Frank Meredith

2. Please state by whom you are employed and the business address.

   Answer: USAA- 9800 Fredericksburg Rd, San Antonio TX 78288

3. What is the title of your position or job?

   Answer: Executive Director

4. Have you been served with a subpoena duces tecum for the production of the above-described records?

   Answer: Yes

5. Are these memoranda, reports, records, or data compilations, as outlined above and in the subpoena duces tecum, pertaining to the above-named person or subject, in your custody or subject to your control, supervision or direction?

   Answer: Yes

6. Are you able to identify these aforementioned records as the originals, or as true and correct copies of the originals?

   Answer: Yes

7. Please provide copies or originals of the records described in the subpoena to the Notary Public authenticating this deposition. Have you complied? If not, please describe the reasons for any ommissions or refusal to comply.

   Answer: Yes

8. Are the copies which you have provided to the Officer taking this deposition true and correct copies of the requested records?

   Answer: Yes

9. Were such memoranda, reports, records, or data compilations kept in the regular course of business of this facility?

   Answer: Yes

10. Was it in the regular course of business of this facility for a person with knowledge of the acts, events, conditions, opinion, or diagnoses, recorded to make the record or to transmit information thereof to be included in such record?

    Answer: Yes

11. Were the entries on these records made at or shortly after the time of the transaction recorded?

    Answer: Yes

6596.001

2 of 10

12. Was the method of preparation of these records trustworthy?

Answer: _Yes_

_____

WITNESS (Custodian of Records)

Before me, the undersigned authority, on this day personally appeared _Frank Meredith_, known to me to be the person whose name is subscribed to the foregoing instrument in the capacity therein stated, who being first duly sworn, stated upon his/her oath that the answers to the foregoing questions are true and correct.  I further certify that the records attached hereto are exact duplicates of the original records.

SWORN TO AND SUBSCRIBED before me this _13th_ day of _September_, 20_22_.

_Guadalupe Saldana_

NOTARY PUBLIC

My commission expires: _October 21, 2023_

GUADALUPE SALDANA
My Notary ID # 6778187
Expires October 21, 2023

6596.001

3 of 10

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **MELODY JOY CANTU and** | § | |
| **DR. RODRIGO CANTU,** | § | |
| *Plaintiffs* | § | |
| | § | |
| | § | **CASE NO.: 5:20-CV-00746-JKP (HJB)** |
| | § | |
| V. | § | |
| | § | |
| **DR. SANDRA GUERRA and** | § | |
| **DIGITAL FORENSICS** | § | |
| **CORPORATION, LLC** | § | |
| *Defendants* | § | |

## EXHIBIT A

**A.  DEFINITIONS AND INSTRUCTIONS:**

1.  The term "person" means natural persons, general partnerships, limited partnerships, joint ventures, associations, corporations, governmental agencies (whether federal, state or local or any agency of the government of a foreign county), departmental units or subdivisions thereof, and any other form of business entity or association, as the case maybe.

2.  The terms "document" and "documents" mean all documents and tangible things, in the broadest sense allowed under the Federal Rules of Civil Procedure, and include, but are not limited and include the original and each non-identical copy (whether different from the original because of marginal notes or other material inserted, or attached, or otherwise) of any written or graphic matter however produced or reproduced, whether sent or received or neither, including, without limitation, drafts and both sides thereof, and including but not limited to:  spreadsheets, papers, books, letters, correspondence, telegrams, cables, telex messages, memoranda, typed or handwritten notes, notations, files, work papers, transcripts, minutes, reports and records of telephone or other conversations or of interviews or of conferences or meetings, maps, charts, plans, specifications, diagrams, photographs, affidavits, statements, summaries, opinions, reports, studies, analyses, evaluations, contracts, agreements, ledgers, journals, financial statements, statistical records, desk calendars, appointment books, diaries, expense account records, lists, tabulations, and sound recordings, computer disks, computer printouts, data processing input and output, film, microfilm, e-mail, electronically stored information ("ESI"), and all other records kept by electronic, photographic, magnetic, or mechanical means and items similar to any of the foregoing.

3.  A request for "electronically stored information" or documents "in electronic form" calls

upon You to produce such information, without deletion or alteration of meta-data, in its native form, and to indicate the computer hardware and software program(s) needed to translate the information into usable form in the information's native format.

4.  You are to produce all documents, as defined above, that are in your possession, control or custody or in the possession, control or custody of any attorney for you. Without limiting the term "control," a document is deemed to be within your control if you have ownership, possession or custody of the document, or the right to secure the document or copy thereof from any person or public or private entity having physical possession thereof. This includes documents in the possession of your attorneys, accountants, advisors or other persons directly or indirectly employed by or connected with you, or your attorneys, and/or anyone else otherwise subject to your control.

5.  Each document produced should be specifically identified with the specific request made herein and should be produced in a form which renders the document susceptible to copying.

6.  All duplicates or copies of documents are to be provided to the extent they have handwriting, additions, or deletions of any kind different from the original document being produced.

7.  The term "and/or," "or," and "and" are used inclusively, not exclusively.

8.  Wherever the words "evidencing," "reflecting," "relating," "demonstrating," "pertaining to" and/or "concerning" appear herein, the meaning intended shall include: directly or indirectly referring to, related to, relating to, alluding to, having any relationship to, pertaining to, comprising, evidencing, constituting evidence of, connected with, commenting on, regarding, discussing, mentioning, analyzing, constituting, showing, referring in any way to, embodying in whole or in part, or being relevant to that subject matter, and is meant to include, among other documents, documents underlying, supporting, now or previously attached or appended to, and/or used in the preparation of any document called for by the Request.

9.  Use of the singular shall be taken to include the plural and vice-versa.

10. The term "communication" refers to any transfer of information, oral or written, be it in the form of facts, ideas, inquiries, opinions or otherwise, by any means, at any time or place, under any circumstances, and is not limited to transfers between persons, but includes other transfers, such as records and memoranda to the file.

11. If you object to any request or any portion of any request on the ground that it would constitute an undue burden to respond, respond to the request as fully as possible without undertaking an undue burden and identify all reasons it would constitute an undue burden to respond fully and completely.

12. If you object to any request or any portion of any request on the ground that it is vague, ambiguous, and/or indefinite, set forth Your understanding of the allegedly vague, ambiguous, and/or indefinite term(s) and respond to the Interrogatory based upon such

stated understanding(s).

13. If any request cannot be complied with in full, it should be complied with to the extent possible and an explanation provided as to why full compliance is not possible.

14. If any claim of privilege is asserted as to any requested documents (or any portion thereof), you shall furnish in lieu of any documents withheld, a schedule or log which specifically describes the information or materials withheld and states the specific privilege for each item or group of items withheld. All segregable portions of any document, as to which no claim of privilege is being asserted, should be produced in redacted form, clearly identifying the portion redacted and the basis for the redaction.

15. If you assert that any document requested herein is privileged, provide the following information with respect to each such document:

   a.  its date;
   b.  its author;
   c.  all addressees or recipients of the original or copies thereof, including blind copies;
   d.  a brief description of its subject matter, number of pages, and attachments or appendices;
   e.  all persons to whom the document was distributed, shown or explained;
   f.  its present custodian; and
   g.  the nature of the privilege claimed.

16. "Identity" or "Identify" or "Identification":

   a.  When used in reference to a natural person, "identity," "identify," or "identification" means to state his or her full name and present or last known address and present employer, specifying in each instance the title or position and the dates so held.

   b.  When used with respect to document, "identity," "identify," or "identification" means to state the date, subject and substance, author, all recipients, type of document (e.g., letter, telegraph, memorandum, computer printout, sound reproduction, chart, etc.), its present location and the identity of its present custodian. This shall include documents with respect to which a privilege is or may be claimed, if such document was, but no longer is, in your possession or subject to your control, state whether (a) it is missing or lost; (b) has been destroyed; (c) has been transferred voluntarily to others; or ( d) otherwise disposed of. In each such instance explain the circumstances surrounding an authorization for such disposition.

   c.  When used in respect to an occasion, event, meeting or conversation, "identity," "identify," or "identification" means to state the date, place, duration and persons attending or participating.

17. In the event that any document called for by any request has been discarded or

destroyed, placed beyond your control or otherwise disposed of, that document shall be identified as follows: (a) preparer(s); (b) addressee(s); (c) recipient(s) of indicated or blind copies; (d) date; (e) type of document; (f) subject matter; (g) number of pages; (h) number and identity of attachments or appendices; (i) all persons to whom distributed, shown or explained; (j) date of disposal or destruction; (k) reason for disposal or destruction; (l) person(s) authorizing disposal or destruction; and (m) person(s) discarding or destroying the document.

18. To the extent you withhold any documents responsive to these requests, Defendant hereby requests that you identify the information and material being withheld as required pursuant to the Federal Rules of Civil Procedure.

19. The term "**USAA**" and means USAA and its employees, agents, contractors, representatives and any other person presently or formerly acting on behalf of USAA.

20. The term "**USAA Investigation**" means the investigation Plaintiffs allege in paragraph 43, below, of Plaintiffs' First Amended Complaint was conducted by USAA, at the request of Melody Joy Cantu, of her secure work internet network connection, as more particularly described in paragraph 43, below, of Plaintiffs' First Amended Complaint:

> 43.     In October of 2018, Melody Cantu's employer, USAA, replaced all of her work equipment following her request for an investigation by USAA, of her secure work internet network connection separate from the Cantus' home internet connection. USAA entrusts Melody Cantu with members' private information and possessions. Thus, she is subject to regular background and security checks. Melody Cantu was worried that her work internet connection was hacked as well. After reporting her concern to USAA, they investigated. USAA's investigation found that Mrs. Cantu's work internet connection was secure, but not before one of the investigators commented that he thought someone had hacked the Cantus' home internet connection.

21. "**Melody Joy Cantu**" means Melody Joy Cantu and her attorneys, agents, employees, representatives and any other person or entity acting on or for her behalf.

22. "**Dr. Rodrigo Cantu**" means Dr. Rodrigo Cantu and his attorneys, agents, employees, representatives and any other person or entity acting on or for his behalf.

23. "**Plaintiffs**" mean Melody Joy Cantu and Dr. Rodrigo Cantu.

24. The "**First Amended Complaint**" means the First Amended Complaint filed by Melody Joy Cantu and Dr. Rodrigo Cantu, attached hereto as Exhibit A-1 and incorporated herein by reference.

25. "**The Cantus' Counsel"**, means Tor Ekeland and the attorneys, paralegals, legal assistants, law clerks, employees, contractors, agents and representatives of Tor Ekeland Law, PLLC, 30 Wall Street, 8th Floor, New York, NY and Rain Minns and the attorneys, paralegals, legal assistants, law clerks, employees, contractors, agents and representatives Minns Law Firm, 4412 Spicewood Springs Rd., Suite 500, Austin, Texas 78759-8583.

26. "**Lawsuit**" means Case No. 5:20-CV-00746-JKP (HJB), *Melody Joy Cantu and Dr. Rodrigo Cantu, Plaintiffs v. Dr. Sandra Guerra and Digital Forensics Corporation, LLC*, in the United States District Court for the Western District of Texas San Antonio Division.

27. The "**Parties Pleadings**" means the First Amended Complaint filed by Plaintiffs, and the First Amended Answer, Affirmative Defenses and First Amended Counter claims of Defendant Dr. Sandra Guerra, attached hereto as <u>Exhibit A-2</u> and incorporated herein by reference.

## **PERIOD OF TIME**

Unless a specific date or dates is set forth in any specific interrogatory herein, you are directed that each question shall be answered for the period of time beginning on January 1, 2018 up to and including the present date.

**B.  DOCUMENTS TO BE PRODUCED:**

1. All communications and documents (including any recordings) USAA received from, transmitted to, or exchanged with Melody Joy Cantu (or any person or entity acting on behalf of Melody Joy Cantu, including, without limitation, any attorney or private investigator) that reflect, demonstrate, or otherwise refer or relate in any way to Melody Joy Cantu's request for the USAA Investigation.

2. All communications and documents (including any recordings) USAA received from, transmitted to, or exchanged with Melody Joy Cantu (or any person or entity acting on behalf of Melody Joy Cantu, including, without limitation, any attorney or private investigator) that reflect, demonstrate, or otherwise refer or relate in any way to Melody Joy Cantu's allegation in Plaintiffs' Amended Complaint that the Cantus' home internet connection was hacked.

3. All communications and documents (including any recordings) USAA received from, transmitted to, or exchanged with Melody Joy Cantu (or any person or entity acting on behalf of Melody Joy Cantu, including, without limitation, any attorney or private investigator) that reflect, demonstrate, or otherwise refer or relate in any way to Melody Joy Cantu's allegation that she reported to USAA that she "was worried that her work internet connection was hacked as well."

