# EXHIBIT 5

```
 1            IN THE UNITED STATES DISTRICT COURT
               FOR THE WESTERN DISTRICT OF TEXAS
 2                    SAN ANTONIO DIVISION

 3   MELODY JOY CANTU and      )
     DR. RODRIGO CANTU,        )
 4                             )
           Plaintiffs,         )
 5                             )
     vs.                       ) NO. 5:20-CV-00746-JKP(HJB)
 6                             )
     DR. SANDRA GUERRA and     )
 7   DIGITAL FORENSICS         )
     CORPORATION, LLC,         )
 8                             )
           Defendants.         )
 9
     -----------------------------------------------------
10

11              ORAL VIDEOTAPED DEPOSITION

12              JEFFREY MICHAEL FISCHBACH

13                   JULY 26, 2022

14                 (Reported Remotely)

15   -----------------------------------------------------

16      ORAL VIDEOTAPED DEPOSITION OF JEFFREY MICHAEL

17   FISCHBACH, produced as a witness at the instance of the

18   Defendant, Dr. Sandra Guerra, and duly sworn, was taken

19   in the above-styled and numbered cause on the 26th day

20   of July, 2022, from 1:36 p.m. to 5:08 p.m., before Jean

21   Thomas Fraunhofer, Certified Shorthand Reporter in and

22   for the State of Texas, reported by computerized

23   stenotype machine in Los Angeles, California, pursuant

24   to the Federal Rules of Civil Procedure and the

25   provisions stated on the record or attached hereto.
```

```
 1      Q.   And are you telling the ladies and gentlemen of
 2   the jury that the opinions that you have formed, those
 3   are objective, unbiased opinions?
 4               MR. EKELAND:  Objection.
 5               You can answer.
 6      A.   That would certainly be my intent.
 7      Q.   And did you -- did you prepare an expert
 8   report?
 9      A.   I did not.
10               MR. EKELAND:  Objection.
11      Q.   I'm sorry, I didn't hear your -- I'll repeat
12   the question.  Did you prepare an expert report?
13               MR. EKELAND:  Objection.
14               You can answer.
15      A.   I did not.
16      Q.   Okay.  Let me -- give me a moment here, and I
17   can pull up the next exhibit.
18               (Exhibit 5 marked.)
19      Q.   I am showing you, Mr. Fischbach, what's been
20   marked as Exhibit No. 5.  And let me just scroll through
21   it kind of quickly so you can take a look at it.  It
22   appears that it -- it is all -- was included in the
23   documents that you provided this morning.  I believe
24   it's Fischbach 1 to 3, which is part of Exhibit 7.  Do
25   you recognize this document?
```



```
 1        A.   I do.
 2        Q.   Is it your testimony that this is not your
 3   expert report?
 4             MR. EKELAND:  Objection.
 5             You can answer.
 6        A.   That's correct.
 7        Q.   Okay.  Were you asked to prepare an expert
 8   report?
 9             MR. EKELAND:  Objection.  And that touches
10   on privileged communications, so I'm going to instruct
11   the witness not to answer.
12        Q.   Mr. Fischbach, you testified that you have
13   formed opinions in this case.  Have you reduced those
14   opinions down to writing?
15             MR. EKELAND:  Objection.
16             You can answer.
17        A.   No, I don't -- I don't believe I've ever
18   written anything.  I think it's all been telephonically.
19        Q.   And I -- I am going to point you to page 3.
20   Just a moment, please.
21             Are -- are you -- are you currently
22   preparing an expert report?
23             MR. EKELAND:  Objection.
24             You can answer.
25        A.   Currently, no.
```



```
 1              MR. EKELAND:  Objection.
 2              You can answer.
 3      A.   Yeah, I don't -- I don't think that would be
 4   within my purview no matter what, but I -- I don't have
 5   a specific opinion on who -- who specifically put it
 6   there for -- again, presuming that it was there.
 7      Q.   Did you inspect any computer or devices of
 8   Plaintiffs?
 9      A.   At this time, no.
10              MR. EKELAND:  Objection.
11              THE WITNESS:  Oh, sorry.
12              MR. EKELAND:  Objection.
13              You can answer.
14      Q.   Did you inspect any of Plaintiff -- I'll reask
15   it.
16              Did -- did you inspect any of Plaintiffs'
17   computers or devices?
18      A.   No, I have not.
19      Q.   Have you done any sort of forensic analysis or
20   investigation of any of Plaintiffs' systems?
21      A.   I have not.
22              MR. EKELAND:  Objection.
23      A.   I have not.
24      Q.   Do you intend to provide any testimony at trial
25   regarding social engineering?
```



```
 1                MR. EKELAND:  Objection.
 2                You can answer.
 3      A.    At this time, I don't -- I don't intend to
 4   provide any specific testimony at trial.
 5      Q.    Regarding social engineering or --
 6                MR. EKELAND:  Objection.
 7      Q.    -- or anything?
 8                MR. EKELAND:  Objection.
 9                You can answer.
10      A.    Regarding anything.  At this point, I'm -- I'm
11   still a consultant.
12      Q.    And -- and I just want to be clear.  You're --
13   you're providing consulting services to Plaintiffs?
14                MR. EKELAND:  Objection.
15                You can answer.
16      A.    Specifically to Mr. Ekeland, yes, with the
17   understanding that I may be asked to testify.
18      Q.    Okay.  Do you -- is it -- is it your expert
19   opinion as we sit here today that Dr. Guerra or DFC
20   hacked Melody Joy Cantu's servers, devices, systems?
21                MR. EKELAND:  Objection.
22                You can answer.
23      A.    At -- at this time, I don't have a specific
24   opinion one way or the other regarding that.
25      Q.    Okay.  Do you -- is it your expert opinion that
```



