# Exhibit 'R'

Page 1

```
 1          IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF TEXAS
 2                SAN ANTONIO DIVISION
 3  MELODY JOY CANTU and DR.  )
    RODRIGO CANTU ,           )
 4                            )
             Plaintiffs,      )
 5                            ) CIVIL ACTION
      VS.                     )
 6                            ) NO.: 5:20-CV-00746-JKP
    DR. SANDRA GUERRA and     ) (HJB)
 7  DIGITAL FORENSICS         )
    CORPORATION, LLC,         )
 8                            )
             Defendants.      )
 9
10     ---------------------------------
11      ORAL AND VIDEOTAPED DEPOSITION OF
12              DR. RODRIGO CANTU
13                 (VIA ZOOM)
14                JULY 16, 2022
15     ---------------------------------
16      ORAL AND VIDEOTAPED DEPOSITION OF DR. RODRIGO CANTU,
17 produced as a witness at the instance of the DEFENDANT,
18 and duly sworn, was taken in the above-styled and
19 numbered cause on July 16, 2022 from 2:24 o'clock p.m.
20 to 5:40 o'clock p.m., Via Zoom, before
21 DEBBIE S. LONGORIA, CSR in and for the State of Texas,
22 reported by machine shorthand, pursuant to the Federal
23 Rules of Civil Procedure.
24
25
```

Page 2

```
 1               A P P E A R A N C E S
 2
 3 FOR THE PLAINTIFFS:
 4      TOR EKELAND (Via Zoom)
        TOR EKELAND LAW, PLLC
 5      30 WALL STREET, 8TH FLOOR
        NEW YORK, NEW YORK 10005
 6      (718) 737-7264
        tor@torekeland.com
 7
   FOR THE DEFENDANTS DR. SANDRA GUERRA and DIGITAL
 8 FORENSICS CORPORATION, LLC:
 9      BRANDY C. PEERY (Via Zoom)
        RICARDO G. CEDILLO (Via Zoom)
10      DAVIS, CEDILLO & MENDOZA, INC.
        755 E. MULBERRY, SUITE 500
11      SAN ANTONIO, TEXAS 78212
        (210) 822-6666
12      bpeery@lawdcm.com
        rcedillo@lawdcm.com
13
14 ALSO PRESENT:
15      KYLE LABYER, Videographer (Via Zoom)
        MELODY JOY CANTU (Via Zoom)
16      NICOLE GUITELMAN (Via Zoom)
        KATHLEEN N. FOLKS (Via Zoom)
17      DR. SANDRA GUERRA (Via Zoom)
18
19
20
21
22
23
24
25
```

Page 3

```
 1                        INDEX
 2                                                    PAGE
 3 Appearances........................................  2
 4 DR. RODRIGO CANTU
        Examination by Ms. Peery......................  4
 5
   Reporter's Certificate............................100
 6
```

Page 4

 1          VIDEOGRAPHER:  Going on record, the time
 2 is 3:03.  Today's date the July 16th, 2022.  Can counsel
 3 please state your names and whom you represent?
 4          MS. PEERY:  Brandy Peery and Ricardo
 5 Cedillo on behalf of Sandra Guerra.
 6          MR. EKELAND:  Tor Ekeland on behalf of
 7 plaintiff David Cantu.
 8          DR. RODRIGO CANTU,
 9 having been first duly sworn, testified as follows:
10               EXAMINATION
11 BY MS. PEERY:
12     Q.  Good afternoon, Dr. -- Dr. Cantu.
13     A.  Hello.
14     Q.  Can we -- can you hear me okay?
15     A.  Yes.
16     Q.  Okay.  Great.  Dr. Cantu, were you present for
17 the entire deposition of your wife Melody Cantu?
18     A.  I listened in, yes, and watched the video.
19     Q.  For the entirety of the deposition?
20     A.  Yes.
21     Q.  Is there anything -- we'll get into specifics,
22 but is there anything that stands out to you from her
23 testimony that you'd like to clarify or correct?
24     A.  No.
25          MR. EKELAND:  Objection.  You can answer.



