# EXHIBIT E

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| MELODY JOY CANTU and § | |
| DR. RODRIGO CANTU, § | |
| *Plaintiffs* § | |
| § | |
| § | CASE NO.: 5:20-CV-00746-JKP (HJB) |
| § | |
| V. § | |
| § | |
| DR. SANDRA GUERRA and § | |
| DIGITAL FORENSICS CORPORATION, § | |
| LLC § | |
| *Defendants* § | |

## DEFENDANT, DR. SANDRA GUERRA'S THIRD REQUEST FOR PRODUCTION TO PLAINTIFF, MELODY JOY CANTU

**TO:**  **MELODY JOY CANTU**, by and through her counsel of record, Tor Ekeland, *Pro Hac Vice*, Email: tor@torekeland.com, Michael Hassard, Email: hassard.mike@gmail.com, TOR EKELAND LAW, PLLC, 30 Wall Street, 8th Floor, New York, NY 10005, and Rain Levy Minns, Email: rain@rainminnslaw.com, MINNS LAW FIRM, P.C., D/B/A RAIN MINNS LAW FIRM, 4412 Spicewood Springs Rd., Suite 500, Austin, Texas 78759-8583.

NOW COMES, Defendant, DR. SANDRA GUERRA, and serves this her Third Request for Production on Plaintiff, MELODY JOY CANTU, pursuant to Federal Rules of Civil Procedure 34 and 69, that you produce or permit the undersigned attorney to inspect and copy the documents and tangible things below which are in your possession, custody or control.

Date: August 15, 2022.　　　　　　　Respectfully submitted,

**dc&m | Davis, Cedillo & Mendoza, INC.**
ATTORNEYS AT LAW

McCombs Plaza, Suite 500
755 E. Mulberry Avenue
San Antonio, Texas 78212
Telephone No.: (210) 822-6666
Telecopier No.: (210) 822-1151

By: */s/ Brandy C. Peery*
　　　BRANDY C. PEERY
　　　State Bar No. 24057666
　　　Email: bpeery@lawdcm.com
　　　RICARDO G. CEDILLO
　　　Texas State Bar No. 04043600
　　　Email: rcedillo@lawdcm.com

**ATTORNEYS FOR DEFENDANT, DR. SANDRA GUERRA**

2

## **CERTIFICATE OF SERVICE**

I certify that on this 15th day of August 2022, a true and correct copy of the foregoing was served upon all counsel of record in accordance with the Federal Rules of Civil Procedure.

           */s/Brandy C. Peery*
           BRANDY C. PEERY

## DEFINITIONS AND INSTRUCTIONS

**As used herein, the following terms shall have the meaning indicated below:**

1. "Person" means natural persons, general partnerships, limited partnerships, joint ventures, associations, corporations, governmental agencies (whether federal, state or local or any agency of the government of a foreign county), departmental units or subdivisions thereof, and any other form of business entity or association, as the case maybe.

2. The terms "document" and "documents" mean all documents and tangible things, in the broadest sense allowed under the Federal Rules of Civil Procedure, and include, but are not limited to, any writings, drawings, graphs, charts, photographs, phonograph records, tape recordings, notes, diaries, calendars, checkbooks, books, papers, accounts, electronic or videotape recordings, and any computer-generated, computer-stored, or electronically stored information that constitute or contain matters relevant to the subject matter of this lawsuit. The terms "document" and "documents" include responsive data or information that exists in electronic or magnetic form, and such responsive data should be produced on a CD, DVD, or other electronic form.

3. "Document" also includes electronically stored information – including, without limitation, writings, drawings, graphs, charts, photographs, text messages, emails,, image files (e.g., .tiff and .pdf images)sound recordings, images, and other data or data compilations - stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party.

4. As used in these Requests for Production, a request for "electronically stored information" or documents "in electronic form" calls upon You to produce such information, without deletion or alteration of meta-data, in its native form, and to indicate the computer hardware and software program(s) needed to translate the information into usable form in the information's native format.

