## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO

_____

MELODY JOY CANTU AND DR. RODRIGO                    5:20-CV-0746 JKP – HJB
CANTU,

Plaintiffs,
v.

DR. SANDRA GUERRA and DIGITAL
FORENSICS CORPORATION, LLC,

Defendants.

_____


## PLAINTIFFS' REPLY TO DEFENDNATS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT AND REQUEST FOR SANCTIONS AGAINST PLAINTIFFS

## Table of Contents

1.   Plaintiffs Satisfy the Four-Factor Test for "Good Cause" Requirement Under Rule 16(b) .... 4

   a.   Defendant DFC's Belatedly Produced, Complex, Malicious Computer Codes Total 117 Pages and Required Analysis by Plaintiffs ................................................................................. 5

   b.   The Amended Motion for Summary Judgment is Integral to Justice ................................. 7

   c.   Granting Plaintiffs' Motion for Leave Would Not Prejudice Defendants ........................... 9

   d.   The Availability of Continuance is a Neutral Consideration ............................................ 9

2.   Defendants' Motion for Sanctions is Frivolous and Without Merit ..................................... 10

## Introduction

Courts in this District routinely grant motions under Federal Rule of Civil Procedure 16(b)(4) for leave to file without requiring a 16(b)(4) analysis when the grounds are clear.[1] Here, Plaintiffs' justification for seeking leave of court to file an amended or supplemental motion for summary judgment is clear:

(1) Defendants' late and incomplete disclosure of 117 pages of incriminating malicious computer code required Plaintiffs to carefully analyze the code. Once Plaintiffs had a full understanding of the extent to which Defendants hacked and surveilled Plaintiffs, the Motion for Leave was appropriately filed.

(2) It is in the interests of justice for this Court to grant Plaintiffs' Motion for Leave. The belatedly produced discovery implicates Defendants and shows that the scope of Defendants' campaign of stalking, hacking, surveillance and harassment as extensive as Plaintiffs asserted in the Complaint.

(3) There is no prejudice to the Defendants because the Court has yet to rule on any outstanding summary judgment motions. Moreover, the Defendants are the ones who belatedly produced the voluminous, complex computer codes (that Plaintiffs requested in their initial discovery requests) thereby requiring this supplemental motion for summary judgment.

(4) No continuance is required here. There is no trial nor any hearing currently scheduled.

---

[1] *See Mallory v. Lease Supervisors, LLC*, Civil Action No. 3:17-CV-3063-D, at 4-5 (N.D. Tex. July 19, 2019) citing *Nieves v. John Bean Techs. Corp.*, 2014 WL 2587577, at 2 (N.D. Tex. June 10, 2014); *Cartier v. Egana of Switz. (Am.) Corp.*, 2009 WL 614820, at 2 (N.D. Tex. Mar. 11, 2009).

## Argument

Defendants did not produce their malicious computer codes until November 11, 2022. This is seven days after Plaintiffs filed their Reply to Defendants' Opposition to Plaintiff's Motion for Summary Judgment. Defendants only produced the malicious computer codes in question after briefing on the original summary judgment motions closed.[2] On November 14, 2022, Defendants, after production of their malicious computer codes, filed their own Motion for Leave to File Sur-Reply to Plaintiff's Motion for Summary Judgment, that contained 17 exhibits.[3] The Court has yet to rule on Defendant's Motion for Leave.

### 1. Plaintiffs Satisfy the Four-Factor Test for "Good Cause" Requirement Under Rule 16(b)

The malicious computer codes belatedly produced by Defendants go directly to the heart of this case and should have been produced in response to Plaintiffs' discovery requests at the beginning of this case.[4] They demonstrate the malicious nature of Defendants' hacking and surveillance of Plaintiffs, all in the course of Defendant Dr. Guerra's campaign of harassment against Plaintiffs.