4. All communications and documents (including any recordings) USAA received from, transmitted to, or exchanged with Melody Joy Cantu (or any person or entity acting on behalf of Melody Joy Cantu, including, without limitation, any attorney or private investigator) that reflect, demonstrate, or otherwise refer or relate in any way to the results, findings, and/or outcome of the USAA Investigation requested by Melody Joy Cantu.

5. All written reports regarding the USAA Investigation.

6. All communications and documents (including any recordings) USAA received from, transmitted to, or exchanged with Melody Joy Cantu (or any person or entity acting on behalf of Melody Joy Cantu, including, without limitation, any attorney or private investigator) that reflect, demonstrate, or otherwise refer or relate in any way to Melody Joy Cantu's allegation in Plaintiffs' Amended Complaint that "one of the [USAA] investigators commented that he thought someone hacked the Cantus' home internet connection."

7. All communications and documents (including any recordings) USAA received from, transmitted to, or exchanged with Melody Joy Cantu (or any person or entity acting on behalf of Melody Joy Cantu, including, without limitation, any attorney or private investigator) that reflect, demonstrate, or otherwise refer or relate in any way to Melody Joy Cantu's allegation that USAA replaced all of her work equipment following her request for the USAA Investigation.

# EXHIBIT A-1

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO

---

MELODY JOY CANTU AND DR. RODRIGO CANTU,

Plaintiffs,

v.

DR. SANDRA GUERRA and DIGITAL FORENSICS CORPORATION, LLC,

Defendants.

5:20-CV-0746-JKP

**FIRST AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

---

Plaintiffs Dr. Rodrigo Cantu and Melody Joy Cantu ("Melody Cantu"), altogether the ("Cantus"), through their attorneys, complain as follows:

## Introduction

1.      This is an action for violations of the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et. seq.* ("CFAA"), the Federal Wiretap Act, 18 U.S.C. §§ 2510 *et. seq.,* the Texas Harmful Access by Computer Act ("HACA"), Texas Penal Code § 33.02(b-1) (1), and the Texas torts of malicious prosecution and intentional infliction of emotional distress.

2.      Defendants Dr. Sandra Guerra ("Dr. Guerra") and Digital Forensics Corporation, LLC ("DFC") hacked, surveilled, and damaged Plaintiffs' protected computers and computer networks without authorization or effective consent, and intentionally damaged those computers and networks causing losses greater than $5,000. Defendants' goal was the malicious prosecution of Plaintiff Melody Cantu and the Intentional Infliction of Emotional Distress upon Plaintiffs, and

1

they succeeded. Defendants got Melody Cantu arrested right before a scheduled holiday trip with her husband and children, on charges eventually dismissed on speedy trial grounds. This was followed by Dr. Guerra's filing of a false Child Protective Services complaint against Plaintiffs as part of her outrageous, jealous, and obsessive stalking campaign to intentionally inflict emotional distress upon Plaintiffs and their family.

3.      Defendant Dr. Guerra's obsessive jealousy motivated her revenge on her ex-husband and his new wife, even though it was Dr. Guerra who divorced Dr. Cantu in 2009 after she began having an affair with another man.

4.      Roughly two years later, Dr. Cantu met Melody Cantu, marrying her and triggering Defendant Dr. Guerra's stalking and harassment of Plaintiffs, including the weaponization of Dr. Guerra's and Dr. Cantu's children against Dr. Cantu through parental alienation.

5.      Defendant Digital Forensics Corporation, LLC's ("DFC") motivation was money. Having sold Dr. Guerra a Phase I report after Dr. Guerra turned to them to hack Plaintiffs, DFC, like it always tries to do with its customers, upsold Dr. Guerra by urging her to file a police report in order to get DFC's "Phase II" report. Police officer body camera footage of Dr. Guerra making her false police report, records her telling the officer that Digital Forensics Corporation, LLC requires her to file a police report to proceed with their services.

6.      The Defendants campaign of hacking, surveillance, damage, and malicious prosecution is part of a stalking campaign against Plaintiffs to intentionally inflict emotional distress upon the Cantus, resulting in emotional and monetary harm including costs and expenses from computer and network downtime, bandwidth disruption, and computer intrusion investigation and amelioration. Thus, they seek compensatory, consequential, and punitive damages.

2

## The Parties

7.      Plaintiffs Melody and Dr. Rodrigo Cantu are married U.S. citizens who reside in Boerne, Texas.

8.      Defendant Dr. Sandra Guerra is a natural person who, upon information and belief, resides in San Antonio, Texas.

9.      Defendant Digital Forensics Corporation, LLC ("DFC") is, upon information and belief, a national Ohio based Limited Liability Company, with an office at 1100 NW Loop 410, #700, San Antonio, Texas 78213.[1] Its website advertises it as an expert in "Digital Forensic Services," and "Cyber Security Services," among other things.[2] The Better Business Bureau website contains an alert for DFC, noting a pattern of complaints against the company "concerning misrepresentation by the company regarding Phase 1 and Phase 2 reporting. These complaints allege that the consumer was led to believe that additional evidence, email, photos, or other information would be able to be produced if the consumer paid the additional money for Phase 2 reporting."[3]

## Jurisdiction and Venue

10.     This Court has subject matter jurisdiction over the Computer Fraud and Abuse Act ("CFAA") claims under 28 U.S.C. §§ 1331 and 1332, as the claims are federal questions under the CFAA, 18 U.S.C. §§ 1030(a)(2)(C) (prohibiting unauthorized access to a computer), 1030(a)(5)(A)-(C) (prohibiting unauthorized damage to a computer), 1030(g) (creating civil cause

---

[1] *Digital Forensics Corp. San Antonio, TX*, DIGITAL FORENSICS CORPORATION, https://www.digitalforensics.com/locations/tx/san-antonio (last accessed July 15, 2020).
[2] Id.
[3] *Better Business Bureau, "Digital Forensics Corp.,"* https://www.bbb.org/us/oh/beachwood/profile/forensic-computers/digital-forensics-corp-0312-92018715 (last accessed July 15, 2020).

3

of action), 1030(c)(4)(A)(i)(I) (creating civil jurisdiction predicate for CFAA losses aggregating $5,000 or more), and 1030(e) (defining "loss," "damage," and other key terms). As alleged below, the actions complained of resulted in CFAA loss of more than $5,000, all within the last two years from the date of the original Complaint.

11.     Likewise, this Court has federal question jurisdiction over the Federal Wire Tap claims, 18 U.S.C. §§ 2510 *et. seq.,* under 18 U.S.C. § 2520(a) (providing a private right of action for victims of wiretapping).

12.     For the Texas State Law claims, this Court has supplemental jurisdiction under 28 U.S.C. § 1367. Tex. Civ. Prac. & Rem. Code § 143.001 provides for a civil cause of action for violations of the Texas Harmful Access by Computer Act ("HACA"), Texas Penal Code § 33.02(b-1) (1). Texas courts recognize the torts of malicious prosecution and intentional infliction of emotional distress.

13.     The Court has personal jurisdiction over the Defendants because Dr. Guerra resides in the jurisdiction and Digital Forensics Corporation, LLC conducts business in the jurisdiction through its San Antonio, TX division and office.

14.     Venue is proper in the Western Division of Texas under 28 U.S.C. §§ 1391(b) because the Defendants reside and/or conduct business in this judicial district and the events complained of substantially occurred in this District.

## Facts

15.     Plaintiffs, husband and wife Dr. David Rodrigo and Melody Cantu, live in Boerne, Texas. Dr. Cantu works at a local medical practice, and Melody Cantu works for USAA.

16.     In 2009, after 10 years of marriage, Dr. Guerra divorced Dr. Cantu after she began having an affair with another man.

17.     Dr. Cantu had 2 daughters with Dr. Guerra during their marriage, currently ages 18 and 17, with whom he shared custody.

18.     Roughly two years after his divorce with Defendant Dr. Guerra, on March 25, 2009, Dr. Cantu met Melody Cantu. On April 18, 2014, the Cantus got married. Melody Cantu has three children, one of whom is special needs, and all of whom now live in fear of Dr. Guerra surveilling them and coming for their mother.

19.     Upon learning of Dr. Cantu's meeting and marriage to Plaintiff Melody Cantu, Defendant Dr. Guerra began a campaign of harassment against Plaintiffs, intentionally alienating Dr. Cantu's parents and two children from him to the point where his daughters won't speak to him because of their instilled hatred of Melody Cantu.

20.     On June 17, 2016, in the hopes of being able to speak with his daughters, Dr. Cantu divorced Melody Cantu. They secretly kept their relationship going for the next two years.

21.     Throughout the next two years, Melody Cantu lived in fear of being accidentally seen with Dr. Cantu and triggering Dr. Guerra.

22.     Then, on Easter Sunday of 2018, the secret relationship came to light.

23.     On April 1, 2018, Melody Cantu drove by a local restaurant and, to her surprise, saw Dr. Cantu with his daughters and Dr. Guerra. Dr. Guerra had joined them at the restaurant, after claiming to run into them accidentally. As everyone was leaving the restaurant, Melody Cantu phoned Dr. Cantu, who invited her to speak with them. Melody Cantu pulled into the restaurant parking lot and told Dr. Guerra, and her daughters, that she and Dr. Cantu were still seeing each other. Dr. Guerra and her daughters left as Melody Cantu was relating this secret to them. Melody and David Cantu then left separately.

5

24.     Thinking her relationship with Dr. Cantu was over, Melody Cantu moved on with her life.

25.     On May 14, 2018, Dr. Cantu contacted Melody Cantu asking her to get back together again.

26.     On May 15, 2018, Dr. Cantu told his parents that he was back together with Melody Cantu. Upon information and belief, his parents told Dr. Guerra.

27.     On or about May 16, 2018, Dr. Guerra hired Defendant Digital Forensics Corporation, LLC to hack, surveil, and damage Plaintiffs' computers and computer networks.

28.     On May 29, 2018, Dr. Cantu's lawyer served an enforcement of visitation on Dr. Guerra in the civil custody proceedings involving their children.

29.     On May 29, 2018, Dr. Guerra filed a false Child Protective Services report against the Cantus.

30.     On June 6, 2018, the CPS investigation finished with the investigator writing in their report "[t]his case is clearly not a CPS issue and more of a custody issue."

31.     In June of 2018, the Cantus began experiencing problems with their internet connection at home, despite having purchased ample bandwidth from their cable and internet provider. They began repeatedly experiencing bandwidth issues with their iPads, Smart TVs, and other devices the family of two adults and three children use daily. Their NEST home security camera network crashed, and they experienced similar problems with their computer networked thermostat and other networked household devices.

32.     Over the coming months, their cable and internet provider, Spectrum/Charter, came by five times to investigate the problems the Cantus were having with their internet but was unable to determine their source.

6

33.    On August 21, 2018, Melody Cantu received a text on her smartphone with a hidden tracking link: "Melody, could you price this for me? Thx https://goo.gl/sCbwZZ." Melody Cantu clicked on the link, thinking it was a normal business appraisal request.

34.    This exact link "https://goo.gl/sCbwZZ", appears in Digital Forensics' Phase I report, along with instructions to Dr. Guerra on how to deploy it against the Cantus.

35.    The request and the link were fraudulent, and induced Plaintiff Melody Cantu to click on the said link without her authorization and consent. When Melody Cantu clicked on the link, a website opened and logged her IP address. Melody Cantu's IP address was logged by way of a tracking URL.[4] Upon information and belief, Defendant Digital Forensics Corporation, LLC created the link in the hopes that Melody Cantu would click on it so they could spy on her for Defendant Dr. Sandra Guerra. Links like this can also be used to install malware, keylogging software, bots, and other malicious codes.

36.    On August 22, 2018, Digital Forensics Corporation completed Phase I of its investigation. The Phase I report states: "[I]f the client is interested in proceeding to Phase II, the client needs to file a police report." A sample police report was included with the Phase I report.

37.    The Phase I report also says that DFC created "tracking URLs" ("phishing links") and that Dr. Guerra needed: "to include the link in a message containing something the suspect might be interested enough to click on: DO NOT MENTION THE REAL PURPOSE BEHIND

---

[4] "As part of endeavors to know where traffic to a website is coming from, tracking URLs have become an effective way of revealing all the information needed. A tracking URL is a unique link that is created for the specific purpose of tracing where your visitors are coming from. A tracking URL will show you important metrics like the search engine from where a user clicked on your link; the keywords that were searched for, leading the user to visit your website; which of your call-to-actions initiated a response from a certain user; and so on." *What Is A Tracking URL and Why Is It Important?*, LeadSquared, available at https://www.leadsquared.com/what-is-a-tracking-url/ (last accessed 07/15/20).

THE LINK. The message could be something like 'I'd like to send you money,' or 'You will not believe this,' along with that URL created for that suspect. Be creative, but do not reveal what the link really is."

38.     On August 29, 2018, the attorney for Dr. Cantu's civil custody case against Dr. Guerra served discovery papers on her attorney, informing them of a forthcoming notice of deposition for Dr. Guerra's testimony.