1  Dr. Cantu -- I mean, Dr. Guerra or DFC hacked any of
2  Dr. Rodrigo Cantu's devices or computers, home Internet
3  services, any kind of servers?
4              MR. EKELAND:  Objection.
5              You can answer.
6      A.   Again, reiterating the last answer, I don't --
7  at this time, I don't have a -- a specific answer to
8  that.
9      Q.   Is it your expert opinion that DFC or
10 Dr. Guerra obtained any of Dr. Cantu's or Melody Joy
11 Cantu's passwords or personal information through the
12 unauthorized access of their computers or devices or
13 servers?
14             MR. EKELAND:  Objection.
15             You can answer.
16     A.   Well, the answer might have been no until you
17 used a general term information.  It does appear from
18 what I have read, though not independently confirmed at
19 this time, but it does appear as though some
20 information, IP address in particular may have been
21 obtained under false pretenses.  But again, I don't, at
22 this time, have specific information as to who -- who
23 gathered that.
24     Q.   So it's your opinion as we sit here today that
25 some information may have been obtained through false



1        You can answer.

2        A.   Well, I would have to rereview -- I presume if
3   that's there, that would be in the -- in the Phase 1
4   report, but that's not something I specifically recall
5   gaining any sort of knowledge or inference from that
6   report of specific surveillance, at least not in -- not
7   as I understand the term.  I don't know that there was
8   anything that -- that indicated specifically that
9   someone was watching or monitoring or anything like
10  that.  That would require more information.

11            But had I been asked such a question,
12  certainly that -- the method of gaining an IP address,
13  and I believe I was asked this question, that the method
14  of gaining an IP address would certainly be useful for
15  that purpose of surveilling.

16       Q.   But -- but you don't have an opinion today as
17  we sit here that DFC or Dr. Guerra caused or -- I mean,
18  surveilled or caused to be surveilled Melody Joy Cantu?

19            MR. EKELAND:  Objection.

20            You can answer.

21       A.   Yeah, at -- at this moment, I don't believe
22  I've seen anything that specifically says that an
23  individual did such a thing, only that they -- that --
24  that the means to do so appear to have been achieved.

25       Q.   Is it your expert opinion that DFC or



1  Dr. Guerra surveilled Dr. Cantu?
2              MR. EKELAND:  Objection.
3              You can answer.
4     A.   Again, restating the last answer, I don't -- I
5  don't have specific evidence to that effect, only that
6  the means, the tools necessary to do so appear to have
7  been achieved by DFC.
8     Q.   And you -- you have been designated as
9  Plaintiffs' expert, so I -- I am asking you for your --
10 if you have an expert opinion, not just if you've seen
11 specific evidence.  Do you intend as we sit here today
12 to offer an opinion at trial that DFC or Dr. Guerra
13 surveilled Melody Joy Cantu or Dr. Cantu?
14             MR. EKELAND:  Objection.
15             You can answer.
16    A.   At this time, I don't have a specific opinion
17 as to whether those individuals did such a thing.  And
18 again only that -- that the means appear to have been
19 gathered to do that.
20             I would add to that.  At this point, while
21 I understand I've been designated for -- for trial
22 purposes, I don't know at this point that actual
23 testimony will be provided.  It's still dependent on any
24 additional discovery and -- and then possible rebuttal
25 for trial.