Page 17

1 happen, and so Dr. Guerra initiated hiring Digital
2 Forensics, which accessed the internet, decreased the
3 security settings, and that whole process is what
4 allowed Madeleine to be -- to be groomed.
5    Q.   (By Ms. Peery) Okay.  What evidence do you
6 have that DFC decreased the firewall in Melody's private
7 residence?
8         MR. EKELAND:  Objection.  You can answer.
9         THE WITNESS:  All I have is that Sandra
10 had hired Digital Forensics, and in their access of the
11 internet, I believe that that caused the grooming of
12 Madeleine.  But, I don't have any video or photo
13 evidence of DFC actually doing that if that's what
14 you're asking for.
15    Q.   (By Ms. Peery) What evidence do you have that
16 establishes that DFC did do that?
17         MR. EKELAND:  Objection.  You can answer.
18         THE WITNESS:  They sent a link to my wife
19 that allowed them access to our system.
20    Q.   (By Ms. Peery) Are you referring to the link
21 that your wife testified was sent to her portable
22 cellular device?
23    A.   Yes, that's the link I'm talking about.
24    Q.   Okay.
25    A.   That portable cellular device was connected to

Page 18

1 our home internet system and, therefore, exposed our
2 home internet system to what was on that link.
3    Q.   What evidence do you have that that link
4 caused the decrease in the firewall?
5         MR. EKELAND:  Objection.  You can answer.
6         THE WITNESS:  We didn't do it ourselves.
7 No one else had access except for DFC through that link.
8    Q.   (By Ms. Peery) Well, you said a decrease in
9 the firewall.  Is it your test --
10   A.   It was changed to zero.
11   Q.   So your --
12   A.   It was turned off.
13   Q.   Your testimony is that DFC caused the firewall
14 to be entirely turned off?
15        MR. EKELAND:  Objection.
16        THE WITNESS:  Correct.
17   Q.   (By Ms. Peery) And you're basing this off of
18 the link that was sent to Melody's cell phone?
19        MR. EKELAND:  Objection.  You can answer.
20        THE WITNESS:  Yes, that's the evidence I
21 have that DFC accessed our internet.
22        MS. PEERY:  Kyle, you can take that down,
23 please.  Thank you.
24   Q.   (By Ms. Peery) Dr. Cantu, what is your date of
25 birth?

Page 19

1    A.   August 24, 1972.
2    Q.   How many children do you have?
3    A.   Two.
4    Q.   Okay.  And what are their names?
5    A.   Sofia Cantu and Maya Cantu.
6    Q.   Are those their current legal names?
7    A.   I'm not aware if their names have been
8 changed.
9    Q.   When is Sofia's date of birth?
10   A.   December 16th, 2000.
11   Q.   And Maya?
12   A.   December 22nd, 2002.
13   Q.   When is the last time you spoke with your
14 daughters?
15   A.   I don't remember the dates.  I believe it was
16 sometime in probably 2018, maybe 2019.
17   Q.   When is the last time you saw either one of
18 your daughters?
19   A.   The last time I spoke to them.
20   Q.   So, sometime in 2018, maybe 2019?
21   A.   Correct.
22   Q.   Do you -- are you still in communication with
23 your parents?
24   A.   No.
25   Q.   What are your parents' names?

Page 20

1    A.   Rodrigo Cantu and Beatrice Cantu.
2    Q.   When is the last time you spoke with your
3 mother or father?
4    A.   Sometime in 2018.
5    Q.   Do you know where they currently live?
6    A.   No.  I know where they lived the last time I
7 had contact with them.
8    Q.   Where was that?
9    A.   In Edinburg, Texas.
10   Q.   Do you have any siblings?
11   A.   Yes.
12   Q.   Okay.  How many?
13   A.   One.
14   Q.   What is his or her name?
15   A.   Tanya Cantu.
16   Q.   Is she younger or --
17   A.   Tanya -- I'm sorry.  Her name is Tanya Miller,
18 she's married.
19   Q.   Okay.  Older or younger sibling?
20   A.   She's younger.
21   Q.   Okay.  And when is the last time you
22 communicated with your sister?
23   A.   In 2018.
24   Q.   Where were you born?
25   A.   In Edinburg, Texas.

Page 97

1 heart going faster, feeling short of breath, being
2 vigilant, hypervigilant, feeling sadness, feeling like
3 things are out of control.
4    Q.   (By Ms. Peery) How does the -- how does the
5 severe emotional distress that you allege was caused by
6 Dr. Guerra and DFC affect your daily life?
7         MR. EKELAND:  Objection.  You can answer.
8         **THE WITNESS:  Well, it affects my daily**
9 **life because my wife is afraid to leave the house.  And**
10 **so, we have very limited ability to do things we enjoy.**
11 **It's difficult for her to -- to go to a restaurant,**
12 **which again, we do very infrequently, to do things**
13 **out -- outside of the home.  So, we tend to stay home a**
14 **lot and that affects my daily life.**
15   Q.   (By Ms. Peery) You're saying the reason you
16 have to stay at home a lot and you can't go out is
17 solely due to the conduct of Dr. Guerra and DFC?
18        MR. EKELAND:  Objection.
19        **THE WITNESS:  Yes.  Yes.**
20   Q.   (By Ms. Peery) Has nothing to do with Melody's
21 agoraphobia?
22        MR. EKELAND:  Objection.  You can answer.
23        **THE WITNESS:  She has worsening of these**
24 **agoraphobia, anxiety, panic because of what's happened**
25 **through DFC and Dr. Guerra.  I believe if it hadn't --**