5. You are to produce all documents, as defined above, that are in Your possession, control or custody or in the possession, control or custody of any attorney for You. Without limiting the term "control," a document is deemed to be within Your control if You have ownership, possession or custody of the document, or the right to secure the document or copy thereof from any person or public or private entity having physical possession thereof. This includes documents in the possession of Your attorneys, accountants, advisors or other persons directly or indirectly employed by or connected with You, or Your attorneys, and/or anyone else otherwise subject to Your control.

6. Each document produced should be specifically identified with the specific request made herein and should be produced in a form which renders the document susceptible to copying.

7. All duplicates or copies of documents are to be provided to the extent they have handwriting, additions, or deletions of any kind different from the original document being produced.

8. The term "and/or," "or," and "and" are used inclusively, not exclusively.

9. Wherever the words "evidencing," "reflecting," "relating," "demonstrating," "pertaining to"

and/or "concerning" appear herein, the meaning intended shall include: directly or indirectly referring to, related to, relating to, alluding to, having any relationship to, pertaining to, comprising, evidencing, constituting evidence of, connected with, commenting on, regarding, discussing, mentioning, analyzing, constituting, showing, referring in any way to, embodying in whole or in part, or being relevant to that subject matter, and is meant to include, among other documents, documents underlying, supporting, now or previously attached or appended to, and/or used in the preparation of any document called for by the Request.

10. Use of the singular shall be taken to include the plural and vice-versa.

11. The term "communication" refers to any transfer of information, oral or written, be it in the form of facts, ideas, inquiries, opinions or otherwise, by any means, at any time or place, under any circumstances, and is not limited to transfers between persons, but includes other transfers, such as records and memoranda to the file.

12. If you object to any Request for Production or any portion of any Request for Production on the ground that it would constitute an undue burden to respond, respond to the Request as fully as possible without undertaking an undue burden and identify all reasons it would constitute an undue burden to respond fully and completely.

13. If you object to any Request for Production or any portion of any Request for Production on the ground that it is vague, ambiguous, and/or indefinite, set forth Your understanding of the allegedly vague, ambiguous, and/or indefinite term(s) and respond to the Interrogatory based upon such stated understanding(s).

14. If any request cannot be complied with in full, it should be complied with to the extent possible and an explanation provided as to why full compliance is not possible.

15. If any claim of privilege is asserted as to any requested documents (or any portion thereof), you shall furnish in lieu of any documents withheld, a schedule or log which specifically describes the information or materials withheld and states the specific privilege for each item or group of items withheld. All segregable portions of any document, as to which no claim of privilege is being asserted, should be produced in redacted form, clearly identifying the portion redacted and the basis for the redaction.

16. If you assert that any document requested herein is privileged, provide the following information with respect to each such document:

> (a) its date;
> (b) its author;
> (c) all addressees or recipients of the original or copies thereof, including blind copies;
> (d) a brief description of its subject matter, number of pages, and attachments or appendices;
> (e) all persons to whom the document was distributed, shown or explained;
> (f) its present custodian; and
> (g) the nature of the privilege claimed.

17. "Identity" or "Identify" or "Identification":

    (a) When used in reference to a natural person, "identity," "identify," or "identification" means to state his or her full name and present or last known address and present employer, specifying in each instance the title or position and the dates so held.

    (b) When used with respect to document, "identity," "identify," or "identification" means to state the date, subject and substance, author, all recipients, type of document (e.g., letter, telegraph, memorandum, computer printout, sound reproduction, chart, etc.), its present location and the identity of its present custodian. This shall include documents with respect to which a privilege is or may be claimed, if such document was, but no longer is, in Your possession or subject to Your control, state whether (a) it is missing or lost; (b) has been destroyed; (c) has been transferred voluntarily to others; or ( d) otherwise disposed of. In each such instance explain the circumstances surrounding an authorization for such disposition.

    (c) When used in respect to an occasion, event, meeting or conversation, "identity," "identify," or "identification" means to state the date, place, duration and persons attending or participating.