The good cause standard under Federal Rule of Civil Procedure 16(b) requires the "party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension."[5] Under Rule 16(b)(4), a scheduling order deadline "may be modified only for good cause and with the judge's consent." The movant must show that, despite

---

[2] *See* Dkt. 118 (Nov. 4, 2022).
[3] *See* Dkt. 119 (Nov. 14, 2022).
[4] *See* Dkt. 120-1 (Ex. A – Filed Under Seal).
[5] Fed. R. Civ. P. 16(b)(3)(A).

their diligence, they could not reasonably have met the scheduling deadline. Here, the malicious computer codes were produced after the deadline for summary judgment motions.[6]

The good cause standard under Rule 16(b) is a flexible one, and courts will consider the totality of the circumstances when deciding whether to grant leave to amend. Under Rule 16(b), a party must satisfy a four-part test: (1) provide an explanation for the failure to timely move for leave to amend; (2) demonstrate the importance of the amendment; (3) address potential prejudice in allowing the amendment; and (4) show the availability of a continuance to cure such prejudice.[7]

Once it is established that the movant satisfies the requirements of Rule 16(b)(4), the court must then determine whether to grant leave to amend under the more liberal standard of Rule 15(a)(2).[8]

Plaintiffs meet each of the four requirements. Moreover, the interests of justice require an analysis on the totality of the circumstances because the belatedly produced malicious computer codes establish Defendants' illegal and unlawful hacking and surveilling of Plaintiffs' computer networks. This is precisely why they waited to produce them until after the deadlines for filing summary judgment motions had passed.

a.  Defendant DFC's Belatedly Produced, Complex, Malicious Computer Codes
    Total 117 Pages and Required Analysis by Plaintiffs

The 117 pages of malicious computer codes encompass a variety of different computer codes that interact with other computer codes Defendants have failed to produce. This is despite

---

[6] *See Swanston v. City of Plano*, Civil Action No. 4:19-CV-412 (E.D. Tex. Apr. 27, 2020).

[7] See S&W Enters., LLC, 315 F.3d at 536 (citing Reliance In
s. *Co. v. La. Land & Exploration Co.*, 110 F.3d 253, 257 (5th Cir.1997) (quoting *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir.1990)); see also *Batiste v. Lewis*, 976 F.3d 493, 500-01 (5th Cir. 2020).

[8] *See Nunn v. State Farm Mutual Automobile Insurance Co.*, Civil Action No. 3:08-CV-1486-D (N.D. Tex. Jan. 26, 2011).

repeated requests for all relevant computer codes by the Plaintiffs since the inception of discovery in this case.

The first factor requires the party seeking leave to amend to explain why they were unable to meet the scheduling order deadline. Simply put, the evidence in question wasn't produced until after the scheduling deadline. No diligence on the part of Plaintiffs would have prevented this belated production. Particularly given that Plaintiffs repeatedly requested production of all the relevant computer codes from the Defendants.

Courts generally look for evidence of diligence on the part of the movant. No amount of diligence on Plaintiffs' part would have changed things here. The Court's Joint Advisory set the final day of discovery for after the deadlines for summary judgment motions.[9] Leave to amend or supplement is implicit when final production deadlines for discovery are set for a date after the deadlines for filing any summary judgment motions. Otherwise, parties could game the system, as happened here, by waiting for the deadlines for summary judgment to pass before producing critical discovery.

Since day one, Plaintiffs repeatedly requested all computer codes related to the hacking and surveilling of Plaintiffs. Yet Defendants only produced the incriminating code on the last possible day under the Joint Advisory. Their claims that their 117 pages of computer code central to Plaintiffs' complaint were somehow not requested at the inception of this litigation are not credible. They refused to provide Plaintiffs with any corroborating evidence, repeatedly incorrectly claiming in their discovery response that "information was not previously requested

---

[9] *See* Dkt. 116.

from DFC by Plaintiffs and is, thus, outside the scope of the Joint Advisory".[10] Plaintiffs repeatedly requested all documentation of Defendants' hacking and surveillance of Plaintiffs from the beginning of this case. Defendants simply refused to produce it until the last possible moment, after the deadline for summary judgment motions.[11] The belatedly produced discovery is not ancillary, it goes directly to the core accusation of the complaint that Dr. Guerra and DFC maliciously hacked and surveilled Plaintiffs. The 117 pages of malicious computer code is direct evidence of this.