39.     On August 30, 2018, Plaintiffs moved in together and Dr. Cantu closed the deed on the property.

40.     On September 4, 2018, (the Tuesday after Labor Day Weekend) Dr. Guerra filed a police report against Melody Cantu, falsely accusing her of harassment. The police bodycam footage of her, requesting a police report, shows Dr. Guerra telling the police officer that Defendant Digital Forensics required her to file the report if she wanted to proceed with Phase II of the investigation.

41.     On September 21, 2018, Spectrum/Charter sent a representative to investigate the persistent internet problems at the Cantus' home. The representative examined the Cantus' cable line leading into their house and discovered a cable signal splitter installed on their line that neither the cable company nor the Cantus put there.

42.     A cable splitter is a type of wiretap that sends the data flowing through a cable to more than one recipient.[5] It does so by providing two or more hardware points to connect to the

---

[5] "[I]t is absolutely possible to split a cable signal and still have enough signal strength to operate a cable modem and feed HDTV signals to a QAM tuner (assuming the signal strength coming into the house is sufficient). And the Cable Act of 1992 means that it is legal to do so. But every time you split a cable or antenna signal, you lose at least 3 to 4 dB of signal strength. So if you're splitting the signal 5 times, you could have as much as 15 to 20 db of loss in the signal by the time it reaches your modem or tuner." Chris Boylan, *Will a Cable Splitter Hurt My Modem or HDTV Signal Strength?*, BIG PICTURE BIG SOUND (Jan. 23, 2007), https://www.bigpicturebigsound.com/split-cable-feed-hdtv-modem-999.shtml.

8

physical cable. A cable splitter must be spliced in, or put on the end of, a cable. It can be used to monitor the internet traffic coming in and out of a home.

43.     In October of 2018, Melody Cantu's employer, USAA, replaced all of her work equipment following her request for an investigation by USAA, of her secure work internet network connection separate from the Cantus' home internet connection. USAA entrusts Melody Cantu with members' private information and possessions. Thus, she is subject to regular background and security checks. Melody Cantu was worried that her work internet connection was hacked as well. After reporting her concern to USAA, they investigated. USAA's investigation found that Mrs. Cantu's work internet connection was secure, but not before one of the investigators commented that he thought someone had hacked the Cantus' home internet connection.

44.     On November 15, 2018, a Spectrum/Charter representative discovered the cable splitter was removed. There was no record of the splitter being removed by Spectrum/Charter. When Melody Cantu logged in to her router, she discovered that the firewall settings had been set to allow access to anyone and could not be reset by herself or by Spectrum/Charter when she called their internet support line.

45.     On December 20, 2018, Melody Cantu received a postcard in the mail saying there was a warrant for her arrest and that she needed to turn herself in. There was no information as to the charges on the postcard.

46.     On December 21, 2018, the day of a planned family holiday vacation, Mrs. Cantu voluntarily turned herself in at Bexar County Sheriff's Satellite Office where she was booked and processed. She spent most of the day in shackles and did not know what she was being arrested for until the presiding judge told her it was for harassment. Shaken and confused, Melody Cantu pleaded not guilty. She then made it to the airport in time to join her family on their long-planned vacation.

47.     On January 3, 2019, the Cantus hired two computer forensics companies, Exhibit A Computer Forensics Investigations ("EACFI") and Kip & Associates. The Cantus paid EACFI a $5,000 non-refundable retainer.

48.     EACFI's investigation concluded that Digital Forensics Corporation was targeting Melody Cantu on behalf of Defendant Dr. Guerra.

49.     Kip & Associates reiterated EACFI's report, stating that the Cantus were victims of targeted electronic and digital attacks, beginning in 2018, including phishing emails, text messages, sham retail websites, credit card fraud attempts, and identity theft attempts.

50.     As a result of this cyberthreat environment, the Cantus invested more money in investigative, corrective, and protective measures. This included computer and network forensic analysis, device forensic analysis, network monitoring, consultation services, a dark web scan, data and device storage for data and devices.

51.     The Cantus replaced their router, at the cost of $660, since they feared DFC installed malware on their old router. Starting February 1, 2020, the Cantus paid CDR Business IT Solutions, LLC $108.24 a month for network monitoring of their new router. The computer forensic investigation also required the Cantus to turn over many of their electronic devices for analysis. This necessitated the purchase of replacements. And Melody Cantu took time off from work to handle the six service calls to Spectrum/Charter to try and resolve the network service interruptions.

52.     All these costs aggregate to over $5,000 in loss sustained by the Cantus in 2019.

53.     On June 24, 2019, all charges against Melody Cantu were dismissed on speedy trial grounds.

10

**FIRST CAUSE OF ACTION**
**COMPUTER FRAUD AND ABUSE ACT – UNAUTHORIZED ACCESS TO A**
**PROTECTED COMPUTER**
**18 U.S.C. 1030(a)(2)(c)**

**Against Defendants Dr. Sandra Guerra and Digital Forensics Corporation, LLC**

54.     Plaintiffs incorporate the above paragraphs by reference, as though fully set forth herein.

55.     Plaintiffs' computers are used in interstate commerce and comprise a "protected computer" as that term is used in 18 U.S.C.§ 1030(e)(2)(B).

56.     Plaintiffs maintained and secured their computers by reasonable means, and never authorized Defendants to access them.

57.     Defendants Dr. Guerra and Digital Forensics Corporation, LLC intentionally accessed the Cantus' protected computers without authorization and thereby obtained information. This unauthorized access includes phishing Plaintiffs with fraudulent tracking URLs, wiretapping the Cantus' cable internet connection to their home and monitoring network traffic, and the use of surveillance malware against the Plaintiffs.

58.     As a result of Defendants' conduct, the Cantus suffered loss in expending time, money, and resources aggregating at least $5,000 in value, to investigate the intrusion, assess the damage, and restore their systems to their prior state.

**SECOND CAUSE OF ACTION**
**COMPUTER FRAUD AND ABUSE ACT – UNAUTHORIZED DAMAGE TO A**
**PROTECTED COMPUTER**
**18 U.S.C. 1030(a)(5)(A)**

**Against Defendants Dr. Sandra Guerra and Digital Forensics Corporation, LLC**

59.     Plaintiffs incorporate the above paragraphs by reference, as though fully set forth herein.

11

60.     Plaintiffs' computers are used in interstate commerce and comprise a "protected computer" as that term is used in 18 U.S.C.§ 1030(e)(2)(B).

61.     Defendants Dr. Guerra and DFC knowingly caused the transmission of a program, information, code, or command, and intentionally caused damage without authorization. This damage includes impairment to the integrity and availability of the Cantus' data, programs, systems, and information on the Cantus' computers and networks resulting from computer crashes, diminished bandwidth, diminished processing time, and the deletion and alteration of data, all caused by Defendants' phishing, wiretapping, malware, and use of malicious codes against Plaintiffs.

62.     As a result of Defendants' conduct, the Cantus suffered losses in expending time, money, and resources aggregating at least $5,000 in value, to investigate the intrusion, assess the damage, and restore their systems to their prior state.

### THIRD CAUSE OF ACTION
### COMPUTER FRAUD AND ABUSE ACT – UNAUTHORIZED ACCESS TO A PROTECTED COMPUTER RECKLESSLY CAUSING DAMAGE
### 18 U.S.C. 1030(a)(5)(B)

**Against Defendants Dr. Sandra Guerra and Digital Forensics Corporation, LLC**

63.     Plaintiffs incorporate the above paragraphs by reference, as though fully set forth herein.

64.     Plaintiffs' computers are used in interstate commerce and comprise a "protected computer" as that term is used in 18 U.S.C.§ 1030(e)(2)(B).

65.     Defendants Dr. Guerra and Digital Forensics Corporation, LLC intentionally accessed the Cantus' protected computers without authorization and thereby recklessly impaired the integrity and availability of the Cantus' data, programs, systems, and information. This unauthorized access includes phishing Plaintiffs with fraudulent tracking URLs, wiretapping the

Cantus' cable internet connection to their home and monitoring network traffic, and the use of surveillance malware and malicious codes against the Plaintiffs.

66.     Defendants' unauthorized access recklessly impaired the integrity and availability of the data, programs, systems, and information on the Cantus' computers and networks by, among other things, causing computer crashes, diminished bandwidth, diminished processing time, and the deletion and alteration of data. This reckless damage resulted from Defendants' phishing, wiretapping, malware, surveillance, and use of malicious codes against the Plaintiffs.

67.     As a result of Defendants' conduct, the Cantus suffered losses in expending time, money, and resources aggregating at least $5,000 in value, to investigate the intrusion, assess the damage, and restore their systems to their prior state.

### FOURTH CAUSE OF ACTION
### COMPUTER FRAUD AND ABUSE ACT – UNAUTHORIZED ACCESS TO A PROTECTED COMPUTER CAUSING DAMAGE AND LOSS
### 18 U.S.C. 1030(a)(5)(C)

**Against Defendants Dr. Sandra Guerra and Digital Forensics Corporation, LLC**

68.     Plaintiffs incorporate the above paragraphs by reference, as though fully set forth herein.

69.     Plaintiffs' computers are used in interstate commerce and comprise a "protected computer" as that term is used in 18 U.S.C.§ 1030(e)(2)(B).

70.     Defendants Dr. Guerra and Digital Forensics Corporation, LLC intentionally accessed the Cantus' protected computers without authorization and thereby impaired the integrity and availability of the Cantus' data, programs, systems, and information. This unauthorized access includes phishing Plaintiffs with fraudulent tracking URLs, wiretapping the Cantu's home cable internet connection, and monitoring network traffic, and the use of surveillance malware and malicious codes against the Plaintiffs.

13

71.     Defendants' unauthorized access impaired the integrity and availability of the Cantus' data, programs, systems, and information on the Cantus' computers and networks by causing computer crashes, diminished bandwidth, diminished processing time, and the deletion and alteration of data. Defendants caused this damage and loss through their use of phishing, wiretapping, malware, surveillance, and the use of malicious codes against the Plaintiffs.

72.     As a result of Defendants' conduct, the Cantus suffered losses in expending time, money, and resources aggregating at least $5,000 in value, to investigate the intrusion, assess the damage, and restore their systems to their prior state.

## FIFTH CAUSE OF ACTION
## COMPUTER FRAUD AND ABUSE ACT – CONSPIRACY TO COMMIT UNAUTHORIZED ACCESS TO A PROTECTED COMPUTER
## 18 U.S.C. 1030(a)(2)(c) & 1030(b)

### Against Defendants Dr. Sandra Guerra and Digital Forensics Corporation, LLC

73.     Plaintiffs incorporate the above paragraphs by reference, as though fully set forth herein.

74.     Plaintiffs' computers are used in interstate commerce and comprise a "protected computer" as that term is used in 18 U.S.C.§ 1030(e)(2)(B).

75.     Plaintiffs maintained and secured their computers by reasonable means.

76.     Defendant Dr. Guerra paid, and Digital Forensics Corporation LLC agreed, to hack and surveil the Cantus' computers and networks without their knowledge and authorization in violation of 18 U.S.C. 1030(a)(2)(C).

77.     As a result of Defendants' conduct, the Cantus suffered loss in expending time, money, and resources aggregating at least $5,000 in value, to investigate the intrusion, assess the damage, and restore their systems to their prior state.

14

**SIXTH CAUSE OF ACTION**
**COMPUTER FRAUD AND ABUSE ACT – CONSPIRACY TO COMMIT**
**UNAUTHORIZED DAMAGE TO A PROTECTED COMPUTER**
**18 U.S.C. 1030(a)(5)(A) & 1030(b)**

**Against Defendants Dr. Sandra Guerra and Digital Forensics Corporation, LLC**

78.     Plaintiffs incorporate the above paragraphs by reference, as though fully set forth herein.

79.     Under 18 U.S.C.§ 1030(e)(2)(B) Plaintiffs' computers, routers, switches, and network hardware and software are used in interstate commerce "protected computers."

80.     Plaintiffs maintained and secured their computers by reasonable means.

81.     Defendant Dr. Guerra paid, and Digital Forensics Corporation LLC agreed, to hack, surveil, and damage the Cantus' computers and networks without their knowledge and authorization in violation of 18 U.S.C. 1030(a)(5)(A).

82.     As a result of Defendants' conduct, the Cantus suffered loss in expending time, money, and resources aggregating at least $5,000 in value, to investigate the intrusion, assess the damage, and restore their systems to their prior state.

**SEVENTH CAUSE OF ACTION**
**COMPUTER FRAUD AND ABUSE ACT – CONSPIRACY TO COMMIT RECKLESS**
**DAMAGE TO A PROTECTED COMPUTER**
**18 U.S.C. 1030(a)(5)(B) & 1030(b)**

**Against Defendants Dr. Sandra Guerra and Digital Forensics Corporation, LLC**

83.     Plaintiffs incorporate the above paragraphs by reference, as though fully set forth herein.

84.     Under 18 U.S.C.§ 1030(e)(2)(B) Plaintiffs' computers, routers, switches, and network hardware and software are used in interstate commerce "protected computers."