1    Q.   Is it your expert opinion that DFC or
2  Dr. Guerra surveilled any of Melody Joy Cantu's
3  children?
4              MR. EKELAND:  Objection.
5              You can answer.
6    A.   If I can make this shorter for you, same --
7  same answer as before.
8    Q.   Is it your expert opinion that DFC or
9  Dr. Guerra caused or contributed to any of Melody Joy
10 Cantu's children being groomed for human trafficking?
11             MR. EKELAND:  Objection.
12             You can answer.
13   A.   Well, no, I certainly have no opinion about
14 that.
15   Q.   Is your expert opinion that DFC or Dr. Guerra
16 caused or contributed to any of Melody Joy Cantu or
17 Dr. Cantu's passwords or other personal information
18 being posted on the dark web?
19             MR. EKELAND:  Objection.
20             You can answer.
21   A.   Similar -- similar to before.  Only that the
22 means to do so appear to have been achieved, but I have
23 no specific evidence to that effect.
24   Q.   You have no -- is it -- am I correct that you
25 have no specific evidence or opinion that Dr. Guerra or

```
 1   DFC specifically caused or contributed to any of

 2   Plaintiffs' personal information or passwords being

 3   posted on the dark web?

 4        A.   At this time, other --

 5             MR. EKELAND:  Objection.

 6             THE WITNESS:  Yes.

 7        A.   At this time, other than the means to do so,

 8   no, I have no -- no specific opinion.

 9        Q.   Is it your expert opinion that Dr. Guerra or

10   DFC caused Plaintiffs to experience Internet or

11   bandwidth issues at the home they resided in in 2018

12   or 2019?

13             MR. EKELAND:  Objection.

14             You can answer.

15        A.   Specifically no -- no opinion to that effect at

16   this time.  Again, only -- only if in fact there was

17   manipulation of the -- of the cable splitter.  That's --

18   that -- the -- the means would have been there for that

19   effect.  But again, I have no evidence to prove that

20   such a thing had in fact occurred at this time.

21        Q.   Is it your expert opinion that DFC or

22   Dr. Guerra caused Plaintiffs' Nest home security to

23   crash in 2018?

24             MR. EKELAND:  Objection.

25             You can answer.
```



```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE WESTERN DISTRICT OF TEXAS
 2                     SAN ANTONIO DIVISION

 3   MELODY JOY CANTU and        )
     DR. RODRIGO CANTU,          )
 4                               )
               Plaintiffs,       )
 5                               )
     vs.                         ) NO. 5:20-CV-00746-JKP(HJB)
 6                               )
     DR. SANDRA GUERRA and       )
 7   DIGITAL FORENSICS           )
     CORPORATION, LLC,           )
 8                               )
               Defendants.       )
 9

10                    REPORTER'S CERTIFICATE

11   ORAL VIDEOTAPED DEPOSITION OF JEFFREY MICHAEL FISCHBACH

12                        JULY 26, 2022

13       I, Jean Thomas Fraunhofer, Certified Shorthand

14   Reporter in and for the State of Texas, hereby certify

15   to the following:

16       That the witness, JEFFREY MICHAEL FISCHBACH, was

17   duly sworn and that the transcript of the deposition is

18   a true record of the testimony given by the witness;

19       I further certify that pursuant to FRCP Rule

20   30(f)(1) that the signature of the deponent was

21   requested by the deponent or a party before the

22   completion of the deposition and is to be returned

23   within 30 days from date of receipt of the transcript.

24   If returned, the attached Changes and Signature Pages

25   contain any changes and the reasons therefor;
```



1        That pursuant to information given to the deposition

2   officer at the time said testimony was taken, the

3   following includes all parties of record and the amount

4   of time used by each party at the time of the

5   deposition:

6        TOR EKELAND (0 Hours, 0 Minutes)
             Attorney for Plaintiffs
7
         BRANDY C. PEERY (2 Hours, 46 Minutes)
8            Attorney for Defendant Dr. Sandra Guerra

9        J. DAVID APPLE (0 Hours, 13 Minutes)
             Attorney for Defendant Digital Forensics
10           Corporation, LLC

11       That $_____ is the deposition officer's charges

12  to the Defendant Dr. Sandra Guerra for preparing the

13  original deposition and any copies of exhibits.

14       I further certify that I am neither counsel for,

15  related to, nor employed by any of the parties in the

16  action in which this proceeding was taken, and further

17  that I am not financially or otherwise interested in the

18  outcome of this action.

19       Certified to by me on this 10th day of August, 2022.

20                  *Jean T. Fraunhofer* (signature)

21       _____
         Jean Thomas Fraunhofer, CSR
22       Texas CSR 7990
         Expiration:  01/31/2023
23       LEXITAS LEGAL
         Firm Registration No. 95
24       13101 Northwest Freeway, Suite 210
         Houston, Texas 77040
25       Phone:  888.893.3767