Page 98

1 **if these things had not happened, she would be more**
2 **likely to not suffer these symptoms.**
3    Q.   (By Ms. Peery) Your -- Dr. Cantu, what kind of
4 doctor -- medical doctor are you?
5    **A.   Family medicine doctor.**
6    Q.   Family medicine.  You're not a clinical
7 psychologist?
8    **A.   Correct.**
9    Q.   Okay.  Not a psychiatrist?
10   **A.   That's correct.  I said I'm a family medicine**
11 **doctor.**
12   Q.   Okay.  Do you -- do you treat patients that
13 suffer from agoraphobia?
14        MR. EKELAND:  Objection.  You can answer.
15        **THE WITNESS:  I treat patients that have**
16 **agoraphobia.**
17   Q.   (By Ms. Peery) Is that your specialty?
18   **A.   My specialty is family medicine.**
19   Q.   Okay.
20   **A.   I'm -- so, the answer is no.**
21   Q.   Have you ever reviewed Melody's medical
22 records?
23        MR. EKELAND:  Objection.
24        **THE WITNESS:  No.**
25        MS. PEERY:  Kyle, can you pull up

Page 99

1 Exhibit 3?  And can you go to the very last page,
2 paragraph 124?
3    Q.   (By Ms. Peery) Dr. Cantu, can you read this
4 paragraph?  Can you see it?
5    **A.   Yeah, I can see it.  The actions --**
6    Q.   I just asked if you could see it.  I'll read
7 it into the record.  "The actions of defendants caused
8 plaintiff's emotional distress by putting the Cantus in
9 a state of prolonged and sustained fear for their safety
10 and privacy of their family and themselves because the
11 repeated false charges, false investigations and
12 cyberstalking."
13        As you sit here today, are you telling
14 the jury that Dr. Guerra -- as of today, you are still
15 suffering from a prolonged and sustained fear for your
16 safety and privacy of your family?
17        MR. EKELAND:  Objection.  You can answer.
18        **THE WITNESS:  Yes.**
19        MS. PEERY:  I will pass the witness.
20        MR. EKELAND:  We don't have any
21 questions.  Thank you.
22        MS. PEERY:  Thank you, Tor, for -- I'm
23 sorry, go off record.
24        VIDEOGRAPHER:  One moment.  Going off
25 record, the time is 5:39.

Page 100

```
1           IN THE UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF TEXAS
2                  SAN ANTONIO DIVISION
3 MELODY JOY CANTU and DR.   )
  RODRIGO CANTU,             )
4                            )
           Plaintiffs,       )
5                            ) CIVIL ACTION
  VS.                        )
6                            ) NO.: 5:20-CV-00746-JKP
                             ) (HJB)
7 DR. SANDRA GUERRA and      )
  DIGITAL FORENSICS          )
8 CORPORATION, LLC,          )
                             )
9          Defendants.       )
10
11             REPORTER'S CERTIFICATION
12           DEPOSITION OF DR. RODRIGO CANTU
13                   JULY 16, 2022
14
15    I, Debbie S. Longoria, Certified Shorthand Reporter
16 in and for the State of Texas, hereby certify to the
17 following:
18    That the witness, DR. RODRIGO CANTU, was duly sworn
19 by the officer and that the transcript of the oral
20 deposition is a true record of the testimony given by
21 the witness;
22    I further certify that pursuant to FRCP Rule 30(f)
23 (1) that the signature of the deponent:
24    ____was requested by the deponent or a party before
25 the completion of the deposition and returned within 30
```



Page 101

1 days from date of receipt of the transcript.  If
2 returned, the attached Changes and Signature Page
3 contains any changes and the reasons therefor;
4      __X__was not requested by the deponent or a party
5 before the completion of the deposition.
6      I further certify that I am neither attorney nor
7 counsel for, related to, nor employed by any of the
8 parties to the action in which this testimony was taken.
9      Further, I am not a relative or employee of any
10 attorney of record in this cause, nor do I have a
11 financial interest in the action.
12     Subscribed and sworn to on this the 28th day
13 of July, 2022.
14
15
16         *[signature: Debbie Longoria]*
17     Debbie S. Longoria, Texas CSR #5232
        Expiration Date:  10/31/23
18      Lexitas - Firm Registration No. 539
        100 N.E. Loop 410, Suite 955
19      San Antonio, Texas 78216
        (210) 481-7575
20
21
22
23
24
25

**LEXITAS**