18. In the event that any document called for by this Request has been discarded or destroyed, placed beyond Your control or otherwise disposed of, that document shall be identified as follows: (a) preparer(s); (b) addressee(s); (c) recipient(s) of indicated or blind copies; (d) date; (e) type of document; (f) subject matter; (g) number of pages; (h) number and identity of attachments or appendices; (i) all persons to whom distributed, shown or explained; (j) date of disposal or destruction; (k) reason for disposal or destruction; (l) person(s) authorizing disposal or destruction; and (m) person(s) discarding or destroying the document.

19. To the extent You withhold any documents responsive to these requests, Defendant hereby requests that You identify the information and material being withheld as required pursuant to the Federal Rules of Civil Procedure.

20. "You" and "Your" mean Plaintiff, MELODY JOY CANTU, including her attorneys, agents, employees, representatives and any other person or entity acting on or for her behalf, including without limitation, Tor Ekland and any attorneys, paralegals, legal assistants, contractors, or consultants of the employees, of .

21. "CFAA Claims" means Plaintiffs' causes of action one (1) through (8) set forth in paragraphs 54-92 of Plaintiffs' First Amended Complaint [Doc. 3] and cause of action twelve (12) set forth in paragraphs 109-111 of Plaintiffs' First Amended Complaint.

22. "Texas Statutory Claims" means Plaintiffs' causes of action nine (9) through eleven (11) set forth in paragraphs 93-108 of Plaintiffs' First Amended Complaint [Doc. 3].

## **PERIOD OF TIME**

Unless a specific date or dates is set forth in any specific interrogatory herein, you are directed that each question shall be answered for the period of time beginning on March 25, 2009 up to and including the present date.

## THIRD REQUESTS FOR PRODUCTION TO PLAINTIFF, MELODY JOY CANTU

31. All receipts, invoices, and documents evidencing the compensatory damages you seek to recover from Dr. Guerra in connection with the CFAA Claims you have asserted against Dr. Guerra.

32. All receipts, invoices, and documents evidencing the compensatory damages you seek to recover from Digital Forensics Corporation, LLC ("DFC") in connection with the CFAA Claims you have asserted against DFC.

33. All receipts, invoices, and documents evidencing the compensatory damages you seek to recover from Dr. Guerra in connection with the Texas Statutory Claims you have asserted against Dr. Guerra.

34. All receipts, invoices, and documents evidencing the compensatory damages you seek to recover from DFC in connection with the Texas Statutory Claims you have asserted against DFC.

35. All receipts, invoices, and documents evidencing the compensatory damages you seek to recover from Dr. Guerra in connection with the malicious prosecution claim you have asserted against Dr. Guerra.

36. All receipts, invoices, and documents evidencing the compensatory damages you seek to recover from DFC in connection with the malicious prosecution claim you have asserted against DFC.

37. All receipts, invoices, and documents evidencing the compensatory damages you seek to recover from Dr. Guerra in connection with the intentional infliction of emotional distress claim you have asserted against Dr. Guerra.

38. All receipts, invoices, and documents evidencing the consequential damages you seek to recover from DFC in connection with the intentional infliction of emotional distress claim you have asserted against DFC.

39. All receipts, invoices, and documents evidencing the consequential damages you seek to recover from Dr. Guerra in connection with the CFAA Claims you have asserted against Dr. Guerra.

40. All receipts, invoices, and documents evidencing the consequential damages you seek to recover from DFC in connection with the CFAA Claims you have asserted against DFC.

41. All receipts, invoices, and documents evidencing the consequential damages you seek to recover from Dr. Guerra in connection with the Texas Statutory Claims you have asserted

against Dr. Guerra.

42. All receipts, invoices, and documents evidencing the consequential damages you seek to recover from DFC in connection with the Texas Statutory Claims you have asserted against DFC.

43. All receipts, invoices, and documents evidencing the consequential damages you seek to recover from Dr. Guerra in connection with the malicious prosecution claim you have asserted against Dr. Guerra.