Analysis of the incriminating computer code was tedious and technical. Moreover, the incriminating computer code produced by Defendants is incomplete. As of this date, Defendants have yet to produce the full set of computer codes involved in this matter. Once Defendants finally produced the incriminating computer code - a small portion of the requested materials - they chose to produce the raw data flattened onto a PDF and not in the requested native format. This increased the amount of time necessary to analyze the belatedly produced malicious codes.

The incriminating codes corroborate the Plaintiffs' claims against Defendants that the Defendants maliciously hacked and surveilled Plaintiffs in a campaign of harassment utilizing malicious phishing and remote access scripts.

b.   The Amended Motion for Summary Judgment is Integral to Justice

The belatedly produced computer codes establish the Defendants' unlawful and illegal conduct. Plaintiffs were not aware of the extent to which their computer systems were hacked and infiltrated by Defendants in their campaign of harassment until the incriminating codes were finally produced. Further, the incriminating codes raise more questions than it answers as the

---

[10] *See* Dkt. 120-1 (Defendant DFC's belated Discovery response containing incriminating computer code evidencing Defendants' phishing, hacking, surveilling, and remote access of Plaintiffs' computer systems).
[11] *See e.g.* Dkt. 103 (Plaintiff's Motion to Compel detailing Defendants' failure to produce requested computer codes.) (Aug. 29, 2022).

codes indicate that there is further, yet to be disclosed, computer codes which interacted with the scripts produced to manipulate Plaintiffs' computer networks and trick them into giving Defendants remote access to Plaintiffs' systems.

In *TIGI Linea Corporation v. Professional Products Group*, the court held that a proposed amendment was important and that analysis of the second factor weighed in favor of Plaintiff TIGI because a new cause of action, fraud by nondisclosure, had the potential to establish the Defendant's liability under an alternative theory. [12] Similarly, the court in *R2 Sols. V. Deezer S.A.* found that an amendment is important when it is vital to the survival of the litigation.[13] A proposed amendment is futile "if it would fail to state a claim upon which relief could be granted."[14]

Here, Defendants' belatedly produced malicious computer codes establish Defendants' liability for the complained of causes of action. No alternative theory of liability is required. This is precisely why Defendants waited until the last possible second to produce the malicious codes. This Court should not allow the Defendants to play games with their discovery obligations to produce core evidence of their unlawful behavior going directly to Plaintiffs' causes of action. The sought after leave to supplement seeks to remedy Defendants' prejudicial and belated production of discovery central to this case.

---

[12] *TIGI Linea Corp. v. Prof'l Prods. Grp.*, LEAD CASE 4:19-cv-00840-RWS-KPJ, at 6 (E.D. Tex. Apr. 6, 2021); *see also Rangel v. Gonzalez Mascorro*, No. CV L-10-103, 2011 WL 13353220, at *3 (S.D. Tex. Aug. 19, 2011) (finding defendants' liability under an alternative theory weighs in favor of finding good cause).
[13] *See R2 Sols. v. Deezer S.A.*, Civil Action 4:21-cv-90, at 1 (E.D. Tex. Mar. 4, 2022).
[14] *See Id.* citing *Raytheon Co. v. Indigo Sys. Corp.*, No. 4:07-cv-109, 2008 WL 3852715, at 3 (E.D. Tex. Aug. 14, 2008).

  c. <u>Granting Plaintiffs' Motion for Leave Would Not Prejudice Defendants</u>

If anything, Defendants have prejudice Plaintiffs by their belated production of their malicious computer codes after the deadlines for summary judgment motions had closed. Moreover, currently there is no scheduling order, hearing dates, or trial scheduled in this case. The Court has decided none of the outstanding summary judgment motions and can easily incorporate Plaintiffs' Supplemental Motion for Summary Judgment into its considerations.

Grating leave to supplement will not disrupt this litigation nor disadvantage any party. Indeed, not allowing leave for Plaintiffs to supplement will disadvantage the Plaintiffs because they will be unable to avail themselves of belatedly produced discovery central to their causes of action that should have been produced at the beginning of this case.