85.    Plaintiffs maintained and secured their computers by reasonable means.

86.    Defendant Dr. Guerra paid, and Digital Forensics Corporation LLC agreed, to hack, surveil, and recklessly damage the Cantus' computers and networks without their knowledge and authorization in violation of 18 U.S.C. 1030(a)(5)(A).

87.    As a result of Defendants' conduct, the Cantus suffered loss in expending time, money, and resources aggregating at least $5,000 in value, to investigate the intrusion, assess the damage, and restore their systems to their prior state.

### EIGHTH CAUSE OF ACTION
### COMPUTER FRAUD AND ABUSE ACT – CONSPIRACY TO COMMIT UNAUTHORIZED ACCESS TO A PROTECTED COMPUTER CAUSING DAMAGE AND LOSS
### 18 U.S.C. 1030(a)(5)(C) & 1030(b)

**Against Defendants Dr. Sandra Guerra and Digital Forensics Corporation, LLC**

88.    Plaintiffs incorporate the above paragraphs by reference, as though fully set forth herein.

89.    Under 18 U.S.C.§ 1030(e)(2)(B) Plaintiffs' computers, routers, switches, and network hardware and software are used in interstate commerce "protected computers."

90.    Plaintiffs maintained and secured their computers by reasonable means.

91.    Defendant Dr. Guerra paid, and Digital Forensics Corporation LLC agreed, to hack, surveil, and damage the Cantus' computers and networks without their knowledge and authorization, causing loss, in violation of 18 U.S.C. 1030(a)(5)(A).

92.    As a result of Defendants' conduct, the Cantus suffered loss in expending time, money, and resources aggregating at least $5,000 in value, to investigate the intrusion, assess the damage, and restore their systems to their prior state.

## NINTH CAUSE OF ACTION
## KNOWINGLY ACCESSING WITHOUT EFFECTIVE CONSENT A COMPUTER, COMPUTER NETWORK, OR COMPUTER SYSTEM
### Tex. Civ. Prac. & Rem. Code § 143.001 & Texas Penal Code § 33.02(a)

### Against Defendants Dr. Sandra Guerra and Digital Forensics Corporation, LLC

93.     Plaintiffs incorporate the above paragraphs by reference, as though fully set forth herein.

94.     Dr. Guerra and DFC violated § 33.02(a) of the Texas Penal Code by knowingly accessing the Cantus' computer, computer network, or computer system without the Plaintiffs' consent.

95.     Defendants Dr. Guerra and Digital Forensics Corporation, LLC knowingly accessed the Cantus' protected computers, computer networks, and computer systems without effective consent. This knowing access without effective consent includes Defendants phishing Plaintiffs with fraudulent tracking URLs, wiretapping Plaintiffs' home cable internet connection, monitoring their network traffic, and the use of surveillance malware and malicious codes against the Plaintiffs.

96.     As a result of Defendants' conduct, the Cantus suffered loss in expending time, money, and resources aggregating at least $5,000 in value, to investigate the intrusion, assess the damage, and restore their systems to their prior state.

97.     Under § 143.001 of the Texas Civil Practice and Remedies Code, Defendants' are civilly liable for their knowing and intentional violation of §§ 33.02(a) of the Texas Penal Code.

**TENTH CAUSE OF ACTION**
**KNOWINGLY ACCESSING A COMPUTER, COMPUTER NETWORK, OR**
**COMPUTER SYSTEM WITH THE INTENT TO DEFRAUD, OR HARM ANOTHER**
**OR ALTER, DAMAGE, OR DELETE PROPERTY WITHOUT EFFECTIVE CONSENT**
Tex. Civ. Prac. & Rem. Code § 143.001 & Texas Penal Code § 33.02(b-1) (1)

**Against Defendants Dr. Sandra Guerra and Digital Forensics Corporation, LLC**

98.     Plaintiffs incorporate the above paragraphs by reference, as though fully set forth herein.

99.     Defendants Dr. Guerra and Digital Forensics Corporation violated § 33.02(b-1) (1) of the Texas Penal Code by knowingly accessing the Cantus' computers, computer networks, or computer systems with the intent to defraud or harm the Cantus, or to alter, damage, or delete their property.

100.     Defendants Dr. Guerra and Digital Forensics Corporation, LLC knowingly accessed the Cantus' protected computers, computer networks, and computer systems without effective consent. This knowing access without effective consent includes Defendants phishing Plaintiffs with fraudulent tracking URLs, wiretapping Plaintiffs' home cable internet connection, monitoring their network traffic, and the use of surveillance malware and malicious codes against the Plaintiffs.

101.     Defendants knowingly accessed the Cantus' computers, computer network, and computer systems without effective consent with the intent to alter, damage, or delete the Cantus' property. Defendants' access without effective consent impaired the integrity and availability of the Cantu's data, programs, systems, and information on the Cantu's computers and networks by causing computer crashes, diminished bandwidth, diminished processing time, and the deletion and alteration of data. Defendants caused this damage and loss through their use of phishing, wiretapping, malware, surveillance, and the use of malicious codes against Plaintiffs.

102.   As a result of Defendants' conduct, the Cantus suffered loss in expending time, money, and resources aggregating at least $5,000 in value, to investigate the intrusion, assess the damage, and restore their systems to their prior state.

103.   Under § 143.001 of the Texas Civil Practice and Remedies Code, Defendants are civilly liable for their knowing and intentional violation of Texas Penal Code § 33.02(b-1) (1).

## ELEVENTH CAUSE OF ACTION
## ELECTRONIC ACCESS INTERFERENCE
### Tex. Civ. Prac. & Rem. Code § 143.001 & Texas Penal Code § 33.022

**Against Defendants Dr. Sandra Guerra and Digital Forensics Corporation, LLC**

104.   Plaintiffs incorporate the above paragraphs by reference, as though fully set forth herein.

105.   Defendants intentionally interrupted or suspended access to Plaintiffs' computer systems or computer networks without Plaintiffs effective consent in violation of Texas Penal Code § 33.022.

106.   Defendants' electronic access interference interrupted and suspended the availability of the Cantu's data, programs, systems, and information on their computers and networks by causing computer crashes, diminished bandwidth, diminished processing time, and the deletion and alteration of data. Defendants caused this damage and loss through their use of phishing, wiretapping, malware, surveillance, and the use of malicious codes against Plaintiffs.

107.   As a result of Defendants' conduct, the Cantu suffered loss in expending time, money, and resources aggregating at least $5,000 in value, to investigate the intrusion, assess the damage, and restore their systems to their prior state.

108.   Under § 143.001 of the Texas Civil Practice and Remedies Code, Defendants are civilly liable for their knowing and intentional violation of Texas Penal Code § 33.022.

## TWELFTH CAUSE OF ACTION
## INTENTIONAL INTERCEPTION, OR ENDEAVOURING TO USE ANY ELECTRONIC WIRE, ORAL OR ELECTRONIC COMMUNICATIONS
## 18 U.S.C. §§ 2510 *et. seq.*

**Against Defendants Dr. Sandra Guerra and Digital Forensics Corporation, LLC**

109.    Plaintiffs incorporate the above paragraphs by reference, as though fully set forth herein.

110.    The Federal Wiretap Act, under 18 U.S.C. § 2511, as amended by the Electronic Communications Privacy Act of 1986, prohibits the intentional interception of the contents of any wire, oral, or electronic communication through the use of a device.

111.    Dr. Guerra and DFC violated 18 U.S.C. §§ 2510 *et seq.* by intentionally using, and endeavoring to use, any electronic, mechanical, or other device, including the installation of a cable line splitter and tracking URLs, to intercept Plaintiffs' wire, oral, or electronic communications.

## THIRTEENTH CAUSE OF ACTION
## MALICIOUS PROSECUTION

**Against Defendants Dr. Sandra Guerra and Digital Forensics Corporation, LLC**

112.    Plaintiffs incorporate the above paragraphs by reference, as though fully set forth herein.

113.    Defendant Dr. Guerra filed a false police report against Plaintiff Melody Cantu at the urging of Defendant Digital Forensics Corporation. DFC expressly told Dr. Guerra that in order to obtain a "Phase II" report on Plaintiffs, a police report was required. On the video recording of Dr. Guerra's police report, she can be heard saying that Digital Forensics requires her to file a report in order to proceed further.

114.    This false police report, without probable cause, led to Melody Cantu's arrest and prosecution for harassment.

115.    The prosecution against Plaintiff Melody Cantu was resolved in her favor, as the case was dismissed due to the violation of her constitutional right to a speedy trial.

116.    Plaintiff Melody Cantu was innocent.

117.    The proceeding lacked probable cause, as there was no evidence to substantiate Defendant's claim of harassment by Plaintiff Melody Cantu and the prosecutor ignored evidence of Dr. Guerra's prior fraudulent Child Protective Services complaint against the Cantus, which CPS found baseless.

118.    The Defendants acted with malice, Dr. Guerra with jealousy-fueled hatred and Digital Forensics Corporation, LLC for money.

119.    As a result of the malicious prosecution, Plaintiff Melody Cantu suffered loss in paying attorney's fees for representation in the criminal matter.

120.    As a result of the malicious prosecution, Plaintiffs also suffered damage to their reputations and occupations. Despite the dismissal, the arrest turns up on the security background screenings that Melody Cantu's work with USAA requires.

121.    As a result of the malicious prosecution, Plaintiff Melody Cantu suffered emotional harm stemming from her arrest.

## FIFTEENTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress

### Against Defendants Dr. Sandra Guerra and Digital Forensics Corporation, LLC

122.    Defendants Dr. Guerra and Digital Forensics Corporation acted intentionally or recklessly by engaging in a malicious prosecution of Cantu and the cyberstalking of the Cantus.

123.    The Defendants' relentless cyberstalking and malicious prosecution of Plaintiffs was extreme and outrageous.

124.   The actions of Defendants caused Plaintiffs emotional distress by putting the

Cantus in a state of prolonged and sustained fear for their safety and privacy of their family, and

themselves, because of the repeated false charges, false investigations, and cyberstalking.

## Prayer for Relief

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor

and award the following relief against Defendants:

a. An award against Defendants Dr. Guerra and Digital Forensics Corporation, LLC for

compensatory damages plus interest and costs;

b. An award against Defendants for consequential damages,

c. That the Court award punitive damages in an amount to be determined at trial;

d. That the Court award Plaintiffs their attorney's fees and expenses;

e. That the Court enter a permanent injunction against Defendants enjoining them from

engaging further in the actions complained of; and

f. That the Court award Plaintiffs such other and further relief as is just and proper under

the circumstances.

Dated: July 15, 2020                          Respectfully submitted,

                                              /s/ Tor Ekeland
                                              Tor Ekeland (NY Bar No. 4493631)
                                              *Pro Hac Vice*
                                              Tor Ekeland Law, PLLC
                                              195 Montague Street, 14th Floor
                                              Brooklyn, NY 11201
                                              t:  (718) 737 - 7264
                                              f:  (718) 504 - 5417
                                              tor@torekeland.com

                                              *Attorneys for Plaintiffs Dr. Rodrigo Cantu
                                              and Melody Joy Cantu*

# EXHIBIT A-2

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **MELODY JOY CANTU and** | § | |
| **DR. RODRIGO CANTU,** | § | |
| *Plaintiffs* | § | |
| | § | |
| | § | **CIVIL ACTION NO 5:20-CV-00746-JKP** |
| | § | |
| V. | § | |
| | § | |
| **DR. SANDRA GUERRA and** | § | |
| **DIGITAL FORENSICS** | § | |
| **CORPORATION, LLC** | § | |
| *Defendants* | § | |

**FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND FIRST AMENDED
COUNTERCLAIM OF DEFENDANT DR. SANDRA GUERRA**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

NOW COMES Defendant, DR. SANDRA GUERRA (hereinafter "Defendant" or "Dr.
Guerra"), and reserving the right to file other and further pleadings, exceptions and denials, files
this her First Amended Answer, Affirmative Defenses, and Amended Counterclaim and in support
thereof would respectfully show unto the Court as follows:

**DEFENDANT, DR. SANDRA GUERRA'S, FIRST AMENDED ANSWER**

**I.      INTRODUCTION**

1.      Dr. Guerra denies she violated the federal Computer Fraud and Abuse Act,
18 U.S.C. §§ 1030 *et. seq*. ("CFAA"), the Federal Wiretap Act, 18 U.S.C. §§ 2510 *et. seq.*, the
Texas Harmful Access by Computer Act ("HACA"), Texas Penal Code § 33.02(b-1) (1) and
denies committing the Texas torts of malicious prosecution and intentional infliction of emotional
distress.