44. All receipts, invoices, and documents evidencing the consequential damages you seek to recover from DFC in connection with the malicious prosecution claim you have asserted against DFC.

45. All receipts, invoices, and documents evidencing the consequential damages you seek to recover from Dr. Guerra in connection with the intentional infliction of emotional distress claim you have asserted against Dr. Guerra.

46. All receipts, invoices, and documents evidencing the consequential damages you seek to recover from DFC in connection with the intentional infliction of emotional distress claim you have asserted against DFC.

47. All receipts, invoices, and documents evidencing the punitive damages you seek to recover from Dr. Guerra in connection with the CFAA Claims you have asserted against Dr. Guerra.

48. All receipts, invoices, and documents evidencing the punitive damages you seek to recover from DFC in connection with the CFAA Claims you have asserted against DFC.

49. All receipts, invoices, and documents evidencing the punitive damages you seek to recover from Dr. Guerra in connection with the Texas Statutory Claims you have asserted against Dr. Guerra.

50. All receipts, invoices, and documents evidencing the punitive damages you seek to recover from DFC in connection with the Texas Statutory Claims you have asserted against DFC.

51. All receipts, invoices, and documents evidencing the punitive damages you seek to recover from Dr. Guerra in connection with the malicious prosecution claim you have asserted against Dr. Guerra.

52. All receipts, invoices, and documents evidencing the punitive damages you seek to recover from DFC in connection with the malicious prosecution claim you have asserted against DFC.

53. All receipts, invoices, and documents evidencing the punitive damages you seek to recover from Dr. Guerra in connection with the intentional infliction of emotional distress claim you

have asserted against Dr. Guerra.

54. All receipts, invoices, and documents evidencing the compensatory damages you seek to recover from DFC in connection with the intentional infliction of emotional distress claim you have asserted against DFC.

55. All receipts, invoices, and documents evidencing the costs and damages identified in Section 3 of Plaintiffs' Initial Required Disclosures served on December 1, 2020.

56. All medical records pertaining to the treatment you received from Dr. John Seals which is referenced in Section 1 and 3 of Plaintiffs' Initial Required Disclosures served on December 1, 2020.

57. All billing records pertaining to the treatment you received from Dr. John Seals which is referenced in Section 1 and 3 of Plaintiffs' Initial Required Disclosures served on December 1, 2020.

58. All medical records pertaining to the treatment you received from Steve Cervantes which is referenced in Section 1 and 3 of Plaintiffs' Initial Required Disclosures served on December 1, 2020.

59. All billing records pertaining to the treatment you received from Steve Cervantes which is referenced in Section 1 and 3 of Plaintiffs' Initial Required Disclosures served on December 1, 2020.

60. All medical records pertaining to the treatment you received from Randolph A. Pollock, MA, LPC which is referenced in Section 1 and 3 of Plaintiffs' Initial Required Disclosures served on December 1, 2020.

61. All billing records pertaining to the treatment you received from Randolph A. Pollock, MA, LPC which is referenced in Section 1 and 3 of Plaintiffs' Initial Required Disclosures served on December 1, 2020.

62. All medical records pertaining to the treatment you received from Dr. Joann Murphy which is referenced in Section 1 and 3 of Plaintiffs' Initial Required Disclosures served on December 1, 2020.

63. All medical records pertaining to the treatment you received from Deena Trevino which is referenced in Section 1 and 3 of Plaintiffs' Initial Required Disclosures served on December 1, 2020.

64. All medical records pertaining to the treatment you received from Christine Hefel which is referenced in Section 1 and 3 of Plaintiffs' Initial Required Disclosures served on December 1, 2020.

65. All billing records pertaining to the treatment you received from Christine Hefel which is referenced in Section 1 and 3 of Plaintiffs' Initial Required Disclosures served on December 1, 2020.

66. All billing records pertaining to the treatment you received from Deena Trevino which is referenced in Section 1 and 3 of Plaintiffs' Initial Required Disclosures served on December 1, 2020.