On January 14, 2022, Plaintiffs served discovery requests upon Defendants. These requests encompassed the malicious computer codes in question. Defendants cannot now complain that Plaintiffs leave to supplement is untimely when they themselves waited eleven months to produce evidence central to the issues in this case. This situation is entirely one of the Defendants own making. Moreover, the Court has yet to rule on any of the summary judgment motions filed last fall, and can easily take into consideration Plaintiffs' Supplemental Summary Judgment Motion incorporating Defendants belatedly produced malicious computer codes that are direct evidence of their hacking, surveillance and harassment of Plaintiffs.

  d. <u>The Availability of Continuance is a Neutral Consideration</u>

Here, the Court's acceptance of Plaintiffs' amended Motion for Summary Judgment would not significantly delay the proceedings, as there is nothing scheduled on the current docket. The fourth factor requires the movant to show that a continuance is available to cure any

prejudice that might arise from the amendment. Here, the amendment would not significantly delay the proceedings.

Courts in this Circuit have been amenable to granting leave when "granting leave to amend would not inevitably delay trial or any other deadline."[15] Here, as in *R2*, the availability of a continuance in this case is a neutral consideration. There are no hearing dates, no additional discovery dates, and no trial dates currently scheduled in this case.

### 2. Defendants' Motion for Sanctions is Frivolous and Without Merit

Here, none of the factors warranting sanctions exist. Plaintiffs' Counsel has not acted in bad faith, nor acted with vexatious or wanton behavior, nor abused the legal system, nor unreasonably multiplied proceedings. It is entirely appropriate to seek leave of a court to file a supplemental motion for summary judgment when new, complex, incriminating evidence is revealed in a civil lawsuit, as is the case here. It is further appropriate to cite to publicly accessible court documents evidencing the misrepresentations by a Defendant. None of Defense Counsel's conduct is sanctionable.

Courts consider a variety of factors when imposing sanctions, including the nature of the alleged violation, the parties involved, and the specific circumstances of the case. Sanctions may be awarded for bad faith conduct, for vexatious or wanton behavior, for abusing the legal system, or for unreasonably multiplying proceedings. In *Mission Specialty Pharmacy, LLC v. Optumrx, Inc.*, the court emphasized that sanctions should be "tailored to fit the particular wrong" and should "foster the appropriate purpose of the rule."[16] In *Alvarez v. Wallace*, the court discussed the standard for awarding attorney's fees as a sanction under Rule 37(a)(4) of the Federal Rules of Civil Procedure, which requires the court to consider whether the opposing party's conduct

---

[15] *R2 Sols. v. Deezer S.A.*, Civil Action 4:21-cv-90, at 1 (E.D. Tex. Mar. 4, 2022).
[16] *Mission Specialty Pharmacy, LLC v. Optumrx, Inc.*, NO. SA-15-CV-885-DAE (W.D. Tex. Dec. 30, 2015).

was "substantially justified" or whether "other circumstances make an award of expenses unjust."[17]

    This is the third time that Defense Counsel has filed a frivolous motion for sanctions against Plaintiffs' Counsel.[18] The Court should deny this one as well.

## Conclusion

    This Court should grant Plaintiffs' Motion for Leave to File a Supplemental Motion for Summary Judgment and deny Defendants' frivolous sanctions motion.

---

[17] *Alvarez v. Wallace*, 107 F.R.D. 658 (W.D. Tex. 1985).
[18] *See* Dkt. 72, 73, 111, and 121.

Dated: July 31, 2023
Brooklyn, NY

Respectfully submitted,

/s/ Michael Hassard
(NY Bar No. 5824768)
Tor Ekeland Law, PLLC
30 Wall Street, 8th Floor
New York, NY
(718) 737 - 7264
michael@torekeland.com

/s/ Tor Ekeland
(NY Bar No. 4493631)
*Pro Hac Vice*
Tor Ekeland Law, PLLC
30 Wall Street, 8th Floor
New York, NY
(718) 737 - 7264
tor@torekeland.com

*Counsel for Plaintiffs Melody Joy Cantu
and Dr. Rodrigo Cantu*

## Certificate of Service

I certify that on this 31st of July 2023, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the parties on record.

/s/ Michael Hassard