2.      Dr. Guerra denies that she hacked, surveilled, and damaged Plaintiffs' protected computers and computer networks without authorization or effective consent, and intentionally damaged those computers or networks causing losses greater than $5,000.00.  Dr. Guerra denies having any intention to maliciously prosecute Plaintiff Melody Joy Cantu ("Melody") and/or cause the intentional infliction of emotional distress upon Plaintiffs.  Dr. Guerra asserts that, based upon information and belief, Melody was arrested as a result of a legitimate police report filed by Dr. Guerra after a systematic campaign by Melody to harass Dr. Guerra.  Dr. Guerra has no knowledge of the disposition for which Melody was arrested.  Dr. Guerra further denies filing a false Child Protective Services ("CPS") complaint against Plaintiffs and asserts, instead, that she did file a legitimate CPS report after becoming aware of (1) verbal abuse to her daughters by Melody and (2) Dr. Rodrigo Cantu's ("Dr. Cantu") failure to protect Dr. Guerra and Dr. Cantu's daughters from Melody's verbal attacks.

3.      Dr. Guerra denies seeking any type of revenge on Dr. Cantu or Melody.  Dr. Guerra further denies her divorce with Dr. Cantu was the result of any alleged affair on Dr. Guerra's part, but rather, was the result of Dr. Cantu's anger issues and financial issues.

4.      Dr. Guerra denies ever stalking or harassing Plaintiffs or weaponizing Dr. Guerra and Dr. Cantu's children against Dr. Cantu through parental alienation.

5.      Dr. Guerra does not have the requisite knowledge to admit or deny the allegations contained in Paragraph 5 of Plaintiff's Amended Complaint as they relate to Digital Forensics Corporation, LLC ("DFC").  Dr. Guerra admits she did file a police report as recommended by DFC.

6.      Dr. Guerra denies engaging in a campaign of hacking, surveillance, damage, and malicious prosecution for any reason and denies responsibility for any of the resulting harm

claimed by Plaintiffs for any alleged campaign against them.

## II.   PARTIES

7.      Dr. Guerra admits to the allegations contained in Paragraph 7 of the First Amended Complaint.

8.      Dr. Guerra admits to the allegations contained in Paragraph 8 of the First Amended Complaint.

9.      Dr. Guerra does not have the requisite knowledge to admit or deny the allegations contained in Paragraph 9 of the First Amended Complaint.

## III.   JURISDICTION AND VENUE

10.     Dr. Guerra does not stipulate the Court has jurisdiction in this case but asserts that she did not violate any statute as stated in Paragraph 1 of the First Amended Complaint.

11.     Dr. Guerra does not stipulate the Court has jurisdiction in this case but asserts that she did not violate any statute as stated in Paragraph 10 of the First Amended Complaint.

12.     Dr. Guerra does not stipulate the Court has jurisdiction in this case but asserts that she did not engage in any acts or omissions giving rise to any state law causes of action as stated in Paragraph 12 of the First Amended Complaint.

13.     Dr. Guerra admits to the allegations contained in Paragraph 13 of the Amended Complaint as they relate to jurisdiction over her person.

14.     Dr. Guerra admits to the allegations contained in Paragraph 14 of the Amended Complaint as they relate to venue over her person.

## IV.   FACTS

15.     Dr. Guerra admits to the allegations contained in Paragraph 15 of the First Amended Complaint.

16.    Dr. Guerra partially admits the allegations contained in Paragraph 16 in that she and Dr. Cantu were divorced after 10 years of marriage but denies that the divorce was due to her alleged affair with another man.

17.    Dr. Guerra partially admits the allegations contained in Paragraph 17 in that she and Dr. Cantu do have two daughters together, although their current ages are 17 and 19, rather than 17 and 18.

18.    Dr. Guerra partially admits to the allegations contained in Paragraph 18, but denies that Melody's children live in fear based on her surveilling them or "coming for" their mother.

19.    Dr. Guerra denies the allegations contained in Paragraph 19.

20.    Dr. Guerra admits to the allegations contained in Paragraph 20.

21.    Dr. Guerra cannot admit or deny the allegations contained in Paragraph 21. Discovery will be conducted.  Subject thereto, deny.

22.    Dr. Guerra admits to the allegation contained in Paragraph 22.

23.    Dr. Guerra admits to the allegations contained in Paragraph 23.

24.    Dr. Guerra cannot admit or deny the allegation contained in Paragraph 24. Discovery will be conducted.  Subject thereto, deny.

25.    Dr. Guerra cannot admit or deny the allegation contained in Paragraph 25. Discovery will be conducted.  Subject thereto, deny.

26.    Dr. Guerra cannot admit or deny the allegation contained in Paragraph 26. Discovery will be conducted.  Subject thereto, deny.

27.    Dr. Guerra partially admits and partially denies the allegations contained in Paragraph 27.  Dr. Guerra admits she did hire DFC on or about May 16, 2018, but denies she did so with the intent to hack, surveil, and damage Plaintiffs' computers and computer networks.

28.     Dr. Guerra admits to the allegation contained in Paragraph 28.

29.     Dr. Guerra partially admits and partially denies the allegations contained in Paragraph 29.  Dr. Guerra admits she did file a CPS report against the Cantus on or about May 29, 2018 but denies that this report was false.

30.     Dr. Guerra admits to the allegation contained in Paragraph 30.

31.     Dr. Guerra cannot admit or deny the allegations in Paragraph 31.  Discovery will be conducted.  Subject thereto, deny.

32.     Dr. Guerra cannot admit or deny the allegations in Paragraph 32.  Discovery will be conducted.  Subject thereto, deny.

33.     Dr. Guerra admits to the allegations contained in Paragraph 33.

34.     Dr. Guerra admits to the allegations contained in Paragraph 34.

35.     Dr. Guerra cannot admit or deny the allegations in Paragraph 35.  Discovery will be conducted.  Subject thereto, deny.

36.     Dr. Guerra admits to the allegation contained in Paragraph 36.

37.     Dr. Guerra admits to the allegations contained in Paragraph 37.

38.     Dr. Guerra admits to the allegations contained in Paragraph 38.

39.     Dr. Guerra cannot admit or deny the allegations in Paragraph 39.  Discovery will be conducted.  Subject thereto, deny.

40.     Dr. Guerra partially admits and partially denies the allegations contained in Paragraph 40.  Dr. Guerra admits to all portions of Paragraph 40 but denies that the police report filed against Melody was false.

41.     Dr. Guerra cannot admit or deny the allegations in Paragraph 41.  Discovery will be conducted.  Subject thereto, deny.

42.     Dr. Guerra cannot admit or deny the allegations in Paragraph 42.  Discovery will be conducted.  Subject thereto, deny.

43.     Dr. Guerra cannot admit or deny the allegations in Paragraph 43.  Discovery will be conducted.  Subject thereto, deny.

44.     Dr. Guerra cannot admit or deny the allegations in Paragraph 44.  Discovery will be conducted.  Subject thereto, deny.

45.     Dr. Guerra cannot admit or deny the allegations in Paragraph 45.  Discovery will be conducted.  Subject thereto, deny.

46.     Dr. Guerra cannot admit or deny the allegations in Paragraph 46.  Discovery will be conducted.  Subject thereto, deny.

47.     Dr. Guerra cannot admit or deny the allegations in Paragraph 47.  Discovery will be conducted.  Subject thereto, deny.

48.     Dr. Guerra cannot admit or deny the allegations in Paragraph 48.  Discovery will be conducted.  Subject thereto, deny.

49.     Dr. Guerra cannot admit or deny the allegations in Paragraph 49.  Discovery will be conducted.  Subject thereto, deny.

50.     Dr. Guerra cannot admit or deny the allegations in Paragraph 50.  Discovery will be conducted.  Subject thereto, deny.

51.     Dr. Guerra cannot admit or deny the allegations in Paragraph 51.  Discovery will be conducted.  Subject thereto, deny.

52.     Dr. Guerra cannot admit or deny the allegations in Paragraph 52.  Discovery will be conducted.  Subject thereto, deny.

53.     Dr. Guerra cannot admit or deny the allegations in Paragraph 53.  Discovery will

be conducted.  Subject thereto, deny.

## V.     COMPUTER FRAUD AND ABUSE ACT – UNAUTHORIZED ACCESS TO A PROTECTED COMPUTER 18 U.S.C. 1030(a)(2)(c)

54.     Dr. Guerra is unable to admit or deny this allegation contained in paragraph 54 of the Amended Complaint as it is not an allegation.  To the extent any portion is an allegation, it is denied.

55.     Dr. Guerra denies the allegation contained in Paragraph 55.

56.     Dr. Guerra cannot admit or deny the allegations in Paragraph 56.  Discovery will be conducted.  Subject thereto, deny.

57.     Dr. Guerra denies the allegations contained in Paragraph 57.

58.     Dr. Guerra denies the allegations contained in Paragraph 58.

## VI.     COMPUTER FRAUD AND ABUSE ACT – UNAUTHORIZED DAMAGE TO A PROTECTED COMPUTER 18 U.S.C. 1030(a)(5)(A)

59.     Dr. Guerra is unable to admit or deny this allegation contained in Paragraph 59 of the Amended Complaint as it is not an allegation.  To the extent any portion is an allegation, it is denied.

60.     Dr. Guerra denies the allegation contained in Paragraph 60.

61.     Dr. Guerra denies the allegations contained in Paragraph 61.

62.     Dr. Guerra denies the allegations contained in Paragraph 62.

## VII.     COMPUTER FRAUD AND ABUSE ACT – UNAUTHORIZED ACCESS TO A PROTECTED COMPUTER RECKLESSLY CAUSING DAMAGE 18 U.S.C. 1030(a)(5)(B)

63.     Dr. Guerra is unable to admit or deny this allegation contained in Paragraph 63 of the Amended Complaint as it is not an allegation.  To the extent any portion is an allegation, it is denied.

64.     Dr. Guerra denies the allegation contained in Paragraph 64.

65.     Dr. Guerra denies the allegations contained in Paragraph 65.

66.     Dr. Guerra denies the allegations contained in Paragraph 66.

67.     Dr. Guerra denies the allegations contained in Paragraph 67.

## VIII.   COMPUTER FRAUD AND ABUSE ACT – UNAUTHORIZED ACCESS TO PROTECTED COMPUTER CAUSING DAMAGE AND LOSS 18 U.S.C. 1030(a)(5)(C)

68.     Dr. Guerra is unable to admit or deny the allegation contained in Paragraph 68 of the Amended Complaint as it is not an allegation.  To the extent any portion is an allegation, it is denied.

69.     Dr. Guerra denies the allegation contained in Paragraph 69.

70.     Dr. Guerra denies the allegations contained in Paragraph 70.

71.     Dr. Guerra denies the allegations contained in Paragraph 71.

72.     Dr. Guerra denies the allegations contained in Paragraph 72.

## IX.     COMPUTER FRAUD AND ABUSE ACT – CONSPIRACY TO COMMIT UNAUTHORIZED ACCESS TO A PROTECTED COMPUTER 18 U.S.C. 1030(a)(2)(c) & 1030(b)

73.     Dr. Guerra is unable to admit or deny the allegation contained in Paragraph 73 of the Amended Complaint as it is not an allegation.  To the extent any portion is an allegation, it is denied.

74.     Dr. Guerra denies the allegation contained in Paragraph 74.

75.     Dr. Guerra denies the allegations contained in Paragraph 75.

76.     Dr. Guerra denies the allegations contained in Paragraph 76.

77.     Dr. Guerra denies the allegations contained in Paragraph 77.

### X.    COMPUTER FRAUD AND ABUSE ACT – CONSPIRACY TO COMMIT UNAUTHORIZED DAMAGE TO A PROTECTED COMPUTER
### 18 U.S.C. 1030(a)(5)(A) & 1030(b)

78.     Dr. Guerra cannot admit or deny the allegation contained in Paragraph 78 of the Amended Complaint as it is not an allegation.  To the extent any portion is an allegation, it is denied.

79.     Dr. Guerra denies the allegations contained in Paragraph 79.

80.     Dr. Guerra denies the allegation contained in Paragraph 80.

81.     Dr. Guerra denies the allegations contained in Paragraph 81.

82.     Dr. Guerra denies the allegations contained in Paragraph 82.

### XI.    COMPUTER FRAUD AND ABUSE ACT – CONSPIRACY TO COMMIT RECKLESS DAMAGE TO A PROTECTED COMPUTER
### 18 U.S.C. 1030(a)(5)(B) & 1030(b)

83.     Dr. Guerra cannot admit or deny the allegation contained in Paragraph 83 of the Amended Complaint as it is not an allegation.  To the extent any portion is an allegation, it is denied.