67. All billing records pertaining to the treatment you received from Dr. Joann Murphy which is referenced in Section 1 and 3 of Plaintiffs' Initial Required Disclosures served on December 1, 2020.

68. All photos referenced in Section 2 of Plaintiffs' Initial Required Disclosures served on December 1, 2020 relating to the cable box splitter.

69. All documents evidencing the phone calls referenced in Section 2 of Plaintiffs' Initial Required Disclosures served on December 1, 2020 relating to the cable box splitter.

70. All documents concerning or pertaining to the phone calls with Spectrum regarding the cable splitter referenced in Section 2 of Plaintiffs' Initial Required Disclosures served on December 1, 2020.

71. Copies of the screenshots of "suspicious computer and phone activity" referenced in Section 2 of Plaintiffs' Initial Required Disclosures served on December 1, 2020

72. All receipts, invoices, and documents evidencing your claim in Section 3 of Plaintiffs' Initial Required Disclosures that you incurred approximately $50,000 in fees, taxes, and penalties for withdrawing the money from your and/or Dr. Cantu's retirement funds in order to pay Plaintiffs' attorneys' fees as a result of Defendants' conduct.

73. All communications and documents between you and USAA that reflect or otherwise refer or relate in any way to your allegations in paragraph 43 of Plaintiffs' First Amended Complaint that you requested USAA to conduct the investigation referenced in paragraph 43 of Plaintiffs' First Amended Complaint.

74. All communications and documents between you and USAA that reflect or otherwise refer or relate in any way to the outcome and findings of USAA's investigation referenced in paragraph 43 of Plaintiffs' First Amended Complaint.

75. All communications and documents (including communications between you and USAA) that reflect or otherwise refer or relate in any way to your allegation that one of USAA's investigators "commented that he thought he thought someone hacked the Cantus' home internet connection."

76. All communications and documents (including communications between you and USAA) that reflect or otherwise refer or relate in any way to your allegation in paragraph 43 of Plaintiffs' First Amended Complaint that USAA replaced all your work equipment following your request for an investigation by USAA of your "secure work internet network communication separate from the Cantus' home internet connection."

77. A copy of the letter you claimed "changed your life" in your message to Dr. Guerra appearing in document bates labeled GUERRA000155.

78. A copy of all the photographs you claim Dr. Guerra sent "David" which you claimed you have and/or had in your message to Dr. Guerra appearing in document bates labeled GUERRA000151.

79. Copies of all the photographs and emails referenced in your deposition testimony below that you testified you and/or Dr. Cantu saved:

```
11    Q.  (By Ms. Peery) "He's been with me the whole
12 time.  I saved everything you sent to him while we were
13 dating.  You were with Ben and sending David provocative
14 pictures."
15    A.  Uh-huh.
16    Q.  Do you have provocative pictures of
17 Dr. Guerra?
18    A.  No, David did.  We saved them, but I don't
19 know if we still have them.
20    Q.  "We saved them," is that what you said?
21    A.  David had the photos.  I did not have the
22 photos.  We were married at the time.
23    Q.  I was -- I was asking about your prior
24 statement.  Your prior statement, you said "We saved
25 them," correct?
```

Page 98

```
1            MR. EKELAND:  Objection.
2            THE WITNESS:  David had them.
3    Q.  (By Ms. Peery) Did you save them?
4    A.  When we were married, we chose to save them.
5    Q.  So, where did you save them?
6    A.  I believe --
7            MR. EKELAND:  Objection.
8    A.  -- David had them on a computer or on a phone.
9 I don't remember.
10    Q.  Are they on your -- on any of your devices?
11           MR. EKELAND:  Objection.
12           THE WITNESS:  No, they're not.
13    Q.  (By Ms. Peery) Are they uploaded to the Cloud?
14    A.  No, they're not.  I don't think the Cloud
15 existed, but I don't know.  I know that Dr. Guerra was
16 sending naked photos to David when we started dating.
17 She also would send emotional e-mails to him saying that
18 he will always be his home, and he shared those with me.
19 And that was when David and I first started dating and
```