84.     Dr. Guerra denies the allegations contained in Paragraph 84.

85.     Dr. Guerra denies the allegations contained in Paragraph 85.

86.     Dr. Guerra denies the allegations contained in Paragraph 86.

87.     Dr. Guerra denies the allegations contained in Paragraph 87.

### XII.    COMPUTER FRAUD AND ABUSE ACT – CONSPIRACY TO COMMIT UNAUTHORIZED ACCESS TO A PROTECTED COMPUTER CAUSING DAMAGE AND LOSS
### 18 U.S.C. 1030(a)(5)(C) & 1030(b)

88.     Dr. Guerra cannot admit or deny the allegation contained in Paragraph 88 of the Amended Complaint as it is not an allegation.  To the extent any portion is an allegation, it is denied.

89.     Dr. Guerra denies the allegations contained in Paragraph 89.

90.     Dr. Guerra denies the allegations contained in Paragraph 90.

91.     Dr. Guerra denies the allegations contained in Paragraph 91.

92.     Dr. Guerra denies the allegations contained in Paragraph 92.

### XIII.   KNOWINGLY ACCESSING WITHOUT EFFECTIVE CONSENT, A COMPUTER, COMPUTER NETWORK, OR COMPUTER SYSTEM
### Tex. Civ. Prac. & Rem. Code § 143.001 & Tex. Penal Code § 33.02(a)

93.     Dr. Guerra cannot admit or deny the allegation contained in Paragraph 93 of the Amended Complaint as it is not an allegation.  To the extent any portion is an allegation, it is denied.

94.     Dr. Guerra denies the allegations contained in Paragraph 94.

95.     Dr. Guerra denies the allegations contained in Paragraph 95.

96.     Dr. Guerra denies the allegations contained in Paragraph 96.

97.     Dr. Guerra denies the allegations contained in Paragraph 97.

### XIV.   KNOWINGLY ACCESSING A COMPUTER, COMPUTER NETWORK, OR COMPUTER SYSTEM WITH THE INTENT TO DEFRAUD, OR HARM ANOTHER OR ALTER, DAMAGE, OR DELETE PROPERTY WITHOUT EFFECTIVE CONSENT
### Tex. Civ. Prac. & Rem. Code § 143.001 & Tex. Penal Code § 33.02(b-1) (1)

98.     Dr. Guerra cannot admit or deny the allegation contained in Paragraph 98 of the Amended Complaint as it is not an allegation.

99.     Dr. Guerra denies the allegations contained in Paragraph 99.

100.    Dr. Guerra denies the allegations contained in Paragraph 100.

101.    Dr. Guerra denies the allegations contained in Paragraph 101.

102.    Dr. Guerra denies the allegations contained in Paragraph 102.

103.    Dr. Guerra denies the allegations contained in Paragraph 103.

## XV.    ELECTRONIC ACCESS INTERFERENCE
### Tex. Civ. Prac. & Rem. Code § 143.001 & Tex. Penal Code § 33.022

104.    Dr. Guerra cannot admit or deny the allegation contained in Paragraph 104 of the Amended Complaint because it is not an allegation.  To the extent any portion is an allegation, it is denied.

105.    Dr. Guerra denies the allegations contained in Paragraph 105.

106.    Dr. Guerra denies the allegations contained in Paragraph 106.

107.    Dr. Guerra denies the allegations contained in Paragraph 107.

108.    Dr. Guerra denies the allegations contained in Paragraph 108.

## XVI.   INTENTIONAL INTERCEPTION, OR ENDEAVOURING TO USE ANY ELECTRONIC WIRE, ORAL OR ELECTRONIC COMMUNICATIONS
### 18 U.S.C. §§ 2510 *et. seq.*

109.    Dr. Guerra cannot admit or deny the allegation contained in Paragraph 109 of the Amended Complaint because it is not an allegation.  To the extent any portion is an allegation, it is denied.

110.    Dr. Guerra admits the allegations contained in Paragraph 110.

111.    Dr. Guerra denies the allegations contained in Paragraph 111.

## XVII.  MALICIOUS PROSECUTION

112.    Dr. Guerra cannot admit or deny the allegation contained in Paragraph 112 of the Amended Complaint because it is not an allegation.  To the extent any portion is an allegation, it is denied.

113.    Dr. Guerra partially admits the allegation in Paragraph 113 that DFC did tell her that to continue to "Phase II" a police report was required and that Dr. Guerra did file a police report against Melody.  Dr. Guerra denies all other allegations contained in Paragraph 113, including that the police report which was filed against Melody was false.

114.    Dr. Guerra denies the allegation contained in Paragraph 114 that the police report she filed against Melody was false.  Dr. Guerra can neither admit nor deny the allegation in Paragraph 114 that the police report led to Melody's arrest.  Discovery will be conducted.  Subject thereto, deny.

115.    Dr. Guerra can neither admit nor deny the allegations contained in Paragraph 115. Discovery will be conducted.  Subject thereto, deny.

116.    Dr. Guerra denies the allegation contained in Paragraph 116.

117.    Dr. Guerra can neither admit nor deny the allegations contained in Paragraph 117. Discovery will be conducted.  Subject thereto, deny.

118.    Dr. Guerra denies the allegations contained in Paragraph 118.

119.    Dr. Guerra denies the allegations contained in Paragraph 119.

120.    Dr. Guerra denies the allegations contained in Paragraph 120.

121.    Dr. Guerra denies the allegations contained in Paragraph 121.

## XVIII. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

122.    Dr. Guerra denies the allegations contained in Paragraph 122.

123.    Dr. Guerra denies the allegations contained in Paragraph 123.

124.    Dr. Guerra denies the allegations contained in Paragraph 124.

## XIX.   AFFIRMATIVE DEFENSES

125.    Dr. Guerra is not liable to plaintiffs for any of their claims under the Computer Fraud & Abuse Act (causes of action 1-8) because the statute of limitations bars the plaintiffs' claims. The statute of limitations for this cause of action is two (2) years.

126.    Dr. Guerra is not liable to plaintiffs for any of their claims under the Computer Fraud & Abuse Act (causes of action 1-8) because the statute's damage threshold bars the

plaintiffs' claims. The damage threshold is $5,000.00 and the plaintiffs cannot prove that they suffered damages, as defined by the statute, of or in excess of $5,000.00.

127.    Dr. Guerra is not liable to plaintiffs for any of their claims under Texas Civil Practice & Remedies Code § 143.001 (causes of action 9-11) because the statute of limitations bars the plaintiffs' claims. The statute of limitations for this cause of action is two (2) years.

128.    DFC Dr. Guerra is not liable to plaintiffs for their claim under 18 U.S.C. §§ 2510 et. seq. (cause of action 12) because the statute of limitations bars the plaintiffs' claim. The statute of limitations for this cause of action is two (2) years.

129.    DFC Dr. Guerra is not liable to plaintiffs for their claim of malicious prosecution (cause of action 13) because the statute of limitations bars the plaintiffs' claim. The statute of limitations for this cause of action is one (1) year.

130.    Dr. Guerra is not liable to plaintiffs for their claim intentional infliction of emotional distress (cause of action 14) because the statute of limitations bars the plaintiffs' claim. The statute of limitations for this cause of action is two (2) years.

131.    Dr. Guerra pleads the affirmative defense of illegality.

132.    Dr. Guerra pleads the affirmative defense of laches.

133.    Dr. Guerra pleads the affirmative defense of unclean hands.

134.    Dr. Guerra pleads the affirmative defense that Plaintiffs' own acts and omissions caused and contributed to plaintiffs'' alleged damages, if any.

## DR. SANDRA GUERRA'S FIRST AMENDED COUNTERCLAIM

### I.        INTRODUCTION

1.        This is an action for violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(c); the Harmful Access by Computer Act, Tex. Pen. Code § 33.02(a); and the Texas

torts of stalking, defamation, intentional infliction of emotional distress, and abuse of process.

2.     Plaintiffs and Counter-Defendants Dr. Rodrigo Cantu and Melody Joy Cantu intentionally and knowingly accessed Dr. Guerra's computer, computer network, or computer system without Dr. Guerra's effective consent by attempting to hack into her Verizon online account and Verizon voicemail.  Furthermore, the Cantus hacked into Dr. Guerra's email from an iPad purchased by Dr. Guerra that she allowed her daughter to use but was made believe to be was later lost.  Melody also created fake accounts in Dr. Guerra's name for dating websites for person with HIV and other sexually transmitted diseases, the creation of which led to a plethora of unwanted emails being sent to Dr. Guerra from unknown suitors in this regard.   As a result of these unlawful acts, Dr. Guerra believed it necessary to hire Co-Defendant Digital Forensics Corporation, LLC ("DFC") to investigate on her behalf.

3.     Additionally, Melody Cantu verbally abused Dr. Guerra and her daughters to the point Dr. Guerra felt compelled to file a police report and a subsequent complaint with Child Protective Services.  Dr. Guerra and her daughters also began counseling as a result of the collective incidents.

4.     Defendants' collective acts against Dr. Guerra have not only been harassing and wholly unwarranted but have also had a detrimental effect on her reputation.  These acts have resulted in emotional, reputational, and monetary harm, including, but not limited to, costs and expenses of counseling, lost wages, hiring security, retaining DFC, and obtaining legal counsel. Thus, she seeks compensatory, consequential, and punitive damages.

## II.     THE PARTIES

5.     Defendant/Counter-Plaintiff, Dr. Sandra Guerra ("Dr. Guerra") is an individual residing in San Antonio, Bexar County, Texas.

6.      Plaintiff/Counter-Defendants Melody Joy Cantu ("Melody") and Dr. Rodrigo Cantu ("Dr. Cantu") (collectively "Plaintiffs" or "Counter-Defendants") are individuals residing in Boerne, Texas and are already parties to this lawsuit.

## III.     JURISDICTION & VENUE

7.      This Court has subject matter jurisdiction over the Computer Fraud and Abuse Act ("CFAA") claims under 28 U.S.C. §§ 1331 and 1332, as the claims present issues of federal question under the CFAA, 18 U.S.C. §§ 1030(a)(2)(C) (prohibiting unauthorized access to a computer), 1030(a)(5)(A)-(C) (prohibiting unauthorized damage to a computer), 1030(g) (creating civil cause of action), 1030(c)(4)(A)(i)(I) (creating civil jurisdiction predicate for CFAA losses aggregating $5,000 or more), and 1030(e) (defining "loss," "damage," and other key terms). As alleged below, the actions complained of resulted in CFAA loss of more than $5,000, all within the last two years from the date of the original Complaint.

8.      For the Texas State Law claims, this Court has supplemental jurisdiction under 28 U.S.C. § 1367.  Tex. Civ. Prac. & Rem. Code § 143.001 provides for a civil cause of action for violations of the Texas Harmful Access by Computer Act ("HACA"), Texas Penal Code § 33.02(b-1)(1).  Texas courts recognize the torts of harassment, defamation, and abuse of process.

9.      The Court has personal jurisdiction over the Defendants because Dr. Cantu and Melody Joy Cantu reside in the jurisdiction.

10.     Venue is proper in the Western Division of Texas under 28 U.S.C. §§ 1391(b) because the Defendants reside in this judicial district and the events complained of substantially occurred in this District.

## IV.     TEXAS SAVINGS STATUTE: TCPRC § 16.069

11.     If a counterclaim or cross claim arises out of the same transaction or occurrence

that is the basis of an action, a party to the action may file the counterclaim or cross claim even though as a separate action it would be barred by limitation on the date the party's answer is required. This counterclaim was filed not later than the 30th day after the date on which the Dr. Guerra's answer is required. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.069.

## V. FACTS

12. In 2009, after ten years of marriage, Dr. Guerra and Dr. Cantu divorced and managed to maintain an amicable relationship for approximately an additional ten years while co-parenting their two daughters.

13. In 2014, Dr. Cantu married his second wife, Melody Joy Cantu ("Melody").

14. In 2015, when Dr. Guerra and Dr. Cantu's daughters were approximately twelve (12) and fourteen (14) years old, Melody verbally abused the children on multiple occasions. Unfortunately, Dr. Cantu did not take any action to protect or defend the children from Melody's outbursts. Dr. Cantu later apologized to his daughters and committed to divorce Melody and keep her away from his children if Dr. Guerra agreed not to make a report to Child Protective Services ("CPS").

15. Upon information and belief, the Dr. Cantu and Melody's divorce was finalized in 2016.

16. On or about April 1, 2018, Melody accosted Dr. Cantu, Dr. Guerra, her now-husband, David Bellinger, and her minor daughters at night in a dark restaurant parking lot after the family had finished eating dinner together. Melody was disheveled and crying. She kept her hands in her pockets standing strangely nervous and yelling which caused Dr. Guerra to fear that Melody intended to cause her and/or her daughter bodily harm. Melody proceeded to yell insults at Dr. Guerra and shout angrily, describing a then-secret relationship between her and Dr. Cantu.

Dr. Cantu did nothing to protect his daughters or calm Melody. In an effort to escape from the dangerous and explosive situation caused by Melody, Dr. Guerra and her daughters ran to their vehicle for safety as they were chased by Melody who pursed them closely from behind while continuing to yell and behave hysterically, which further caused Dr. Guerra to fear that Melody intended to cause her and/or her daughters imminent bodily harm. Melody's behavior and state of hysteria were so severe that Dr. Guerra and her daughters were unable to go to their home as they reasonably feared that Melody would follow them and attempt to physically harm them. Melody's actions were so threatening and disturbing that even Dr. Cantu feared for his life. Dr. Cantu called his parents to help protect him from Melody and they met him at a hotel that night where he kept a gun for self-defense.

17. Later that night, Melody began relentlessly harassing Dr. Guerra via social media, sending her many threatening messages and photos via text and through Facebook's messenger feature around 2:00–3:00 a.m. following her ambush of Dr. Guerra and her daughters in the restaurant parking lot. Melody specifically threatened to post intimate pictures of Dr. Guerra and Dr. Cantu. Melody also contacted Dr. Cantu's parents (Dr. Guerra's former in-laws) by sending them approximately sixty-four (64) text messages and placed approximately eighty (80) phone calls to Dr. Cantu. Although not romantically involved, at this time, Dr. Guerra and Dr. Cantu were on good terms and were making a concerted effort to co-parent their children.

18. On April 2, 2018, Dr. Guerra and Dr. Cantu met at the Bexar County Courthouse Annex to file a restraining order against Melody. Dr. Guerra was informed that she was unable to obtain a restraining order against Melody because she had not had a sexual relationship with Melody. Dr. Cantu proceeded to request a restraining order against Melody which was timely issued.

19.     Dr. Guerra and Dr. Cantu also went to the San Antonio police station where Dr. Cantu filed a police report against Melody for harassment.  Dr. Cantu reported to SAPD Officer Ducatt, among other things, Melody had been sending messages to Dr. Cantu threatening to send intimate photos of Dr. Guerra and Dr. Cantu from when they were married.  Officer Ducatt included in his report that Dr. Guerra reported to him that Melody sent her messages via text and Facebook threatening to post pictures of Dr. Guerra and Dr. Cantu.  Dr. Cantu told the Officer Ducatt that Melody had repeatedly sent electronic communications to him in a manner to harass and embarrass him.

20.     Following the incident at the restaurant, Dr. Cantu stayed with his father for the next six (6) weeks to help him feel safe from Melody.  Dr. Guerra and her daughters began counseling as a result of the incident, which Dr. Cantu supported, at the time.

21.     In May of 2018, Dr. Guerra began to receive notices from Verizon Wireless that someone was attempting to access her account online.  These attempts to gain unauthorized access to her Verizon account continued for several weeks until Dr. Guerra was forced to shut down all online access for that account.  During this time, someone also attempted to hack into Dr. Guerra's Verizon voicemail.  Upon information and belief, these attempts to hack and gain unauthorized access were committed by Melody and/or Dr. Cantu.

22.     Melody also intentionally engaged in other forms of cruelty and aggression against Dr. Guerra with the intent to carry out a course of revenge and inflict harm against Dr. Guerra. Melody contacted Dr. Guerra's then-boyfriend's ex-wife and told her Dr. Guerra stole money and was suspected to have sexually transmitted diseases.  These were complete fabrications by Melody and were intended to cause Dr. Guerra embarrassment and harm to her reputation.

23.     Melody contacted Dr. Guerra's professional colleagues via social media and

telephone calls in an effort to disparage her.  In May of 2018, Dr. Guerra received a phone call from Humana's human resources department stating that an anonymous complaint had been filed against her claiming she was posting proprietary information on social media.  This complaint was entirely falsified.  Upon information and belief, Melody also called Humana's human resources department pretending to be an employee of Dr. Guerra's and falsely claiming that Dr. Guerra was retaliating against her for dating Dr. Cantu.  As a result of this false report, an investigation was opened by Humana's human resources which included interviews of Dr. Guerra's staff until Humana was able to learn that Melody never worked for Dr. Guerra.

24.     There was also a subsequent complaint to Humana that Dr. Guerra was participating in human trafficking.  This complaint was wholly false, and the Cantus previously publicly and falsely accused Dr. Guerra of grooming Melody's daughter for human trafficking.

25.     Several weeks after the incident at the restaurant, Dr. Guerra learned through Dr. Cantu's mother that Dr. Cantu and Melody reconciled.  At this time, Dr. Guerra began to suspect that the attempted hacks into her accounts and the false complaint to Humana were perpetrated by Melody.

26.     Upon their reconciliation, Melody and Dr. Cantu initiated legal action against Dr. Guerra in state court, contacted Dr. Guerra's workplace in a harassing manner, and continued to harass Dr. Guerra online.  Dr. Guerra began receiving angry and harassing messages from Dr. Cantu insisting that Dr. Guerra accept his relationship with Melody.

27.     Shortly after these events, near or around the end of May or beginning of June 2018, Dr. Guerra received "terms and conditions" emails from dating websites designed for persons who have HIV and other sexually transmitted diseases that she had been signed up for without her consent.  Dr. Guerra began to receive inappropriate messages from strangers to her email as a

result of these fake accounts set up in her name and with her email. Dr. Guerra attempted to have the profiles shut down but did not have the passwords to the accounts. Dr. Guerra was able to speak with the owners of the various website who shared the IP address that was used to create the profiles. Dr. Guerra cross-checked this information with Verizon who told her this same IP address was used to attempt to access her accounts and that the IP address was located somewhere in San Antonio, Texas. Dr. Guerra later learned the IP address was Melody's.

28. Additionally, at this time, the family law case between Dr. Guerra and Dr. Cantu regarding their children began to intensify. Dr. Cantu responded to written discovery in the family law case wherein he admitted to accessing Dr. Guerra's personal email via an iPad bought by Dr. Guerra that she allowed her daughter to use with Dr. Guerra's Apple ID. The iPad in question was knowingly and falsely reported to Dr. Guerra as being "lost."

29. Dr. Guerra's attorney, on behalf of Dr. Guerra, sent a cease and desist letter to Counter-Defendants demanding that they stop making false statements and engaging in unlawful conduct against Dr. Guerra and that they remove/correct false statements and allegations made and posted about Dr. Guerra. Nevertheless, Counter-Defendants failed and/or refused to do so.

30. The above described events precipitated the hiring of Digital Forensics Corporation ("DFC") by Dr. Guerra.

31. As described in DFC's "Phase I" report reference in Plaintiffs' Amended Complaint, DFC sent a link from an unknown phone number to Melody which she chose to click. This link allowed DFC to access Melody's IP address and confirm that her IP address matched the IP address from which the fake social media accounts were created and from which the attempted hacking into Dr. Guerra's Verizon account occurred. Dr. Guerra did not authorize and is not aware of any other surveillance on Dr. Cantu or Melody.

32.     DFC also found Melody waged a harassment effort against Dr. Guerra via social media, where Dr. Guerra received numerous unsolicited messages disparaging her character.  As a result of DFC's findings, Dr. Guerra filed a police report and charges were brought against Melody.  Dr. Guerra later learned when she was contacted by SAPD that Melody had filed a false police report against Dr. Guerra claiming that the CPS report Dr. Guerra filed on or about May 29, 2018 was a "false" report and federal crime.  As a result of the false police report filed by Melody, Dr. Guerra was forced to hire criminal counsel and was interviewed by SAPD.  She was advised by the detective that they didn't see any reason to proceed with criminal charges but was later advised by the same detective that the District Attorney was requesting the case be forwarded to his office because Melody was calling them multiple times a day.  Despite Melody's sustained efforts to force prosecution of her false claims, no criminal charges were ever filed against Dr. Guerra and the case was closed.

## VI.     COUNT ONE –UNAUTHORIZED ACCESS TO A PROTECTED COMPUTER, NETWORK, OR COMPUTER SYSTEM IN VIOLATION OF CFAA, 18 U.S.C. § 1030(a)(2)(c)

33.     Counter-Plaintiff Dr. Guerra incorporates the above paragraphs by reference as though fully set forth herein.

34.     Dr. Guerra's iPad computer is used in interstate commerce and comprises a "protected computer" as that term is used in 18 U.S.C. § 1030(e)(2)(B).

35.     Dr. Guerra maintained and secured her iPad by reasonable means, and never authorized the Cantus to access it.  The iPad was purchased and owned by Dr. Guerra, but she permitted her daughter to use it.  Counter-Defendants' accessed the subject iPad and Dr. Guerra's personal communications and account information thereon by deception under false pretenses and

for the nefarious purpose of accessing Dr. Guerra's personal and private accounts, information, and documents without permission for the purposes of harassment, which Counter-Defendants carried out. Dr. Guerra submits that the iPad and the information thereon were not obtained by Dr. Cantu as a parent monitoring his minor child's electronic communications, as Counter-Defendants suggest to this honorable Court, but rather it was done in his capacity as an ex-spouse in connection with his and Melody's bitterly motivated attacks upon Dr. Guerra. Dr. Guerra had been made to believe that the iPad had been "lost" during the time that Dr. Guerra and/or Melody were accessing the iPad, which eviscerates any plausible argument by Counter-Defendants that they were merely monitoring Dr. Guerra and Dr. Cantu's daughter's activity online and instead establishes that Counter-Defendants were concealing the iPad from Dr. Guerra and her daughter while continuing to access the content on the device.

36.     The Cantus intentionally, and for illegitimate and unlawful purposes, accessed Dr. Guerra's protected computer without authorization and thereby obtained information. This unauthorized access includes knowingly accessing the iPad purchased and owned by Dr. Guerra, operating under Dr. Guerra's Apple ID and using it to access personal and private accounts, information, and documents owned by Dr. Guerra without permission. This includes, but is not necessarily limited to, her email accounts, accounts with her cellular phone provider, and photographs. This was all done under the guise that the iPad was allegedly lost.

37.     As a result of the Cantus' unlawful conduct, Dr. Guerra suffered loss in expending time, money, and resources reasonably related to the computer intrusion in the aggregate of at least $5,000.00 in value, which includes costs incurred by Dr. Guerra to engage DFC, investigate the intrusion of the iPad and other computers potentially intruded upon, assess the damage, and attempt to restore security to her various intruded-upon systems, as well as time Dr. Guerra had to

take off from work to address and resolve these matters.

## VII.    COUNT TWO – HACA UNAUTHORIZED ACCESS TO A COMPUTER,

### COMPUTER NETWORK, OR COMPUTER SYSTEM,

### Tex. Penal Code § 33.02(a) & Tex. Civ. Prac. & Rem. Code § 143.001

38.    Counter-Plaintiff incorporates the above paragraphs by reference as though fully set forth herein.

39.    Counter-Defendants violated Section 33.02(a) of the Texas Penal Code—the Harmful Access by Computer Act ("HACA")—by intentionally or knowingly accessing Dr. Guerra's computer, computer network, or computer system, as stated above, without Dr. Guerra's effective consent.

40.     This intentional or knowing violation gives rise to a civil cause of action under Texas Civil Practice & Remedies Code Section 143.001.

41.    As a result of the Cantus' unlawful conduct, Dr. Guerra suffered loss in expending time, money, and resources reasonably related to the computer intrusion in the aggregate of at least $5,000.00 in value, which includes costs incurred by Dr. Guerra to engage DFC, investigate the intrusion of the iPad and other computers potentially intruded upon, assess the damage, and attempt to restore security to her various intruded-upon systems, as well as time Dr. Guerra had to take off from work to address and resolve these matters.

## VIII.   COUNT THREE – STALKING AND HARRASSING BEHAVIOR,

### Tex. Civ. Prac. & Rem. Code § 85.001 et. seq.

42.    Counter-Plaintiff incorporates the above paragraphs by reference as though fully set forth herein.

43.    In violation of Tex. Civ. Prac. & Rem. Code § 85.001 et. seq., Melody Joy Cantu

repeatedly sent electronic communications in a manner reasonably likely to—and, in fact, with the intent to—harass, annoy, alarm, abuse, torment, embarrass, or offend Dr. Guerra. In addition to harassing communications to Dr. Guerra directly, Melody repeatedly engaged in harassing behavior and called and messaged Dr. Guerra's former in-laws and professional colleagues in an intrusive and disparaging manner.

44.     As a result of Melody's deliberate campaign of stalking and harassment, Dr. Guerra reasonably feared for her safety or the safety of a member of her family due to threats of bodily injury and had to hire security for her wedding and has felt compelled to sacrifice larger business opportunities in order to feel safe and insulated from the stalking and harassment. Melody had the apparent ability to carry out such threats as evidenced by her ambush of Dr. Guerra in a public parking lot and Dr. Cantu's demonstrated heightened level fear that compelled him to call his parents for help and to keep a gun with him as protection against Melody. Dr. Guerra made repeated prior demands that Melody stop engaging in such harassing behavior but Melody nonetheless continued undeterred. Both Dr. Guerra *and* Dr. Cantu reported Melody's harassing and stalking behavior to the police.

45.     Counter-Defendant Melody Cantu's stalking and harassing behavior is the proximate cause of actual and exemplary damages.

## IX.     COUNT FOUR – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

46.     Counter-Plaintiff incorporates the above paragraphs by reference as though fully set forth herein.

47.     Dr. Cantu and Melody Cantu acted intentionally or recklessly by impersonating Dr. Guerra for the purposes of creating false online profiles for dating websites for persons with HIV and other sexually transmitted disease websites, concealing her iPad and using it to attempt to hack

into her email and Verizon accounts, publicly and falsely accusing Dr. Guerra of participating in human trafficking and grooming minors for human trafficking, spreading falsehoods about Dr. Guerra to Dr. Guerra's former employer, professional colleagues and in-laws, filing a false police report against Dr. Guerra, verbally harassing Dr. Guerra and her daughters and engaging in conduct causing severe psychological harm which manifested in physical pain and suffering.

48.     Melody, by her repeated and unrelenting actions against Dr. Guerra, intended to inflict emotional distress, or knew or should have known that emotional distress was a likely result of her actions, and such conduct was extreme and outrageous.

49.     The Cantus' conduct proximately caused severe emotional distress and anxiety to Dr. Guerra by the resulting damage to her reputation, custody arrangement of her daughters, and the once-amicable relationship with her ex-husband.  As a result of the above-mentioned incidents and circumstances, Dr. Guerra developed and was diagnosed with Post Traumatic Stress Disorder (PTSD).  Dr. Guerra now experiences heightened suspicion and fear, particularly in regard to being watched or targeted.  Dr. Guerra has experienced heartbreak, tears, sleepless nights, increased illness and vomiting as a result of the related and traumatic events, inability to perform professionally, and damaged reputation.

50.     Dr. Guerra's severe emotional distress cannot be remedied by any other cause of action.

51.     Counter-Defendant Melody Cantu's tortious behavior is the proximate cause of actual and exemplary damages.

### COUNT FIVE – DEFAMATION

52.     Counter-Plaintiff Dr. Guerra incorporates the above paragraphs by reference as though fully set forth herein.

53.     The statements and representations made and published by Melody Joy Cantu to Dr. Guerra's former employer, colleagues, friends, and family were false and were recklessly and maliciously made, including, without limitation, that Dr. Guerra contracted a sexually transmitted disease and engaged in human trafficking and groomed minors for human trafficking.  Melody Cantu had no right, privilege or justification to make the statements.

54.     The statements were defaming to Dr. Guerra in the conduct of her personal life and business and were concerning to her.  Despite written demand from Dr. Guerra's attorney to cease and desist from making false statements and to correct such statement, Melody refused and/or failed to do so.  Melody Cantu acted with actual malice and/or with negligence regarding the truth of her statements.  Furthermore, the statements and representations were so egregious and obviously hurtful as to constitute libel and slander *per se.*

55.     Dr. Guerra has been materially damaged as a direct and proximate result of the defaming statements and representations made by Melody Cantu.  Specifically, after the two complaints were made to Humana by the Cantus, Dr. Guerra was fired in February of 2020.

56.     Counter-Defendant Melody Cantu's tortious behavior is the proximate cause of actual and exemplary damages.

## X.     COUNT SIX – ABUSE OF PROCESS

57.     Counter-Plaintiff Dr. Guerra incorporates the above paragraphs by reference as though fully set forth herein.

58.     Dr. Cantu and Melody Joy Cantu filed this lawsuit against Dr. Guerra without any probable cause for the suit.  The lawsuit was filed with the ulterior motive of inflicting damage to Dr. Guerra, her reputation, and her career and is just another form of aggression utilized by Counter-Defendants as part of their sustained campaign of harassment against Dr. Guerra.  As with

Counter-Defendants' prior unlawful actions, this lawsuit is predicated on Counter-Defendants' attempt to create a power imbalance for the purposes of personal retaliation and revenge against Dr. Guerra and is otherwise a domestic/family dispute that Counter-Defendants are attempting to play out in a public forum under the auspice of a "proper" use of process for the illegitimate purpose of causing embarrassment and harm to Dr. Guerra and her family.

59.     Dr. Guerra has been materially damaged as a direct and proximate result of Counter-Defendants' improper use of process.

## XI.     ATTORNEYS' FEES

60.     As a result of this lawsuit initiated by Counter-Defendants, Dr. Guerra has been required to  retain the law firm of Davis, Cedillo & Mendoza, Inc. to defend and prosecute her counterclaims in this action and has agreed to pay the law firm reasonable and necessary attorney's fees.  Accordingly, an award of reasonable and necessary attorney's fees, costs and expenses to Dr. Guerra would be equitable and just, and Dr. Guerra is entitled to recover such reasonable and necessary attorney's fees, costs and expenses under applicable law.

## XII.     PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant, DR. SANDRA GUERRA, prays that Plaintiffs take nothing by this suit against Dr. Sandra Guerra, and the Court grant Defendant, Dr. Sandra Guerra, all such other and further relief, including actual, economic, and consequential damages, including reasonable and necessary attorneys' fees, both general and special, at law or in equity, to which she may justly be entitled.

Dated: November 27, 2020.

Respectfully submitted,

**DAVIS, CEDILLO & MENDOZA, INC.**

McCombs Plaza, Suite 500
755 E. Mulberry Avenue
San Antonio, Texas 78212
Telephone No.: (210) 822-6666
Telecopier No.: (210) 822-1151

By:     /s/Ricardo G. Cedillo
  RICARDO G. CEDILLO
  Texas State Bar No. 04043600
  rcedillo@lawdcm.com
  LESLIE J. STRIEBER, III.
  Texas State Bar No. 19398000
  lstrieber@lawdcm.com
  BRANDY C. PEERY
  Texas State Bar No. 24057666
  bpeery@lawdcm.com
  COURTNEY R. GAINES
  State Bar No. 24098273
  cgaines@lawdcm.com

ATTORNEYS FOR DEFENDANT, DR. SANDRA
GUERRA

**CERTIFICATE OF SERVICE**

I certify that on this 27th day of November 2020, a true and correct copy of the foregoing
was electronically filed with the Clerk of the Court using the CM/ECF system which will send
electronic notification of such filing to the parties on record.

    /s/Ricardo G. Cedillo
  RICARDO G. CEDILLO

Incident Number:        CI-2018-11-00120
Class/Category:         Misuse & Misappropriation of Assets/Physical Theft
Status:    Closed       Investigation Start Date:        11/15/2018

USAA

9800 Fredericksburg Rd

San Antonio, Texas   United States
78288

# Investigation Report

Incident Number: CI-2018-11-00120
Incident Title: Cantu - Breach
Investigation Start Date: 11/15/2018 12:00 AM
Class\Category: Misuse & Misappropriation of
Assets\Physical Theft
Status: Closed



5 of 10

| Incident Number: | CI-2018-11-00120 |
| --- | --- |
| Class/Category: | Misuse & Misappropriation of Assets/Physical Theft |
| Status:   Closed | Investigation Start Date:   11/15/2018 |

# Incident Details

## Incident Details

| Incident Number: | CI-2018-11-00120 |
| --- | --- |
| Incident Title: | Cantu - Breach |

| Reported Date/Time: | 11/15/2018 11:14 AM |
| --- | --- |
| Occurred From Date/Time: | 11/15/2018 11:14 AM |

### Classification

| Class: | Misuse & Misappropriation of Assets |
| --- | --- |
| Category: | Physical Theft |
| Subcategory: | USAA Property |

### Business Unit

| CoSA: | COO |
| --- | --- |

### Physical Location

| Site: | Off Campus |
| --- | --- |
| Building: | Work From Home |

## Supplemental Details

| Reported to Police: | No |
| --- | --- |
| Officer Segregation: | No |
| Litigation Hold?: | No |

| Reporting Dept: | Employee |
| --- | --- |

6 of 10

6596.001 - United Services Automobile Association

000002

| Incident Number: | CI-2018-11-00120 |
|---|---|
| Class/Category: | Misuse & Misappropriation of Assets/Physical Theft |
| Status:   Closed | Investigation Start Date:   11/15/2018 |

# Incident Involvement Section

## Linked Person

| Persons | Involvement Type |
|---|---|
| Cantu, Melody | Victim |
| Guerra-Delgado, Sandra | Subject |
| Malloy, Victor | Reported By |

# Losses Section

## Incident Loss Summary ($ = USD)

| Incident Losses | |
|---|---|
| USAA Property | $0.00 |
| Total Loss | $0.00 |

| Incident Recoveries | |
|---|---|
| Total Recovered | |

| Net Loss | |
|---|---|
| Net Loss | $0.00 |

| Incident No Impact | |
|---|---|
| Total No Impact | |

# Investigations

7 of 10

000003

| | |
|---|---|
| **Incident Number:** | CI-2018-11-00120 |
| Class/Category: | Misuse & Misappropriation of Assets/Physical Theft |
| Status:    Closed | Investigation Start Date:      11/15/2018 |

## Investigation Details

| | |
|---|---|
| **Investigation Start Date:** | **11/15/2018** |
| Investigation Last Review Date: | |
| Investigation Close Date: | 11/16/2018 |
| Investigation Duration: | 1 Day |
| Investigation Comments: | |

## Investigators

| | | |
|---|---|---|
| **DAVIS, George** | Investigator Type: | *Lead Investigator* |
| Assigned Date: | 11/15/2018 12:00 AM | Completed Date: | 11/15/2018 12:00 AM |
| Comments: | | |

## Incident Investigation Summaries

*8 of 10*

| | | |
|---|---|---|
| | Incident Number: | CI-2018-11-00120 |
| | Class/Category: | Misuse & Misappropriation of Assets/Physical Theft |
| | Status:   Closed | Investigation Start Date:   11/15/2018 |

| | | | |
|---|---|---|---|
| Author: | DAVIS, George | Summary Type: | *Investigation Summary* |

| | | | |
|---|---|---|---|
| Created By Date/Time: | 11/15/2018 12:18 PM | Sealed: | No |

Summary:

Initial Allegation

On 11/15/18  Corporate Investigations (CI) initiated an investigation based on information received from Buyer Melody Cantu #D9221 that her husband's ex-wife, Sandra Guerra, member #27035374 may have hacked her business computer and breached her VPN, firewall and router. She believes this may have occurred on or about 10/10/18. Cantu has turned in her computer equipment to USAA on 11/15/18 and received new equipment.

Summary of Investigation

On 11/15/18, CI sent an IT request to review Cantu's business lines and equipment.

On 11/15/18, CI spoke with Spectrum cable representative that was on property at Cantu's residence. He advised that the cable splitter that was on Cantu's personal line appears to have been attached by Spectrum cable but he was not sure why it was done.  Cantu's dedicated business line did not appear to have been tampered with or compromised. Cantu further advised that SAPD cybersecurity unit was going to accept her case of computer hacking regarding her personal account.

On 11/16/18, IT's review of Cantu's equipment and data did not reveal any breach or corruption.

Conclusion

This investigation did not reveal any breach of USAA data at Cantu's residence.

| | | | |
|---|---|---|---|
| Owner Workgroup: | Access Level: | Local Print Date/Time: | 4 of 5 |
| CI | Level 1 | 9/13/2022 7:26 AM | |

9 of 10

6596.001 - United Services Automobile Association                                      000005

| | |
|---|---|
| Incident Number: | CI-2018-11-00120 |
| Class/Category: | Misuse & Misappropriation of Assets/Physical Theft |
| Status:    Closed | Investigation Start Date:    11/15/2018 |

## Incident Controls

### Incident Controls

*Org Rollup Name*

Not Used:

.:

.:

.:

| | |
|---|---|
| Access Level: | Level 4 |
| Status: | Closed |
| Disposition: | Closed - Unsubstantiated |
| Incident Closed Date: | 11/16/2018 |
| Locked: | No |
| Archive (record not visible): | No |

### Incident Visibility

| | | | | |
|---|---|---|---|---|
| Owner Workgroup: | CI | *Exceptions:* | Workgroup Name | Record Rights |
| All Workgroups: | None | | | |

### Investigation User Defined Fields

| | |
|---|---|
| Case Of Interest | False |
| DIR Number | |
| DIR Required | No |
| ECAMS Number | |
| Emp. Rel. Case Number | |
| Ethics Case Number | |
| Exec Protection Notification | False |
| Incident Threat Level | |
| SAR Comments | Does Not Meet SAR Requirements |
| SAR Required | No |
| Threat Info | |

 Perspective
by PPM 2000

Incident Record Created By pl25331. 11/15/2018 5:18 PM GMT

Last Modified By PLB1846. 9/13/2022 12:26 PM GMT

| Owner Workgroup: | Access Level: | Local Print Date/Time: | 5 of 5 |
|---|---|---|---|
| CI | Level 4 | 9/13/2022 7:26 AM | |

*16 of 16*

6596.001 - United Services Automobile Association                    000006